# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

---

INSPIRED PURSUITS, LLC,
QUALTIM, INC., CENTER FOR
BUILDING INNOVATION, LLC,
DRJ ENGINEERING, LLC, KIRK
GRUNDAHL, and SUZANNE
GRUNDAHL,

      Plaintiffs,

 V.

PARAGON COMPONENT SYSTEMS, LLC,
JOHN HOLLAND, JAMES HOLLAND,
CLEARSPAN COMPONENTS, LLC,
ANDREW EWIN, DAVID REED, SCOTT
HOELSMA, SETH DUNCAN, MICHAEL
PITTS, AVERY RADMACHER, NATHAN
BIERMEMA, JEREMY BIEREMA, ROB
EASON, and THE ESTATE OF DANIEL
HOLLAND EX REL. SPECIAL
EXECUTOR MARVIN B. SPEED,

      Defendants.

Case No. 3:25-cv-00075-wmc

---

## BRIEF IN SUPPORT OF DEFENDANTS PARAGON COMPONENT SYSTEM, LLC AND JOHN HOLLAND'S MOTION TO DISMISS

---

**GASS TUREK LLC**

*Counsel for Defendants Paragon
Component Systems, LLC and
John Holland*

Tamar B. Kelber, SBN 1101802
kelber@gassturek.com
Joshua S. Greenberg, SBN 1107959
greenberg@gassturek.com
241 North Broadway, Suite 300
Milwaukee, WI 53202
T: 414-223-3300

# Table of Contents

Table of Authorities ....................................................................................... iv

I.   Argument. .............................................................................................. 1

   A.   Standards for Motion to Dismiss. ...................................................... 1

   B.   The Complaint Should Be Dismissed Because It Is an Improper Shotgun
        and Puzzle Pleading. ......................................................................... 2

   C.   Most of Plaintiffs' Claims Are Preempted by the Copyright Act. ...................... 4

       1.   Nearly All Claims Depend on the Central Allegation that Plaintiffs
            Co-Authored Software Protected by the Copyright Act. ........................... 5

       2.   Several Claims Are Preempted by the Copyright Act Because They
            Seek Remedies Equivalent to Those Provided by the Act. ......................... 9

   D.   Each of the 14 Counts Fails to State a Plausible Claim for Relief. ............... 16

       1.   Count One Fails to State a Plausible Claim for Breach of Contract. ....... 17

       2.   Count Two Fails to State a Plausible Claim for Breach of Implied
            Contract of Business Partnership. ............................................... 17

       3.   Count Three Fails to State a Plausible Claim for Breach of Contract
            By Prevented Performance. ....................................................... 19

       4.   Count Four Fails to State a Plausible Claim for Unjust Enrichment. .... 20

       5.   Count Five Fails to State a Plausible Claim for Misappropriation of
            Trade Secrets. ................................................................... 21

       6.   Count Six Fails to State a Plausible Claim for Civil Conspiracy. ........... 23

       7.   Count Seven Fails to State a Plausible Claim for Tortious Interference
            with an Existing Contract. ....................................................... 24

       8.   Count Eight Fails to State a Plausible Claim for Tortious Interference
            with Prospective Contractual Relations. ......................................... 25

       9.   Count Nine Fails to State a Plausible Claim for Tortious Interference
            with Business Relations. ......................................................... 26

       10.  Count Ten Fails to State a Plausible Claim for Misappropriation of
            Confidential Business Information. ............................................... 26

11. Count Eleven Fails to State a Plausible Claim for Unfair Trade Practices..................................................................................27

12. Count Twelve Fails to State a Plausible Claim for Unfair Competition. 27

13. Count Thirteen's Injunction Request Is Defective....................................28

14. Count Fourteen's Injunction Request Is Defective. ................................29

II.  Conclusion. .......................................................................................................29

# Table of Authorities

Page(s)

## Cases

*Ahn v. Midway Mfg. Co.*,
965 F. Supp. 1134 (N.D. Ill. 1997) ................................................................... 7, 11

*Baiul v. NBC Sports*,
708 F. App'x 710 (2d Cir. 2017)............................................................................ 10

*Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*,
805 F.2d 663 (7th Cir. 1986) .............................................................................. 5, 9

*Bank of Am., N.A. v. Knight*,
725 F.3d 815 (7th Cir. 2013) ............................................................................ 4, 24

*Boyland Auto Grp. III LLC v. Boyland*,
691 F. Supp. 3d 917 (E.D. Wis. 2023) .................................................................. 23

*Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik
G.m.b.H. & Co. Kg.*,
448 F. Supp. 2d 244 (D. Mass. 2006) .................................................................. 12

*CapitalPlus Constr. Servs., LLC v. Blucor Contracting, Inc.*,
536 F. Supp. 3d 295 (E.D. Tenn. 2021) ............................................................... 18

*Carlson v. Brabham*,
199 So. 3d 735 (Miss. Ct. App. 2016) .................................................................. 18

*CEO Mktg. Promotions Co. v. Heartland Promotions, Inc.*,
739 F. Supp. 1150 (N.D. Ill. 1990) ................................................................... 5, 13

*CustomGuide v. CareerBuilder, LLC*,
813 F. Supp. 2d 990 (N.D. Ill. 2011) .................................................................. 2, 4

*Danaher Corp. v. Lean Focus, LLC*,
No. 19-CV-750-WMC, 2021 WL 3190389 (W.D. Wis. July 28, 2021) .............. 21, 23

*Dickman v. Vollmer*,
303 Wis. 2d 241 (Ct. App. 2007).......................................................................... 17

*Donovan v. Quade*,
830 F. Supp. 2d 460 (N.D. Ill. 2011) .................................................................... 11

iv

*Dunbar v. Kiefer,*
   No. 24-CV-1592-JPS, 2024 WL 5264678 (E.D. Wis. Dec. 31, 2024) ........................ 1

*Duncan v. Manning,*
   998 F. Supp. 2d 725 (E.D. Wis. 2014) ..................................................... 23

*Eberhardt v. Vill. of Tinley Park,* No. 20 C,
   3269, 2020 WL 10618313 (N.D. Ill. Oct. 14, 2020) .................................... 2

*Emergency One, Inc. v. Waterous Co., Inc.,*
   23 F. Supp. 2d 959 (E.D. Wis. 1998) ...................................................... 27

*FASA Corp. v. Playmates Toys, Inc.,*
   869 F. Supp. 1334 (N.D. Ill. 1994) ......................................................... 14

*Fin. Equip. Co., Inc. v. Silva,*
   No. 10-C-794, 2010 WL 4782786 (E.D. Wis. Nov. 17, 2010) ................................. 28

*Franklin v. Franklin ex rel. Phillips,*
   858 So. 2d 110 (Miss. 2003) ........................................................... 17, 18

*Freeman Indus., LLC v. Eastman Chem. Co.,*
   172 S.W.3d 512 (Tenn. 2005) ............................................................. 20

*Gaiman v. McFarlane,*
   360 F.3d 644 (7th Cir. 2004) ............................................................... 8

*Givens v. Mullikin ex rel. Estate of McElwaney,*
   75 S.W.3d 383 (Tenn. 2002) ............................................................... 18

*Google LLC v. Oracle Am., Inc.,*
   141 S. Ct. 1183 (2021) ................................................................... 10

*Griffin v. Humana Wis. Health Org. Ins. Corp.,*
   No. 98-C-0001, 2000 WL 35572299 (E.D. Wis. June 26, 2000).............................. 2

*Gulf Coast Hospice LLC v. LHC Grp. Inc.,*
   273 So. 3d 721 (Miss. 2019)............................................................... 18

*Higher Gear Grp., Inc. v. Rockenbach Chevrolet Sales, Inc.,*
   223 F. Supp. 2d 953 (N.D. Ill. 2002) ....................................... 5, 8, 10, 14

*Hobbs v. John,*
   No. 12 C 3117, 2012 WL 5342321 (N.D. Ill. Oct. 29, 2012)............................. 12, 15

*Holmes v. City of Racine*,
  No. 14-CV-208-JPS, 2014 WL 3738050 (E.D. Wis. July 30, 2014) ........................... 2

*I.A.E., Inc. v. Shaver*,
  74 F.3d 768 (7th Cir. 1996) ..................................................................... 4

*In re DMCA Section 512(h) Subpoena to YouTube (Google, Inc.)*,
  581 F. Supp. 3d 509 (S.D.N.Y. 2022) ........................................................ 11

*In re Harley-Davidson, Inc. Sec. Litig.*,
  660 F. Supp. 2d 969 (E.D. Wis. 2009) ......................................................... 2

*In re Metro. Sec. Litig.*,
  532 F. Supp. 2d 1260 (E.D. Wash. 2007) ..................................................... 2

*Jackson v. Methodist Health Servs. Corp.*,
  121 F.4th 1122 (7th Cir. 2024).................................. 1, 17, 18, 19, 20, 21, 24, 25, 26

*Knox v. Shearing*,
  637 F. App'x 226 (7th Cir. 2016) ......................................................... 28, 29

*Lands' End, Inc. v. Genesys Software Sys., Inc.*,
  No. 13-CV-38-BBC, 2014 WL 266630 (W.D. Wis. Jan. 24, 2014) ....................... 9, 26

*Levine v. Landy*,
  832 F. Supp. 2d 176 (N.D.N.Y. 2011)....................................................... 12

*Lindquist Ford, Inc. v. Middleton Motors, Inc.*,
  557 F.3d 469 (7th Cir. 2009) ................................................................ 18

*Liu v. Price Waterhouse LLP*,
  302 F.3d 749 (7th Cir. 2002) ................................................................ 10

*Maness v. K & A Enters. of Miss., LLC*,
  250 So. 3d 402 (Miss. 2018)................................................................. 19

*Md. Staffing Servs., Inc. v. Manpower, Inc.*,
  936 F. Supp. 1494 (E.D. Wis. 1996) ........................................................ 27

*Matthews v. Wis. Energy Corp. Inc.*,
  534 F.3d 547 (7th Cir. 2008) ............................................................ 17, 19

*McCauley v. City of Chicago*,
  671 F.3d 611 (7th Cir. 2011) ................................................................. 1

*Medline Indus., Inc. v. Diversey, Inc.,*
   563 F. Supp. 3d 894 (E.D. Wis. 2021) .................................................. 23, 24, 25, 26

*Mgmt. Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co.,*
   206 Wis. 2d 158 (1996) ............................................................................. 20

*Micro Data Base Sys., Inc. v. Nellcor Puritan-Bennett, Inc.,*
   20 F. Supp. 2d 1258 (N.D. Ind. 1998) ................................................... 9, 10

*Midwestern Helicopter, LLC v. Coolbaugh,*
   351 Wis. 2d 211 (Ct. App. 2013) .......................................................... 26

*Milwaukee Police Ass'n v. Flynn,*
   863 F.3d 636 (7th Cir. 2017) ................................................................. 29

*Mist-On Sys., Inc. v. Gilley's European Tan Spa,*
   303 F. Supp. 2d 974 (W.D. Wis. 2002) ................................................. 15

*NLFC, Inc. v. Devcom Mid-Am., Inc.,*
   45 F.3d 231 (7th Cir. 1995) ................................................................ 8, 10

*Norkol/Fibercore, Inc. v. Gubb,*
   279 F. Supp. 2d 993 (E.D. Wis. 2003) .................................................. 24

*Pagoudis v. Keidl,*
   406 Wis. 2d 542 (2023) ......................................................................... 17

*Paulick v. Denny,*
   301 Wis. 2d 747 (Ct. App. 2007) .......................................................... 18

*Platinum Home Mortgage Corp. v. Platinum Fin. Grp., Inc.,*
   149 F.3d 722 (7th Cir. 1998) .............................................................. 4, 28

*Round to Fit, LLC v. Reimer,*
   380 F. Supp. 3d 830 (S.D. Ind. 2019) ..................................................... 8

*SEL Bus. Servs., LLC v. Lord,*
   367 So. 3d 147 (Miss. 2023) ................................................................. 20

*Seng-Tiong Ho v. Taflove,*
   648 F.3d 489 (7th Cir. 2011) .................................. 5, 8, 9, 10, 11, 12, 13, 14, 15, 16

*Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.,*
   299 F. Supp. 2d 565 (E.D. Va. 2004) .................................................... 23

*Through the Door Inc. v. J.C. Penney Co.*,
  06-C-540-S, 2007 WL 2265781 (W.D. Wis. Mar. 28, 2007) .................. 10, 12, 13, 14

*Toney v. L'Oreal USA, Inc.*,
  406 F.3d 905 (7th Cir. 2005) ............................................................. 8, 9

*Vaughn v. Kelly*,
  No. 06 C 6427, 2007 WL 804694 (N.D. Ill. Mar. 13, 2007) .............................. 10, 13

*Weber v. Geffen Records, Inc.*,
  63 F. Supp. 2d 458 (S.D.N.Y. 1999) .................................................... 11

*White v. Schwans Consumer Brands Inc*,
  No. 23-CV-0147-BHL, 2024 WL 1115711 (E.D. Wis. Mar. 14, 2024) .................... 27

## Statutes

17 U.S.C. §§ 101, et seq. ................................................................. 4

17 U.S.C. § 101 ...................................................................... 5, 7

17 U.S.C. § 102 ...................................................................... 5, 9

17 U.S.C. § 103 ........................................................................ 9

17 U.S.C. § 106 ............................................... 5, 9, 10, 12, 14, 15

17 U.S.C. § 106(1) ............................................................ 10, 14, 15

17 U.S.C. § 106(2) ............................................................ 10, 14, 15

17 U.S.C. § 106(3) ........................................................ 10, 11, 13, 14, 15

17 U.S.C. § 201(a) ................................................................... 5, 7

17 U.S.C. § 301(a) ........................................................... 5, 9, 10, 15

28 U.S.C. § 1338(a) ................................................................... 4

Wis. Stat. Ann. § 100.20 ....................................................... 14, 26, 27

Wis. Stat. Ann. § 100.20(5) .......................................................... 27

Wis. Stat. Ann. § 134.01 ............................................................. 23

Wis. Stat. Ann. § 134.90 ............................................................. 21

Wis. Stat. Ann. § 134.90(1)(a) ................................................................... 22

Wis. Stat. Ann. § 134.90(2) ................................................................. 21, 22

Wis. Stat. Ann. § 241.02(1) ............................................................. 20, 25

**Court Rules**

Fed. R. Civ. P. 8 ........................................................................................ 1

Fed. R. Civ. P. 8(a)(2) ............................................................................ 2, 4

Fed. R. Civ. P. 12(b)(6) ................................................ 1, 2, 4, 16, 17, 20

Fed. R. Civ. P. 41(b) ......................................................................... 1, 2, 4

Under Fed. R. Civ. P. 8, 12(b)(6), and 41(b), Defendants John Holland and Paragon Component Systems, LLC respectfully move to dismiss Plaintiffs' claims. First, Plaintiffs' scattershot Complaint should be dismissed entirely because it is merely "a collection of vague legal theories [that] lacks concrete and coherent factual allegations." *See Dunbar v. Kiefer*, No. 24-CV-1592-JPS, 2024 WL 5264678, at *3 (E.D. Wis. Dec. 31, 2024). Second, most of Plaintiffs' state-law claims are preempted by the Copyright Act because they seek remedies that are equivalent to remedies afforded exclusively under the Act. Third, Plaintiffs' allegations are factually deficient and implausible.

## I.    Argument.

### A.    *Standards for Motion to Dismiss.*

Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss under Rule 12(b)(6), the Complaint must "state a claim for relief that is plausible on its face." *Jackson v. Methodist Health Servs. Corp.,* 121 F.4th 1122, 1125–26 (7th Cir. 2024). A claim is facially plausible when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Court treats the Complaint's allegations as true and draws only reasonable factual inferences in the Plaintiffs' favor. *Id*. "[L]egal conclusions and conclusory allegations merely reciting the elements of the claim," however, "are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

A complaint that fails to provide "short and plain statement of the claim," Rule 8(a)(2), is also subject to involuntary dismissal under Rule 41(b): "[I]f the plaintiff

fails … to comply with these rules …, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). *See Eberhardt v. Vill. of Tinley Park*, No. 20 C 3269, 2020 WL 10618313, at *1–2 (N.D. Ill. Oct. 14, 2020).

> **B.     The Complaint Should Be Dismissed Because It Is an Improper Shotgun and Puzzle Pleading.**

The Court should dismiss the Complaint under Rule 12(b)(6) or 41(b) because it is "a textbook example of 'shotgun pleading'" that violates Rule 8(a)(2). *See Griffin v. Humana Wis. Health Org. Ins. Corp.*, No. 98-C-0001, 2000 WL 35572299, at *1 (E.D. Wis. June 26, 2000). In a "shotgun" pleading, "each count incorporate[s] by reference all preceding paragraphs and counts of the complaint notwithstanding that many of the facts alleged [are] not material to the claim, or cause of action, appearing in a count's heading." *CustomGuide v. CareerBuilder, LLC*, 813 F. Supp. 2d 990, 1001 (N.D. Ill. 2011) (citation omitted). Such pleadings make it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief," *id.* (citation omitted), or which defendant engaged in the conduct relating to the alleged claim. "[S]imply by pleading a host of facts which [Plaintiffs] then incorporate into claims against all or groups of the defendants" does not provide the kind of notice required to enable Defendants to respond to the Complaint. *See Holmes v. City of Racine*, No. 14-CV-208-JPS, 2014 WL 3738050, at *12 (E.D. Wis. July 30, 2014).

Similarly, the Complaint is full of improper puzzle pleading. Such pleading "improperly plac[es] the burden on the Court to sort out the alleged [counts] and then match them with the corresponding adverse facts." *See In re Harley-Davidson, Inc. Sec. Litig.*, 660 F. Supp. 2d 969, 984 (E.D. Wis. 2009) (securities-fraud context); *cf. In re Metro. Sec. Litig.*, 532 F. Supp. 2d 1260, 1279 (E.D. Wash. 2007).

2

In the Complaint, Plaintiffs allege a few facts that apply to all counts. Doc. 1-2 at 9 ¶¶ 27–33. They then incorporate all prior facts, including those stated only in a prior count, into each of their 14 counts. *See id.* at 9–36 ¶¶ 34, 45, 50, 58, 66, 85, 93, 97, 111, 117, 120, 126, 133, 139. This is problematic for several reasons.

Some counts contain nothing but bare-bones recitals of causes of actions against all Defendants. *See id.* at 31–32 ¶¶ 111–16 (tortious interference); *id.* at 32 ¶¶ 117–19 (misappropriation of business information); *id.* at 33–34 ¶¶ 126–32 (unfair competition). This requires Defendants and the Court to guess at which prior alleged facts are supposed to provide the factual basis for the claims.

Other counts allege additional facts, but fail to connect specific Defendants with the alleged misconduct. Nearly every count simply claims "Defendants" engaged in conduct that harmed the "Plaintiffs," without specifying which Defendant supposedly did what. *Id.* at 23–35 ¶¶ 34–44, 58–110, 133–38. It is apparent from the Complaint that not all of the numerous, separate Defendants could have engaged in all the alleged misconduct. Once again, each Defendant is left to guess at which claim or claims are really advanced against it and guess at what it supposedly did wrong in relation to each claim. This is especially problematic given that Plaintiffs have sued 14 separate Defendants, whose distinct roles and conduct are improperly and confusingly conflated.

Yet other counts never specify which of the 14 Defendants supposedly committed the conduct, often merely alleging that all "Defendants" are liable. *Id.* at 11–12, 32–33 ¶¶ 45–57, 120–25. Only the final counts, for an injunction, specifically identifies the Defendants to be enjoined, *id.* at 34–36 ¶¶ 133–43, but an injunction

requires an underlying, valid cause of action: *Platinum Home Mortgage Corp. v. Platinum Fin. Grp., Inc.*, 149 F.3d 722, 726 (7th Cir. 1998). "Each defendant is entitled to know what he or she did that is asserted to be wrongful. A complaint based on a theory of collective responsibility must be dismissed." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013).

In sum, Plaintiffs' shotgun, puzzle pleading makes it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief" or which defendant engaged in the conduct relating to an alleged claim. *See CustomGuide*, 813 F. Supp. 2d at 1001. Paragon and its owner John Holland cannot tell what misconduct is alleged against them or distinguish their alleged misconduct from that of the other Defendants. The Complaint fails to provide the kind of "short and plain statement" and fair notice required under Rule 8(a)(2). The Court should thus dismiss the Complaint in whole under Rule 12(b)(6) for failing to state a claim or involuntarily dismiss it under Rule 41(b) for failing to comply with Rule 8(a)(2).

C.    *Most of Plaintiffs' Claims Are Preempted by the Copyright Act.*

Federal courts have sole and exclusive jurisdiction over claims governed by the federal Copyright Act, 17 U.S.C. §§ 101, et seq. *See I.A.E., Inc. v. Shaver*, 74 F.3d 768, 774 (7th Cir. 1996). "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents, plant variety protection, or copyrights." 28 U.S.C. § 1338(a). This Court has exclusive federal subject-matter jurisdiction on this basis. *See* Doc. 1 (notice of removal).

4

The Copyright Act also preempts all state-law claims that are equivalent to the rights afforded under the Copyright Act, 17 U.S.C. § 106, regardless of whether the plaintiff expressly pleads a claim for relief under the Act. *See Seng-Tiong Ho v. Taflove*, 648 F.3d 489, 501 (7th Cir. 2011); *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 674 (7th Cir. 1986). Under the Copyright Act,

> all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 … are governed *exclusively* by this title…. [N]o person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a) (emphasis added). Where this applies, the equivalent state-law claim must be dismissed. "The intention of Congress appears to be 'to preempt and abolish any rights under the common law or statutes of a state that are equivalent to copyright.'" *CEO Mktg. Promotions Co. v. Heartland Promotions, Inc.*, 739 F. Supp. 1150, 1152 (N.D. Ill. 1990) (citation omitted).

      1.    <u>Nearly All Claims Depend on the Central Allegation that Plaintiffs Co-Authored Software Protected by the Copyright Act</u>.

This action arises under the Copyright Act, which protects originally authored software code and computer programs as "literary works." 17 U.S.C. §§ 101–102; *Higher Gear Grp., Inc. v. Rockenbach Chevrolet Sales, Inc.*, 223 F. Supp. 2d 953, 957 (N.D. Ill. 2002). The Complaint, Doc. 1-2, necessarily involves interpreting whether, under the Act, Plaintiffs are "authors" of the software code. *See* 17 U.S.C. § 201(a).

The plaintiffs are mostly engineers and engineering companies. *See* Doc. 1-2 at 19–20 ¶¶ 1–6. They seek relief relating to a purported "business model," defined in the Complaint as "Developed TS/IP," that focuses on and includes a software program

5

that provides online applications for the roof and floor truss industry. *Id*. at 18. Plaintiffs allege that Defendant Paragon distributes to users for profit a "truss-design calculator," which the State Court Complaint defines as "IP-Math." Doc. 1-2 at 20 ¶ 8. And the Complaint defines the software "tool" or program that uses the IP-Math as the "IP-LLC Software." *Id*. at 18. As alleged in the Complaint, Plaintiffs have "use and ownership rights to the IP-Math" and to the IP-LLC Software, which Paragon solely possesses and controls. *Id*. at 32 ¶ 114; *see id*. at 29 ¶ 87 (alleging that Plaintiffs have "rights to the IP-Math and IP-[LLC] Software").

Plaintiffs further allege that they "invested approximately $23.8 million in *services* and expenses into the Developed TS/IP," which included "partner[ing]" to develop the IP-Math and IP-LLC Software. *See* Doc. 1-2 at 23 ¶ 30 (emphasis added); *id*. at 26 ¶ 60; *id*. at 37 ¶ 144. Throughout the Complaint, Plaintiffs allege that these services included partially authoring the IP-Math and IP-LLC Software:

- Plaintiffs "worked together" with Defendants "in a concerted effort to prepare the IP-LLC Software." Doc. 1-2 at 24 ¶ 37;

- Plaintiffs and Defendants shared an employee "whose role was to develop the IP-[LLC] Software and IP-Math," *id*. at 26 ¶ 53;

- Plaintiff Kirk Grundahl partnered in "developing [the] proprietary IP-LLC Software," *id*. at 28 ¶ 69;

- Plaintiffs provided "work product and resources that are embedded in the software," *id*. at 33 ¶ 128;

- Plaintiffs' "interpretation[s] of engineering concepts … are embedded in the software," *id*. at 34 ¶ 134;

- There are "configurations in the IP-LLC Software that use[ ] Plaintiffs' interpretations and calculations of engineering concepts," *id*. at 35 ¶ 138(c); *see id*. at 36 ¶ 143(e);

- The "IP-Math contains creative work" that "requires engineering and supervision by professional engineers, *id*. at 36 ¶ 141;

- "[C]reative engineered structural component work … took place to create [the] IP-LLC Software," which required "engineering mechanics, physical truss/wall panel testing data, engineering analysis, engineering supervision, professional engineering, and truss plate manufacturing, truss plate testing, truss plate performance and related truss manufacturing knowledge" provided by Plaintiffs, *id*. at 36 ¶ 142;

- Defendants are "withholding access and ownership rights to the IP-Math," *id*. at 30 ¶ 99; and

- Defendants "terminat[ed] Plaintiff's use and ownership rights to the IP-Math," *id*. at 32 ¶ 114.

It does not matter whether the Complaint uses the word "author" or not; developing and creating software necessarily includes authoring computer code.

Copyright "vests initially in the author or authors of the work." 17 U.S.C. § 201(a). A joint work is one "prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. "Under federal copyright law, if a work is considered 'joint[,]' the joint authors hold undivided interests in the work. Each author, as a co-owner, has the right to use or to license the use of the work, subject to an accounting to the other co-owners for any profits." *Ahn v. Midway Mfg. Co.*, 965 F. Supp. 1134, 1138 (N.D. Ill. 1997). And a "collaborative contribution will not produce a joint work, and a contribution will not obtain a co-ownership interest, unless the contribution represents original expression that could stand on its own as the subject matter of copyright." *Id.* at 1139 (citation omitted).

The question whether Plaintiffs have rights in the IP-Math and IP-LLC Software, as they allege—such as the right to profit from distributing the software to

persons in the truss industry—hinges on whether Plaintiffs obtained undivided co-ownership of the software by having *co-authored* it. As Plaintiffs acknowledge, Doc. 1-2 at 18–19, their alleged co-authorship of the IP-Math and IP-LLC Software is a disputed question. And this question—whether Plaintiffs co-authored the IP-Math and IP-LLC Software—"cannot be answered without reference to the Copyright Act, and it therefore arises under the Act." *Gaiman v. McFarlane*, 360 F.3d 644, 652–53 (7th Cir. 2004) (holding that claim involving disputed question of authorship was governed by the Copyright Act and provided for original federal jurisdiction); *see NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Higher Gear Grp., Inc. v. Rockenbach Chevrolet Sales, Inc.*, 223 F. Supp. 2d 953, 957 (N.D. Ill. 2002); *Round to Fit, LLC v. Reimer*, 380 F. Supp. 3d 830, 837–38 (S.D. Ind. 2019).

Further, even if Plaintiffs assert rights in preexisting proprietary information, not itself protected by the Copyright Act, embedded in the software, their claims still implicate the Copyright Act, and are preempted, because they assert those rights concerning copyright-protected software. That is, the question whether such information, whether copyrightable or not, creates an ownership interest in the software invokes copyright law. "[W]hen rights are asserted in uncopyrighted expressions in a copyrighted work, the Copyright Act still can preempt state law." *Seng-Tiong Ho*, 648 F.3d at 501 n.9 (citation omitted) (addressing rights asserted in "equations, figures and text" embedded in computer code and articles). "'[S]tate laws that intrude on the domain of copyright,'" as here, "'are preempted even if the particular expression [at issue] is neither copyrighted nor copyrightable.'" *Id.* at 501 (quoting *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 911 (7th Cir. 2005)). This is

because, "[i]n the Copyright Act, Congress sought to ensure that a state will not provide 'copyright-like protections in materials' that should remain uncopyrighted or uncopyrightable." *Id.* (quoting *Toney*, 406 F.3d at 911); see 17 U.S.C. § 301(a).

### 2. Several Claims Are Preempted by the Copyright Act Because They Seek Remedies Equivalent to Those Provided by the Act.

As explained below, Counts Two, Four, Five, Six, Eight, Nine, Ten, Eleven, Twelve, Thirteen, and Fourteen are preempted by the Copyright Act.

"The Copyright Act preempts 'all legal and equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106' and are 'in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103.'" *Lands' End, Inc. v. Genesys Software Sys., Inc.*, No. 13-CV-38-BBC, 2014 WL 266630, at *3 (W.D. Wis. Jan. 24, 2014) (quoting 17 U.S.C. § 301(a)). The Seventh Circuit uses a two-part test to assess whether the Copyright Act preempts a state-law claim. "First, the work in which the right is asserted must be fixed in tangible form and come within the subject matter of copyright as specified in [17 U.S.C.] § 102. Second, the right must be equivalent to any of the rights specified in § 106." *Micro Data Base Sys., Inc. v. Nellcor Puritan-Bennett, Inc.*, 20 F. Supp. 2d 1258, 1261 (N.D. Ind. 1998) (quoting *Baltimore Orioles*, 805 F.2d at 674). Both requirements are satisfied here.[1]

First, the IP-Math and IP-LLC Software are deemed to be in tangible form and come within the subject matter of copyright as specified. "It is well established that

---

[1] The relevant rights specified in § 106 here are: "(1) to reproduce the copyrighted work in copies …; (2) to prepare derivative works based upon the copyrighted work; [and] (3) to distribute copies … of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending ….." 17 U.S.C. § 106.

9

computer software is fixed in a tangible medium of expression and [falls] within the subject matter of copyright." *Higher Gear*, 223 F. Supp. 2d at 957 (citations omitted); *see NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234–35 (7th Cir. 1995).

Second, several of Plaintiffs' claims also seek to enforce rights that are equivalent to those provided exclusively under 17 U.S.C. § 106. *See Micro Data*, 20 F. Supp. 2d at 1261. A state-law claim is equivalent when the allegations support a claim under the Copyright Act without additional requirements. *Through the Door Inc. v. J.C. Penney Co.*, No. 06-C-540-S, 2007 WL 2265781, at *2 (W.D. Wis. Mar. 28, 2007). For example, the right to access or use copyright-protected software, to reproduce or distribute it, to prepare derivative software, or to profit from distributing software to third persons are rights exclusively available under, and governed by, the Act. *See* 17 U.S.C. § 106(1)–(3); *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1199 (2021); *Liu v. Price Waterhouse LLP*, 302 F.3d 749, 754 (7th Cir. 2002). Moreover, the rights afforded by the Act are exclusively matters of federal law. So, "when rights are asserted in uncopyrighted expressions in a copyrighted work, the Copyright Act still can preempt state law." *Seng-Tiong Ho*, 648 F.3d at 501 & n.9 (citation omitted); *see Vaughn v. Kelly*, No. 06 C 6427, 2007 WL 804694, at *3 (N.D. Ill. Mar. 13, 2007).

As shown below, the Copyright Act preempts most of Plaintiffs' claims because "the state law claims seek to vindicate rights that are already protected by the Copyright Act." *Baiul v. NBC Sports*, 708 F. App'x 710, 712 (2d Cir. 2017); *see* 17 U.S.C. § 301(a). "Regardless of the title of each cause of action, [P]laintiff[s'] basic claim is that because [they are] co-author[s] of the copyrighted material and a co-

owner of the copyrights, [D]efendants' copyrights should not entitle them to the full bundle of privileges that attach to copyright ownership." *See Weber v. Geffen Records, Inc.*, 63 F. Supp. 2d 458, 463 (S.D.N.Y. 1999). "It is only through this basic claim that any enrichment is unjust, that any competition is unfair, or that anyone profiting must account to [P]laintiff[s]." *See id.*; Doc. 1-2 at 19, 23 ¶¶ 27–33.

**Count Two.** Plaintiffs assert an equitable claim for alleged breach of an implied contract of partnership. Doc. 1-2 at 25 ¶¶ 45–49. They seek damages from Defendants for their unpaid "share of the profits" of the implied partnership. *Id.* at 25 ¶ 47. Count Two alleges that Defendants are profiting unfairly by making the IP-Math and IP-LLC Software available for use by third persons (distributing it) without sharing the revenue from it with Plaintiffs. The right to distribute copyrighted software for a fee is governed exclusively by 17 U.S.C. § 106(3). *See In re DMCA Section 512(h) Subpoena to YouTube (Google, Inc.)*, 581 F. Supp. 3d 509, 517 (S.D.N.Y. 2022). Because Plaintiffs assert rights in the copyright-protected software, the claim is preempted regardless of whether the information Plaintiffs provided, which they allege is embedded in the software, is independently protectable under the Copyright Act. *See Seng-Tiong Ho*, 648 F.3d at 501 & n.9.

Where there are joint authors, as the Complaint also suggests, "[e]ach author, as a co-owner, has the right to use or to license the use of the work, subject to an accounting to the other co-owners for any profits." *Ahn.*, 965 F. Supp. at 1138; *see Donovan v. Quade*, 830 F. Supp. 2d 460, 495–96 (N.D. Ill. 2011). By seeking a share of profits as an equitable remedy based on a supposed implied partnership to profit from distributing software, Plaintiffs assert rights equivalent to those afforded only

under 17 U.S.C. § 106. *Hobbs v. John*, No. 12 C 3117, 2012 WL 5342321, at *8 (N.D. Ill. Oct. 29, 2012) (state-law claim for equitable accounting preempted). "[C]ourts addressing preemption issues have concluded that claims for an accounting or compensation due to a plaintiff's status as a co-owner are preempted by the Copyright Act as they are equivalent to the claims protected by the Copyright Act." *Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg.*, 448 F. Supp. 2d 244, 255–56 (D. Mass. 2006), *aff'd*, 510 F.3d 77 (1st Cir. 2007). This holds true even if Plaintiffs' information embedded in the software is not independently protected by the Copyright Act. *See Seng-Tiong Ho*, 648 F.3d at 501 & n.9.

**Count Four.** Plaintiffs plead a claim for unjust enrichment on the ground that they "provided Defendants with at least $23.8 million in unpaid services and invaluable Developed TS/IP"—i.e., Plaintiffs allegedly helped create and thus co-authored the computer code embedded in the IP-Math and IP-LLC Software, and claim entitlement to a share of the profits from it. Doc. 1-2 at 26 ¶ 60. "Courts have generally concluded that the theory of unjust enrichment protects rights that are essentially 'equivalent' to rights protected by the Copyright Act; thus, unjust enrichment claims relating to the use of copyrighted material are generally preempted." *Levine v. Landy*, 832 F. Supp. 2d 176, 187 (N.D.N.Y. 2011). That is, "there is no meaningful distinction between an unjust enrichment claim which," as here, "asserts that defendants received an improper benefit by using the copyrighted work and the copyright claim based on the same unauthorized use." *Through the Door*, 2007 WL 2265781, at *3. Even if the information embedded in the software is

not itself protected by copyright, this claim is preempted because it seeks a remedy in software governed exclusively by the Act. *Seng-Tiong Ho*, 648 F.3d at 501 n.9.

**Counts Five and Ten.** Plaintiffs contend that Defendants are misappropriating  trade secrets contained in the IP-Math and IP-LLC Software by using the software to compete with Plaintiffs, without sharing any profits. Doc. 1-2 at 27–29 ¶¶ 66–84; id. at 32 ¶¶ 117–19. Defendants' alleged "misappropriation" is distributing and profiting from software that Paragon owns and controls. "Plaintiff[s'] misappropriation claim, as alleged in the … complaint, is [thus] indistinguishable from [a] copyright claim and therefore preempted. The allegations are that plaintiff invested time and money creating the copyrighted [software applications] which were misappropriated by defendants." *Through the Door*, 2007 WL 2265781, at *3; *see* 17 U.S.C. § 106(3) (right of distribution). This claim is equivalent to a right under the Copyright Act and is preempted. *CEO Mktg. Promotions Co., Inc.*, 739 F. Supp. at 1152 (holding misappropriation claim preempted); *see also supra* (right to accounting).

The misappropriation claim, which seeks a copyright-like remedy, remains preempted even if the information provided by Plaintiffs, which they say is embedded in Paragon's software, is not independently protected by the Copyright Act. Under this scenario, "the Copyright Act's 'preemptive reach ... encompasses state law claims concerning uncopyrightable material." *Vaughn*, 2007 WL 804694, at *3 (citation omitted) (state-law misappropriate claim preempted).

**Count Six.** Plaintiffs' civil-conspiracy claim hinges on alleged rights to access, use, and profit from the IP-Math and IP-LLC Software. Doc. 1-2 at 29 ¶¶ 87, 90. This

claim is thus preempted for the same reasons Plaintiffs' predicate tort claims are preempted. *Higher Gear*, 223 F. Supp. 2d at 957 (civil-conspiracy claim preempted).

**Counts Eight and Nine.** Plaintiffs allege that Defendants have tortiously interfered with existing and prospective contractual and business relations that Plaintiffs have with third persons. Doc. 1-2 at 30–32 ¶¶ 97–119. Each of these claims hinges on the allegations that Defendants (1) have deprived Plaintiffs of access to trade secrets they allegedly co-authored and co-own with Defendants, which are "embedded in software" (the IP-Math and IP-LLC Software), *id.* at 33 ¶ 128, and (2) are copying and distributing the software to third persons (via licensing) and profiting from it, without sharing profits with Plaintiffs. *See* 17 U.S.C. § 106(1)–(3). The tortious-interference claims are thus preempted for the same reasons counts two, four, and five are preempted. *See, e.g., FASA Corp. v. Playmates Toys, Inc.*, 869 F. Supp. 1334, 1359 (N.D. Ill. 1994) (dismissing as preempted plaintiff's state-law claim for tortious interference). Again, this preemption applies regardless of whether the information from Plaintiffs embedded in the software is itself copyright-protected. *Seng-Tiong Ho*, 648 F.3d at 501 n.9. The alleged rights in the software are unavoidably governed by the Act.

**Count Eleven.** Plaintiffs allege Defendants committed unfair trade practices under Wis. Stat. Ann. § 100.20 by restricting Plaintiffs' access to the IP-Math and IP-LLC Software—a right mirroring 17 U.S.C. § 106. Doc. 1-2 at 32–33 ¶¶ 120–25. These allegations "do not suggest that there is any distinction between [a] copyright claim and the unfair trade practices claim." *Through the Door*, at *3. The allegation that Defendants are making unspecified false statements about Plaintiffs is "devoid of

substance." *Id*. This claim is preempted even if the embedded information from Plaintiffs is not itself copyright-protected. *Seng-Tiong Ho*, 648 F.3d at 501 & n.9.

**Count Twelve.** Plaintiffs allege Defendants engaged in unfair competition by restricting Plaintiffs' access to the IP-Math and IP-LLC Software and precluding them from sharing profits. Doc. 1-2 at 33–34 ¶¶ 126–32. This is equivalent to asserting rights to use, distribute, and profit from software because it contains information from Plaintiffs. 17 U.S.C. § 106(1)–(3); *Hobbs*, 2012 WL 5342321, at *8. "Because plaintiff[s'] unfair competition claims merely restate [unasserted] copyright claims under state law, they are preempted." *Mist-On Sys., Inc. v. Gilley's European Tan Spa*, 303 F. Supp. 2d 974, 980 (W.D. Wis. 2002). Plaintiffs seek copyright-like remedies concerning information embedded in copyright-protected software; the claim is thus preempted, even if the information itself is not protected by Copyright Act. *Seng-Tiong Ho*, 648 F.3d at 501 & n.9. To hold otherwise would let Plaintiffs improperly create state-law remedies that usurp the Act. *Id*.; *see* 17 U.S.C. § 301(a).

**Counts Thirteen and Fourteen.** Each of Plaintiffs' injunction requests centrally depends on the allegation that Defendants are improperly using, distributing, licensing, modifying, and profiting from the IP-Math and IP-LLC Software. Doc. 1-2 at 34–36 ¶¶ 134–35, 138(c), 141–43. Plaintiffs' alleged irreparable harm thus stems fundamentally from rights derived from 17 U.S.C. § 106, and Plaintiffs have "not established how the injunctive relief [they are] requesting under state common law is different from" redress available only under the Copyright Act. *See Mist-On Sys.*, 303 F. Supp. 2d at 980. Further, the likelihood of success on the underlying claims is inherently bound up with the Copyright Act. To the extent

Plaintiffs seek injunctive relief based on a claim preempted by the Copyright Act, the injunction remedy is also preempted. Once again, this remains so even if the information from Plaintiffs that is embedded in Paragon's software is not itself independently protectable under the Copyright Act. *See Seng-Tiong Ho*, 648 F.3d at 501 & n.9. This preemption is necessary to protect the Copyright Act's exclusivity. *Id.*

     D.    *Each of the 14 Counts Fails to State a Plausible Claim for Relief.*

To the extent Plaintiffs' claims are not preempted by the Copyright Act, they should be dismissed under Rule 12(b)(6) for failure to state a claim. As explained below, in sum, all 14 counts fail to allege specific enough facts to render the claim plausible. And some counts also fail as a matter of law: (1) Counts One (breach of contract), Two (implied partnership), Three (breach of contract) and Seven (tortious interference with contract), fail to identify the contractual terms allegedly breached; (2) Counts Four (unjust enrichment), Five (misappropriation of trade secrets), Six (civil conspiracy), Eight (tortious interference with prospective contractual relations), Nine (tortious interference with business relations), Ten (misappropriation of business information or conversion) and Twelve (unfair competition) fail to allege necessary elements of the claims; (3) Counts Eleven (violation of Wis. Stat. Ann. § 100.20), Thirteen (Injunction) and Fourteen (Injunction Pending State Department Investigation) fail to allege the predicate violation or standing; and (4) Counts One, Three and Seven are also barred by the statute of frauds. And throughout, Plaintiffs fail to allege the plausible causation of injury.

1.    Count One Fails to State a Plausible Claim for Breach of
Contract.

To plead a breach-of-contract claim under Wisconsin law, "the plaintiff must show a valid contract that the defendant breached and damages flowing from that breach." *Matthews v. Wis. Energy Corp. Inc.*, 534 F.3d 547, 553 (7th Cir. 2008). This requires first showing the existence of the contract, including its terms that have allegedly been breached. *See Pagoudis v. Keidl*, 406 Wis. 2d 542, 554 (2023). But Plaintiffs identify only a "Mutual Non-Disclosure Agreement" and do not attach, quote, or cite any provisions that Defendants have allegedly breached, let alone connect such breach to the damages they allege. Doc. 1-2 at 23–25 ¶¶ 34–44.

It is thus impossible for Defendants to ascertain what contractual provision has allegedly been breached or whether the "public business strategies, engineering knowledge, and Developed TS/IP" allegedly disclosed to the public even fall under the scope of the contract. *See id.* at 24 ¶ 40. Nor does the Complaint allege how that information was allegedly disclosed. *Id.* The Complaint thus fails to plead "factual content that allows the court to draw the reasonable inference" that Defendants are liable for breach of contract. *See Jackson*, 121 F.4th at 1125–26. This claim is factually unsupported and implausible, and it should be dismissed under Rule 12(b)(6).

2.    Count Two Fails to State a Plausible Claim for Breach of Implied
Contract of Business Partnership.

Under Wisconsin law, "[t]he essence of a contract implied in fact is that it arises from an agreement circumstantially proved," including from the parties' conduct. *See Dickman v. Vollmer*, 303 Wis. 2d 241, 252–53 (Ct. App. 2007) (citation omitted). On this point, Tennessee and Mississippi law align. *See Franklin v. Franklin ex rel.*

17

*Phillips,* 858 So. 2d 110, 120 (Miss. 2003); *Givens v. Mullikin ex rel. Estate of McElwaney*, 75 S.W.3d 383, 407 (Tenn. 2002). The plaintiff must establish the terms of the implied agreement, which like an express contract must result from a meeting of the minds. *See Lindquist Ford, Inc. v. Middleton Motors, Inc.*, 557 F.3d 469, 480–81 (7th Cir. 2009) (applying Wisconsin law); *Givens*, 75 S.W.3d at 407; *Gulf Coast Hospice LLC v. LHC Grp. Inc.*, 273 So. 3d 721, 735 (Miss. 2019).

To establish an implied-in-fact contract that forms an implied partnership, the plaintiff must show an agreement to share the profits of a particular business endeavor. *CapitalPlus Constr. Servs., LLC v. Blucor Contracting, Inc.*, 536 F. Supp. 3d 295, 305 (E.D. Tenn. 2021) (applying Tennessee law); *Carlson v. Brabham*, 199 So. 3d 735, 740 (Miss. Ct. App. 2016); *Paulick v. Denny*, 301 Wis. 2d 747 (Ct. App. 2007).

The Complaint fails to plead a plausible claim for breach of an implied contract of partnership. Doc. 1-2 at 25 ¶¶ 45–49; *see id*. ¶ 51. It merely alleges "Plaintiffs and Defendants worked as partners in creating Developed TS/IP," *id*. at 23 ¶ 30, and never pleads the terms of the purported implied partnership agreement. It does not allege specific facts that plausibly show how an implied partnership agreement arose or was breached. The Complaint's bare-bones and speculative allegations never even plainly state which Defendant or Defendants is supposedly the implied partner (or, for that matter, which of the Plaintiffs the undetermined Defendant supposedly partnered with). *Id*. at 25. The Complaint thus fails to plead "factual content that allows the court to draw the reasonable inference" that any of the Defendants are liable for breach of an implied contract of partnership. *See Jackson*, 121 F.4th at 1125–26. This claim is bereft of factual content and implausible.

Further, this purported, unwritten years-long agreement is invalid under Wis. Stat. § 241.02(1): "In the following case every agreement shall be void unless such agreement or some note or memorandum thereof, expressing the consideration, be in writing and subscribed by the party charged therewith: (a) Every agreement that by its terms is not to be performed within one year from the making thereof."

   3. <u>Count Three Fails to State a Plausible Claim for Breach of Contract By Prevented Performance</u>.

To plead a claim for breach of contract under Mississippi or Wisconsin law, "the plaintiff must show a valid contract that the defendant breached." *Matthews*, 534 F.3d at 553 (Wisconsin law); *Maness v. K & A Enters. of Miss., LLC*, 250 So. 3d 402, 414 (Miss. 2018). The Complaint alleges Defendant Clearspan agreed in 2009 with "Plaintiffs" to "operate as partners in developing proprietary engineering services ...." Doc. 1-2 at 25 ¶ 51. It alleges that "Defendants" breached this contract by ordering Plaintiffs to stop performing the agreement. These allegations, like the similarly vague allegations in Count Two, are far too bare-bones and generic to state a plausible claim for breach of contract. *See Jackson*, 121 F.4th at 1125–26.

 The Complaint again fails to attach the alleged contract, and it makes no specific allegations regarding the contracts terms or which terms they alleged were breached. Defendants do not know the supposed terms of the agreement. We are never told whether or how all six Plaintiffs entered into it. We cannot understand how "Defendants" could breach the agreement by "discharging" Plaintiffs and ordering them "to refrain from the performance of any further service under the contract." Doc. 1-2 at 26 ¶ 55. Nor is it understandable how the agreement created a "partnership" when it appears that Plaintiffs were service-providers under the

agreement or how other "Defendants," who are not alleged to be parties to the agreement, could nonetheless breach it. *See id*. The Complaint does not plead "factual content that allows the court to draw the reasonable inference" that Defendants are liable for breach of an agreement by frustrating Plaintiffs' performance. *See Jackson*, 121 F.4th at 1125–26. If the alleged 16-year-long contract is oral, it is invalid under Wis. Stat. § 241.02(1). This claim should be dismissed under Rule 12(b)(6).

4.    <u>Count Four Fails to State a Plausible Claim for Unjust Enrichment</u>.

Under Mississippi, Tennessee, and Wisconsin law, a claim for unjust enrichment—which, in the absence of a contract, legally imputes one where circumstances warrant it—requires a plaintiff to have conferred a benefit on a defendant, which the defendant unjustly retains without compensating the plaintiff. *See SEL Bus. Servs., LLC v. Lord*, 367 So. 3d 147, 151 (Miss. 2023); *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005); *Mgmt. Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 206 Wis. 2d 158, 188–89 (1996).

The Complaint alleges all "Plaintiffs" provided all "Defendants" with at least $23 million in unpaid services and resulting intellectual property. Doc. 1-2 at 26 ¶¶ 59–60; *see id*. at 23 ¶ 30. Yet, the Complaint fails to explain how each Plaintiff provided any benefits to each of the numerous Defendants. The Complaint does not specify the nature of these services or how they amount to $23 million in value or what "resulting intellectual property" each individual Defendant allegedly was provided. The Complaint fails to plead "factual content that allows the court to draw the reasonable inference" that circumstances exist under which Defendants are liable

20

for unjust enrichment; the claim is far too vague and conclusory to be plausible. *See Jackson*, 121 F.4th at 1125–26. It must therefore be dismissed.

     5.    <u>Count Five Fails to State a Plausible Claim for Misappropriation of Trade Secrets</u>.

Plaintiffs claim that all "Defendants" misappropriated trade secrets in violation of Wisconsin's Uniform Trade Secrets Act ("UTSA"), Wis. Stat. § 134.90, but do not allege any actual trade secrets. "The UTSA bars disclosing or using without consent a trade secret acquired through improper means. [A] … plaintiff must prove the same two elements as to each act: (1) the information at issue is a trade secret; and (2) the defendant misappropriated it." *Danaher Corp. v. Lean Focus, LLC*, No. 19-CV-750-WMC, 2021 WL 3190389, at *14 (W.D. Wis. July 28, 2021).

Nor do Plaintiffs even attempt to plead conduct that meets the statutory definition of misappropriation:

(a) Acquiring the trade secret of another by means which the person knows or has reason to know constitute improper means.

(b) Disclosing or using without express or implied consent a trade secret of another if the person did any of the following:

    1. Used improper means to acquire knowledge of the trade secret.

    2. At the time of disclosure or use, knew or had reason to know that he or she obtained knowledge of the trade secret through any of the following means:

        a. Deriving it from or through a person who utilized improper means to acquire it.

        b. Acquiring it under circumstances giving rise to a duty to maintain its secrecy or limit its use.

        c. Deriving it from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use.

        d. Acquiring it by accident or mistake.

21

Wis. Stat. § 134.90(2). The Complaint fails to plausibly allege facts showing that Defendants committed any such "misappropriation."

The Complaint concedes that Defendants had the right to access, control, and use the purported trade secrets, the "Developed TS/IP." The Complaint alleges that "Plaintiffs" and "Defendants" worked as "partners" to create the "Developed TS/IP," Doc. 1-2 at 23 ¶ 30, and that "Defendants used Developed TS/IP to which they had access because of their relationship with Plaintiffs," *Id.* at 27 ¶ 68. Defendants allegedly restricted Plaintiffs' right of access, use, and distribution of the Developed TS/IP. *See, e.g., id.* at 23 ¶ 30; *id.* at 24, 29–30 ¶¶ 39, 90, 99; *id.* at 27 ¶¶ 68, 75.

Although the Complaint alleges that Defendants improperly "used" the trade secrets to "compete" with Plaintiffs, *id.* at 28 ¶ 75, it does not explain how. The Complaint alleges no factual basis for why such competition, even taken as true, was prohibited. Further, it makes the nonsensical assertion that "Defendants acquired the Developed TS/IP by breaching the NDA," *id.* at 28 ¶ 70. "Breaching the NDA" cannot be tantamount to "acquiring" the trade secrets. Plaintiffs thus fail to allege any "improper means," such as "espionage, theft, bribery, misrepresentation and breach or inducement of a breach of duty to maintain secrecy." Wis. Stat. Ann. § 134.90(1)(a). Even assuming that the Developed TS/IP qualifies as a trade secret or was improperly disclosed, Plaintiffs fail to plausibly allege that Defendants "acquired" it through any improper means, or used or disclosed it after it had been acquired through improper means, or otherwise derived or acquired it unlawfully. *See* Wis. Stat. § 134.90(2).

Further, this claim cannot be maintained in light of Plaintiffs' allegations that Daniel Holland was the majority member of both defendant Paragon and plaintiff Inspired Pursuits, LLC. Doc. 1-2 at 6 ¶ 7. One is legally incapable of "misappropriating" a trade secret that one owns or co-owns and has rights to use. *See Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc*., 299 F. Supp. 2d 565, 577 (E.D. Va. 2004).

The Complaint thus fails to plausibly plead the elements of misappropriation. *Danaher Corp*., 2021 WL 3190389, at *14.

### 6.    Count Six Fails to State a Plausible Claim for Civil Conspiracy.

To state a claim for civil conspiracy under Wis. Stat. Ann. § 134.01, Plaintiffs must allege: "(1) the defendants acted together, (2) with a common purpose to injure the plaintiff's business, (3) with malice, and (4) the acts financially injured the plaintiff." *Medline Indus., Inc. v. Diversey, Inc*., 563 F. Supp. 3d 894, 916–17 (E.D. Wis. 2021) (citation omitted). Plaintiffs fail to plead a plausible claim for conspiracy.

First, the factual allegations of conspiracy by "Defendants" are far too vague to establish a conspiracy. Plaintiffs allege no agreement among or specific conduct by the "Defendants" that constitutes a conspiracy, nor do they state its purpose. A "plaintiff must at least allege the conspiracy in more than conclusory fashion. 'Dick and Jane conspired to commit a wrongful act' will not do." *Boyland Auto Grp. III LLC v. Boyland*, 691 F. Supp. 3d 917, 923 (E.D. Wis. 2023). A "general allegation of conspiracy, without a statement of the facts constituting that conspiracy, is only an allegation of a legal conclusion and is insufficient to constitute a cause of action." *Duncan v. Manning*, 998 F. Supp. 2d 725, 734–35 (E.D. Wis. 2014) (citation omitted).

23

A "complaint based on a theory of collective responsibility must be dismissed. That is true even for allegations of conspiracy." *Bank of Am.*, 725 F.3d at 818.

Second, at most, the Complaint alleges Defendants are profiting by competitively using the Developed TS/IP for themselves, while restricting Plaintiffs' access to the trade-secret software. *See* Doc. 1-2 at 23 ¶ 30; *id.* at 26–27 ¶¶ 60–62; *id.* at 27 ¶ 68; *id.* at 28 ¶ 75; *id.* at 29 ¶ 90; *id.* at 33 ¶ 127. But the "conspiracy cases are replete with statements pointing out that competition that incidentally harms another when the purpose is to improve one's competitive advantage does not run afoul of conspiracy laws if there is not a malicious motive." *Medline*, 563 F. Supp. 3d at 918. The Plaintiffs' conclusory allegations of malice are insufficient to allege that Defendants were doing anything other than promoting their own business activities.

Third, Plaintiffs do not allege how it was unlawful for Defendants to terminate their business relationships with Plaintiffs or to restrict Plaintiffs' access to the software. Doc. 1-2 at 29 ¶¶ 85–92. Nor do they allege any predicate underlying claim. The conspiracy claim is impermissibly vague and implausible.

Fourth, the conspiracy claim is barred by the intra-corporate conspiracy doctrine when it alleges that Paragon's employees and officers conspired with Paragon. *Norkol/Fibercore, Inc. v. Gubb*, 279 F. Supp. 2d 993, 1000 (E.D. Wis. 2003).

> 7.    <u>Count Seven Fails to State a Plausible Claim for Tortious Interference with an Existing Contract</u>.

A claim for tortious interference with a contract has five elements: (1) the plaintiff had a contract or a prospective contractual relationship with a third party; (2) the defendant interfered with the relationship; (3) the interference was intentional; (4) damages resulted; and (5) the defendant was not justified or

privileged to interfere. *Medline*, 563 F. Supp. 3d at 906–07 (Wisconsin law). Plaintiffs fail to plead a plausible interference claim.

First, Plaintiffs allege "Defendants" had an oral contract with "Plaintiffs," but they fail to allege any terms. Doc. 1-2 at 30 ¶ 94. Plaintiffs suggest the "contract" involves exclusively servicing Clearspan's engineering needs, *id.*, but that is far too indefinite to constitute a binding contract. The claim thus lacks "factual content that allows the court to draw the reasonable inference" that Defendants are (or could be) liable for tortious interference. *See Jackson*, 121 F.4th at 1125–26. Second, a party cannot interfere with a contract it is a party to. *Medline*, 563 F. Supp. 3d at 910. Third, even if a 16-year-long oral contract were properly alleged, it would be unenforceable under Wis. Stat. § 241.02(1).

> ### 8.   Count Eight Fails to State a Plausible Claim for Tortious Interference with Prospective Contractual Relations.

Tortious interference with prospective contractual relations has the same elements as count seven. *Medline*, 563 F. Supp. 3d at 906–07 (addressing Wisconsin law). Plaintiffs again fail to plead a plausible claim for tortious interference.

Plaintiffs generally allege that they reasonably expected to enter into prospective contractual relationships in the structural-framing industry by using the Developed TS/IP and Defendants interfered with this by "withholding access and ownership rights to IP-Math." Doc. 1-2 at 30 ¶¶ 98–99. The Complaint fails to individually identify or even describe any of the prospective clients, to say how Defendants' alleged conduct disrupted those prospective relationships, or to describe the nature of Plaintiffs' loss. Nor does the Complaint explain how restricting access to the "IP-Math" was wrongful, when "Defendants" have ownership and control over

the software. This claim is implausible because it lacks "factual content that allows the court to draw the reasonable inference" that Defendants are liable for tortious interference. *See Jackson*, 121 F.4th at 1125–26.

> ### 9. Count Nine Fails to State a Plausible Claim for Tortious Interference with Business Relations.

This tortious-interference claim, *see Medline*, 563 F. Supp. 3d at 906–07 (elements), is implausible because it is entirely conclusory and speculative. Doc. 1-2 at 32 ¶¶ 111–16. Plaintiffs fail to allege a single specific fact about the purported business relationships, Defendants' supposed knowledge of those relationships, or an intent to disrupt them.. *See Jackson*, 121 F.4th at 1125–26. Nor does the Complaint explain how restricting access to the "IP-Math" was wrongful, especially when "Defendants" admittedly co-own and control the software.

> ### 10. Count Ten Fails to State a Plausible Claim for Misappropriation of Confidential Business Information.

This claim consists of three conclusory paragraphs entirely devoid of substance. Doc. 1-2 at 32 ¶¶ 117–19; *See Jackson*, 121 F.4th at 1125–26. It fails to allege what information was misappropriated, how it was misappropriated, or how Plaintiffs were harmed. To the extent the count may be construed as a conversion claim, it similarly fails. A "person is liable for conversion when he or she (1) intentionally controls or takes property belonging to another, (2) without the owner's consent, (3) resulting in serious interference with the owner's rights to possess the property." *Midwestern Helicopter, LLC v. Coolbaugh*, 351 Wis. 2d 211, 217 (Ct. App. 2013). This count alleges no specific facts that might satisfy these elements. To the extent it fails to allege the conversion of tangible property, it further fails to state a

claim. *See Md. Staffing Servs., Inc. v. Manpower, Inc.*, 936 F. Supp. 1494, 1507 (E.D. Wis. 1996); *Lands' End*, 2014 WL 266630, at *3.

  11. <u>Count Eleven Fails to State a Plausible Claim for Unfair Trade Practices</u>.

To state a claim for unfair trade practices under Wis. Stat. Ann. § 100.20, Plaintiffs must articulate  specific "violations of 'orders' issued by [the Wisconsin Department of Agriculture, Trade and Consumer Protection] pursuant to its authority under the statute." *White v. Schwans Consumer Brands Inc*, No. 23-CV-0147-BHL, 2024 WL 1115711, at *2–3 (E.D. Wis. Mar. 14, 2024); *see* Wis. Stat. Ann. § 100.20(5); Doc. 1-2 at 32–33 ¶¶ 120–25. "[N]o private cause of action exists under § 100.20, except for violation of an order issued by the Department under this section." *Emergency One, Inc. v. Waterous Co., Inc.*, 23 F. Supp. 2d 959, 971–72 (E.D. Wis. 1998). Plaintiffs fail to allege violation of any order or regulation from the Wisconsin Department of Agriculture, Trade and Consumer Protection. The claim also fails to explain how restricting access to the software and making public statements about it—which the Complaint never describes—is prohibited by the statute. Plaintiffs fail to plausibly allege any actual "pecuniary loss." Doc. 1-2 at 32–33 ¶¶ 120–25. Nor do they allege anything showing that Defendants in fact compete with Plaintiffs. The claim is impermissibly vague and implausible and should be dismissed.

  12. <u>Count Twelve Fails to State a Plausible Claim for Unfair Competition</u>.

Under Wisconsin law, to state a claim for unfair competition via misappropriation, as alleged here, Plaintiffs must allege: "(1) time, labor, and money were expended in the creation of the thing misappropriated; (2) competition; and (3)

commercial damage to the plaintiff. '[T]he essence of the cause of action in misappropriation is the defendant's use of the plaintiff's product ... in competition with the plaintiff.'" *Fin. Equip. Co., Inc. v. Silva*, No. 10-C-794, 2010 WL 4782786, at *10 (E.D. Wis. Nov. 17, 2010). Plaintiffs allege generally that Defendants unfairly compete by restricting Plaintiffs' access to the IP-Math and IP-LLC Software, which they supposedly co-authored and co-own, and by depriving Plaintiffs of a share of profits from the use and licensing. Doc. 1-2 at 33–34 ¶¶ 126–32. But this does not allege any act of misappropriation. Nor do Plaintiffs allege how a software provider and Plaintiff engineers are in competition. The Court should dismiss the claim.

13.    <u>Count Thirteen's Injunction Request Is Defective</u>.

To obtain a preliminary injunction, Plaintiffs must show that (1) they will suffer irreparable harm; (2) available remedies at law are inadequate; and (3) they have a likelihood of success on the merits of an underlying claim. *Knox v. Shearing*, 637 F. App'x 226, 228 (7th Cir. 2016); *see Platinum Home*, 149 F.3d at 730. First, for all the reasons explained above, Plaintiffs fail to plead any underlying, injunction-supporting cause of action that has any reasonable likelihood of success. The request for an injunction prohibiting the disclosure and modification of software and mandating the restoration of Plaintiffs' access to it is factually unsupported and implausible because all potential underlying claims are factually unsupported and implausible. Doc. 1-2 at 34–35 ¶¶ 133–38. Second, Plaintiffs fail to plead specific, non-conclusory facts indicating that they are about to suffer irreparable harm. The Court should dismiss the first request for an injunction as unsupported and implausible.

14. Count Fourteen's Injunction Request Is Defective.

Plaintiffs' second injunction request is defective for the same reasons the first injunction request is defective, and it too should be dismissed. *See Knox*, 637 F. App'x at 228; Doc. 1-2 at 35–36 ¶¶ 139–43. Moreover, Plaintiffs lack Article III standing to seek the second injunction because they allege only potential harm to public safety, rather than any imminent, irreparable harm to themselves. Plaintiffs do not allege any concrete, particularized injury to them that is either actual or imminent, that is fairly traceable to Defendants, or that a favorable decision would likely redress. *See Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 639 (7th Cir. 2017). The second injunction request is implausible because the requested relief lacks any cognizable legal basis. Requiring Holland and Paragon to hand over a "record of projects" is just a discovery request disguised as a mandatory injunction. Doc. 1-2 at 24 ¶ 143(d). Finally, requiring Paragon not to change the configurations in the IP-LLC Software bears no reasonable relation to any of Plaintiffs' claims for relief. *Id.* ¶ 143(e).

## II.    Conclusion.

The Court should dismiss Plaintiffs' claims with prejudice.

Respectfully submitted this 7th day of April 2025.

**GASS TUREK LLC**
*Counsel for Defendants Paragon Component Systems, LLC and John Holland*

*s/ Tamar B. Kelber*
Tamar B. Kelber, SBN 1101802
kelber@gassturek.com
Joshua S. Greenberg, SBN 1107959
greenberg@gassturek.com
241 North Broadway, Suite 300
Milwaukee, WI 53202
T: 414-223-3300    F: 414-224-6116