# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

---

INSPIRED PURSUITS, LLC,
QUALTIM, INC., CENTER FOR
BUILDING INNOVATION, LLC,
DRJ ENGINEERING, LLC, KIRK
GRUNDAHL, and SUZANNE
GRUNDAHL,

        Plaintiffs,

  V.

PARAGON COMPONENT SYSTEMS, LLC,
JOHN HOLLAND, JAMES HOLLAND,
CLEARSPAN COMPONENTS, LLC,
ANDREW EWIN, DAVID REED, SCOTT
HOELSMA, SETH DUNCAN, MICHAEL
PITTS, AVERY RADMACHER, NATHAN
BIERMEMA, JEREMY BIEREMA, ROB
EASON, and THE ESTATE OF DANIEL
HOLLAND EX REL. SPECIAL
EXECUTOR MARVIN B. SPEED,

        Defendants.

Case No. 3:25-cv-00075-wmc

---

## DEFENDANTS' BRIEF IN OPPOSITION TO MOTION TO REMAND

---

**WRIGHT, CORTESI & GILBREATH**

*Counsel for James Holland, Clearspan
Components, Inc., and Rob Eason*

Stephan R. Wright, TN BPR 031494
swright@wcglegal.com
2030 Hamilton Place Blvd., Suite 240
Chattanooga, TN 37421
T: 423-286-6919

**GASS TUREK LLC**

*Counsel for Defendants Paragon
Component Systems, LLC and
John Holland*

Tamar B. Kelber, SBN 1101802
kelber@gassturek.com
Joshua S. Greenberg, SBN 1107959
greenberg@gassturek.com
241 North Broadway, Suite 300
Milwaukee, WI 53202
T: 414-223-3300

**GEARHISER, PETERS ELLIOTT
& CANNON, PLLC**

*Counsel for Defendants Andrew Ewin,
David Reed, Scott Hoelsema, Seth
Duncan, Michael Pitts, Avery
Radmacher, Nathan Bierema, and
Jeremy Bierema*

Sam D. Elliott, pro hac vice
selliott@gearhiserpeters.com
320 McCallie Avenue
Chattanooga, Tennessee 37402
T: 423-756-5171
F: 423-266-1605

**GRANT, KONVALINKA &
HARRISON, P.C.**

*Counsel for the Estate of Daniel N.
Holland ex rel. Special Executor
Marvin B. Speed*

J. Scott McDearman, TN BPR
012714
smcdearman@gkhpc.com
Republic Centre
633 Chestnut Street, Suite 900
Chattanooga TN, 37450
T: 423-756-8400
F: 423-756-6518

# Table of Contents

Table of Authorities ................................................................................................ ii

Argument ............................................................................................................... 1

    I.   Standards for removal and remand. .................................................... 1

        A.   This case is properly removed under the copyright removal statute, 28 U.S.C. § 1454, rather than the general removal statute, 28 U.S.C. § 1441. ...................................................................................... 1

        B.   The *Harms* test governs whether a claim "arises under" the Copyright Act and thus is properly removable under 28 U.S.C. § 1454(a). ............... 2

        C.   The Complaint need not expressly seek relief under the Copyright Act for removal to be proper. ................................................................ 4

    II.  This action is properly removed under the *Harms* test because most of Plaintiffs' claims require construction of the Copyright Act. ............................ 5

        A.   The Copyright Act protects Paragon's software code. ................................ 5

        B.   Plaintiffs' claims require interpreting and applying the Copyright Act because they hinge on the alleged co-authoring of Paragon's software code through engineering-related consulting services. ............................ 7

            1.   Plaintiffs allege that they co-own Paragon's software because they helped create it. .................................................................................. 7

            2.   Most of Plaintiffs' claims require interpreting and applying the Copyright Act's authorship provisions. ................................................ 10

    III.  This action is properly removed under the *Harms* test because most of Plaintiffs' claims seek a remedy expressly granted by the Copyright Act. .... 16

        A.   Most of Plaintiffs' claims seek a remedy expressly granted by the Copyright Act. ................................................................................ 16

        B.   Most of Plaintiffs' claims are equivalent to claims provided by the Copyright Act and preempted by the Act, which also supports removal. ..................................................................................... 19

    IV.  This case is also removable under the *Harms* test because a distinctive policy of the Copyright Act requires that federal principles control the disposition of a claim. .................................................................................. 21

Conclusion ............................................................................................................ 23

# Table of Authorities

Page(s)

**Cases**

*Ahn v. Midway Mfg. Co.*,
   965 F. Supp. 1134 (N.D. Ill. 1997) .............................................................. 11, 13, 17

*Ambrosetti v. Oregon Catholic Press*,
   458 F. Supp. 3d 1013 (N.D. Ind. 2020) ...................................................... 6

*Ayotte v. Boeing Co.*,
   316 F. Supp. 3d 1066 (N.D. Ill. 2018) ........................................................ 1, 10

*Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*,
   805 F.2d 663 (7th Cir. 1986) ........................................................................ 3, 6, 20

*Barnhart v. Federated Dep't Stores, Inc.*,
   No. 04 CIV. 3668 (JGK), 2005 WL 549712 (S.D.N.Y. Mar. 8, 2005) ................. 5, 14

*Bolssen v. Unum Life Ins. Co. of Am.*,
   629 F. Supp. 2d 878 (E.D. Wis. 2009) ........................................................ 1

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
   489 U.S. 141 (1989) ...................................................................................... 2, 4

*Brooks-Ngwenya v. Indianapolis Pub. Sch.*,
   564 F.3d 804 (7th Cir. 2009) ...................................................................... 2

*Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. KG.*,
   510 F.3d 77 (1st Cir. 2007) .......................................................................... 13, 14

*Citadel Sec., LLC v. Chicago Bd. Options Exch., Inc.*,
   808 F.3d 694 (7th Cir. 2015) ...................................................................... 5

*Cmty. for Creative Non-Violence v. Reid*,
   490 U.S. 730 (1989) ...................................................................................... 22

*Coll. of Charleston Found. v. Ham*,
   585 F. Supp. 2d 737 (D.S.C. 2008) ............................................................ 20

*Curry v. Boeing Co.*,
   542 F. Supp. 3d 804 (N.D. Ill. 2021) .......................................................... 1

*DeCarlo v. Archie Comic Pubs., Inc.*,
   127 F. Supp. 2d 497 (S.D.N.Y. 2001) ...................................................................... 14

*Di Angelo Pubs., Inc. v. Kelley*,
   9 F.4th 256 (5th Cir. 2021) ...................................................................... 14

*Elliott v. Cartagena*,
   No. 19 CIV. 1998 (NRB), 2025 WL 486634 (S.D.N.Y. Feb. 13, 2025)..................... 22

*Estate of Brown v. Arc Music Grp.*,
   830 F. Supp. 2d 501 (N.D. Ill. 2011) ...................................................................... 6

*Foley v. Surbella*,
   No. CIV.A. 2:05-CV-208, 2006 WL 2129818 (S.D. Ohio June 17, 2006).............. 3, 4

*Gaiman v. McFarlane*,
   360 F.3d 644 (7th Cir. 2004) ...................................................................... 6, 14

*gh, LLC v. Curtin*,
   422 F. Supp. 2d 994 (N.D. Ind. 2006) .................................................. 3, 4, 5, 14, 15, 20

*GlobeRanger Corp. v. Software AG*,
   691 F.3d 702 (5th Cir. 2012) ...................................................................... 22

*Google LLC v. Oracle Am., Inc.*,
   593 U.S. 1 (2021) ...................................................................... 12, 15, 20

*Hammer v. United States Dep't of Health & Human Servs.*,
   905 F.3d 517 (7th Cir. 2018) ...................................................................... 2

*Heriot v. Byrne*, No. CIV.A.,
   08 C 2272, 2008 WL 5397496 (N.D. Ill. Dec. 23, 2008) .................................... 16, 18

*Higher Gear Grp., Inc. v. Rockenbach Chevrolet Sales, Inc.*,
   223 F. Supp. 2d 953 (N.D. Ill. 2002) ...................................................................... 6

*I.A.E., Inc. v. Shaver*,
   74 F.3d 768 (7th Cir. 1996) ...................................................................... 2

*Janky v. Lake Cnty. Convention & Visitors Bureau*,
   576 F.3d 356 (7th Cir. 2009) ...................................................................... 11

*Lands' End, Inc. v. Genesys Software Sys., Inc.*,
   No. 13-CV-38-BBC, 2014 WL 266630 (W.D. Wis. Jan. 24, 2014) .......................... 19

*Levy Prod. Grp., LLC v. R&R Partners, Inc.*,
  658 F. Supp. 3d 901 (D. Nev. 2023) ........................................................ 20

*Liu v. Price Waterhouse LLP*,
  302 F.3d 749 (7th Cir. 2002) ................................................................. 20

*Micro Data Base Sys., Inc. v. Nellcor Puritan-Bennett, Inc.*,
  20 F. Supp. 2d 1258 (N.D. Ind. 1998) .................................................... 19

*Ne. Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n, Inc.*,
  707 F.3d 883 (7th Cir. 2013) .............................................................. 4, 5

*NLFC, Inc. v. Devcom Mid-Am., Inc.*,
  45 F.3d 231 (7th Cir. 1995) ....................................................... 6, 13, 14

*Pickett v. Prince*,
  52 F. Supp. 2d 893 (N.D. Ill. 1999) .......................................................... 6

*ProCD, Inc. v. Zeidenberg*,
  86 F.3d 1447 (7th Cir. 1996) .................................................................. 6

*Prominent Consulting LLC v. Allen Bros., Inc.*,
  543 F. Supp. 2d 877 (N.D. Ill. 2008) ........................................................ 3

*PW Stoelting LLC v. Levine*,
  No. 16-C-381, 2017 WL 414211 (E.D. Wis. Jan. 31, 2017) ......................... 3

*Red Apple Media, Inc. v. Batchelor*,
  636 F. Supp. 3d 468 (S.D.N.Y. 2022) ................................................. 3, 20

*Reed Elsevier, Inc. v. Muchnick*,
  559 U.S. 154 (2010) ............................................................................... 6

*Regents of Univ. of Cal. v. Aisen*,
  143 F. Supp. 3d 1055 (S.D. Cal. 2015) .............................................. 1, 21

*Rice v. Panchal*,
  65 F.3d 637 (7th Cir. 1995) ................................................................... 4

*Round to Fit, LLC v. Reimer*,
  380 F. Supp. 3d 830 (S.D. Ind. 2019) ..................................................... 10

*Saenger Org., Inc. v. Nationwide Ins. Licensing Assocs., Inc.*,
  119 F.3d 55 (1st Cir. 1997) .................................................................. 22

iv

*Sears, Roebuck & Co. v. Stiffel Co.*,
376 U.S. 225 (1964) ................................................................ 2

*Seng-Tiong Ho v. Taflove*,
648 F.3d 489 (7th Cir. 2011) ........................................ 3, 15, 16, 21

*Seshadri v. Kasraian*,
130 F.3d 798 (7th Cir. 1997) .................................................... 12

*Severe Records, LLC v. Rich*,
658 F.3d 571 (6th Cir. 2011) .................................................... 14

*Stewart v. Abend*,
495 U.S. 207 (1990) ................................................................ 12

*T. B. Harms Co. v. Eliscu*,
339 F.2d 823 (2d Cir. 1964) ................................................ 3, 4, 21

*Through the Door Inc. v. J.C. Penney Co.*,
No. 06-C-540-S, 2007 WL 2265781 (W.D. Wis. Mar. 28, 2007) ............... 20

*Toney v. L'Oreal USA, Inc.*,
406 F.3d 905 (7th Cir. 2005) .................................................... 16

*Unique Concepts, Inc. v. Manuel*,
930 F.2d 573 (7th Cir. 1991) ..................................................... 2

*Vaughn v. Kelly*,
No. 06 C 6427, 2007 WL 804694 (N.D. Ill. Mar. 13, 2007) ........... 15, 20, 21

*Wallenfang v. Havel*,
707 F. Supp. 2d 800 (E.D. Wis. 2010) ........................... 3, 5, 14, 16, 20, 21

*Warren Freedenfeld Assocs., Inc. v. McTigue*,
531 F.3d 38 (1st Cir. 2008) ...................................................... 6

*Woods v. Resnick*,
725 F. Supp. 2d 809 (W.D. Wis. 2010) ........................................ 6, 11, 14

## Statutes

17 U.S.C. §§ 101, et seq. ........................................................... 2

17 U.S.C. § 101 ................................................................... 6, 11

17 U.S.C. § 102 ................................................................................................ 13, 19

17 U.S.C. § 102(a) .................................................................................................. 6

17 U.S.C. § 103 ..................................................................................................... 19

17 U.S.C. § 106 .................................................... 3, 6, 9, 10, 12, 13, 16, 17, 19

17 U.S.C. § 106(1) ...................................................................................... 17, 18, 20

17 U.S.C. § 106(2) ...................................................................................... 18, 19, 20

17 U.S.C. § 106(3) ...................................................................................... 17, 18, 20

17 U.S.C. § 201(a) .......................................................................................... 7, 11

17 U.S.C. § 201(a)(1) .............................................................................................. 6

17 U.S.C. § 201(b) ................................................................................................. 10

17 U.S.C. § 204(a) ............................................................................................. 7, 9

17 U.S.C. § 301(a) .............................................................................. 3, 5, 19, 21, 22

17 U.S.C. § 408(a) .................................................................................................. 6

17 U.S.C. § 411(a) .................................................................................................. 6

17 U.S.C. § 508 ...................................................................................................... 6

28 U.S.C. § 1441 .................................................................................................... 1

28 U.S.C. § 1338 .................................................................................................... 2

28 U.S.C. § 1338(a) ............................................................................................. 2, 4

28 U.S.C. § 1454 ................................................................................................. 1, 21

28 U.S.C. § 1454(a) ...................................................... 1, 2, 3, 4, 5, 14, 16, 20

**Court Rules**

Fed. R. Civ. P. 10(c) ........................................................................................... 19

## ARGUMENT

All Defendants respectfully oppose Plaintiffs' motion to remand. Doc. 21. Plaintiffs advance substantive claims challenging Defendants' rights under the federal Copyright Act, which they try to mask as contract claims to evade federal jurisdiction. The Court should deny the motion.

## I.     Standards for removal and remand.

Defendants have the burden of establishing removability under 28 U.S.C. § 1454(a). *Ayotte v. Boeing Co.*, 316 F. Supp. 3d 1066, 1071–72 (N.D. Ill. 2018). In deciding the motion to remand, the Court may consider evidence outside the Complaint. *Id.*; *Bolssen v. Unum Life Ins. Co. of Am.*, 629 F. Supp. 2d 878, 882 (E.D. Wis. 2009). As explained below, Defendants have met their burden for removal.

### A.     This case is properly removed under the copyright removal statute, 28 U.S.C. § 1454, rather than the general removal statute, 28 U.S.C. § 1441.

Defendants removed this action from the Circuit Court for Dane County, Wisconsin solely under 28 U.S.C. § 1454. Doc. 1. Section 1454 provides that "[a] civil action in which any party asserts a claim for relief *arising under any Act of Congress relating to* patents, plant variety protection, or *copyrights may be removed* to the district court of the United States for the district and division embracing the place where the action is pending." 28 U.S.C. § 1454(a) (emphasis added). Doc. 1 at 1, 3–4.

28 U.S.C. § 1454(a) was enacted as part of the America Invents Act, and is "intended to provide federal courts ... with a *broader range of jurisdiction*." *Regents of Univ. of Cal. v. Aisen*, 143 F. Supp. 3d 1055, 1061 (S.D. Cal. 2015) (citation omitted) (emphasis added). Thus, the narrow construction given to the general removal statute, 28 U.S.C. § 1441, *see Curry v. Boeing Co.*, 542 F. Supp. 3d 804, 808 (N.D. Ill.

2021), does not apply here. *Hammer v. United States Dep't of Health & Human Servs.*, 905 F.3d 517, 526 (7th Cir. 2018) (The narrow construction of removability "does not extend to cases in which there is a contrary congressional policy favoring removal.").

>    B.    *The* Harms *test governs whether a claim "arises under" the Copyright Act and thus is properly removable under 28 U.S.C. § 1454(a).*

Civil actions that "arise under" the federal Copyright Act, 17 U.S.C. §§ 101, et seq., are properly removed to federal court because, by statute, federal courts have *original* and *exclusive* jurisdiction to decide them:

> The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents, plant variety protection, or copyrights.

28 U.S.C. § 1338(a); *see I.A.E., Inc. v. Shaver*, 74 F.3d 768, 774 n.4 (7th Cir. 1996). "Section 1338 creates [federal] subject-matter jurisdiction in patent, copyright, and trademark cases." *Unique Concepts, Inc. v. Manuel*, 930 F.2d 573, 574 (7th Cir. 1991). And "federal courts have exclusive jurisdiction of copyright cases." *Brooks-Ngwenya v. Indianapolis Pub. Sch.*, 564 F.3d 804, 807 (7th Cir. 2009). To enable federal courts to develop nationally uniform copyright law, Congress prohibits state courts from deciding copyright issues. *See Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 162 (1989); *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 231 n.7 (1964).

To decide whether a civil action "arises under" the Copyright Act, the Seventh Circuit applies a three-alternative analysis, called the *Harms* test. An action "arises under" the Copyright Act if the Complaint:

>    1.    asserts a claim that requires construction of the Copyright Act; or

>    2.    seeks a remedy expressly granted by the Copyright Act; or

3. presents a case where a distinctive policy of the Act requires that federal principles control the disposition of a claim.

*PW Stoelting LLC v. Levine*, No. 16-C-381, 2017 WL 414211, at *1 (E.D. Wis. Jan. 31, 2017); *see Wallenfang v. Havel*, 707 F. Supp. 2d 800, 806–07 (E.D. Wis. 2010); *Prominent Consulting LLC v. Allen Bros., Inc.*, 543 F. Supp. 2d 877, 880 (N.D. Ill. 2008); *gh, LLC v. Curtin*, 422 F. Supp. 2d 994, 996 (N.D. Ind. 2006); *T. B. Harms Co. v. Eliscu*, 339 F.2d 823, 828 (2d Cir. 1964). If a state-court complaint contains even one claim that meets any of these alternatives, federal district courts have exclusive subject-matter jurisdiction over the action, and it is removable under 28 U.S.C. § 1454(a). "[I]t is sufficient that federal question jurisdiction attach to just one claim." *Red Apple Media, Inc. v. Batchelor*, 636 F. Supp. 3d 468, 472 (S.D.N.Y. 2022).

Plaintiffs ignore the *Harms* test, focusing solely on whether their claims are preempted by the Copyright Act. Doc. 21 at 2–3. In fact, Plaintiffs never cite even a single case addressing the applicable removal standards. If accepted, their position would improperly conflate the test for removal with the test for preemption.

Although similar in part, the two tests are distinct. The test for preemption by the Copyright Act asks whether a state-law claim is "equivalent" to the rights afforded under the Copyright Act, 17 U.S.C. § 106, regardless of whether the Act is expressly pleaded. *See* 17 U.S.C. § 301(a); *Seng-Tiong Ho v. Taflove*, 648 F.3d 489, 501 (7th Cir. 2011); *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 674 (7th Cir. 1986). When a state-law claim seeks a remedy expressly granted by the Copyright Act, it can support not only preemption by § 301(a) but also removal under § 1454(a). *See Red Apple*, 636 F. Supp. 3d at 471; *Foley v. Surbella*,

3

No. CIV.A. 2:05-CV-208, 2006 WL 2129818, at *1 (S.D. Ohio June 17, 2006). As explained below, this is so for several of Plaintiffs' claims.

But § 1338(a) and § 1454(a) provide additional, broader bases for removal, which Plaintiffs fail even to address. A state-court case is *also* removable if the complaint "asserts a claim requiring construction of the Act," *or* "seeks a remedy expressly granted by the Copyright Act" (even if the claim is somehow not preempted), *or* public policy undergirding the Act, such as the need for national uniformity, requires federal principles to "control the disposition of the claim." *gh, LLC*, 422 F. Supp. 2d at 996 (quoting *T. B. Harms*, 339 F.2d at 828); *cf. Bonito Boats*, 489 U.S. at 162. Thus, a state-law claim that is not preempted by § 301(a) can still trigger removal under § 1454(a). All three grounds for removal are triggered here.

> ### C.     *The Complaint need not expressly seek relief under the Copyright Act for removal to be proper.*

An action can be properly removed under § 1454(a) and the *Harms* test even when the complaint, as here, pleads only state-law claims and does not expressly seek any relief under the Copyright Act. Despite this, Plaintiffs incorrectly invoke the well-pleaded complaint rule. Doc. 21 at 6. "Ordinarily a court determines whether there is federal question jurisdiction by examining the plaintiff's well-pleaded complaint" to see whether it pleads a claim under federal law. *Rice v. Panchal*, 65 F.3d 637, 639 (7th Cir. 1995). But, "[w]hile plaintiffs are entitled to omit federal claims from their complaints so as to avoid federal jurisdiction, they may not omit necessary federal elements of an included claim." *Ne. Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n, Inc.*, 707 F.3d 883, 890 (7th Cir. 2013), *as amended* (Apr. 29, 2013). "When a plaintiff omits from its pleadings federal questions that are necessary

elements of a claim, courts will read the necessary federal elements into the complaint." *Id*. This is the artful-pleading exception to the well-pleaded-complaint rule. Its purpose is to prevent plaintiffs from avoiding federal jurisdiction by trying to plead around necessary federal issues. And "[i]f a court concludes that a plaintiff has 'artfully pleaded' claims in this fashion, it may uphold removal even though no federal question appears on the face of the plaintiff's complaint." *Citadel Sec., LLC v. Chicago Bd. Options Exch., Inc.*, 808 F.3d 694, 701 (7th Cir. 2015).

This exception applies to the Copyright Act. *See* 17 U.S.C. § 301(a); 28 U.S.C. § 1454(a). A "plaintiff may not overcome federal jurisdiction through 'artful pleading' by attempting to ignore or disguise the fact that his claim is one … requiring construction of the Copyright Act." *Barnhart v. Federated Dep't Stores, Inc.*, No. 04 CIV. 3668 (JGK), 2005 WL 549712, at *4 (S.D.N.Y. Mar. 8, 2005). In *gh, LLC*, for example, the court denied a motion to remand when, like here, the complaint expressly pleaded only state-law claims, doing so because at least one claim required construction of the Copyright Act. 422 F. Supp. 2d at 996.

## II.    This action is properly removed under the *Harms* test because most of Plaintiffs' claims require construction of the Copyright Act.

Federal courts have exclusive jurisdiction over actions that include even one claim requiring interpretation of the Copyright Act. *See Wallenfang*, 707 F. Supp. 2d at 806; *gh, LLC*, 422 F. Supp. 2d at 996. Here, nearly all of Plaintiffs' claims in the Complaint require interpreting and applying the Act and so support removal.

### A.    The Copyright Act protects Paragon's software code.

The Copyright Act "sets forth three conditions for copyrightability: first, a work must be fixed in tangible form; second, the work must be an original work of

authorship; and third, it must come within the subject matter of copyright."
*Baltimore Orioles,* 805 F.2d at 668 (citing 17 U.S.C. § 102(a)). "It is well established
that computer software is fixed in a tangible medium of expression and within the
subject matter of copyright. The legislative history of the Federal Copyright Act
indicates that computer programs are considered copyrightable as literary works."
*Higher Gear Grp., Inc. v. Rockenbach Chevrolet Sales, Inc.*, 223 F. Supp. 2d 953, 957
(N.D. Ill. 2002) (citing *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1453 (7th Cir. 1996));
*see* 17 U.S.C. § 101 (defining "computer program"); 17 U.S.C. § 201(a)(1); *Woods v.
Resnick*, 725 F. Supp. 2d 809, 817 (W.D. Wis. 2010). Thus, "[a]mong the works
protected under § 106 of the Act are computer programs"—including Paragon's
software code. *See NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir.
1995).[1]

---

[1] The Court has questioned whether Paragon's copyright must be registered under 17
U.S.C. § 508. Doc. 18. "Under the Copyright Act, 'registration is not a condition of
copyright protection.' 17 U.S.C. § 408(a). Rather, '[c]opyright inheres in authorship
and exists whether or not the work is ever registered.'" *Pickett v. Prince*, 52 F. Supp.
2d 893, 896 (N.D. Ill. 1999) (citation omitted). There is an exception for copyright-
infringement claims. "Compliance with the registration requirements of 17 U.S.C. §
411(a) is not a condition of copyright protection but is a prerequisite to suing for
infringement." *Ambrosetti v. Oregon Catholic Press*, 458 F. Supp. 3d 1013, 1016 (N.D.
Ind. 2020). But this case does not involve infringement claims. Nor could it: "Under
the Copyright Act, no copyright infringement action lies as between joint owners of
the same copyright." *Warren Freedenfeld Assocs., Inc. v. McTigue*, 531 F.3d 38, 47 (1st
Cir. 2008); *see Gaiman v. McFarlane*, 360 F.3d 644, 652 (7th Cir. 2004). Instead, the
remedies among putative co-owners or co-authors include seeking an accounting of
profits, *Estate of Brown v. Arc Music Grp.*, 830 F. Supp. 2d 501, 515 (N.D. Ill. 2011),
or a declaratory judgment on ownership or authorship, *McTigue*, 531 F.3d at 47 n.5.
Regardless, even when required, registration—or the lack of it—does not affect
subject-matter jurisdiction. *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 169 (2010).

B.      *Plaintiffs' claims require interpreting and applying the Copyright Act because they hinge on the alleged co-authoring of Paragon's software code through engineering-related consulting services.*

Plaintiffs' claims center on the copyright-protected software that Paragon created, owns, and controls, and which Plaintiffs claim to co-own. Plaintiffs' remand motion concedes this: "The impetus of this litigation was Defendant Paragon unilaterally restricting Plaintiffs' access to the software Plaintiffs owned and used as part of a very unique and valuable business model." Doc. 21 at 4–5; *accord id*. at 3–5. The Complaint's gist is that Defendants have wrongly discontinued Plaintiffs' access to co-owned software, are distributing it without their permission, and refuse to share revenue from its licensing. Doc. 1-2 at  23–36 ¶¶ 34–143. But in the absence of a written copyright assignment under 17 U.S.C. § 204(a), as is the case here, Plaintiffs could have such rights in the software only if they meet the Copyright Act's definition of an "author," 17 U.S.C. § 201(a). Their claims thus require the interpretation and application of the Act.

1.      Plaintiffs allege that they co-own Paragon's software because they helped create it.

The Plaintiffs are mostly engineers and engineering companies. Doc. 1-2 at 19–20 ¶¶ 1–6. They seek relief relating to a purported "business model," defined in the Complaint as "Developed TS/IP," that focuses on software code in online applications for the roof and floor truss industry. *Id*. at 18. Plaintiffs allege that Paragon distributes to users a "truss-design calculator," which the Complaint defines as "IP-Math." Doc. 1-2 at 20 ¶ 8. The Complaint defines the software "tool," or application, that uses the IP-Math as the "IP-LLC Software." *Id*. at 18. Plaintiffs allege they have

"use and ownership rights to the IP-Math" and the IP-LLC Software, which they allege Paragon solely possesses and controls. *Id*. at 32 ¶ 114; *see id*. at 29 ¶ 87.

First, Plaintiffs' factual allegations amount to a claim that they co-authored Paragon's software. Plaintiffs suggest they have rights in the software because they provided engineering-related information (alleged "trade secrets") that Paragon embedded in the software when Paragon's employees wrote the code. In other words, Plaintiffs contend that they helped author the software code.

Plaintiffs allege they "invested approximately $23.8 million in *services* and expenses into the Developed TS/IP," which included "partner[ing]" to develop the IP-Math and IP-LLC Software. *See* Doc. 1-2 at 23 ¶ 30 (emphasis added); *id*. at 26 ¶ 60; *id*. at 37 ¶ 144. This included partially creating the IP-Math and IP-LLC Software:

- Plaintiffs "worked together" with Defendants "in a concerted effort to prepare the IP-LLC Software." Doc. 1-2 at 24 ¶ 37;

- Plaintiffs and Defendants shared an employee "whose role was to develop the IP-[LLC] Software and IP-Math," *id*. at 26 ¶ 53;

- Plaintiff Kirk Grundahl partnered in "developing [the] proprietary IP-LLC Software," *id*. at 28 ¶ 69;

- Plaintiffs provided "work product and resources that are embedded in the software," *id*. at 33 ¶ 128;

- Plaintiffs' "interpretation[s] of engineering concepts … are embedded in the software," *id*. at 34 ¶ 134;

- There are "configurations in the IP-LLC Software that use[ ] Plaintiffs' interpretations and calculations of engineering concepts," *id*. at 35 ¶ 138(c); *see id*. at 36 ¶ 143(e);

- The "IP-Math contains creative work" that "requires engineering" and supervision by professional engineers, *id*. at 36 ¶ 141;

- "[C]reative engineered structural component work … took place to create [the] IP-LLC Software," which required "engineering mechanics, physical truss/wall panel testing data, engineering analysis, engineering supervision, professional engineering, and truss plate manufacturing, truss plate testing, truss plate performance and related truss manufacturing knowledge" provided by Plaintiffs, *id.* at 36 ¶ 142;

- Defendants are "withholding access and ownership rights to the IP-Math," *id.* at 30 ¶ 99; and

- Defendants "terminat[ed] Plaintiff's use and ownership rights to the IP-Math," *id.* at 32 ¶ 114.

Plaintiffs thus effectively allege that they have rights in the Paragon software as co-authors and seek related relief of the kind provided by the Copyright Act. *See* 17 U.S.C. § 106.

Second, Plaintiffs fail to provide cognizable, plausible facts to support their argument that "this is a contracts case" that falls "outside the confines of the Copyright Act." Doc. 21 at 3–4. The Complaint vaguely alludes to "contracts and agreements" and "prior agreements" between "Plaintiffs" and an unspecified Defendant, Doc. 1-2 at 23 ¶ 33; *id.* at 25 ¶ 48, 51, that purportedly give Plaintiffs rights in Paragon's software code. But the Complaint attaches no such contract. See 17 U.S.C. § 204(a). It never alleges any terms of such a contract. It does not say when or how such a contract supposedly arose. Nor does it quote or even describe what provisions were purportedly breached.

This is because no such contract exists. "Paragon alone … owns all its intellectual property and trade secrets, including without limitation the Paragon Truss Software. Paragon has never transferred, assigned, or sold any of its intellectual property or trade secrets, including without limitation the Paragon Truss

Software, to any of the [Plaintiffs] in this lawsuit." Ex. A, John Holland Decl. (Doc. 51-1, W.D. Wis. Case No. 25-cv-170), ¶ 24; *see id*. ¶ 7; *see also Ayotte*, 316 F. Supp. 3d 1066, 1072 (in considering a motion to remand, courts may consider "summary judgment-type evidence such as affidavits and deposition testimony," provided they do not use this evidence "to 'pre-try' the case").

To the extent Plaintiffs suggest Paragon's software is a collective work or compilation, they raise a question of copyright authorship that itself requires construction of the Copyright Act and so properly requires removal. *See Round to Fit, LLC v. Reimer*, 380 F. Supp. 3d 830, 837–38 (S.D. Ind. 2019). And to the extent a purported contribution might be construed as a work made for hire, Plaintiffs' ownership contentions would be barred by the Copyright Act:

> In the case of a work made for hire, the employer or other person for whom the work was prepared [i.e., Paragon] is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright.

*See* 17 U.S.C. § 201(b).

Because Plaintiffs have not introduced any contract, they can claim copyright-law rights in Paragon's copyright-protected software—such as the rights of access, use, distribution and profit-sharing from licensing, *see* 17 U.S.C. § 106—only if Plaintiffs' engineering-related consulting services constituted jointly "authoring" the software, as defined by the Copyright Act.

2.    Most of Plaintiffs' claims require interpreting and applying the Copyright Act's authorship provisions.

"Copyright in a work protected under [the Copyright Act] vests initially in the author or authors of the work. The authors of a joint work are coowners of copyright

10

in the work." 17 U.S.C. § 201(a). "Under federal copyright law, if a work is considered 'joint[,]' the joint authors hold undivided interests in the work. Each author, as a co-owner, has the right to use or to license the use of the work, subject to an accounting to the other co-owners for any profits." *Ahn v. Midway Mfg. Co.*, 965 F. Supp. 1134, 1138 (N.D. Ill. 1997). And a joint work is one "prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101.

Federal principles govern deciding whether a party has jointly authored software. "Merely because two people collaborate to create a work does not make them 'joint authors.' … [P]ublished creations are almost always collaborative efforts to some degree—peers make suggestions, editors tweak words, and so forth." *Woods*, 725 F. Supp. 2d at 819 (quoting *Janky v. Lake Cnty. Convention & Visitors Bureau*, 576 F.3d 356, 363 (7th Cir. 2009)). "To establish that [its] contributions were significant enough to make [it] a joint author, a party must show that [it] and the other party 1) intended to create a joint work; and 2) each contributed independently copyrightable material.'" *Id.* And "[t]o qualify as an author of the computer program, [the party] must have translated [its] ideas into a fixed, tangible expression entitled to copyright protection." *Id.*

In this case, the Court must decide whether Plaintiffs' engineering-related consulting services are sufficient to constitute co-authorship, a necessary predicate to most their claims. Plaintiffs allege they "worked together" with Defendants "in a concerted effort to prepare the IP-LLC Software." Doc. 1-2 at 24 ¶ 37. They say they provided "work product and resources," including "interpretation[s] of engineering

11

concepts," that are "embedded in the software," *id*. at 33–34 ¶¶ 128, 134. The "IP-Math contains creative work," Plaintiffs allege, that "requires engineering" and supervision by professional engineers, *id*. at 36 ¶ 141. They allege that there are "configurations in the IP-LLC Software that use[ ] Plaintiffs' interpretations and calculations of engineering concepts," *id*. at 35 ¶ 138(c); *see id*. at 36 ¶ 143(e). Plaintiffs complain that Defendants are wrongfully "withholding access and ownership rights to the IP-Math," *id*. at 30 ¶ 99, and are refusing to share profits from distribution of the software, *id*. at 25 ¶¶ 45–49.

The remedies Plaintiffs seek are the kinds of remedies—rights of access, use, attribution, distribution, transmittal, publishing (or *not* publishing), further development, sharing profits from licensing, and other rights—afforded exclusively to owners of copyrights by the Copyright Act. *See* 28 U.S.C. § 106; *Stewart v. Abend*, 495 U.S. 207, 220 (1990) (describing bundle of rights); *Seshadri v. Kasraian*, 130 F.3d 798, 805 (7th Cir. 1997) (similar). "Like other protected works, … the owners of computer programs enjoy the exclusive rights set forth in the Act, including the right to 'reproduce [a] copyrighted work' or to 'prepare derivative works.'" *Google LLC v. Oracle Am., Inc*., 593 U.S. 1, 23 (2021) (quoting 17 U.S.C. § 106).

Here, it looks, feels, and sounds like Plaintiffs seek copyright remedies relating to Paragon's software because they co-authored it. *See* Doc. 1-12 at 23 ¶¶ 27–33 ("Factual Allegations Common to All Causes of Action"). This disputed copyright-authorship allegation—inherent in nearly all their claims—unavoidably requires interpreting and applying the Copyright Act. *Id*. at 25–36 (counts two, four through six, and eight through fourteen). In counts two through four, for example, Plaintiffs

seek compensation—a "share" of Defendants' "profits" from selling use of the software—on the ground that Plaintiffs "invested $23.8 million in services" in helping develop it. *Id.* at 23–27 ¶¶ 45–65. And count five, for example, seeks the same remedy when it alleges that Defendants have been unjustly enriched by "misappropriating" Plaintiffs' "trade secrets" allegedly embedded in the software. These claims all depend on the allegation that Plaintiffs have implied rights in the software because they supposedly helped author it. "[U]nder a long line of federal cases, [each Plaintiff] must first establish that it is a co-owner, and the answer to that lies in the application of the Copyright Act" concerning authorship. *See Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. KG.*, 510 F.3d 77, 87 (1st Cir. 2007).

Plaintiffs try to evade authorship questions under the Copyright Act by suggesting that they provided pre-existing proprietary information, which Paragon then incorporated and embedded in the software code. Doc. 21 at 5. But if Plaintiffs' pre-existing information is embedded in the software code, it still raises the question whether that information independently has the originality necessary to warrant protection under the Act. *See* 17 U.S.C. § 102. A "collaborative contribution will not produce a joint work, and a contribution will not obtain a co-ownership interest, unless the contribution represents original expression that could stand on its own as the subject matter of copyright." *Ahn*, 965 F. Supp. at 1139 (citation omitted). If the provided information forms part of the code, as Plaintiffs allege, then the question also arises whether the rights Plaintiffs assert—concerning the "loss of use and control"—are governed by 17 U.S.C. § 106. These and other necessary questions themselves require interpretation of the Act, and so require removal. *Cf. NLFC*, 45

13

F.3d at 234 (discussing relationship of software code to the Act); *Woods*, 725 F. Supp. 2d at 818–22 (similar).

Under the artful-pleading exception, the Complaint need not expressly refer to "authorship" or the "Copyright Act" for it to require interpretation of the Copyright Act. *gh, LLC*, 422 F. Supp. 2d at 996; *Barnhart*, 2005 WL 549712, at *4; *see, e.g.*, *DeCarlo v. Archie Comic Pubs., Inc.*, 127 F. Supp. 2d 497, 502–06 (S.D.N.Y. 2001) (denying motion to remand because, despite plaintiff's "artful pleading," claim required construction of Copyright Act), *aff'd*, 11 F. App'x 26 (2d Cir. 2001). The Court should conclude that nearly all of Plaintiffs' claims substantially "arise under" the Copyright Act, thus making this case properly removable under § 1454(a). *Wallenfang*, 707 F. Supp. 2d at 806–07; *gh, LLC*, 422 F. Supp. 2d at 996.

Numerous courts, including the Seventh Circuit, agree that disputed claims of copyright authorship render a case properly removable to federal court. *See, e.g., Di Angelo Pubs., Inc. v. Kelley*, 9 F.4th 256, 260 (5th Cir. 2021) ("[C]laims of copyright ownership grounded in authorship touch on federal concerns."); *Severe Records, LLC v. Rich*, 658 F.3d 571, 582 (6th Cir. 2011) (adopting the "'prevailing view that disputed claims about whether there is co-authorship require[s] application of the Copyright Act[,]' which is a dispute properly adjudicated in federal court"); *Cambridge Literary Props.*, 510 F.3d at 86 ("[A] determination of copyright ownership based on a disputed allegation of co-authorship presents a federal question that arises under, and must be determined according to, the Copyright Act."); *Gaiman*, 360 F.3d at 652–53 (disputed question of authorship "cannot be answered without reference to the

Copyright Act, and it therefore arises under the Act"); *gh, LLC*, 422 F. Supp. 2d at 995–98.

The propriety of removal is further buttressed by Paragon's earlier-filed declaratory judgment action.[2] Plaintiffs' Complaint expressly references this prior action and obviously tries to plead around it, and federal copyright jurisdiction, in an attempt to stay in state court—even though both actions plainly arise from the same controversy. Doc. 1-2 at 18–19. Paragon's complaint seeks, among other things, a declaration that it solely authored and thus solely owns its software code. Doc. 1-3 at 9–17 ¶¶ 21–75. Authorship is a core question in both cases, an issue that only this Court has jurisdiction to resolve.

Moreover, the Copyright Act applies here even if Plaintiffs provided *noncopyrightable* information to Paragon for inclusion in its software, seeking relief concerning only that information. To protect the Copyright Act's exclusivity as federal law, and to preserve uniform national law concerning it, federal courts have denied remand even when a party has sought relief regarding noncopyrightable information alleged that is embedded in a copyright-protected work. *See, e.g., Vaughn v. Kelly*, No. 06 C 6427, 2007 WL 804694, at *3 (N.D. Ill. Mar. 13, 2007). "[W]hen rights are asserted in uncopyrighted expressions in a copyrighted work, the Copyright Act still can preempt state law," and so support removal. *See Seng-Tiong Ho*, 648 F.3d at 501 n.9 (citation omitted). "'[S]tate laws that intrude on the domain of copyright are

---

[2] Paragon's first-filed declaratory judgment action was transferred on personal-jurisdiction grounds from the Eastern District of Tennessee to the Western District of Wisconsin, where it is pending as *Paragon Component Systems, LLC v. Qualtim, Inc., et al.,* Case No. 3:25-cv-00170-wmc.

preempted even if the particular expression [at issue] is neither copyrighted nor copyrightable.'" *Id*. at 501 (quoting *Toney v. L'Oreal USA, Inc*., 406 F.3d 905, 911 (7th Cir. 2005)).

This is because, "[i]n the Copyright Act, Congress sought to ensure that a state will not provide 'copyright-like protections in materials' that should remain uncopyrighted or uncopyrightable." *Id*. at 501 (quoting *Toney*, 406 F.3d at 911). Federal courts alone thus may address the relief Plaintiffs seek, even to the extent it concerns noncopyrightable information embedded in a copyright-protected work.

## III. This action is properly removed under the *Harms* test because most of Plaintiffs' claims seek a remedy expressly granted by the Copyright Act.

In addition to cases requiring interpretation of the Copyright Act, *supra,* removal is proper under § 1454(a) when even a single claim in Plaintiffs' Complaint seeks a remedy expressly granted by the Act. *See Wallenfang*, 707 F. Supp. 2d at 806–07; *gh, LLC*, 422 F. Supp. 2d at 996. "The exclusive rights set forth in the [Copyright Act] include the right to reproduce the copyrighted work, prepare derivative works, distribute copies of the work, perform the work publicly, and display the work publicly. 17 U.S.C. § 106." *Heriot v. Byrne*, No. CIV.A. 08 C 2272, 2008 WL 5397496, at *3 (N.D. Ill. Dec. 23, 2008). As further explained in Paragon's brief in support of its motion to dismiss, most of Plaintiffs' claims seek such remedies.

### A. Most of Plaintiffs' claims seek a remedy expressly granted by the Copyright Act.

First, several of Plaintiffs' claims effectively seek to recover a share of Paragon's profits from its unilateral use, reproduction, and distribution, for profit, of its copyright-protected software to third persons in the truss industry—a right

16

expressly granted by the Copyright Act. As the owner of the software's copyright by having authored it, Paragon has the rights "to reproduce the copyrighted work" and "to distribute copies … of the copyrighted work to the public by sale … or by rental, lease, or lending." 17 U.S.C. § 106(1), (3). "Each author, as a co-owner, has the right to use or to license the use of the work, subject to an accounting to the other co-owners for any profits." *Ahn*, 965 F. Supp. at 1138.[3]

Plaintiffs contend that because they jointly authored the software, they are wrongfully being excluded from their right to access, use, reproduce, and distribute the software for profit (i.e., license it to third persons in the truss industry for a fee). *See* Doc. 1-2 at 27 ¶¶ 60–63 (alleging Defendants are unjustly profiting from Plaintiffs' information embedded in the software); *id.* at 28 ¶¶ 76–77 (alleging Defendants are unjustly profiting from Plaintiffs' "trade secrets" embedded in the software); *id.* at 29 ¶ 90 (alleging Defendants have wrongfully discontinued Plaintiffs' "access to the software"); *id.* at 30 ¶ 99 (alleging Defendants are wrongfully "withholding [Plaintiffs'] access and ownership rights" to the software); *id.* at 32 ¶¶

---

[3] "Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following: (1) to reproduce the copyrighted work in copies or phonorecords; (2) to prepare derivative works based upon the copyrighted work; (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending; (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly; (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and (6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission." 17 U.S.C. § 106.

117–19 (alleging Defendants are unjustly profiting from Plaintiffs' confidential and proprietary information embedded in the software); *id.* at 32 ¶ 114 (alleging Defendants are wrongfully "terminating Plaintiffs' use and ownership rights" to the software); *id.* at 33 ¶ 121 (alleging Defendants are "improperly restrict[ing] Plaintiffs' access" to the software); *id.* at 33–34 ¶¶ 126–28 (alleging Defendants are unjustly profiting and competing by using "Plaintiffs' work product and resources that are embedded in the software").[4]

In effect, throughout the Complaint, Plaintiffs allege they are being financially harmed because Defendants are depriving them of their rights, as co-authors, to access the software and to profit from distributing it to third persons in the truss industry for a fee. These are rights expressly granted by the Copyright Act. *See* 17 U.S.C. § 106(1), (3). Further, because Plaintiffs' claims hinge on alleged co-authorship, their "purported right to an accounting and reimbursement of unjustly retained profits from [Paragon's distribution of the software to third persons] are equivalent to rights already protected by federal copyright law." *See Heriot*, 2008 WL 5397496, at *3.

Second, Plaintiffs seek injunctive relief based on rights expressly granted by the Copyright Act. They seek to enjoin Defendants from "remov[ing] configurations" in the software "that uses Plaintiffs' interpretations and calculations of engineering concepts." Doc. 1-2 at 35 ¶ 138(c); id. at 36 ¶ 143(e). This, in effect, seeks to enjoin Defendants from "prepar[ing] derivative works based upon the copyrighted work"—

---

[4] Each of these claims incorporates by reference the allegations regarding the software that are common to all counts. *See* Doc. 1-2 at 23 27–33.

another right expressly granted by the Copyright Act. 17 U.S.C. § 106(2). The Court

cannot enter an injunction without considering the likelihood of Plaintiffs' success on

the merits of their authorship contention, which implicates the Copyright Act. And

by seeking to enjoin Defendants from further using or distributing the software,

which is said to include information from Plaintiffs, *see* Doc. 1-2 at 34–35 ¶¶ 135–38,

Plaintiffs request a remedy provided exclusively by the Act.

B.    *Most of Plaintiffs' claims are equivalent to claims provided by the Copyright Act and preempted by the Act, which also supports removal.*

As explained in the Defendants' briefs in support of their motions to dismiss,

whose preemption arguments are fully incorporated by reference here, *see* Fed. R.

Civ. P. 10(c), most of Plaintiffs' state-law claims are preempted by the Copyright Act

because they are equivalent to claims under the Act.

"The Copyright Act preempts 'all legal and equitable rights that are equivalent

to any of the exclusive rights within the general scope of copyright as specified by

section 106' and are 'in a tangible medium of expression and come within the subject

matter of copyright as specified by sections 102 and 103.'" *Lands' End, Inc. v. Genesys

Software Sys., Inc.*, No. 13-CV-38-BBC, 2014 WL 266630, at *3 (W.D. Wis. Jan. 24,

2014) (quoting 17 U.S.C. § 301(a)). The Seventh Circuit uses a two-part test to

determine if the Copyright Act preempts a state-law right of action: "First, the work

in which the right is asserted must be fixed in tangible form and come within the

subject matter of copyright as specified in [17 U.S.C.] § 102. Second, the right must

be equivalent to any of the rights specified in § 106." *Micro Data Base Sys., Inc. v.

Nellcor Puritan-Bennett, Inc.*, 20 F. Supp. 2d 1258, 1261 (N.D. Ind. 1998) (quoting

*Baltimore Orioles*, 805 F.2d at 674; *see Seng-Tiong Ho*, 648 F.3d at 500; *Levy Prod. Grp., LLC v. R&R Partners, Inc.*, 658 F. Supp. 3d 901, 909–10 (D. Nev. 2023).

A state-law claim is equivalent when the allegations support a claim under the Copyright Act without additional requirements. *See Through the Door Inc. v. J.C. Penney Co.*, No. 06-C-540-S, 2007 WL 2265781, at *2 (W.D. Wis. Mar. 28, 2007). For example, the right to access or use copyright-protected software, to reproduce or distribute it, to prepare derivative software, or to profit from licensing the software to third persons are rights exclusively available under, and governed by, the Copyright Act. *See* 17 U.S.C. § 106(1)–(3); *Google*, 141 S. Ct. at 1199; *Liu v. Price Waterhouse LLP*, 302 F.3d 749, 754 (7th Cir. 2002). Counts two, four, five, six, and eight through fourteen are equivalent to enforcing rights granted exclusively by the Copyright Act and are thus preempted by the Act. This is so regardless of whether Plaintiffs have expressly pleaded rights under the Act.

For all the same reasons that Plaintiffs' claims are preempted by the Copyright Act, Plaintiffs' Complaint seeks one or more remedies expressly granted by the Act. *See Wallenfang*, 707 F. Supp. 2d at 806–07; *gh, LLC*, 422 F. Supp. 2d at 996. Were the Court to agree as to even a single claim, then it must hold that this entire action is properly removable under § 1454(a). *See, e.g., Levy Prod. Grp.*, 658 F. Supp. 3d at 905–12 (denying motion to remand state-law claims, which did not expressly plead the Act, because they were the equivalent of claims under the Act); *Red Apple*, 636 F. Supp. 3d at 471–75 (similar); *Coll. of Charleston Found. v. Ham*, 585 F. Supp. 2d 737, 741–49 (D.S.C. 2008) (similar); *Vaughn*, 2007 WL 804694, at *1–5 (similar).

Moreover, even when, as here, a plaintiff asserts a state-law claim that seeks relief concerning the incorporation of uncopyrightable information into a copyright-protected work, such as software, the claim remains preempted because, in such event, "the Copyright Act's 'preemptive reach ... encompasses state law claims concerning uncopyrightable material." *Vaughn*, 2007 WL 804694, at *3 (citation omitted). To hold otherwise would potentially, and improperly, permit state courts to craft copyright-like protections for noncopyrightable information. *Seng-Tiong Ho*, 648 F.3d at 501 & n.9. This is forbidden by the Copyright Act's exclusivity as federal law. "[N]o person is entitled to any such right or equivalent right in any such work [protected by the Copyright Act] under the common law or statutes of any State." 17 U.S.C. § 301(a).

## IV. This case is also removable under the *Harms* test because a distinctive policy of the Copyright Act requires that federal principles control the disposition of a claim.

A third basis for removal arises when a distinctive policy of the Copyright Act requires that federal principles control the disposition of a claim. *See Wallenfang*, 707 F. Supp. 2d at 806–07; *gh, LLC*, 422 F. Supp. 2d at 996; *T. B. Harms Co.*, 339 F.2d at 828. Three federal policies support removal here.

First, Congress's purpose in enacting 28 U.S.C. § 1454 was to ensure that federal courts have broad jurisdiction to decide disputes that implicate the Copyright Act. "The [America Invents Act] … added § 1454, a new removal provision ... intended to provide federal courts ... with a broader range of jurisdiction." *Regents of Univ. of Cal.*, 143 F. Supp. 3d at 1061 (citation omitted).

21

Second, broadening federal courts' jurisdiction to decide issues relating to the Copyright Act supports one of the Act's fundamental public policies: "One of the goals of the Copyright Act of 1976 was to create a 'national, uniform copyright law by broadly pre-empting state statutory and common-law copyright regulation.' Accordingly, Congress expressly designed a statutory framework of federal copyright preemption in section 301 of the Copyright Act." *See* 17 U.S.C. § 301(a)." *Elliott v. Cartagena*, No. 19 CIV. 1998 (NRB), 2025 WL 486634, at *12 (S.D.N.Y. Feb. 13, 2025) (quoting *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 740 (1989)).

Third, accordingly, "district courts must be alert to artful pleading intended to bypass copyright preemption." *GlobeRanger Corp. v. Software AG*, 691 F.3d 702, 708 (5th Cir. 2012). If plaintiffs could bypass both federal jurisdiction over copyright issues as well as federal preemption simply by avoiding using copyright terminology, as Plaintiffs attempt here, "then the presumptions created under the Copyright Act would be substantially, if not, totally undermined." *See Saenger Org., Inc. v. Nationwide Ins. Licensing Assocs., Inc.*, 119 F.3d 55, 64 n.2 (1st Cir. 1997).

As explained in Defendants' briefs in support of their motions to dismiss, Plaintiffs' Complaint, Doc. 1-2, commits the sin of vague, shotgun, puzzle pleading that is obviously intended to plead around the federal issues—including authorship under the Copyright Act—posed by Paragon's separate, earlier-filed declaratory judgment action. *See* Doc. 1-3. Before filing their state-court complaint, Plaintiffs made multiple failed attempts to assert their state-law claims in federal court. *See Inspired Pursuits, LLC, et al., v. Paragon Component Systems, LLC, et al.*, Case No. 3:24-cv-00745, Doc. 1 (complaint), Doc. 5 (first amended complaint), Doc. 8 (second

amended complaint); *see also* Doc. 7 (jurisdictional order); Doc. 12 (similar). They finally sought unconditional voluntary dismissal by representing to the court that "Plaintiffs will file for appropriate relief at the U.S. Eastern District Court of Tennessee in relation to case number 1:24-CV-00246-CEA-CHS" (subsequently transferred to this District). Doc. 15. Instead of following through, Plaintiffs re-filed their claims in Wisconsin state court. Doc. 1-2.

Yet one thing is clear: Plaintiffs' allegations and claims revolve around Copyright Act rights in Paragon's software. Consistent with the established federal policies of maintaining broad federal jurisdiction over copyright issues and nationally uniform, federal law relating to the Copyright Act, the Court should construe uncertainties in favor of removal and conclude that removal is proper here.

## CONCLUSION

Plaintiffs' claims are factually rooted in their alleged co-authorship of Paragon's copyrighted software. They seek remedies afforded exclusively by the Copyright Act. The Court should deny the motion to remand.

Respectfully submitted this 7th day of April 2025.

**GASS TUREK LLC**

*Counsel for Defendants Paragon Component Systems, LLC and John Holland*

<u>*s/ Tamar B. Kelber*</u>
Tamar B. Kelber, SBN 1101802
kelber@gassturek.com
Joshua S. Greenberg, SBN 1107959
greenberg@gassturek.com
241 North Broadway, Suite 300
Milwaukee, WI 53202
T: 414-223-3300
F: 414-224-6116

23

**GEARHISER, PETERS ELLIOTT & CANNON, PLLC**

*Counsel for Defendants Andrew Ewin, David Reed, Scott Hoelsema, Seth Duncan, Michael Pitts, Avery Radmacher, Nathan Bierema, and Jeremy Bierema*

*s/ Sam D. Elliott, pro hac vice applied for*
Sam D. Elliott, TN BPR 009431
selliott@gearhiserpeters.com
320 McCallie Avenue
Chattanooga, Tennessee 37402
T: 423-756-5171
F: 423-266-1605


**WRIGHT, CORTESI & GILBREATH**

*Counsel for James Holland, Clearspan Components, Inc., and Rob Eason*

*s/ Stephan R. Wright*
Stephan R. Wright, TN BPR 031494
swright@wcglegal.com
2030 Hamilton Place Blvd., Suite 240
Chattanooga, TN 37421
T: 423-286-6919


**GRANT, KONVALINKA & HARRISON, P.C.**

*Counsel for the Estate of Daniel N. Holland ex rel. Special Executor Marvin B. Speed*

*s/ J. Scott McDearman*
J. Scott McDearman, TN BPR 012714
smcdearman@gkhpc.com
Republic Centre
633 Chestnut Street, Suite 900
Chattanooga TN, 37450
T: 423-756-8400
F: 423-756-6518

24