IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

INSPIRED PURSUITS, LLC, QUALTIM, INC.,
CENTER FOR BUILDING INNOVATION, LLC,
DRJ ENGINEERING, LLC, KIRK GRUNDAHL,
and SUZANNE GRUNDAHL,

        Plaintiffs,

V.

PARAGON COMPONENT SYSTEMS, LLC,
JOHN HOLLAND, JAMES HOLLAND,
CLEARSPAN COMPONENTS, LLC, ANDREW
EWIN, DAVID REED, SCOTT HOELSMA,
SETH DUNCAN, MICHAEL PITTS, AVERY
RADMACHER, NATHAN BIEREMA, JEREMY
BIEREMA, ROB EASON, and THE ESTATE OF
DANIEL HOLLAND EX REL. SPECIAL
EXECUTOR MARVIN B. SPEED,

        Defendants.

Case No. 3:25-cv-00075-wmc

**BRIEF IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT BY
DEFENDANTS EWIN, REED, HOELSMA, DUNCAN, PITTS, RADMACHER,
JEREMY BIEREMA AND NATHAN BIEREMA**

      This is an action originally filed in Wisconsin state court and removed to this Court on Federal question grounds. On April 8, 2024, all Defendants, including Defendants Radmacher, Ewin, Reed, Jeremy Bierema, Pitts, Nathan Bierema, Duncan and Hoelsma filed a motion to dismiss (Doc. 28), invoking Federal Rules of Civil Procedure 8, 12(b)(2), 12(b)(6), and 41(b). On April 25, 2025, doubtlessly seeking to cure deficiencies in the original Complaint, Plaintiffs filed an Amended Complaint (Doc. 39), mooting the previous motion to dismiss (Doc. 48). This Motion to Dismiss, also premised upon Federal Rules of Civil Procedure 8, 12(b)(2), 12(b)(6),

1

and 41(b), seeks the dismissal of the Amended Complaint as to Defendants Radmacher, Ewin, Reed, Jeremy Bierema, Pitts, Nathan Bierema, Duncan and Hoelsema, referred collectively, for the Court's convenience, as they are in the Amended Complaint, as the "Paragon Employees."[1]

In addition to the grounds stated below, pursuant to Rule 10 (c), Federal Rules of Civil Procedure, Defendants Radmacher, Ewin, Reed, Jeremy Bierema, Pitts, Nathan Bierema, Duncan and Hoelsema adopt and incorporate herein all applicable grounds for dismissal pursuant to Rules 8, 12(b)(6) and 41(b) stated by Defendants Paragon Component Systems, LLC and John Holland in support of their motion to dismiss, as well as the other named defendants.

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." **Kluender v. Oak Grove Assisted Care, LLC**, 2023 U.S. Dist. LEXIS 199707, at *2 (W.D. Wis. Nov. 6, 2023), citing **McReynolds v. Merrill Lynch & Co**., 694 F.3d 873, 878 (7th Cir. 2012). "When reviewing a motion to dismiss under Rule 12(b)(6), the court must 'accept all well-pleaded facts from the [complaint] as true and view them in the light most favorable to the plaintiff.'" **Oblitas v. Cty. of Dane**, 2025 U.S. Dist. LEXIS 22497, at *8 (W.D. Wis. Feb. 6, 2025).

Paragon Employees would show the Court as follows. They are present or former employees of Paragon Component Systems, LLC, a Tennessee limited liability company with its principal place of business in Chattanooga. (Am. Complaint, ¶¶ 8, 13-20). Paragon itself is alleged in ¶ 8 to be "in the business of providing electronic data processing, mathematical equations and truss-design calculator ('IP-Math')". Other defendants are Clearspan Components, LLC (alleged in ¶ 10 to be a manufacturer of trusses and wall panels in

---

[1] In previous filings, the group was collectively termed the "Employee Defendants." As with the previous motion to dismiss, pursuant to Rule 10(c), Fed. R. Civ. P., the Paragon Employee defendants adopt the applicable arguments made (or to be made) by Paragon and John Holland in their motion to dismiss.

2

Mississippi), Eason (alleged in ¶ 11 to be President of Clearspan), James Holland (alleged in ¶ 12 to be an employee of Clearspan), John Holland (alleged in ¶ 9 to be President of Paragon), and Marvin Speed, special independent executor for Daniel Holland, deceased, who is alleged to have had an interest in both Paragon and Clearspan (¶¶ 6, 7).

A review of the Amended Complaint reveals that the Paragon Employees have obviously been made parties as a nuisance to Paragon. The introductory paragraph of the Amended Complaint states:

> The core of this case is a business model ("Developed TS/IP") that was not fully executed dure to a number of civil violations that will be enumerated below. The Developed TS/IP was not fully deployed because one of the individual partners unexpectedly passed away several weeks prior to market launch. The remaining Defendant partners breached the partnership through their non-performance and repudiation. ***This case is about enforcing the joint venture between remaining parties***.

Am. Comp. (Doc. 39:1)(emphasis provided).

Of the twelve "substantive" causes of action in the Amended Complaint, seven allege conduct by the Paragon Employees (along with that of some or all of the other Defendants) relating to this alleged joint venture to which they are not parties. Recently, in ***Taylor v. The Salvation Army Nat. Corp***, 110 F.4th 1017, 1028-1029 (7th Cir. 2024), the Seventh Circuit stated:

> A claim for relief must be plausible; it cannot be merely conceivable or speculative. See ***Ashcroft v. Iqbal***, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); ***Bell Atl. Co. v. Twombly***, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). This principle does not, and under the structures of Rule 8 cannot, present a high barrier to the pleader. Rather, it sets forth a practical requirement specifically attuned to the early stage of litigation that it governs. Its requirement is straightforward: The plaintiff must "present a story that holds together." ***Swanson v. Citibank, N.A.***, 614 F.3d 400, 404 (7th Cir. 2010). The complaint must include sufficient details to make the plaintiffs' account one that could have happened and, if it did happen, states a claim cognizable under the governing law. ***Runnion v. Girl Scouts of Greater Chi.***, 786 F.3d 510, 526 (7th Cir. 2015); see also ***Carlson v. CSX Transp., Inc.***, 758 F.3d 819, 826 (7th Cir. 2014). As the Supreme Court put it in

*Twombly*, the complaint must show "enough heft" to demonstrate that, if the allegations prove to be true, the pleader is entitled to relief. 550 U.S. at 557.

Applying this standard, as discussed below, the Amended Complaint is fatally deficient as to the Paragon Employees.

> I.   The First Cause of Action in the Amended Complaint does not adequately allege a breach of the NDAs by the Paragon Employees

The Amended Complaint recites that five entities were to each "execute" the Developed TS/IP business model: Inspired Pursuits (¶1), Qualtim (¶2), Dr. J (¶3), Paragon (¶8) and Clearspan (¶10). The Developed TS/IP business model is alleged to have been created from 2009 to 2017 (¶¶28-30). Notably, the Amended Complaint does not expressly identify owners of the Developed TS/IP business model, but merely notes it was a joint effort by three individuals (Dan Holland, Suzi Grundahl and Kirk Grundahl) that would be "executed" by these five entities.

Paragraphs 35 and 36 of the Amended Complaint allege execution of nondisclosure agreement(s) ("NDA") in August, 2023 in connection with "meetings regarding the mission and strategies of the partnership between Plaintiffs and Defendants."[2] Paragraph 35 alleges that the parties to the NDA were the "Plaintiffs", John Holland, Paragon and Paragon Employees, and that via the NDA "all parties agreed that the business strategy, engineering knowledge, structural testing and Developed TS/IP would be kept confidential." From the face of the NDA, which is

---

[2]The only partnership alleged is that between "Plaintiffs," Dan Holland and Clearspan. Am. Comp. ¶30. Nowhere else in the Complaint are the Paragon Employees alleged to be "partners". Indeed, each of the NDAs the Plaintiffs seek to enforce specifically says that the parties thereto agree there is no joint venture or partnership between the parties, ie, each of the Employee Defendants with Qualtim and/or Dr. J, nor should the NDA be construed to create one. ¶1.20.

4

attached to the original Complaint and incorporated therein, both assertions are not entirely accurate. Doc. 18 (under seal) Ex. D-L. First, only two plaintiffs are parties to the NDA, Qualtim and Dr. J, and, as noted above, they are not alleged to have ownership interest in the TS/IP, only an "execution" function. Further, the agreement (¶¶1.1, 1.5) mutually protected a broad and generic class of "confidential information," which excluded information which "(ii) was acquired by the Receiving Party prior to receipt from the Disclosing Party and is not otherwise subject to an obligation of confidentiality, or (iii) is developed independently by the Receiving Party, without reference, directly or indirectly to Confidential Information of the Disclosing Party, or (iv) is hereafter made available to the Receiving Party for use or disclosure by the Receiving Party from any third party having a right to do so." The Amended Complaint tells us that Qualtim, Dr. J and Paragon essentially stood on the same ground as to the alleged "Confidential Information," as they were each "one of the entities that would implement the IP-LLC business model." Am. Comp. ¶¶ 2, 3, 8.[3] And the Amended Complaint tells us they are mere "executors", not owners (Id), and that the information was developed by 2017. Am. Comp. ¶ 29. As it can be inferred from the Amended Complaint that Paragon (and through it, the Paragon Employees) had essentially the same degree of information and standing that Qualtim and Dr. J had with respect to the "business model," then any disclosures received by the Paragon Employees from Qualtim and Dr. J, the only entities protected by the NDA, would not be confidential information as to Paragon.

---

[3] Dr. J was described as being one of the collaborative entities that would implement the "secret" IP-LLC business model. Each of these entities being described as implementing the "IP-LLC business model" just adds to the confusion, as elsewhere the business model is the Developed TS/IP and IP-LLC is simply the entity which "would execute the business model at issue ("Developed TS/IP"). Am. Comp. ¶1.

5

Obviously, the Grundahls and Inspired Pursuits are not proper plaintiffs as to the NDA count as they are not a party to the NDA, and the NDA specifically states in ¶1.20 that "no third party is intended to be, and no third party shall be, a beneficiary of any provision of this Agreement." The Amended Complaint also clashes with the plain language of the NDA in that the purpose of the August 2023 NDA is recited therein to be for the purpose of "enabling the Parties to evaluate, propose and enter into a possible business relationship" (NDA, first "whereas" clause"). Indeed, the Amended Complaint tells us the relationship Plaintiffs are seeking to bootstrap into the NDAs' coverage was already in place since at least 2017 (¶¶28-30).

Further, as to actual "disclosures," there were allegedly "meetings regarding the mission and strategies of the partnership between Plaintiffs and Defendants" (Am. Comp. ¶ 36), information that, based on a reading of the Amended Complaint as a whole was mutually generated and available. A disclosure of information unique to Qualtim and Dr. J as a "Disclosing Party" is simply not alleged.[4]

> [*P28] Contract language is construed according to its plain or ordinary meaning, Huml v. Vlazny, 2006 WI 87, ¶52, 293 Wis. 2d 169, 716 N.W.2d 807, consistent with "what a reasonable person would understand the words to mean under the circumstances." Seitzinger, 2004 WI 28, 270 Wis. 2d 1, ¶22, 676 N.W.2d 426. For a business contract, that is "the manner that it would be understood by persons in the [****14] business to which the contract relates." Columbia Propane, L.P. v. Wisconsin Gas Co., 2003 WI 38, ¶12, 261 Wis. 2d 70, 661 N.W.2d 776.
>
> [*P29] The court construes contracts "as they are written." Id., ¶12. Ultimately, "the office of judicial construction [***593] is not to make contracts . . . but to determine what the parties contracted to do." Marion v. Orson's Camera Centers, Inc., 29 Wis. 2d 339, 345, 138 N.W.2d 733 (1966) (quoting Wisconsin Marine & Fire Ins. Co. Bank v. Wilkin, 95 Wis. 111, 115, 69 N.W. 354 (1897).

---

[4] No partnership between (all) Plaintiffs and (all) Defendants (which presumably includes the Paragon Employees) has been alleged as such.

6

*Tufail v. Midwest Hosp., LLC*, 348 Wis. 2d 631, 642-43, 833 N.W.2d 586, 592-93 (2013). The elements of any breach of contract claim are (1) the existence of a contract between the plaintiff and the defendant; (2) breach of that contract; and (3) damages. *Pagoudis v. Keidl*, 406 Wis. 2d 542, 554, 988 N. W. 2d 606, 612 (2023).

"When a document contradicts a complaint to which it is attached, the document's facts or allegations trump those in the complaint." *Flannery v. Recording Industry Association of America*, 354 F. 3d 632, 638 (7th Cir. 2004). On the unambiguous face of the NDA, there is no nondisclosure agreement between the Paragon Employees and any plaintiff other than Qualtim and Dr. J. Therefore, this claim should be dismissed at least as to the Grundahls and Inspired Pursuits, who are specifically *not* third-party beneficiaries of the NDA. As far as a breach of the NDA, as noted above, the information to be disclosed at the August 2023 meeting was "the mission and strategies of the partnership between Plaintiffs and Defendants" (Am. Comp. ¶ 36). From a fair reading of the Amended Complaint, that was information Paragon and its employees already had.[5]

Paragraph 39 alleges as one of two purported breaches of the NDA by the Paragon Employees: access being restricted to Plaintiffs and contacting customers relative to the existence, it seems, of the restrictions. But the imposition of these alleged restrictions is not itself a breach of the NDA. Also, the customers purportedly contacted and the persons doing the contacting are not identified.[6] Secondly, in Paragraph 40, the Paragon Employees are alleged to have "disclosed to the public business strategies, engineering knowledge, and Developed TS/IP

---

[5] Again, the NDA by its terms related to disclosures relating to a "possible business relationship," not the long-term existing relationship described in the Amended Complaint.

[6] "Each defendant is entitled to know what he or she did that is asserted to be wrongful." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013).

7

that were meant to remain confidential." But there are no facts alleged as to who made these claimed disclosures, how they were made, or who received the information (other than the "public" at large). Better yet, Paragraph 36 tells us that at the time the NDAs were signed, "the mission and strategies of the partnership between Plaintiffs and Defendants" was what was disclosed/discussed. This inconsistency and paucity of detail (i.e., access restrictions vs. disclosures of business strategies, etc.) makes a valid allegation of what specifically was disclosed and specifically by whom more important. The Complaint must "state a claim for relief that is plausible on its face." *Jackson v. Methodist Health Servs. Corp.*, 121 F.4th 1122, 1125–26 (7th Cir. 2024). A claim is facially plausible when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. As to the Paragon Employees and the NDA, this standard has not been met.

II. The Fourth Cause of Action in the Amended Complaint does not adequately allege unjust enrichment the Paragon Employees

Here, plausibility is an issue. "ALL Defendants" are alleged to have benefitted from Plaintiff's efforts. Did each of the Employee Defendants plausibly "profit" and "continue to profit" benefits as mere employees of Paragon (¶¶65-66)? There is no allegation that the Employee Defendants individually received a "direct" benefit from Plaintiffs, in that there is no allegation that the Employee Defendants have an ownership interest in the monies, services or product of the purported $23.3 million in value alleged to have been provided by the Plaintiffs (¶ 63). The Amended Complaint simply alleges the Paragon Employees were just that, mere employees of a business.

"Unjust enrichment requires proof of three elements: (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation or knowledge by the defendant of the benefit; and (3)

acceptance or retention of the benefit by the defendant under circumstances making it inequitable to do so. (citation omitted) In order to plead an unjust enrichment claim, the party seeking judicial relief must allege facts that, if true, would be sufficient to satisfy a court that the above elements are present." ***Sands v. Menard***, 379 Wis. 2d 1, 18-19, 904 N.W.2d 789, 798 (2017). Given the allegations of the Amended Complaint as to the Employee Defendants being just that, employees, this count fails and should be dismissed.[7]

      III.     The Fifth Cause of Action for Misappropriation of Trade Secrets fails to state a claim against the Paragon Employees and should be dismissed.

The Amended Complaint alleges that "[s]ince 2009, Plaintiffs and Defendant Clearspan and Dan worked as partners in creating Developed TS/IP" (¶30). Dan, stated to be now deceased, was "the majority member and founder of Paragon. . .the majority shareholder of Clearspan . . . [and] the majority and founding member of Inspired Pursuits, LLC." (¶6). The Amended Complaint tells us (¶71) that "[a]s part of the discussions between Kirk [Grundahl] and Dan. . . Defendants were privy to information that Plaintiffs maintained as Developed TS/IP." According to the allegations of Paragraph 29, those discussions had reached fruition by 2017.

Notwithstanding these allegations, and almost by rote, the Amended Complaint alleges:

> 76. The information is not generally known or ascertainable outside the Plaintiff's (sic) organization or control.

---

[7]Plaintiffs allege on page 1 of the Amended Complaint "this case is about enforcing the joint venture between the parties". A joint venture is created by contract, in which case, unjust enrichment does not apply as a purported express contract exists. ***Ostrenga Excavating, Inc. v. Cleveland Constr., Inc.***, 378 Wis. 2d 739, 905 N.W.2d 843 (2017).

9

77. Plaintiffs derive economic value or business advantage by having exclusive use of Developed TS/IP

If Dan was a partner in the joint venture, and owned the majority of Inspired Pursuits, Clearspan and Paragon, then Plaintiffs' allegations in Paragraphs 76 and 77 are clearly not plausible.

Seeking to bootstrap "improper means"[8] via the NDAs, Paragraph 74 states that "Clearspan, Rob Eason, James Holland, Paragon, and Paragon Employees acquired the Developed TS/IP by breaching the NDAs." The same NDAs allegedly executed on August 8, 2023, at a meeting where the Amended Complaint tells us "the mission and strategies of the partnership between Plaintiffs and Defendants" was discussed (¶ 36), **not** Developed TS/IP. Further, is it plausible that Plaintiffs disclosed Developed TS/IP to the Paragon Employees rather than Dan, or someone at Paragon at his instance?

The Paragon Employees have also not been plausibly alleged to have committed misappropriation, which Wis. Stat. Ann. § 134.90 defines as:

> (2) Misappropriation. No person, including the state, may misappropriate or threaten to misappropriate a trade secret by doing any of the following:
> (a) Acquiring the trade secret of another by means which the person knows or has reason to know constitute improper means.
> (b) Disclosing or using without express or implied consent a trade secret of another if the person did any of the following:
> 1. Used improper means to acquire knowledge of the trade secret.
> 2. At the time of disclosure or use, knew or had reason to know that he or she obtained knowledge of the trade secret through any of the following means:
>   a. Deriving it from or through a person who utilized improper means to acquire it.
>   b. Acquiring it under circumstances giving rise to a duty to maintain its secrecy or limit its use.
>   c. Deriving it from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use.
>   d. Acquiring it by accident or mistake.

---

[8] "Improper means" includes espionage, theft, bribery, misrepresentation and breach or inducement of a breach of duty to maintain secrecy. Wis. Stat. Ann. § 134.90 (1)(a).

As noted above, the Amended Complaint is self-contradictory as to who owned and controlled the Developed TS/IP and more importantly, and what was disclosed in connection with the NDA. Echoing its earlier "shotgun" approach, the Amended Complaint does not specify which of the Paragon Employees did what. "Each defendant is entitled to know what he or she did that is asserted to be wrongful." **Bank of Am., N.A. v. Knight**, id.

Finally, Plaintiffs conveniently ignore their allegations identifying Dan's role as majority owner of Clearspan, Inspired Pursuits and Paragon. He is alleged to have been in on Developed TS/IP from the start and was as much an owner as Plaintiffs. One is legally incapable of "misappropriating" a trade secret that one owns or co-owns and has rights to use. See **Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.**, 299 F. Supp. 2d 565, 577 (E.D. Va. 2004).

IV. The Sixth Cause of Action for Civil Conspiracy fails to state a claim as to the Paragon Employees and should be dismissed.

The sixth cause of action for conspiracy alleges that all the defendants, including the Employee Defendants, "acted together to accomplish an unlawful purpose" (¶95). Of course, the Employee Defendants cannot conspire with Paragon, who is alleged to be their employer.

> The intra-corporate conspiracy doctrine provides that a corporation cannot conspire with its employees. This is so because a conspiracy requires a meeting of the minds between two or more persons and the acts of a corporation and of its agents are considered to be those of a single legal actor. **McAndrew v. Lockheed Martin Corp.**, 206 F.3d 1031, 1036 (11th Cir. 2000). Wisconsin recognizes the intra-corporate conspiracy doctrine. See, e.g., **Milsap v. Journal/Sentinel**, 897 F. Supp. 406, 409 (E.D. Wis. 1995), rev'd in part on other grounds, 100 F.3d 1265 (7th Cir. 1996) (holding that allegations of conspiracy between employer and its employees insufficient under Wisconsin law); see also **Langley v. Am. Bank of Wis.**, 738 F. Supp. 1232, 1240-41 (E.D. Wis. 1990) (stating that bank cannot conspire with its employees).

11

*Norkol/Fibercore, Inc. v. Gubb*, 279 F. Supp. 2d 993, 1000 (E. D. Wis. 2003).  To the extent the Employee Defendants are alleged to have conspired with Paragon, this count fails as a matter of law.

Further, that deficiency requires clearer allegations as to how the Employee Defendants conspired with the remaining non-Paragon defendants.  The Seventh Circuit has noted that even before the Supreme Court established the *Iqbal* and *Twombly* standards, "a bare allegation of conspiracy was not enough to survive a motion to dismiss for failure to state a claim." *Cooney v. Rossiter*, 583 F.3d 967, 970 (7th Cir. 2009).  Demonstrating the insufficiency of Plaintiffs' pleading as to the Employee Defendants, Paragraph 93 alleges that "Clearspan, *along with all other Defendants*, terminated all projects and partnerships with Plaintiffs" on or about June 3, 2024 (emphasis provided).  Is it plausible that the Employee Defendants terminated a contractual relationship they are not alleged to be a party to?  Further, there are no specific allegations relating to any single one of the Employee Defendants showing they engaged in any conduct in furtherance of the purported conspiracy.  Without such, the conspiracy count simply contains "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements [which] do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868, 884 (2009).

Finally, pleading conspiracy under Wis. Stat. §134.01 requires an allegation of malice.

Malice for purposes of a section 134.01 claim means "doing a harm malevolently for the sake of the harm as an end in itself, and not merely as a means to some further end legitimately desired [such as hurting someone else's business by competition]." *Maleki v. Fine-Lando Clinic Chartered, S.C.*, 162 Wis. 2d 73, 469 N.W.2d 629, 635 (Wis. 1991), quoting *Aikens v. Wisconsin*, 195 U.S. 194, 203, 25 S. Ct. 3, 49 L. Ed. 154 (1904). In short, an irrational desire to cause harm for the sake of harm is actionable under section 134.01. A rational desire to cause harm for the sake of competitive advantage is not. Also, both parties to the conspiracy must have acted out of malice for a plaintiff's section 134.01 claim to survive.

12

*Virnich v. Vorwald*, 664 F.3d 206, 213 (7th Cir. 2011).  The Amended Complaint fails to so allege.  The Court should dismiss this cause of action as well.

> V.   The Eighth Cause of Action for Tortious Interference with Prospective Contractual Relations should be dismissed.

The elements of this cause of action are:

> (1) that [Plaintiffs] had a contract or prospective contractual relationship with a third party; (2) that [Defendants] interfered with the relationship; (3) the interference was intentional; (4) a causal connection exists between the interference and the damages; and (5) [Defendant] was not justified or privileged to interfere.

*Gilsinger v. Cities & Vills. Mut. Ins. Co.*, 2024 U.S. App. LEXIS 20103, at *12-13 (7th Cir. Aug. 9, 2024).  There must be "an existing contract or sufficiently concrete prospective contract." Id. at *13.

Nothing of the sort has been alleged.  As to the Paragon Employees, Paragraph 104 alleges that, among others, the Employees "withheld access to IP-Math without any notice" and "through the improper use of confidential Developed TS/IP . . . purposefully interfered with Plaintiffs' contractual relationships with prospective clients and fulfillment of IP-LLC's mission."  Effectively, this allegation is a word salad that fails to allege a "concrete prospective contract" with anybody.  Paragraph 105 says the Employees "induced and continue to induce other industry participants from being able to develop diverse contractual relationships with Plaintiffs."  Again, a wispy allegation with nothing concrete.  According to Paragraph 108, these vague, unspecific "actions" by the Employees, as it were, are alleged to have "interfered and disrupted current and prospective contractual relationships between Plaintiffs" and their "existing, prospective" clients.  There are no allegations as to actual relationships, and no

13

allegations as to which of the Employees did what to interfere.   This cause of action states nothing plausible as to the Employee Defendants.

VI.   The Ninth Cause of Action for Tortious Interference with Business Relations should be dismissed because the claim likely does not exist under Wisconsin law.

In *Neuroscience, Inc. v. Forrest*, the United States District Court for the Western District of Wisconsin stated "Wisconsin does not recognize a claim for 'tortious interference with a business relationship.'" 2013 U.S. Dist. LEXIS 171317, at *4 (W.D. Wis. Dec. 5, 2013).[9] Instead, the *Forrest* Court stated the following five (5) elements for a claim of interference with "an existing contract or sufficiently concrete prospective contract": (1) a contractual relationship on behalf of the plaintiff; (2) knowledge by the defendant of the existence of the contractual relationship; (3) intentional acts on the part of the defendant to disrupt the relationship; (4) actual disruption of the relationship causing damages; and (5) lack of privilege or justification for the defendant's interference. 2013 U.S. Dist. LEXIS 171317, at *4 (citing *Burbank Grease Servs., LLC v. Sokolowski*, 2006 WI 103, 294 Wis. 2d 274, 717 N.W.2d 781; *Anderson v. Regents of the Univ. of California*, 203 Wis. 2d 469, 490, 554 N.W.2d 509 (Ct. App. 1996)). Plaintiffs elsewhere have claimed the Paragon Employees allegedly tortiously interfered with a prospective

---

[9] The United States District Court for the Eastern District of Wisconsin, in a now vacated opinion, stated the "Wisconsin Court of Appeals puts a slightly different gloss on the existence of a tortious interference with business relationships cause of action." *Healthwerks, Inc. v. Spine*, 2015 U.S. Dist. LEXIS 64216, at *32 (E.D. Wis. May 15, 2015), *vacated*, *Stryker Spine v. Spine Grp. of Wis., LLC*, 320 F. Supp. 3d 985, 2018 U.S. Dist. LEXIS 99184 (E.D. Wis. June 11, 2018). The vacated opinion from the *Healthwerks, Inc.* Court contains the five (5) elements discussed by the *Forrest* Court, but an additional finding that a "history of [business relationships]" could be substituted for "contractual relationship" to describe the elements of the claim. 2015 U.S. Dist. LEXIS 64216, at *34 (citing *Wis. Hous. & Econ. Dev. Auth. v. Tri Corp Hous., Inc.*, 2011 WI App 99, *7, 334 Wis. 2d 809, 800 N.W.2d 958 (Ct. App. May 10, 2011).

14

contract.[10] To the extent *Forrest* is controlling, Plaintiffs' Ninth Cause of Action should be dismissed because it has no basis under Wisconsin law and is a rehash of Plaintiffs' Eighth Cause of Action.

Before the *Forrest* opinion was issued, however, the Western District issued the *Big Daddy Games, LLC v. Reel Spin Studios, LLC* opinion which seems to contain a finding that Wisconsin does recognize a stand-alone claim for tortious interference with business relations. 2013 U.S. Dist. LEXIS 193720, at *4 (W.D. Wis. Feb. 4, 2013). The *Big Daddy Games, LLC* Court stated the following elements for a claim for tortious interference with business relations

> (1) An actual or prospective contract existed between Plaintiffs and a third party;
> (2) Defendants interfered with that contract or prospective contract;
> (3) The interference was intentional;
> (4) The interference caused Plaintiffs to sustain damages; and
> (5) Defendants were not justified or privileged to interfere.

2013 U.S. Dist. LEXIS 193720, at *4 (citing *Briesemeister v. Lehner*, 2006 WI App 140, 295 Wis. 2d 429, 452, 720 N.W.2d 531, 541; *Shank v. William R. Hague, Inc.*, 192 F.3d 675, 681 (7th Cir. 1999)).

The elements contained in the *Big Daddy Games, LLC* opinion are effectively the same elements contained in the *Forrest* opinion. For the same reasons discussed above, this claim should be dismissed. In addition, Defendants aver Plaintiffs have failed to state a claim because Plaintiffs' allegations are fact-less and there is no allegation that Defendants' alleged interference was not privileged or justified (element five). The *Big Daddy Games, LLC* Court found the defendant's counterclaim for tortious interference with business relations failed to state a claim where the defendant merely alleged the plaintiff:

---

[10] Plaintiffs do not allege Defendants "Paragon Employees" tortiously interfered with an *existing* contract (the Seventh Cause of Action).

15

> (1) 'caus[ed] the breakup' of [defendant's] partnership with John Paul Jones by acquiring and using 'information and trade secrets without' [defendant's] knowledge; (2) caus[ed] 'loss of sales and income' from [defendant's] business; and (3) 't[ook] down' [defendant's] website pokies4fun.com

2013 U.S. Dist. LEXIS 193720, at *4. The Court specifically noted how the defendant failed to "set for any facts to support his counterclaims, such as how plaintiff 'acquir[ed] information and trade secrets' from [defendant]; what the information and trade secrets were; how plaintiff used the information to 'caus[e] the breakup' of [defendant's] partnership; how plaintiff caused [defendant] to 'lo[se] sales and income; and how plaintiff 't[ook] down' [defendant's] website." ***Big Daddy Games, LLC***, 2013 U.S. Dist. LEXIS 193720, at *5. "Without this information, plaintiff does not have fair notice regarding the basis for [defendant's] claims that plaintiff interfered with his business relationship." ***Big Daddy Games, LLC***, 2013 U.S. Dist. LEXIS 193720, at *5. The defendant's baseless allegations in ***Big Daddy Games, LLC*** are akin to the allegations in this case. Where is the factual support? This claim is not plausible and is indisputably missing an element for any alleged cause of action. It should be dismissed with respect to these Defendants.

    VII.    The Tenth Cause of Action for Misappropriation of Confidential Business Information should be dismissed because this claim does not exist under Wisconsin law.

In ***Marine Travelift, Inc. v. Marine Lift Systems***, the plaintiff pled a similar "misappropriation of confidential business information" claim that had no foundation in Wisconsin law. 2013 U.S. Dist. LEXIS 170825, *20 (E.D. Wis. Dec. 3, 2013). The ***Marine Travelift, Inc.*** Court specifically stated "Wisconsin does not recognize a claim of misappropriation of confidential and proprietary information as a separate and independent tort."

16

2013 U.S. Dist. LEXIS 170825, at *23; *see also Rustic Retreats Log Homes Inc. v. Pioneer Log Homes of B.C. Inc.*, 2021 U.S. Dist. LEXIS 113411, *58-59 (E.D. Wis. June 17, 2021) ("However, '[t]here is no separate tort of misappropriation of confidential business information under Wisconsin law that applies to non-trade secret information.' [] Accordingly, Pioneer's common law misappropriation of trade secrets claim is preempted by Wis. Stat. § 134.90(6)(a). Further, there is no authority for proceeding on a common law claim for misappropriation of information that does not meet the statutory definition of a trade secret.")

Plaintiffs already allege in their Fifth Cause of Action a claim for misappropriation of trade secrets. (Am. Compl. ¶¶ 70-88). Notwithstanding Plaintiffs' barebone allegations that are devoid of any factual assertions, the claim for misappropriation of confidential business information should be dismissed since it is not recognized under Wisconsin law.

VIII.   The Eleventh Cause of Action for Unfair Competition should be dismissed because this Claim lacks any specific, factual allegations.

"That the *Restatement* breaks down unfair competition claims in this manner is informative in that it may explain why Wisconsin courts define the elements of an unfair competition claim differently depending on the type of claim articulated in the complaint." *Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating, & Air-Conditioning Eng'rs, Inc.*, No. 07-C-765, 2008 U.S. Dist. LEXIS 34344, *23 (E.D. Wis. April 25, 2008) (discussing *Restatement (Third) of Unfair Competition § 1* (1995)). For example, the requisite elements for an alleged claim of unfair competition on trademark infringement differ from the elements of an alleged claim of unfair competition based on misappropriation. *See Thermal Design, Inc.*, 2008 U.S. Dist. LEXIS 34344 at *23-24. To establish a case for unfair competition

based on trademark infringement, the Plaintiffs must prove (1) validity of the mark in question; and (2) infringement." *Echo Travel, Inc. v. Travel Assocs., Inc.*, 870 F.2d 1264, 1266 (7th Cir. 1989). On the other hand, to establish a case of unfair competition based on misappropriation, Plaintiffs must prove "(1) time, labor, and money expended in the creation of the thing misappropriated; (2) competition; and (3) commercial damage to the plaintiff." *Mercury Road Prods., Inc. v. Econ. Consultants, Inc.*, 64 Wis. 2d 163, 174, 218 N.W.2d 705, 709 (1974) (internal citations omitted).

This claim should be dismissed because Plaintiffs fail to articulate in their Complaint which theory of unfair competition upon which their purported claims are predicated. As it stands regarding the Paragon Employees, Plaintiffs have failed to give any notice, much less fair notice of what the alleged unfair competition claim rests. Even were these Defendants to assume the alleged claim is founded upon misappropriation, there are no specific allegations regarding how these Defendants "Paragon Employees" are in competition with the Plaintiffs. *See Mercury Record Prods., Inc. v. Econ. Consultants*, 105 Wis. 2d 753, 315 N.W.2d 727, 1981 WL 138912, *3 (Wis. Ct. App. 1981) (stating "[c]ompetition is an essential element of the claim of unfair competition."). Absent from Plaintiffs' Amended Complaint is any specific, factual allegations that these Defendants appropriated the Plaintiffs' "time, labor, and money . . . . ."

Plaintiffs aver "Paragon Employees . . . unauthorized use of Plaintiff's trade secrets, confidential and proprietary information constitutes unfair competition." (Am. Compl. ¶ 126). Which Paragon employees? What was the "unauthorized use"? When did the "unauthorized use" occur? The Amended Complaint contains allegations that "Paragon Employees . . . conduct in using Plaintiffs' work product . . . including in activities to compete with Plaintiffs . . . ." (Am. Compl. ¶ 127). What conduct? Which activities? What makes the purported "conduct" and

"activities" competitive in nature? Plaintiffs fail to articulate any specific acts or practices by these Defendants to form the basis for any alleged, plausible unfair competition claim. This claim must be dismissed under *Iqbal* and *Twombly*.

Again, no single Paragon Employee is specifically identified in the Amended Complaint as having taken any particular action complained of by the Plaintiffs. "An allegation that a group of defendants is liable 'without any details about who did what' does not state a claim for relief." *Milchtein v. Milwaukee Cty.*, 42 F.4th 814, 824 (7th Cir. 2022), citing *Bank of Am., N.A. v. Knight, id.*, see also *Cheek v. Kirkpatrick*, 2023 U.S. Dist. LEXIS 108714, at *3 (W.D. Wis. June 21, 2023).[11]

As stated in *Bank of Am., N.A. v. Knight*, id., "[l]iability is personal." As discussed above, relative to the Paragon Employees at least, Plaintiffs' allegations are nothing more than a "shotgun" effort to involve them in litigation in Wisconsin for the sole purpose of serving as a nuisance to Paragon. The Court should grant these Defendants' motion.

As stated in these Defendants' Motion to Dismiss, pursuant to Rule 10(c), Fed. R. Civ. P., these Defendants also adopt co-defendants' Paragon and John Holland's Motion to Dismiss the Amended Complaint, and the grounds stated (or to be stated) in support thereof.

---

[11] Paragon Employees do not address the injunction counts, as an injunction is a form of relief, not a basis for liability. In any event, Plaintiffs do not allege any concrete, particularized injury to them that is either actual or imminent, that is fairly traceable to the Paragon Employees, or that a favorable decision would likely redress. See *Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 639 (7th Cir. 2017).

19

GEARHISER, PETERS, ELLIOTT
& CANNON, PLLC


By: Sam D. Elliott
      Sam D. Elliott, TN BPR No. 009431
      *Admitted pro hac vice*
320 McCallie Avenue
Chattanooga, TN 37402
Phone: 423.756.5171
Fax: 423.266.1605
Email: selliott@gearhiserpeters.com
*Attorneys for Defendants Radmacher, Ewin, Reed, Jeremy Bierema, Pitts, Nathan Bierema, Duncan and Hoelsema*