## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

INSPIRED PURSUITS, LLC,
QUALTIM, INC., CENTER FOR
BUILDING INNOVATION, LLC,
DRJ ENGINEERING, LLC, KIRK
GRUNDAHL, and SUZANNE GRUNDAHL,

        Plaintiffs,                           Case No. 3:25-cv-00075-wmc

  V.

PARAGON COMPONENT SYSTEMS, LLC,
JOHN HOLLAND, JAMES HOLLAND,
CLEARSPAN COMPONENTS, LLC,
ANDREW EWIN, DAVID REED, SCOTT
HOELSMA, SETH DUNCAN, MICHAEL
PITTS, AVERY RADMACHER, NATHAN
BIERMEMA, JEREMY BIEREMA, ROB
EASON, and THE ESTATE OF DANIEL
HOLLAND EX REL. SPECIAL
EXECUTOR MARVIN B. SPEED,

        Defendants.

## BRIEF IN SUPPORT OF PARAGON COMPONENT SYSTEM, LLC AND JOHN HOLLAND'S MOTION TO DISMISS AMENDED COMPLAINT

Under Fed. R. Civ. P. 8, 12(b)(6), and 41(b), Defendants John Holland and Paragon Component Systems, LLC respectfully move to dismiss Plaintiffs' Amended Complaint. Doc. 39. Though Plaintiffs attempt to evade federal preemption, their Amended Complaint does not materially differ from the original one. Plaintiffs merely take out some allegations, add a handful of rephrased, conclusory factual allegations, and replace their unfair-trade-practices claim with a fiduciary-duty claim

1

against the Estate of Dan Holland. The Amended Complaint hinges on the same core facts, and suffers from the same defects, as the original.

The Amended Complaint should be dismissed for several reasons. First, Plaintiffs' Amended Complaint is merely "a collection of vague legal theories [that] lacks concrete and coherent factual allegations." *See Dunbar v. Kiefer*, No. 24-CV-1592-JPS, 2024 WL 5264678, at *3 (E.D. Wis. Dec. 31, 2024). Nor does it clearly specify discrete factual allegations for each individual defendant. Second, despite their effort to artfully plead around the Copyright Act, most of Plaintiffs' state-law claims remain preempted because they seek remedies equivalent to those afforded exclusively by the Act. Finally, Plaintiffs' allegations are factually deficient and implausible and so subject to dismissal under Rule 12(b)(6).

## I.    **Argument.**

### A.    *Standards for Motion to Dismiss.*

Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a Rule 12(b)(6) motion to dismiss, the Amended Complaint must "state a claim for relief that is plausible on its face." *Jackson v. Methodist Health Servs. Corp.,* 121 F.4th 1122, 1125–26 (7th Cir. 2024). A claim is facially plausible when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Court treats the Amended Complaint's allegations as true and draws only reasonable factual inferences in Plaintiffs' favor. *Id*. But "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

A complaint that fails to provide a "short and plain statement of the claim" per Rule 8(a)(2) is also subject to involuntary dismissal under Rule 41(b): "[I]f the plaintiff fails … to comply with these rules …, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b); *see Eberhardt v. Vill. of Tinley Park*, No. 20 C 3269, 2020 WL 10618313, at *1–2 (N.D. Ill. Oct. 14, 2020).

B.    *The Amended Complaint Should Be Dismissed Because It Is an Improper Shotgun and Puzzle Pleading.*

The Court should dismiss the Amended Complaint under either Rule 12(b)(6) or 41(b) because it is "a textbook example of 'shotgun pleading'" that violates Rule 8(a)(2). *See Griffin v. Humana Wis. Health Org. Ins. Corp.*, No. 98-C-0001, 2000 WL 35572299, at *1 (E.D. Wis. June 26, 2000). In a shotgun pleading, "each count incorporate[s] by reference all preceding paragraphs and counts of the complaint notwithstanding that many of the facts alleged [are] not material to the claim, or cause of action, appearing in a count's heading." *CustomGuide v. CareerBuilder, LLC*, 813 F. Supp. 2d 990, 1001 (N.D. Ill. 2011) (citation omitted). Such pleadings make it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief," *id.* (citation omitted), or which defendant engaged in the conduct relating to the alleged claim. "[S]imply by pleading a host of facts which [Plaintiffs] then incorporate into claims against all or groups of the defendants" does not provide the notice required to enable Defendants to respond to claims. *See Holmes v. City of Racine*, No. 14-CV-208-JPS, 2014 WL 3738050, at *12 (E.D. Wis. July 30, 2014).

Similarly, the Amended Complaint is an improper puzzle pleading. This "improperly plac[es] the burden on the Court to sort out the alleged [counts] and then match them with the corresponding adverse facts." *See In re Harley-Davidson, Inc.*

*Sec. Litig.*, 660 F. Supp. 2d 969, 984 (E.D. Wis. 2009) (securities-fraud context); *cf. In re Metro. Sec. Litig.*, 532 F. Supp. 2d 1260, 1279 (E.D. Wash. 2007).

Plaintiffs allege seven paragraphs that apply to all counts. Doc. 39 at 6 ¶¶ 27–33. They then incorporate by reference all prior facts, including those stated only in a prior count, into each of their 14 counts. *See id*. at 6–22 ¶¶ 34, 45, 53, 61, 70, 89, 98, 102, 116, 122, 125, 132, 138, 144.[1] This is problematic for several reasons.

Some counts contain nothing but bare-bone recitals of the elements required to state causes of actions against all Defendants (except for the Estate of Dan Holland). *See id*. at 17 ¶¶ 116–21 (Count Nine – tortious interference with business relations); *id*. at 17–18 ¶¶ 122–24 (Count Ten – misappropriation of business information); *id*. at 18 ¶¶ 125–31 (Count Eleven – unfair competition). This requires Defendants and the Court to guess at which (if any) prior alleged facts are supposed to provide the factual basis for these claims. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than mere labels and conclusions, and a *formulaic recitation of the elements of a cause of a cause of action will not do*." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964–65 (2007) (citations omitted) (emphasis added). At a minimum, Counts Nine through Eleven must be dismissed.

---

[1] Perhaps the Amended Complaint is cryptic and vague because Plaintiffs are trying to artfully plead around Paragon's prior-filed declaratory judgment action (*Paragon Component Systems, LLC v. Qualtim, Inc.*, 3:25-cv-00170, W.D. Wis.). The Amended Complaint specifically references Paragon's declaratory-judgment action, Doc. 39 at 1–2, making it properly subject to judicial notice. *See Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 493 n.2 (7th Cir.) When the operative complaints in the two actions are compared, it is clear that the nucleus of both lawsuits is the software that Paragon claims it owns and to which Defendants claim they have rights as part of their alleged "business model." Plaintiffs themselves even acknowledge that the "IP-LLC Software" is at issue in both cases. Doc. 39 at 1–2.

Other counts allege additional facts, but fail to connect specific Defendants with the alleged misconduct. These counts simply claim "Defendants" engaged in conduct that harmed "Plaintiffs," without specifying which defendant (of the fourteen named) supposedly did what. Doc. 39 at 10–11 ¶¶ 61–69 (Count Four – unjust enrichment); *id*. at 11–13 ¶¶ 70–88 (Count Five – misappropriation of trade secrets); *id*. at 13–14 ¶¶ 89–97 (Count Six – civil conspiracy). Yet it is apparent from the Amended Complaint that not *all* the numerous, separate Defendants could have engaged in *all* the alleged misconduct. Once again, each Defendant is left to guess at which claim or claims are really advanced against it and must further guess at what it supposedly did wrong in relation to each claim. This is problematic especially because Plaintiffs sue 14 separate Defendants, whose distinctions are improperly and confusingly conflated.

Though other counts attempt to identify certain Defendants as the ones responsible, Plaintiffs continue to improperly group Defendants together as if they were all the same and do not allege conduct by any specific Defendant. For example, in Count Two, Plaintiffs allege "Defendants John Holland, Paragon, Clearspan, Rob Eason, and James Holland" breached some unidentified implied contract, Doc. 39 at 9 ¶ 52, but do not identify which Defendant purportedly did what, *id*. at 8–9 ¶¶ 45–52. Likewise, in Count Three, Plaintiffs allege "Defendants Clearspan, John Holland, and Paragon" rendered it impossible for Plaintiffs to meet their contractual obligations, but again do not allege any specific conduct by these Defendants. *Id*. at 10 ¶¶ 58. Count Seven alleges "Defendants Paragon, John Holland, Rob Eason, and James Holland intentionally induced Defendant Clearspan to cease using Qualtim

and DrJ for engineering services and Defendant Estate to breach its fiduciary duty to Dan and IP-LLC." *Id*. at 15 ¶ 100. But Count Seven alleges no specific conduct by any of these Defendants, much less that one or more of them "induced" anyone. *Id*.

Although the counts for injunctive relief specifically identify the Defendants sought to be enjoined, Doc. 39 at 19–22 ¶¶ 138–48, an injunction requires an underlying, valid cause of action, which the Amended Complaint does not include. *Platinum Home Mortgage Corp. v. Platinum Fin. Grp., Inc.*, 149 F.3d 722, 726 (7th Cir. 1998).

The Amended Complaint leaves Defendants guessing as to (1) what claims are actually asserted against them individually; and (2) what they've allegedly done wrong. "Each defendant is entitled to know what he or she did that is asserted to be wrongful. *A complaint based on a theory of collective responsibility must be dismissed*." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) (emphasis added). Plaintiffs' shotgun, puzzle pleading makes it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief" or which of the 14 Defendants engaged in the conduct relating to an alleged claim. *See CustomGuide*, 813 F. Supp. 2d at 1001. Paragon and its owner John Holland can neither tell what misconduct is alleged against them nor distinguish their alleged misconduct from that of the other Defendants. The Amended Complaint thus fails to provide the kind of "short and plain statement" and fair notice required by Rule 8(a)(2). The Court should involuntarily dismiss the Amended Complaint in whole under Rule 12(b)(6) or Rule 41(b) for failing to comply with Rule 8(a)(2). Because the

Amended Complaint is Plaintiffs' second such deficient complaint, Defendants respectfully submit it should be dismissed with prejudice.[2]

### C. Most of Plaintiffs' Claims Are Preempted by the Copyright Act.

Federal courts have sole and exclusive jurisdiction over claims governed by the federal Copyright Act, 17 U.S.C. §§ 101, et seq. *See* 28 U.S.C. § 1338(a); *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 774 (7th Cir. 1996). And the Copyright Act preempts all state-law claims that are equivalent to the rights afforded by the Copyright Act, 17 U.S.C. § 106, regardless of whether the plaintiff expressly pleads a claim for relief under the Act. *See Seng-Tiong Ho v. Taflove*, 648 F.3d 489, 501 (7th Cir. 2011); *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 674 (7th Cir. 1986). Under the Copyright Act,

> all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 … are governed *exclusively* by this title…. [N]o person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a) (emphasis added). Where this applies, as here, the equivalent state-law claim must be dismissed. "The intention of Congress appears to be 'to preempt and abolish any rights under the common law or statutes of a state that are equivalent to copyright.'" *CEO Mktg. Promotions Co. v. Heartland Promotions, Inc.*, 739 F. Supp. 1150, 1152 (N.D. Ill. 1990) (citation omitted).

---

[2] In their precursor lawsuit in this district, Plaintiffs already filed multiple iterations of essentially the same complaint. *See* Case No. 3:24-cv-00745 (W.D. Wis.).

As demonstrated below, the Amended Complaint is replete with allegations revealing that (despite Plaintiffs' efforts to plead around the Copyright Act) copyright-protected software is essential to Plaintiffs' claims.

        1.    <u>Nearly All Claims Depend on the Central Allegation that Plaintiffs Co-Authored Software Protected by the Copyright Act</u>.

This action arises under the Copyright Act, which protects originally authored software code and computer programs as "literary works." 17 U.S.C. §§ 101–102; *Higher Gear Grp., Inc. v. Rockenbach Chevrolet Sales, Inc*., 223 F. Supp. 2d 953, 957 (N.D. Ill. 2002). The Amended Complaint, Doc. 39, necessarily requires interpreting whether, under the Act, Plaintiffs are in fact "authors" of the software code or otherwise have rights in a copyright-protected work. *See* 17 U.S.C. § 201(a).

Plaintiffs are mostly engineers and engineering companies. Doc. 39 at 2–3 ¶¶ 1–5. They seek relief relating to a purported "business model," defined in the Amended Complaint as "Developed TS/IP," that focuses on and includes a software program offering online applications for the roof and floor truss industry. *Id*. at 2 ¶ 1. Plaintiffs allege that, for profit, Defendant Paragon distributes to users a "truss-design calculator," defined as "IP-Math." *Id*. at 3 ¶ 8. And the Amended Complaint's allegations still contend that the IP-Math is part of the "IP-LLC Software." *Id*. at 2; *id*. at 7 ¶ 37; *id*. at 14 ¶ 92; *id*. at 18 ¶ 127; *id*. at 20 ¶ 139; *id*. at 21 ¶ 143(b)–(c); *id*. at 22 ¶ 147. Plaintiffs claim they have "use and ownership rights to the IP-Math" and IP-LLC Software, which Paragon solely possesses and controls. *Id*. at 17 ¶ 119.

Plaintiffs allege that they "invested approximately $23.8 million in *services* and expenses into the business model," which included "work[ing] as partners" with certain defendants "in *creating*" the IP-Math and IP-LLC Software. *Id*. at 6 ¶ 30

(emphasis added); *see also id*. at 11 ¶ 63; *id*. at 22 ¶ 149. Throughout the Amended

Complaint, Plaintiffs allege that these services included partially authoring (and thus

owning) the IP-Math and IP-LLC Software:

- Plaintiffs "worked together" with all defendants "in a concerted effort to prepare the IP-LLC Software." Doc. 39 at 7 ¶ 37;

- Plaintiffs "provid[ed] thousands of hours of engineering, testing, engineering troubleshooting, and strategic planning for IP-LLC Software…" *id*. at 10 ¶ 55;

- Plaintiffs and Clearspan shared an employee "to further the goals of their partnership" *id*. at 10 ¶ 56;[3]

- Plaintiff Kirk Grundahl partnered in "developing [the] proprietary IP-LLC Software," *id*. at 12 ¶ 73;

- Plaintiffs provided their "work product and resources that are embedded in the software," *id*. at 18 ¶ 127;

- Plaintiffs' "interpretation[s] of engineering concepts … are embedded in the software," *id*. at 20 ¶ 139;

- There are "configurations in the IP-LLC Software that use[ ] Plaintiffs' interpretations and calculations of engineering concepts," *id*. at 21 ¶ 143(c); *see id*. at 22 ¶ 148(e);

- The "IP-Math contains creative work" that "requires engineering" and supervision by professional engineers, *id*. at 21 ¶ 146;

- "[C]reative engineered structural component work … took place to create [the] IP-LLC Software," which required "engineering mechanics, physical truss/wall panel testing data, engineering analysis, engineering supervision, professional engineering, and truss plate manufacturing, truss plate testing, truss plate performance and related truss manufacturing knowledge" provided by Plaintiffs, *id*. at 22 ¶ 147;

---

[3] In their original complaint, Plaintiffs alleged that this shared employee's "role was to develop the IP Software and IP Math." Doc. 1-2 at 26 ¶ 53.

- Defendants John Holland, Paragon, and its employees are "withh[olding] access and ownership rights to the IP-Math," *id.* at 15 ¶ 104;

- Defendants John Holland and Paragon's employees "restricted all Plaintiffs' access to IP-LLC Software," *id.* at 7 ¶ 39; and

- All defendants (except for Dan Holland's estate) improperly "terminat[ed] Plaintiff's use and ownership rights to the IP-Math," *id.* at 17 ¶ 119.

It does not matter whether or not the Amended Complaint uses the word "author"; developing, creating, and contributing to software to thereby obtain rights to it necessarily includes authoring computer code.

Copyright "vests initially in the author or authors of the work." 17 U.S.C. § 201(a). A joint work is one "prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. "Under federal copyright law, if a work is considered 'joint[,]' the joint authors hold undivided interests in the work. Each author, as a co-owner, has the right to use or to license the use of the work, subject to an accounting to the other co-owners for any profits." *Ahn v. Midway Mfg. Co.*, 965 F. Supp. 1134, 1138 (N.D. Ill. 1997). And a "collaborative contribution will not produce a joint work, and a contribution will not obtain a co-ownership interest, unless the contribution represents original expression that could stand on its own as the subject matter of copyright." *Id.* at 1139 (citation omitted).

The question whether Plaintiffs have rights in the IP-Math and IP-LLC Software, as they allege—such as the right to access the software and the right to profit from distributing the software to persons in the truss industry—hinges on whether Plaintiffs obtained undivided co-ownership of the software by having *co-*

10

*authored* it. As Plaintiffs acknowledge, Doc. 39 at 1–2, their alleged co-authorship of the IP-Math and IP-LLC Software is a disputed question. And this question—whether Plaintiffs co-authored the IP-Math and IP-LLC Software—"cannot be answered without reference to the Copyright Act, and it therefore arises under the Act." *Gaiman v. McFarlane*, 360 F.3d 644, 652–53 (7th Cir. 2004) (holding that claim involving disputed question of authorship was governed by the Copyright Act and provided for original federal jurisdiction); *see NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Higher Gear Grp., Inc. v. Rockenbach Chevrolet Sales, Inc.*, 223 F. Supp. 2d 953, 957 (N.D. Ill. 2002); *Round to Fit, LLC v. Reimer*, 380 F. Supp. 3d 830, 837–38 (S.D. Ind. 2019).

Further, even if Plaintiffs merely assert rights in preexisting proprietary information that is not itself protected by the Copyright Act, but is embedded in the copyrighted software, their claims *still* necessarily require interpreting and applying the Copyright Act, because they assert those rights concerning copyright-protected software. That is, alleging that such information, whether itself copyrightable or not, purportedly creates rights to the software it is embedded in unavoidably invokes federal copyright law: "[W]hen rights are asserted in uncopyrighted expressions in a copyrighted work, the Copyright Act still can preempt state law." *Seng-Tiong Ho*, 648 F.3d at 501 n.9 (citation omitted) (addressing rights asserted in "equations, figures and text" embedded in computer code and articles). "'[S]tate laws that intrude on the domain of copyright,'" as here, "'are preempted even if the particular expression [at issue] is neither copyrighted nor copyrightable.'" *Id.* at 501 (quoting *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 911 (7th Cir. 2005)). This is because, "[i]n the Copyright Act,

Congress sought to ensure that a state will not provide 'copyright-like protections in materials' that should remain uncopyrighted or uncopyrightable." *Id.* (quoting *Toney*, 406 F.3d at 911); *see* 17 U.S.C. § 301(a).

By claiming rights concerning copyright-protected software, whether based on authoring copyright-protected components or providing non-copyright-protected components, each embedded in the software at issue, Plaintiffs' claims necessarily require interpretation and application of the Copyright Act. To hold otherwise would improperly create state-law remedies relating to copyright-protected work.

> 2.   Several Claims Are Preempted by the Copyright Act Because They Seek Remedies Equivalent to Those Provided by the Act.

As explained below, Counts Two, Four, Five, Six, Eight, Nine, Ten, Eleven, Thirteen, and Fourteen are preempted by the Copyright Act.

"The Copyright Act preempts 'all legal and equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106' and are 'in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103.'" *Lands' End, Inc. v. Genesys Software Sys., Inc.*, No. 13-CV-38-BBC, 2014 WL 266630, at *3 (W.D. Wis. Jan. 24, 2014) (quoting 17 U.S.C. § 301(a)). The Seventh Circuit uses a two-part test to assess whether the Copyright Act preempts a state-law claim. "First, the work in which the right is asserted must be fixed in tangible form and come within the subject matter of copyright as specified in [17 U.S.C.] § 102. Second, the right must be equivalent to any of the rights specified in § 106." *Micro Data Base Sys., Inc. v. Nellcor Puritan-*

*Bennett, Inc.*, 20 F. Supp. 2d 1258, 1261 (N.D. Ind. 1998) (quoting *Baltimore Orioles*, 805 F.2d at 674). Both requirements are satisfied here.[4]

First, the IP-LLC Software (which includes the IP-Math) is deemed in tangible form within the subject-matter of copyright. "It is well established that computer software is fixed in a tangible medium of expression and [falls] within the subject matter of copyright." *Higher Gear*, 223 F. Supp. 2d at 957 (citations omitted); *see NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234–35 (7th Cir. 1995).

Second, several claims in the Amended Complaint also seek to enforce rights equivalent to those provided exclusively under 17 U.S.C. § 106. *See Micro Data*, 20 F. Supp. 2d at 1261. A state-law claim is equivalent when the allegations support a claim under the Copyright Act without additional requirements. *Through the Door Inc. v. J.C. Penney Co.*, No. 06-C-540-S, 2007 WL 2265781, at *2 (W.D. Wis. Mar. 28, 2007). For example, the right to access or use copyright-protected software, to reproduce or to distribute it, to prepare derivative software, or to profit from distributing software to third persons are rights *exclusively* available under, and governed by, the Act. *See* 17 U.S.C. § 106(1)–(3); *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1199 (2021); *Liu v. Price Waterhouse LLP*, 302 F.3d 749, 754 (7th Cir. 2002). Moreover, such rights are *exclusively* matters of federal law. So, "when rights are asserted in uncopyrighted expressions in a copyrighted work, the Copyright Act

---

[4] The relevant rights specified in § 106 here are: "(1) to reproduce the copyrighted work in copies …; (2) to prepare derivative works based upon the copyrighted work; [and] (3) to distribute copies … of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending ….." 17 U.S.C. § 106.

still can preempt state law." *Seng-Tiong Ho*, 648 F.3d at 501 & n.9 (citation omitted); *see Vaughn v. Kelly*, No. 06 C 6427, 2007 WL 804694, at *3 (N.D. Ill. Mar. 13, 2007).

As shown below, the Copyright Act preempts most of Plaintiffs' claims because "the state law claims seek to vindicate rights that are already protected by the Copyright Act." *Baiul v. NBC Sports*, 708 F. App'x 710, 712 (2d Cir. 2017); *see* 17 U.S.C. § 301(a). "Regardless of the title of each cause of action, [P]laintiff[s'] basic claim is that because [they are] co-author[s] of the copyrighted material and a co-owner of the copyrights, [D]efendants' copyrights should not entitle them to the full bundle of privileges that attach to copyright ownership." *See Weber v. Geffen Records, Inc.*, 63 F. Supp. 2d 458, 463 (S.D.N.Y. 1999). "It is only through this basic claim that any enrichment is unjust, that any competition is unfair, or that anyone profiting must account to [P]laintiff[s]." *See id.*

**Count Two.** Plaintiffs assert an equitable claim for alleged breach of an implied contract of partnership. Doc. 39 at 8–9 ¶¶ 45–52. They seek damages from Defendants for their unpaid "share of the profits" of the implied partnership. *Id.* at 8 ¶ 47. Count Two alleges Defendants are profiting unfairly by making the IP-Math and IP-LLC Software available for use by third persons (distributing it) without sharing the resulting revenue with Plaintiffs. The right to distribute copyrighted software for a fee is governed *exclusively* by 17 U.S.C. § 106(3). *In re DMCA Section 512(h) Subpoena to YouTube (Google, Inc.)*, 581 F. Supp. 3d 509, 517 (S.D.N.Y. 2022). Because Plaintiffs assert rights in the copyright-protected software, the claim is preempted regardless of whether the information Plaintiffs provided, which they

allege is embedded in the software, is independently protectable under the Copyright Act. *See Seng-Tiong Ho*, 648 F.3d at 501 & n.9.

Where there are joint authors, as the Amended Complaint also suggests, "[e]ach author, as a co-owner, has the right to use or to license the use of the work, subject to an accounting to the other co-owners for any profits." *Ahn.*, 965 F. Supp. at 1138; *see Donovan v. Quade*, 830 F. Supp. 2d 460, 495–96 (N.D. Ill. 2011). By seeking a share of profits as an equitable remedy based on a supposed implied partnership to profit from distributing the software, Plaintiffs assert rights equivalent to those afforded only under 17 U.S.C. § 106. *Hobbs v. John*, No. 12 C 3117, 2012 WL 5342321, at *8 (N.D. Ill. Oct. 29, 2012) (state-law claim for equitable accounting preempted). "[C]laims for an accounting or compensation due to a plaintiff's status as a co-owner are preempted by the Copyright Act as they are equivalent to the claims protected by the Copyright Act." *Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg.*, 448 F. Supp. 2d 244, 255–56 (D. Mass. 2006), *aff'd*, 510 F.3d 77 (1st Cir. 2007). This holds true even if Plaintiffs' embedded information is not independently protected by the Act. *See Seng-Tiong Ho*, 648 F.3d at 501 & n.9.

**Count Four.** Plaintiffs plead a claim for unjust enrichment on the ground that they "provided Defendants with at least $23.8 million in unpaid services and invaluable Developed TS/IP"—i.e., Plaintiffs allegedly helped create and thus co-authored the code embedded in the IP-Math and IP-LLC Software and claim entitlement to a share of profits from it. Doc. 39 at 10–11 ¶ 63. "Courts have generally concluded that the theory of unjust enrichment protects rights that are essentially 'equivalent' to rights protected by the Copyright Act; thus, unjust enrichment claims

relating to the use of copyrighted material are generally preempted." *Levine v. Landy*, 832 F. Supp. 2d 176, 187 (N.D.N.Y. 2011). "[T]here is no meaningful distinction between an unjust enrichment claim which," as here, "asserts that defendants received an improper benefit by using the copyrighted work and the copyright claim based on the same unauthorized use." *Through the Door*, 2007 WL 2265781, at *3. Even if the information embedded in the software is not itself protected by copyright, this claim is preempted because it seeks a remedy provided exclusively by the Act. *Seng-Tiong Ho*, 648 F.3d at 501 n.9.

**Counts Five and Ten.** Plaintiffs contend Defendants are misappropriating trade secrets contained in the IP-Math and IP-LLC Software by using the software to compete with Plaintiffs, without sharing profits. Doc. 39 at 11–13 ¶¶ 70–88; *id*. at 17–18 ¶¶ 122–24. Defendants' "misappropriation" is distributing and profiting from software that Paragon controls. "Plaintiff[s'] misappropriation claim, as alleged in the … complaint, is [thus] indistinguishable from [a] copyright claim and therefore preempted. The allegations are that plaintiff invested time and money creating the copyrighted [software applications] which were misappropriated by defendants." *Through the Door*, 2007 WL 2265781, at *3; *see* 17 U.S.C. § 106(3) (right of distribution). This claim is equivalent to a right under the Copyright Act and is preempted. *CEO Mktg. Promotions Co., Inc.*, 739 F. Supp. at 1152 (holding misappropriation claim preempted); *see also supra* (right to accounting).

The misappropriation claim, which seeks a copyright-like remedy, remains preempted even if the information provided by Plaintiffs, which they say is embedded in Paragon's software, is not independently protected by the Act. "[T]he Copyright

Act's 'preemptive reach ... encompasses state law claims concerning uncopyrightable material." *Vaughn*, 2007 WL 804694, at *3 (misappropriation claim preempted).

**Count Six.** Plaintiffs' civil-conspiracy claim hinges on alleged rights to access, use, and profit from the IP-Math and IP-LLC Software. Doc. 39 at 14 ¶¶ 91–95. It is thus preempted for the same reasons Plaintiffs' predicate tort claims are preempted. *Higher Gear*, 223 F. Supp. 2d at 957 (civil-conspiracy claim preempted).

**Counts Eight and Nine.** Plaintiffs allege Defendants have tortiously interfered with existing and prospective contractual and business relations that Plaintiffs have with third persons. Doc. 39 at 15–17 ¶¶ 102–121. These claims hinge on alleging that Defendants: (1) have deprived Plaintiffs of access to trade secrets they allegedly co-authored and co-own with Defendants (which are "embedded in software"—i.e., the IP-LLC Software, *id.* at 18 ¶ 127; and (2) are copying and distributing the software to third persons (via licensing) and profiting from it, without sharing profits with Plaintiffs. *See* 17 U.S.C. § 106(1)–(3). The tortious-interference claims are thus preempted for the same reasons Counts Two, Four, and Five are preempted. *See, e.g., FASA Corp. v. Playmates Toys, Inc.*, 869 F. Supp. 1334, 1359 (N.D. Ill. 1994) (dismissing as preempted plaintiff's state-law claim for tortious interference). Again, this preemption applies regardless of whether the information from Plaintiffs embedded in the software is itself copyright-protected. *Seng-Tiong Ho*, 648 F.3d at 501 n.9. The alleged rights are unavoidably governed by the Act.

**Count Eleven.** Plaintiffs allege Defendants unfairly competed by restricting Plaintiffs' access to the IP-Math and IP-LLC Software and deprived them of shared profits. Doc. 39 at 18 ¶¶ 125–31. This is equivalent to asserting rights to use,

distribute, and profit from software on the grounds that it contains information from Plaintiffs. 17 U.S.C. § 106(1)–(3); *Hobbs*, 2012 WL 5342321, at *8. "Because plaintiff[s'] unfair competition claims merely restate [unasserted] copyright claims under state law, they are preempted." *Mist-On Sys., Inc. v. Gilley's European Tan Spa*, 303 F. Supp. 2d 974, 980 (W.D. Wis. 2002). Plaintiffs seek copyright-like remedies concerning information embedded in copyright-protected software; the claim is thus preempted, even if the information itself is not protected by the Act. *Seng-Tiong Ho*, 648 F.3d at 501 & n.9. To hold otherwise would let Plaintiffs improperly create state-law remedies that usurp the Act. *Id.*; *see* 17 U.S.C. § 301(a).

**Count Twelve.** Plaintiffs allege the Estate breached its Fiduciary Duty, an allegation that does not pertain to Paragon or John Holland.

**Counts Thirteen and Fourteen.** Each of Plaintiffs' injunction requests centrally depends on alleging that Defendants are improperly using, distributing, licensing, modifying, and profiting from the IP-Math and IP-LLC Software. Doc. 39 at 19–22 ¶¶ 138–48, 143(c), 148(d)(e). Plaintiffs' alleged irreparable harm thus stems fundamentally from rights under 17 U.S.C. § 106. Plaintiffs have "not established how the injunctive relief [they are] requesting under state common law is different from" redress available only under the Copyright Act. *See Mist-On Sys.*, 303 F. Supp. 2d at 980. Further, the likelihood of success of the underlying claims is inherently bound up with the Act. To the extent Plaintiffs seek injunctive relief based on a claim preempted by the Act, the injunction remedy is also preempted. Once again, this remains so even if Plaintiffs' information embedded in Paragon's software is not itself

independently protectable under the Act. *See Seng-Tiong Ho*, 648 F.3d at 501 & n.9. This preemption is necessary to protect the Copyright Act's exclusivity. *Id.*

### D.    Each of the 14 Counts Fails to State a Plausible Claim for Relief.

To the extent Plaintiffs' claims are not preempted by the Copyright Act, they should be dismissed under Rule 12(b)(6). All 13 counts against John Holland and Paragon fail to allege specific enough facts to render the claims plausible. And some counts also fail as a matter of law:

(1) Counts One (breach of contract), Two (implied partnership), Three (breach of contract), and Seven (tortious interference with contract) fail to identify the contractual terms allegedly breached;

(2) Counts Four (unjust enrichment), Five (misappropriation of trade secrets), Six (civil conspiracy), Eight (tortious interference with prospective contractual relations), Nine (tortious interference with business relations), Ten (misappropriation of business information or conversion) and Eleven (unfair competition) fail to allege necessary elements;

(3) Counts Thirteen (Injunction) and Fourteen (Injunction Pending State Department Investigation) fail to allege the predicate violation or standing;

(4) Counts One, Three, and Seven are also barred by the statute of frauds; and

(5) throughout, Plaintiffs fail to allege plausible causation of injury.

### 1.    Count One Fails to State a Plausible Claim for Breach of Contract.

To plead breach of contract under Wisconsin law, "the plaintiff must show a valid contract that the defendant breached and damages flowing from that breach." *Matthews v. Wis. Energy Corp. Inc.*, 534 F.3d 547, 553 (7th Cir. 2008). This requires

first specifically alleging the contractual terms allegedly breached. *See Pagoudis v. Keidl*, 406 Wis. 2d 542, 554 (2023). Plaintiffs identify only a "Mutual Non-Disclosure Agreement" and do not quote or describe any contractual provision that Defendants have allegedly breached, let alone connect such breach to claimed damages. Doc. 39 at 6–8 ¶¶ 34–44. Plaintiffs vaguely reference "the terms of the NDAs" without stating them. *Id*. at ¶ 38.

It is thus impossible for Defendants to ascertain what contractual provision has been allegedly breached or whether the "public business strategies, engineering knowledge, and Developed TS/IP" allegedly disclosed to the public even fall under the contractual scope. *See* Doc. 39 at 8 ¶ 40. Nor does the Amended Complaint allege how that information was allegedly disclosed. *Id*. The Amended Complaint thus fails to plead "factual content that allows the court to draw the reasonable inference" that Defendants are liable for breach of contract. *Jackson*, 121 F.4th at 1125–26. This claim is unsupported and implausible, and it should be dismissed under Rule 12(b)(6).

2. <u>Count Two Fails to State a Plausible Claim for Breach of Implied Contract of Business Partnership</u>.

Under Wisconsin law, "[t]he essence of a contract implied in fact is that it arises from an agreement circumstantially proved," including from the parties' conduct. *See Dickman v. Vollmer*, 303 Wis. 2d 241, 252–53 (Ct. App. 2007) (citation omitted). On this point, Tennessee and Mississippi law align. *See Franklin v. Franklin ex rel. Phillips,* 858 So. 2d 110, 120 (Miss. 2003); *Givens v. Mullikin ex rel. Estate of McElwaney*, 75 S.W.3d 383, 407 (Tenn. 2002). The plaintiff must establish the terms of the implied agreement, which, like an express contract, must result from a meeting of the minds. *See Lindquist Ford, Inc. v. Middleton Motors, Inc.*, 557 F.3d 469, 480–

81 (7th Cir. 2009) (applying Wisconsin law); *Givens*, 75 S.W.3d at 407; *Gulf Coast Hospice LLC v. LHC Grp. Inc.*, 273 So. 3d 721, 735 (Miss. 2019).

To establish an implied-in-fact contract that forms an implied partnership, the plaintiff must show an agreement to share the profits of a particular business endeavor. *CapitalPlus Constr. Servs., LLC v. Blucor Contracting, Inc.*, 536 F. Supp. 3d 295, 305 (E.D. Tenn. 2021) (applying Tennessee law); *Carlson v. Brabham*, 199 So. 3d 735, 740 (Miss. Ct. App. 2016); *Paulick v. Denny*, 301 Wis. 2d 747 (Ct. App. 2007).

The Amended Complaint fails to plead this specifically or plausibly. Doc. 39 at 8–9 ¶¶ 45–52. Though it alleges that "Plaintiffs and Defendant Clearspan and Dan [Holland] worked as partners in creating Developed TS/IP," *id*. at 6 ¶ 30, it never pleads any specific terms of the purported implied partnership agreement, referring merely vaguely to unspecified "prior agreements" and "business agreements," *id*. at 9 ¶ 51. Nor does Count Two specifically allege which defendant or defendants are the implied partners with Plaintiffs. *Id*. at 8–9. To the extent it is Clearspan, the Amended Complaint fails to state an implied-partnership claim against Paragon or John Holland or the other defendants. Nor does the Amended Complaint plausibly allege how an implied partnership agreement was breached. The complaint thus fails to plead "factual content that allows the court to draw the reasonable inference" that any of the defendants are liable for breach of an implied contract of partnership. *Jackson*, 121 F.4th at 1125–26. This claim is factually bereft and implausible.

Furthermore, the unwritten years'-long implied agreement is invalid under Wis. Stat. § 241.02(1): "In the following case every agreement shall be void unless such agreement or some note or memorandum thereof, expressing the consideration,

21

be in writing and subscribed by the party charged therewith: (a) Every agreement that by its terms is not to be performed within one year from the making thereof." No factual allegations in the Amended Complaint even attempt to show this is met.

3.    Count Three Fails to State a Plausible Claim for Breach of Contract By Prevented Performance.

To plead breach of contract under Mississippi or Wisconsin law, "the plaintiff must show a valid contract that the defendant breached." *Matthews*, 534 F.3d at 553 (Wisconsin law); *Maness v. K & A Enters. of Miss., LLC*, 250 So. 3d 402, 414 (Miss. 2018). The Amended Complaint alleges Defendant Clearspan agreed in 2009 with "Plaintiffs" to "operate as partners in developing proprietary engineering services …." Doc. 39 at 9 ¶ 54. It alleges that "Defendants" breached this contract by ordering Plaintiffs to stop performing the agreement. These allegations, like the similarly vague allegations in Count Two, are far too bare-bones and generic to state a plausible claim for breach of contract. *See Jackson*, 121 F.4th at 1125–26.

The Amended Complaint again fails to attach the alleged contract, and it makes no specific allegations regarding the contractual terms or which terms were breached. We cannot understand how "Defendants" could breach the agreement by "discharging" Plaintiffs and ordering them "to refrain from the performance of any further service under the contract." Doc. 39 at 10 ¶ 58. Nor is it understandable how the agreement created a "partnership" when it appears that Plaintiffs were service-providers under the agreement or how other "Defendants," who are not alleged to be parties to the agreement, could nonetheless breach it. *See id*. The Amended Complaint does not plead any "factual content that allows the court to draw the reasonable inference" that Defendants are liable for breach of an alleged agreement

22

by frustrating Plaintiffs' performance. *See Jackson*, 121 F.4th at 1125–26. If the alleged 16-year-long contract is oral, it is invalid under Wis. Stat. § 241.02(1). This claim should be dismissed under Rule 12(b)(6).

4.     Count Four Fails to State a Plausible Unjust-enrichment Claim.

Under Mississippi, Tennessee, and Wisconsin law, a claim for unjust enrichment—which, in the absence of a contract, legally imputes one where circumstances warrant it—requires a plaintiff to have conferred a benefit on a defendant, which the defendant unjustly retains without compensating the plaintiff. *See SEL Bus. Servs., LLC v. Lord*, 367 So. 3d 147, 151 (Miss. 2023); *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005); *Mgmt. Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 206 Wis. 2d 158, 188–89 (1996).

The Amended Complaint alleges that all "Plaintiffs" provided all "Defendants" with at least $23 million in unpaid services and resulting intellectual property. Doc. 39 at 10–11 ¶¶ 61–69; *see id*. at 6 ¶ 30. Yet, the Amended Complaint fails to explain how each Plaintiff provided benefits to each Defendant. It does not specify the nature of these services or how they amount to $23 million in value or what "resulting intellectual property" each individual Defendant allegedly was provided. Nor does it allege how each individual Defendant allegedly realized the benefit that was conferred. The Amended Complaint fails to plead "factual content that allows the court to draw the reasonable inference" that circumstances exist under which Defendants are liable for unjust enrichment; the claim is far too vague and conclusory to be plausible. *See Jackson*, 121 F.4th at 1125–26. It must therefore be dismissed.

5.  <u>Count Five Fails to State a Plausible Claim for Misappropriation of Trade Secrets</u>.

Plaintiffs claim all "Defendants" misappropriated trade secrets in violation of Wisconsin's Uniform Trade Secrets Act ("UTSA"), Wis. Stat. § 134.90, but do not allege any actual trade secrets. Doc. 39 at 11–13. "The UTSA bars disclosing or using without consent a trade secret acquired through improper means. [A] … plaintiff must prove the same two elements as to each act: (1) the information at issue is a trade secret; and (2) the defendant misappropriated it." *Danaher Corp. v. Lean Focus, LLC*, No. 19-CV-750-WMC, 2021 WL 3190389, at \*14 (W.D. Wis. July 28, 2021).

Nor do Plaintiffs even attempt to plead conduct that meets the statutory definition of misappropriation:

> (a) Acquiring the trade secret of another by means which the person knows or has reason to know constitute improper means.

> (b) Disclosing or using without express or implied consent a trade secret of another if the person did any of the following:

> > 1. Used improper means to acquire knowledge of the trade secret.

> > 2. At the time of disclosure or use, knew or had reason to know that he or she obtained knowledge of the trade secret through any of the following means:

> > > a. Deriving it from or through a person who utilized improper means to acquire it.

> > > b. Acquiring it under circumstances giving rise to a duty to maintain its secrecy or limit its use.

> > > c. Deriving it from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use.

> > > d. Acquiring it by accident or mistake.

Wis. Stat. § 134.90(2). The Amended Complaint fails to plausibly allege facts showing that Defendants committed any such "misappropriation."

24

The Amended Complaint concedes that Defendants had the right to access, control, and use the purported trade secrets, the "Developed TS/IP," which means as a matter of law there could not possibly be any "misappropriation." The Amended Complaint alleges "Plaintiffs" and certain defendants worked as "partners" to create the "Developed TS/IP," Doc. 39 at 6 ¶ 30, and "Defendants used Developed TS/IP to which they had access because of their relationship with Plaintiffs." *Id*. at 12 ¶ 72. Defendants allegedly restricted Plaintiffs' right of access, use, and distribution of the Developed TS/IP. *See id*. at 7, 14–15 ¶¶ 39, 95, 104; *id*. at 12 ¶¶ 72, 79.

Although the Amended Complaint alleges that Defendants improperly "used" the trade secrets to "compete" with Plaintiffs, Doc. 39 at 12 ¶ 79, it does not even begin to explain how. The Amended Complaint alleges no factual basis for why such competition, even taken as true, was prohibited. Further, it makes the nonsensical assertion that "Defendants acquired the Developed TS/IP by breaching the NDA," *id*. at 12 ¶ 74. "Breaching the NDA" cannot be tantamount to "acquiring" the trade secrets. Plaintiffs thus fail to allege any "improper means," such as "espionage, theft, bribery, misrepresentation and breach or inducement of a breach of duty to maintain secrecy." Wis. Stat. Ann. § 134.90(1)(a). Even assuming the Developed TS/IP qualifies as a trade secret or was improperly disclosed, Plaintiffs fail to plausibly allege that Defendants "acquired" it through improper means, or used or disclosed it after it was acquired through improper means, or otherwise derived or acquired it unlawfully. *See* Wis. Stat. § 134.90(2).

Further, this claim cannot be maintained in light of Plaintiffs' allegations that Daniel Holland was the majority member of both defendant Paragon and plaintiff

Inspired Pursuits, LLC. Doc. 39 at 3 ¶ 6. One is legally incapable of "misappropriating" a trade secret that one owns or co-owns and has rights to use. *Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 299 F. Supp. 2d 565, 577 (E.D. Va. 2004).

The Amended Complaint thus fails to plausibly plead the elements of misappropriation. *Danaher Corp.*, 2021 WL 3190389, at *14.

6.    <u>Count Six Fails to State a Plausible Claim for Civil Conspiracy</u>.

To state a claim for civil conspiracy under Wis. Stat. Ann. § 134.01, Plaintiffs must allege: "(1) the defendants acted together, (2) with a common purpose to injure the plaintiff's business, (3) with malice, and (4) the acts financially injured the plaintiff." *Medline Indus., Inc. v. Diversey, Inc.*, 563 F. Supp. 3d 894, 916–17 (E.D. Wis. 2021) (citation omitted). Plaintiffs do not plead a plausible claim for conspiracy.

First, the factual allegations of conspiracy by "Defendants" are far too vague to establish a conspiracy. Plaintiffs allege no agreement among or specific conduct by "Defendants" that constitutes a conspiracy, nor do they state its purpose. A "plaintiff must at least allege the conspiracy in more than conclusory fashion. 'Dick and Jane conspired to commit a wrongful act' will not do." *Boyland Auto Grp. III LLC v. Boyland*, 691 F. Supp. 3d 917, 923 (E.D. Wis. 2023). A "general allegation of conspiracy, without a statement of the facts constituting that conspiracy, is only an allegation of a legal conclusion and is insufficient to constitute a cause of action." *Duncan v. Manning*, 998 F. Supp. 2d 725, 734–35 (E.D. Wis. 2014) (citation omitted). A "complaint based on a theory of collective responsibility must be dismissed. That is true even for allegations of conspiracy." *Bank of Am.*, 725 F.3d at 818.

26

Second, at most, the Amended Complaint alleges Defendants are profiting by competitively using the Developed TS/IP for themselves, while restricting Plaintiffs' access to the trade-secret software. *See* Doc. 39 at 6 ¶ 30; *id*. at 11 ¶¶ 63–66; *id*. at 12 ¶¶ 72, 79; *id*. at 14 ¶ 95; *id*. at 18 ¶ 126. But the "conspiracy cases are replete with statements pointing out that competition that incidentally harms another when the purpose is to improve one's competitive advantage does not run afoul of conspiracy laws if there is not a malicious motive." *Medline*, 563 F. Supp. 3d at 918. The Plaintiffs' conclusory allegations of malice are insufficient to allege that Defendants were doing anything other than promoting their own business activities.

Third, Plaintiffs do not allege how it was unlawful for Defendants to terminate their business relationships with Plaintiffs or to restrict Plaintiffs' access to the software. Doc. 39 at 13–14 ¶¶ 89–97. Nor do they allege any predicate underlying claim. The conspiracy claim is impermissibly vague and implausible.

Fourth, the conspiracy claim is barred by the intra-corporate conspiracy doctrine when it alleges that Paragon's employees and officers conspired with Paragon. *Norkol/Fibercore, Inc. v. Gubb*, 279 F. Supp. 2d 993, 1000 (E.D. Wis. 2003).

> 7.   Count Seven Fails to State a Plausible Claim for Tortious Interference with an Existing Contract.

A claim for tortious interference with a contract has five elements: (1) the plaintiff had a contract or a prospective contractual relationship with a third party; (2) the defendant interfered with the relationship; (3) the interference was intentional; (4) damages resulted; and (5) the defendant was not justified or privileged to interfere. *Medline*, 563 F. Supp. 3d at 906–07 (Wisconsin law). Plaintiffs fail to plead a plausible interference claim. First, Plaintiffs allege "Defendants" had

27

an oral contract with "Plaintiffs," but they fail to allege any terms. Doc. 39 at 15 ¶ 99. Plaintiffs suggest the "contract" involves exclusively servicing Clearspan's engineering needs, *id.*, but that is far too indefinite to constitute a binding contract. The claim thus lacks "factual content that allows the court to draw the reasonable inference" that Defendants are (or could be) liable for tortious interference. *See Jackson*, 121 F.4th at 1125–26. Second, a party cannot interfere with a contract it is a party to. *Medline*, 563 F. Supp. 3d at 910. Third, even if a 16-year-long oral contract were properly alleged, it would be unenforceable under Wis. Stat. § 241.02(1).

8.    <u>Count Eight Fails to State a Plausible Claim for Tortious Interference with Prospective Contractual Relations</u>.

Tortious interference with prospective contractual relations has the same elements as Count Seven. *Medline*, 563 F. Supp. 3d at 906–07 (addressing Wisconsin law). Plaintiffs again fail to plead a plausible claim for tortious interference.

Plaintiffs generally allege that they reasonably expected to enter into contractual relationships in the structural-framing industry by using the Developed TS/IP and Defendants interfered with this by "with[holding] access and ownership rights to IP-Math." Doc. 39 at 15 ¶ 104. The Amended Complaint fails to individually identify or even describe any of the prospective clients, to say how Defendants' alleged conduct disrupted those prospective relationships, or to describe the nature of Plaintiffs' loss. Nor does the Amended Complaint explain how restricting access to the "IP-Math" was wrongful, when "Defendants" have ownership and control over the software. This claim is implausible because it lacks "factual content that allows the court to draw the reasonable inference" that Defendants are liable for tortious interference. *See Jackson*, 121 F.4th at 1125–26.

9.     <u>Count Nine Fails to State a Plausible Claim for Tortious Interference with Business Relations</u>.

This tortious-interference claim, *see Medline*, 563 F. Supp. 3d at 906–07 (elements), is entirely conclusory and speculative. Doc. 39 at 17 ¶¶ 116–21. Plaintiffs fail to allege a single specific fact about the purported business relationships, Defendants' supposed knowledge of those relationships, or an intent to disrupt them. *See Jackson*, 121 F.4th at 1125–26. Nor does the Amended Complaint explain how restricting access to the "IP-Math" was wrongful, especially when "Defendants" admittedly co-own and control the software.

10.     <u>Count Ten Fails to State a Plausible Claim for Misappropriation of Confidential Business Information</u>.

This claim merely consists of three conclusory paragraphs devoid of substance. Doc. 39 at 17 ¶¶ 122–24; *see Jackson*, 121 F.4th at 1125–26. It fails to allege what information was misappropriated, how it was misappropriated, or how Plaintiffs were harmed. To the extent the count may be construed as a conversion claim, it similarly fails. A "person is liable for conversion when he or she (1) intentionally controls or takes property belonging to another, (2) without the owner's consent, (3) resulting in serious interference with the owner's rights to possess the property." *Midwestern Helicopter, LLC v. Coolbaugh*, 351 Wis. 2d 211, 217 (Ct. App. 2013). This count alleges no specific facts that might satisfy these elements. To the extent it fails to allege the conversion of tangible property, it further fails to state a claim. *Md. Staffing Servs., Inc. v. Manpower, Inc.*, 936 F. Supp. 1494, 1507 (E.D. Wis. 1996).

11.    <u>Count Eleven Fails to State a Plausible Claim for Unfair Competition</u>.

Under Wisconsin law, to state a claim for unfair competition via misappropriation, as alleged here, Plaintiffs must allege: "(1) time, labor, and money were expended in the creation of the thing misappropriated; (2) competition; and (3) commercial damage to the plaintiff. '[T]he essence of the cause of action in misappropriation is the defendant's use of the plaintiff's product ... in competition with the plaintiff.'" *Fin. Equip. Co., Inc. v. Silva*, No. 10-C-794, 2010 WL 4782786, at *10 (E.D. Wis. Nov. 17, 2010). Plaintiffs allege generally that Defendants unfairly compete by restricting Plaintiffs' access to the IP-Math and IP-LLC Software, which they supposedly co-authored and co-own, and by depriving Plaintiffs of a share of profits from use and licensing. Doc. 39 at 18 ¶¶ 125–31. But this does not allege any act of misappropriation. Nor do Plaintiffs allege how a software provider and Plaintiff engineers are in competition. The Court should dismiss the claim.

12.    <u>Count Thirteen's Injunction Request Is Defective</u>.

To obtain a preliminary injunction, Plaintiffs must show: (1) they will suffer irreparable harm; (2) available remedies at law are inadequate; and (3) they will likely succeed on the merits of an underlying claim. *Knox v. Shearing*, 637 F. App'x 226, 228 (7th Cir. 2016); *see Platinum Home*, 149 F.3d at 730. First, for all the reasons explained above, Plaintiffs fail to plead any underlying, injunction-supporting cause of action that has any reasonable likelihood of success. The request for an injunction prohibiting the disclosure and modification of software and mandating the restoration of Plaintiffs' access to it is baseless because all potential underlying claims are factually unsupported and implausible. Doc. 39 at 19–20 ¶¶ 138–43.

Second, Plaintiffs fail to plead specific, non-conclusory facts indicating that they are about to suffer irreparable harm, an essential element for injunctive relief.. The Court should dismiss this request for an injunction as unsupported and implausible.

13.    Count Fourteen's Injunction Request Is Defective.

Plaintiffs' second injunction request is defective for the same reasons the first injunction request is defective, and it too should be dismissed. *See Knox*, 637 F. App'x at 228; Doc. 39 at 21–22 ¶¶ 144–48. Moreover, Plaintiffs lack Article III standing to seek the second injunction because they allege only potential harm to public safety, rather than any imminent, irreparable harm to themselves. Plaintiffs do not allege any concrete, particularized injury to them that is either actual or imminent, that is fairly traceable to Defendants, or that a favorable decision would likely redress. *See Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 639 (7th Cir. 2017). The second injunction request is implausible because the requested relief lacks any cognizable legal basis. Requiring Holland and Paragon to hand over a "record of projects" is just a discovery request disguised as a mandatory injunction. Doc. 39 at 22 ¶ 148(d). Finally, requiring Paragon not to change the configurations in the IP-LLC Software bears no reasonable relation to any of Plaintiffs' claims for relief. *Id.* ¶ 148(e).

## II.    Conclusion.

For the reasons outlined above, the Court should dismiss the Amended Complaint in its entirety with prejudice.

31

Respectfully submitted this 23rd day of May 2025.

**GASS TUREK LLC**
*Counsel for Paragon Component Systems, LLC and John Holland*

*s/ Tamar B. Kelber*
Tamar B. Kelber, SBN 1101802
kelber@gassturek.com
Joshua S. Greenberg, SBN 1107959
greenberg@gassturek.com
241 North Broadway, Suite 300
Milwaukee, WI 53202
T: 414-223-3300
F: 414-224-6116

**MILLER & MARTIN PLLC**
*Counsel for Paragon Component Systems, LLC and John Holland*

*s/ Stephen E. Kabakoff, admitted pro hac vice*
Stephen E. Kabakoff, GA Bar No. 143164
stephen.kabakoff@millermartin.com
1180 W. Peachtree Street, NW, Suite 2100
Atlanta Georgia 30309
T: 404-962-6100

**MILLER & MARTIN PLLC**
*Counsel for Paragon Component Systems, LLC and John Holland*

*s/ James T. Williams, admitted pro hac vice*
James T. Williams, TN BPR 16341
james.williams@millermartin.com
Eric E. Steelman, TN BPR 38463 *admitted pro hac vice*
eric.steelman@millermartin.com
832 Georgia Avenue, Suite 1200
Chattanooga, TN 37402
T: 423-756-6600