# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

INSPIRED PURSUITS, LLC,
QUALTIM, INC., CENTER FOR
BUILDING INNOVATION, LLC,
DRJ ENGINEERING, LLC, KIRK
GRUNDAHL, and SUZANNE GRUNDAHL,

        Plaintiffs,

  V.

PARAGON COMPONENT SYSTEMS, LLC,
JOHN HOLLAND, JAMES HOLLAND,
CLEARSPAN COMPONENTS, LLC,
ANDREW EWIN, DAVID REED, SCOTT
HOELSMA, SETH DUNCAN, MICHAEL
PITTS, AVERY RADMACHER, NATHAN
BIERMEMA, JEREMY BIEREMA, ROB
EASON, and THE ESTATE OF DANIEL
HOLLAND EX REL. SPECIAL
EXECUTOR MARVIN B. SPEED,

        Defendants.

Case No. 3:25-cv-00075-wmc

---

**REPLY BRIEF IN SUPPORT OF PARAGON COMPONENT SYSTEM, LLC
AND JOHN HOLLAND'S MOTION TO DISMISS AMENDED COMPLAINT**

---

### GASS TUREK LLC

*Counsel for Defendants Paragon
Component Systems, LLC and
John Holland*

Tamar B. Kelber, SBN 1101802
kelber@gassturek.com
Joshua S. Greenberg, SBN 1107959
greenberg@gassturek.com
241 North Broadway, Suite 300
Milwaukee, WI 53202
T: 414-223-3300

Plaintiffs' opposition brief does nothing to cure the deficiencies within the four corners of the Amended Complaint. The Court's analysis must focus there. Even if its allegations are assumed to be true, the Amended Complaint should be dismissed under the federal rules.

First, as explained in Defendants Paragon and John Holland's (collectively "Paragon") opening brief (Doc. 52), the Amended Complaint is an indecipherable shotgun and puzzle pleading that violates Rule 8(a)(2). The Amended Complaint names six (6) plaintiffs suing fourteen (14) defendants on fourteen (14) different causes of action, yet it fails to properly plead a factual basis for each asserted cause of action and fails to identify which actions by which defendants allegedly injured which plaintiffs. Plaintiffs' opposition does not remedy the information missing from the Amended Complaint and, instead, Plaintiffs improperly try to put the onus on the Court and Defendants to figure out what they're claiming.

Second, the Copyright Act preempts most of Plaintiffs' state law claims. In an effort to avoid this, Plaintiffs try, but fail, to distinguish the "Developed TS/IP" business model from Paragon's software (referred to as the "IP-LLC Software," "IP-Math," or "Paragon Software") (*e.g.*, Doc. 39 at ¶¶ 127, 139, 143(c)). Plaintiffs' own allegations and arguments demonstrate this cannot be done. Plaintiffs continually acknowledge the Paragon Software was *part of* the business model, and the Amended Complaint is replete with allegations that Plaintiffs co-authored Paragon's software and are thereby entitled to statutory copyright rights in the Paragon Software exclusively afforded under the Copyright Act. 17 U.S.C. §§ 106, 201(a). Nothing in Plaintiffs' opposition overcomes the fact that nearly all the state-law claims should

1

be dismissed based on federal copyright preemption, as explained in Paragon's opening brief (Doc. 52 at 7-19).

Finally, as demonstrated in Paragon's opening brief (Doc. 52 at 19-31), each cause of action in the Amended Complaint fails to properly state a claim under Fed. R. Civ. P. 12(b)(6). Recognizing this, Plaintiffs' opposition agrees their injunctive relief claims (Counts Thirteen and Fourteen) should be dismissed. Doc. 58 at 12. As to the remaining claims, Plaintiffs' arguments fail to cure the deficiencies. Paragon maintains that the Amended Complaint should be dismissed in its entirety.

## I.    Argument

### A.    *Plaintiffs' Opposition Does Not Remedy the Amended Complaint's Failure to Comply with the Pleading Requirements of Rule 8(a)(2).*

As an initial matter, Plaintiffs incorrectly argue that Paragon advocates for a "heightened standard" of pleading simply because *In re Harley-Davidson, Inc. Sec. Litig.*, 660 F. Supp. 2d 969 (E.D. Wis. 2009) was cited in its opening brief. However, the *Harley-Davidson* case was cited only to demonstrate that the Amended Complaint constitutes a puzzle pleading. (Doc. 52 at 3-4). As Paragon thoroughly explained in its opening brief, the claims in the Amended Complaint do not satisfy the pleading requirements of Rule 8(a)(2) – i.e., a "short and plain statement of the claim showing that the pleader is entitled to relief" and "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) (citations omitted).

Plaintiffs make no effort to show how the Amended Complaint specifically places each Defendant on notice of whether the cause of action applies to them and why. Instead, tellingly, Plaintiffs argue "[t]his case involves both written and oral

agreements where the court will undertake an objective analysis," (Doc. 58 at 2), and broadly direct the Court to inoperative exhibits that were filed only with the initial complaint, trying to shift the burden to Defendants and the Court to sort this out. But the Amended Complaint does not provide enough information to connect those dots. And even if it did, neither the Court nor Defendants are obligated to piece together exactly which of the fourteen claims apply to which Defendants and the associated factual bases, all of which are missing from the Amended Complaint. *Plaintiffs* are the masters of their complaint and, as such, they must satisfy the requirements of Rule 8(a)(2).

Plaintiffs cite to Paragraphs 27 through 33 "of the Initial Complaint" (which was superseded by the Amended Complaint) and its exhibit Document 2-1 to "help guide the Court and opposing parties as to the nature of the business model trade secrets in this case." (Doc. 58 at 2).[1] But this citation does nothing to help Plaintiffs cure the Amended Complaint's deficiencies. Whether general guidance documents might be available for the Court and opposing parties to reference/interpret is not the standard for a proper pleading under Rule 8(a)(2). (*See* Doc. 52 at 2-7). Further, these cited paragraphs in both the initial and amended complaints merely contain broad "Factual Allegations Common in All Causes of Action" purporting to provide relevant background; they contain no statement(s) that specify which causes of action are being asserted against which Defendants and why, as required for a proper notice

---

[1] Though exhibits are referenced throughout the Amended Complaint, no exhibits were actually attached by Plaintiffs. This makes Plaintiffs' request for the Court and Defendants to solve the puzzle all the more burdensome.

pleading under Rule 8(a)(2).

Paragraphs 27-33 and Document 2-1 of the Initial Complaint are the *only* citations that Plaintiffs provide as evidence of their compliance with Rule 8(a)(2). (Doc. 58 at 1-3). Otherwise, Plaintiffs exclusively present attorney arguments, without any specific support in the Amended Complaint, regarding why they believe Rule 8 has been satisfied. *Id.* Such arguments in their brief, of course, are not well-pleaded allegations that permit the Court to infer any of the fourteen Defendants are liable for the misconduct alleged. *Jackson v. Methodist Health Servs. Corp.*, 121 F.4th 1122, 1125-26 (7th Cir. 2024); *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

In short, Plaintiffs attempt to divert the Court's attention from the Amended Complaint and seek to supplement its allegations with attorney argument based on vague record citations. But, as the Seventh Circuit recognizes, "at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Airborne Beepers & Video, Inc. v. AT&T Mobility, LLC*, 499 F.3d 663, 667 (7th Cir. 2007). That is precisely the case here; Plaintiffs revert to asking the Court and Defendants to figure out what they are claiming because there simply are not enough allegations within the four corners of the Amended Complaint. Plaintiffs' Amended Complaint therefore must be dismissed for failure to comply with the pleading requirements of Rule 8.

**B.    *Plaintiffs' Opposition Does Not Obviate Copyright Preemption.***

Regarding copyright preemption, Plaintiffs state "[i]t is crucial to identify the two distinct items at issue here: the Paragon Truss software ('IP-LLC Software') and

the Business Model, ('Developed TS/IP')." Doc. 58 at 4; *see also id.* (arguing a "clear distinction between the Developed TS/IP and IP-LLC Software"). Indeed, it is crucial for Plaintiffs to make this argument because it is undisputed Paragon's software is protected by the Copyright Act. (Doc. 52 at 13; Doc. 58 (never disputing Paragon's contention that the software is within the subject matter of copyright)).

Plaintiffs suggest their Amended Complaint evades copyright preemption because it is limited to claims based on the "Developed TS/IP" business model and not based on Paragon's copyrighted "IP-LLC Software." This is incorrect and ignores that the allegations in the Amended Complaint concerning the "Developed TS/IP" business model are inextricably linked to the parties' respective exclusive rights under the Copyright Act to use, access, distribute, and profit from Paragon's "IP-LLC Software." 17 U.S.C. § 106.

First, the Amended Complaint is replete with allegations that Plaintiffs allegedly co-authored Paragon's "IP-LLC Software":

- Plaintiffs "worked together" with all defendants "in a concerted effort to prepare the IP-LLC Software." Doc. 39 at ¶ 37;

- Plaintiffs "provid[ed] thousands of hours of engineering, testing, engineering troubleshooting, and strategic planning for IP-LLC Software…" *id.* at ¶ 55;

- Plaintiffs and Clearspan shared an employee "to further the goals of their partnership" *id.* at ¶ 56;

- Plaintiff Kirk Grundahl partnered in "developing [the] proprietary IP-LLC Software," *id.* at ¶ 73;

- Plaintiffs provided their "work product and resources that are embedded in the software," *id.* at ¶ 127;

5

- Plaintiffs' "interpretation[s] of engineering concepts … are embedded in the software," *id.* at ¶ 139;

- There are "configurations in the IP-LLC Software that use[ ] Plaintiffs' interpretations and calculations of engineering concepts," *id.* at ¶ 143(c); *see id.* at ¶ 148(e);

- Paragon's "IP-Math contains creative work" that "requires engineering" and supervision by professional engineers from Plaintiffs, *id.* at ¶ 146;

- "[C]reative engineered structural component work … took place to create [the] IP-LLC Software," which required "engineering mechanics, physical truss/wall panel testing data, engineering analysis, engineering supervision, professional engineering, and truss plate manufacturing, truss plate testing, truss plate performance and related truss manufacturing knowledge" provided by Plaintiffs, *id.* at ¶ 147;

- Defendants John Holland, Paragon, and its employees are "withh[olding] access and ownership rights to the IP-Math," *id.* at ¶ 104;

- Defendants John Holland and Paragon's employees "restricted all Plaintiffs' access to IP-LLC Software," *id.* at ¶ 39; and

- All defendants (except for Dan Holland's estate) improperly "terminat[ed] Plaintiff's use and ownership rights to the IP-Math," *id.* at ¶ 119.

It does not matter whether the Amended Complaint uses the word "author"; developing, creating, and contributing to software to thereby obtain rights to it necessarily includes authoring computer code. (*See* Doc. 52 at 9-12). And the question whether Plaintiffs have the rights in Paragon's "IP-LLC Software" that they allege hinges on whether Plaintiffs ever obtained ownership rights in the software by having *co-authored* it.[2] This question "cannot be answered without reference to the Copyright

---

[2] The Copyright Act requires any valid transfer of copyright ownership, other than by operation of law, to be in writing. 17 U.S.C. § 204(a). But the Amended Complaint alleges that the parties entered a "valid oral contract" from March 2009 to June 2024.

Act, and it therefore arises under the Act." *Gaiman v. McFarlane*, 360 F.3d 644, 652–53 (7th Cir. 2004) (holding that claim involving disputed question of authorship was governed by the Copyright Act and provided for original federal jurisdiction); *see also NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Higher Gear Grp., Inc. v. Rockenbach Chevrolet Sales, Inc.*, 223 F. Supp. 2d 953, 957 (N.D. Ill. 2002); *Round to Fit, LLC v. Reimer*, 380 F. Supp. 3d 830, 837–38 (S.D. Ind. 2019). The Court cannot resolve Plaintiffs' claims based on their alleged copyright rights to use, access, and monetize the Paragon Software being part of a "business model," without first considering the authorship of the software under the Copyright Act.

Second, despite arguing their damages "are not based upon ownership of the copyrighted material" (Doc. 58 at 5), Plaintiffs' allegations and arguments demonstrate the opposite. Plaintiffs' claims are predicated on allegedly being denied access and use of Paragon's Software, which are rights of a copyright owner afforded exclusively by the Copyright Act. *See* 17 U.S.C. § 106 ("Subject to sections 107 through 122, *the owner of copyright under this title* has the exclusive rights to do and to authorize any of the following: (1) to reproduce the copyrighted work in copies . . .; (2) to prepare derivative works based upon the copyrighted work; (3) to distribute copies . . . of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending").

---

Doc. 39 at ¶ 99; *see also* Doc. 58 at 4-7 (referencing it as an "implicit contract"). Thus, the only way Plaintiffs can allege copyright ownership rights in Paragon's Software is through copyright authorship. 17 U.S.C. § 201(a).

Further, Plaintiffs' opposition admits their "claims [in the Amended Complaint] are based on these issues, *in addition to being improperly disallowed access and use of the IP-LLC software*." (Doc. 58 at 5) (emphasis added). In other words, Plaintiffs do not dispute their claims are based, in part, on assertions that they are entitled to the exclusive rights of a copyright owner afforded under the Copyright Act to use, distribute, and profit from Paragon's Software. To that end, the Amended Complaint repeatedly contends Paragon restricted access to the "IP-LLC Software" without the permission of Plaintiffs who otherwise would have had such rights as copyright authors/owners. (*See, e.g.*, Doc. 39 at ¶¶ 39, 95, 104, 106, 127).

Plaintiffs further argue their "actual economic loss is directly due to the Developed TS/IP that has been misappropriated and publicly exposed . . . [and t]he unjust enrichment claim is based on how Paragon and John Holland are retaining the use of Developed TS/IP and not strictly about the IP-LLC software alone." (Doc. 58 at 5). This argument is misleading because the only part of the Developed TS/IP business model relevant to Defendants Paragon and John Holland is the "IP-LLC Software." Given that Paragon and John Holland are exclusively in the business of developing and commercializing Paragon's "IP-LLC Software," Plaintiffs' argument that Paragon was improperly "retaining the use of Developed TS/IP" is simply another way of stating Plaintiffs believe Paragon improperly denied them the right to access and use Paragon's software, which they otherwise would have had as copyright authors/owners. 17 U.S.C. §§ 106, 201(a).

Third, there is no dispute that Paragon's "IP-LLC Software" is an integral component of the alleged "Developed TS/IP" business model (*see, e.g.*, Doc. 58 at 4,

referring to "*IP-LLC Software that was part of the partnership Developed TS/IP*" and citing to Doc. 39 at ¶¶ 45, 47). Plaintiffs try, but fail, to distinguish the software from the business model. Plaintiffs' argument that the claims in the Amended Complaint do not require determinations concerning which parties have exclusive rights under the Copyright Act (17 U.S.C. § 106) to use, distribute, and profit from the "IP-LLC Software" is unavailing. The Court cannot award Plaintiffs the relief sought without interpreting and applying the Copyright Act.

In view of the above and Paragon's opening brief, the Court would need to first resolve the copyright authorship and ownership issues to determine which parties' have exclusive rights to use, distribute, and profit from Paragon's "IP-LLC Software" before it could address most claims and damages sought in the Amended Complaint. Because the state-law claims cannot be resolved without assessing Plaintiffs' federal copyright rights to the Paragon Software (if any), the claims are preempted. 17 U.S.C. § 301(a) ("[N]o person is entitled to any such [copyright] right or equivalent right in any such work under the common law or statutes of any State"). For these reasons and those discussed further in its opening brief (Doc. 52 at 12-19), Paragon respectfully submits that Counts Two, Four, Five, Six, Eight, Nine, Ten, Eleven, Thirteen, and Fourteen in the Amended Complaint are preempted by the Copyright Act and should be dismissed.

### C.    *Plaintiffs' Opposition Does Not Remedy That All of Its Counts Against Paragon Fail to State Plausible Claims for Relief.*

To the extent Plaintiffs' claims are not dismissed under Rule 8(a)(2) or as preempted by the Copyright Act, they should be dismissed for failing to state a claim under Rule 12(b)(6). Plaintiffs do not even attempt to address each cause of action in

the Amended Complaint, instead Plaintiffs' opposition groups their arguments in eight high-level topics. (*See* Doc. 58 at 6-11). Nothing in Plaintiffs' opposition remedies the deficiencies of its asserted claims or compensates for their missing elements. *See* Doc. 52 at 19-31.

        1.    <u>Counts One Fails to State a Plausible Claim for Breach of Non-Disclosure Contracts</u>.

To plead breach of contract under Wisconsin law, "the plaintiff must show a valid contract that the defendant breached and damages flowing from that breach." *Matthews v. Wis. Energy Corp. Inc.*, 534 F.3d 547, 553 (7th Cir. 2008). This first requires specifically alleging contract terms allegedly breached. *See Pagoudis v. Keidl*, 406 Wis. 2d 542, 554 (2023). But the Amended Complaint never does so. It merely identifies a contract – the "Mutual Non-Disclosure Agreement" separately signed by several Paragon employees (the "NDAs") – and does not identify any provision of the NDAs that Defendants allegedly breached, let alone connect such breach to claimed damages. (Doc. 39 at ¶¶ 34–44). Plaintiffs vaguely reference "the terms of the NDAs" without ever stating them or identifying which were allegedly breached. (*Id*. at ¶ 38).

Plaintiffs' opposition fails to cure these deficiencies —in fact, it never even addresses any breach of the NDAs. (Doc. 58 at 8-12). In the context of trade secret misappropriation, Plaintiffs' opposition generally references the NDAs in Docs. 2-1 and 2-2 (Doc. 58 at 8) and cites to Paragraph 74 of the Amended Complaint which states in full: "Defendants Clearspan, Rob Eason, James Holland, Paragon, and Paragon Employees acquired the Developed TS/IP by breaching the NDAs." (Doc. 39 at ¶ 74). Of course, a mere conclusory statement that Defendants "breach[ed] the

NDAs" does not make this plausible. Plaintiffs make no effort to identify any contract breach. They never point to an NDA term or explain how any Defendant breached it. Plaintiffs have not identified any factual support within the Amended Complaint for their claim.

Because Count One fails to plead any "factual content that allows the court to draw the reasonable inference" that Defendants are liable for breach of the NDAs, Count One should be dismissed under Rule 12(b)(6). *Jackson*, 121 F.4th at 1125–26.

> 2.  Counts Two and Three Fail to State Plausible Claims for Breach of an Implied Contract of a Business Partnership or Prevented Performance.

In Wisconsin, "[t]he essence of a contract implied in fact is that it arises from an agreement circumstantially proved," including from the parties' conduct. *See Dickman v. Vollmer*, 303 Wis. 2d 241, 252–53 (Ct. App. 2007) (citation omitted). The plaintiff must establish the terms of the implied agreement, which, like an express contract, must result from a meeting of the minds. *See Lindquist Ford, Inc. v. Middleton Motors, Inc.*, 557 F.3d 469, 480–81 (7th Cir. 2009) (applying Wisc. law). The Amended Complaint fails to meet this requirement. (Doc. 39 at ¶¶ 45–52). For example, Plaintiffs never plead any particular terms of a purported implied contract having been breached by Paragon, merely referring vaguely to unspecified "agreements" (*id.* at ¶ 51; *see also* Doc. 52 at 20-22).

The allegations that Plaintiffs point to in their opposition do not bridge the gap. First, Plaintiffs cite three paragraphs that do not even reference an implied contract or relate to Paragon. Plaintiffs cite Paragraph 99 in support of their argument that an "implied contract allowed Clearspan exclusive use of IP-LLC

Software and Plaintiffs' testing and engineering expertise." (Doc. 58 at 7). But Paragraph 99 is in Count Seven of the Amended Complaint (a claim for tortious interference) and is not offered to support any breach of contract claim.[3] Plaintiffs then reference Paragraphs 45 and 47 to argue Clearspan had record profits from using the IP-LLC Software. *Id.* However, *none* of these paragraphs reference an "implied contract," identify any terms or duties of an implied contract allegedly breached, or even relate to Defendants Paragon and/or John Holland. These allegations do nothing to make Plaintiffs' implied contract claim against Paragon and/or John Holland more plausible.

Second, though Plaintiffs cite a few paragraphs that do relate to Paragon and/or John Holland, these paragraphs are again included in a different section of the Amended Complaint and still do not identify with any specificity the alleged implied contract at issue. Plaintiffs cite Paragraphs 107-110 to support that "Defendants Paragon and John Holland breached the [implied] agreement." (Doc. 58 at 7). These paragraphs are offered in support of Count Eight (tortious interference) and do not identify any implied contract entered into by Defendants Paragon and/or John Holland nor any specific terms of such an implied contract allegedly breached.

Finally, Plaintiffs again cite to Document 2-1 to allegedly "illustrate[] IP-LLC Software's position in the business model and demonstrate[] how Paragon and John Holland's actions heavily damaged all the financial investment Plaintiffs made in the

---

[3] This is further evidence of Plaintiffs' improper puzzle pleading. Plaintiffs want the Court and Defendants to figure out how the allegations throughout the Amended Complaint might support each of their claims.

Developed TS/IP." (Doc. 58 at 7). Document 2-1, however, does not identify any implied contract, nor does it specify any term(s) of an implied contract allegedly breached by Paragon or John Holland to support a breach-of-contract claim. The Court and Defendants cannot look to this document to guess what Plaintiffs are claiming are the breached provision(s) of an implied contract which are not specified in the Amended Complaint. *See* Fed. R. Civ. P. 8(a)(2).

Ultimately, Plaintiffs argue the Amended Complaint was not required to cite a specific contract provision breached, but must only place the Defendants "on fair notice of the contractual duty breached." (Doc. 58 at 6) (quoting *Riviana Foods, Inc. v. Jacobson Warehouse Co.*, No. 18-cv-6550 (N.D. Ill. May 29, 2020)). Though this case is non-binding and distinguishable, as shown above, the Amended Complaint fails to place Defendants on fair notice of *any* terms, provisions, or duties of any implied contract allegedly breached by Defendants John Holland or Paragon, much less explain the ways the implied contracts were breached. Counts Two and Three thus fail to plead sufficient facts to statute a plausible claim for breach of an implied contract and should be dismissed under Rule 12(b)(6).

Finally, as further support for dismissal, although the Amended Complaint does not allege the duties or obligations owed under any implied contract, to the extent such implied contract required performance by Paragon and/or John Holland for more than one year, such contract would be void under the statute of frauds. *See* Wis. Stat. § 241.02(1).

3.    <u>Count Four Fails to State a Plausible Unjust-Enrichment Claim</u>.

To allege unjust enrichment, Count Four asserts that all "Plaintiffs" provided all "Defendants" with at least $23 million in unpaid services and resulting intellectual property. (Doc. 39 at ¶¶ 61–69; *see id*. at ¶ 30). Yet, as Paragon's brief highlights (Doc. 52 at 23), the Amended Complaint makes no effort to explain how each Plaintiff provided tens of millions worth of benefits to each individual Defendant to unjustly enrich each Defendant. It does not specify the nature of these "unpaid services," how they amount to $23 million in value, or what "resulting intellectual property" each individual Defendant allegedly was provided. Nor does it allege how each Defendant realized millions of dollars of conferred benefits.

Plaintiffs fail to identify *facts* in the Amended Complaint supporting their unjust-enrichment claim. (Doc. 58 at 7-8). Plaintiffs merely offer conclusory arguments that (i) they "plead with specificity the unpaid services it provided Defendants as to the software: their testing calibration expertise, engineering expertise, industry knowledge and trade secrets" (*id*. at 8); (ii) "the economic loss is because, at least in part, the Developed TS/IP [business model] has been misappropriated and publicly exposed" (*id*.); and (iii) the "unjust enrichment claim is based on how Paragon and John Holland are retaining the use of Developed TS/IP" (*id*.). In other words, Plaintiffs cannot attribute their unjust-enrichment claim to anything specific in the Amended Complaint; instead, Plaintiffs try to explain their sparse allegations by unsupported attorney arguments. This does not remedy the pleading deficiencies in Count Four to evade dismissal under Rule 12(b)(6).

4.   Count Five Fails to State a Plausible Claim for Misappropriation of Trade Secrets.

Plaintiffs claim all Defendants misappropriated trade secrets in violation of Wisconsin's Uniform Trade Secrets Act ("UTSA"), Wis. Stat. § 134.90, but do not identify the requisite trade secrets. *See Danaher Corp. v. Lean Focus, LLC*, No. 19-CV-750-WMC, 2021 WL 3190389, at \*14 (W.D. Wis. July 28, 2021); (Doc. 39 at 11-13). Nor do Plaintiffs even attempt to plead conduct meeting the statutory definition of "misappropriation." Wis. Stat. § 134.90(2). Further still, the Amended Complaint concedes Defendants had the right to access, control, and use the purported trade secrets in "Developed TS/IP," which means as a matter of law there could not possibly be any "misappropriation." Count Five fails to plead all required elements of trade-secret misappropriation and should be dismissed under Rule 12(b)(6). (*See* Doc. 52 at 24-26).

Plaintiffs' opposition argues trade-secret misappropriation was "properly alleged in both the body of the Complaint in paragraphs 71-81 and attached Exhibits 2-1 and 2-2." (Doc. 58 at 9). This is wrong (and again, puts the burden on the Court and Defendants to figure out what Plaintiffs are claiming). First, Document 2-1 contains a proposed business organization chart and does not identify any alleged trade secrets, let alone attribute any trade secret to one of the multiple Plaintiffs. Similarly, Document 2-2 contains copies of an operating agreement for Inspired Pursuits, LLC and generic NDAs that do not identify any specific trade-secret information. These exhibits are *not allegations* in the Amended Complaint, nor are they cited therein for purposes of identifying any trade secret at issue. Second, Paragraphs 71-81 in the Amended Complaint refer to a "Developed TS/IP" business

15

model but do not identify any information in the alleged business model that meets the definition of a "trade secret" under Wis. State § 134.90(1)(c), namely information that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use" and "is the subject of efforts to maintain its secrecy that are reasonable under the circumstances." In short, Count Five in the Amended Complaint wholly fails to identify any "trade secret" that has been misappropriated by each Defendant as required by the UTSA. As such, the Court has no basis to infer that any of the Defendants are liable for the misappropriation alleged.

Even if the Developed TS/IP business model identified in Paragraphs 71-81 somehow qualifies as a trade secret or was improperly disclosed, Plaintiffs fail to plausibly allege Defendants Paragon and/or John Holland "acquired" it through improper means, or used or disclosed it after it was acquired through improper means, or otherwise derived or acquired it unlawfully. *See* Wis. Stat. § 134.90(2). Rather, Plaintiffs allege Daniel Holland was the majority member of both defendant Paragon and plaintiff Inspired Pursuits, LLC. (Doc. 39 at ¶ 6). One is legally incapable of "misappropriating" a trade secret that one owns or co-owns and has rights to use. *See* Wis. Stat § 134.90(2) (defining misappropriation as acquiring or disclosing a "trade secret *of another*"). Further, Plaintiffs make the nonsensical assertion that "Defendants acquired the Developed TS/IP by breaching the NDA," (*id*. at ¶ 74; Doc. 58 at 9). "Breaching the NDA" cannot be tantamount to "acquiring" the trade secrets and, as demonstrated above, no plausible breach of the NDA has been

alleged. The Amended Complaint fails to plausibly plead the elements of misappropriation and must be dismissed. (Doc. 52 at 24-26).

      5.    <u>Count Six Fails to State a Plausible Claim for Civil Conspiracy</u>.

A "general allegation of conspiracy, without a statement of the facts constituting that conspiracy, is only an allegation of a legal conclusion and is insufficient to constitute a cause of action." *Duncan v. Manning*, 998 F. Supp. 2d 725, 734–35 (E.D. Wis. 2014) (citation omitted). Yet this is precisely what Count Six does. (*See* Doc. 52 at 26-27).

Plaintiffs cite Paragraphs 27-33, 45, 63-65, 75-80, and 91-93 as allegedly containing facts supporting a claim for civil conspiracy under Wis. Stat. § 134.01. However, notably absent from these paragraphs is any purported agreement by and among Defendants alleging they acted with a common purpose to cause injury to Plaintiffs' businesses, a requirement for a conspiracy. And these paragraphs are insufficient to demonstrate Defendants did anything beyond promoting their own business activities. Indeed, the word "malice" (or its cognates) does not appear anywhere in the pleadings of Count Six.

The Amended Complaint thus fails to allege the essential elements of a civil conspiracy claim: "(1) the defendants acted together, (2) with a common purpose to injure the plaintiff's business, (3) with malice, and (4) the acts financially injured the plaintiff." *Medline Indus., Inc. v. Diversey, Inc.*, 563 F. Supp. 3d 894, 916–17 (E.D. Wis. 2021) (citation omitted). In light of this deficiency, Count Six must be dismissed under Rule 12(b)(6).

6.    <u>Count Seven Fails to State a Plausible Claim for Tortious Interference with an Existing Contract</u>.

The Amended Complaint only provides *four* allegations in support of Count Seven. In their brief, Plaintiffs only highlight Paragraph 99. (Doc. 58 at 10). This paragraph alleges a "valid oral contract exists between Plaintiffs and Defendants Clearspan, Paragon, and John Holland" whereby Plaintiffs Qualtim and DrJ provided engineering services from March 2009 until June 2024. (Doc. 39 at ¶ 99).[4] Paragraph 100 then alleges that Paragon and John Holland, among other Defendants, intentionally induced a breach of this oral contract, but provides no factual support for this conclusion.

Plaintiffs' sparse allegations are insufficient. There are no facts establishing the existence of an oral contract. Paragraphs 99 and 100 do not identify any contractual duties or obligations of *any* Defendants (much less Paragon or John Holland), or plausibly explain how such obligations were breached. Paragraph 100 alleges that "Defendants Paragon, John Holland, Rob Eason, and James Holland intentionally induced Defendant Clearspan to cease using Qualtim and DrJ" but *no facts* are offered in support of this conclusion or to demonstrate how this would be improper. Plaintiffs offer nothing to "nudge[] their claims across the line from

---

[4] Plaintiffs' opposition does not respond to Paragon's argument that even if such a 15-year-long oral contract were properly alleged, it would be unenforceable under the statute of frauds if it required performance that could not be completed for more than a year. Wis. Stat. § 241.02(1); Doc. 52 at 27-28. Even if the pleadings in Count Seven were accurate, Paragon maintains that there can be no plausible interference of an alleged multi-year oral contract never reduced to writing because such contract is void under the statute of frauds.

conceivable to plausible," therefore, Count Seven must be dismissed. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In addition to the factual gaps, Paragon also argued that Paragon and John Holland cannot be held liable for interfering with their own contract . (Doc. 52 at 28) (citing *Medline Industries, Inc. v. Diversey, Inc.*, 563 F. Supp. 3d 894, 906–13 (E.D. Wis. 2021)). Plaintiffs responded "it should be actionable where one party to a multi-party agreement improperly causes another party to breach the agreement." (Doc. 58 at 10). Plaintiffs cite no legal authority for this novel proposition, though the Seventh Circuit has held more generally "[y]ou cannot interfere tortiously with your own contract." *Olympia Hotels Corp. v. Johnson Wax Dev. Corp.*, 908 F.2d 1363 (7th Cir. 1990); *see also Medline*, 563 F. Supp. 3d at 909. Dismissal of Count Seven is warranted.

7.   Count Eight Fails to State a Plausible Claim for Tortious Interference with Prospective Contractual Relations.

Tortious interference with prospective contractual relations has the same elements as Count Seven. *Medline*, 563 F. Supp. 3d at 906–07 (addressing Wisconsin law). Plaintiffs again fail to plead a plausible claim for tortious interference for the same reasons discussed above and in Paragon's opening brief. (Doc. 52 at 28-29).

Paragon's opening brief also explained Count Eight should be dismissed for failing to sufficiently plead any alleged "prospective contractual relations." *Id.* In response, Plaintiffs reference Paragraphs 103-113, citing Paragraphs 103 and 106 more specifically. (Doc. 58 at 11). These paragraphs allege that Plaintiffs reasonably expected to enter into contractual relationships with unspecified component manufacturers by using the Developed TS/IP and Defendants interfered by

withholding access and ownership rights to IP-Math. (Doc. 39 at ¶¶ 103-106). Such allegations, however, are far too general. Plaintiffs fail to identify any actual prospective clients, explain how Defendants' alleged conduct disrupted those prospective relationships, or describe the nature of Plaintiffs' loss. Nor does the Amended Complaint explain how restricting access to the "IP-Math" was wrongful, particularly when it is undisputed that "Defendants" have ownership and control over the Paragon Software containing the IP-Math. Count Eight fails to state a claim for relief and should be dismissed.

8.    Count Nine Fails to State a Plausible Claim for Tortious Interference with Business Relations.

Plaintiffs' opposition argues Counts Eight and Nine together and does not separately address Paragon's arguments to dismiss Count Nine. (Doc. 52 at 29). This tortious-interference claim is entirely conclusory and speculative. (Doc. 39 at ¶¶ 116–21); *Medline*, 563 F. Supp. 3d at 906–07 (elements). Plaintiffs fail to allege a single, specific fact about the purported business relationships, Defendants' supposed knowledge of those relationships, or any intent to disrupt them. Nor does the Amended Complaint explain how restricting access to the "IP-Math" was wrongful, especially when "Defendants" admittedly co-own and control the software.

9.    Count Ten Fails to State a Plausible Claim for Misappropriation of Confidential Business Information.

Plaintiffs' opposition argues that Count Ten alleging misappropriation of confidential business information is the same as Count Five, alleging misappropriation of trade secrets. (Doc. 58 at 11 (citing Paragraphs 71-81 under Count Five as the relevant allegations for Count Ten)). This cause of action is

redundant with Count Five and should be dismissed. It also should be dismissed because it merely consists of three conclusory paragraphs devoid of any substance or factual support. Count Ten fails to allege what information was misappropriated, how it was misappropriated, or how Plaintiffs were harmed. (Doc. 39 at ¶¶ 122–24; Doc 52 at 29). This conclusory, unsupported claim should be dismissed.

### 10.   Count Eleven Fails to State a Plausible Claim for Unfair Competition.

Paragon's opening brief explained that the Amended Complaint fails to sufficiently plead facts to support a plausible claim for unfair competition via misappropriation in Count Eleven. (Doc. 52 at 30). Under Wisconsin law, Plaintiffs must allege: "(1) time, labor, and money were expended in the creation of the thing misappropriated; (2) competition; and (3) commercial damage to the plaintiff. '[T]he essence of the cause of action in misappropriation is the defendant's use of the plaintiff's product ... in competition with the plaintiff.'" *Fin. Equip. Co., Inc. v. Silva*, No. 10-C-794, 2010 WL 4782786, at *10 (E.D. Wis. Nov. 17, 2010). The Amended Complaint does none of this.

Plaintiffs' opposition cites Paragraphs 30, 55, 71, and 79-83 in the Amended Complaint as the alleged support for this claim. (Doc. 58 at 11). But these paragraphs do not allege facts sufficient to support how Defendants Paragon and John Holland, who are in the business of developing the Paragon Software, would allegedly compete with engineering consulting services provided by the Plaintiffs or use the "Developed TS/IP" which the Amended Complaint defines as "a business model that used a proprietary approach in manufacturing trusses." (Doc. 39 at ¶ 71). In other words, the software-developer defendants are not in the business of manufacturing trusses

or providing engineering consulting services; therefore, they would not reasonably compete with Plaintiffs' provision of these services as an unfair-competition claim requires.

Plaintiffs argue that Paragraphs 30, 55, and 71 support "time, labor, and money were expended in the creation of the thing misappropriated." (Doc. 58 at 11). However, these paragraphs do not allege any time, labor, or money expended by Plaintiffs to *develop* the Paragon Software that was allegedly misappropriated. Paragraph 30 refers to investments in the Developed TS/IP business model; Paragraph 55 refers to investments in engineering, testing, engineering troubleshooting, and strategic planning for IP-LLC Software and the deployment of the Developed TS/IP business model; Paragraph 71 refers to the scope of the Developed TS/IP business model. *None* of these paragraphs allege investments by Plaintiffs in coding the Paragon Software itself, which was solely developed by Paragon. Count Eleven should also be dismissed.

### 11. The Parties Agree Counts Thirteen and Fourteen Should Be Dismissed

Defendants argued Count Thirteen ("Injunction") and Count Fourteen ("Injunction Pending State Department Investigation") for injunctive relief are not valid causes of action. (*See* Doc. 52 at 30-31). *Plaintiffs agree*, noting "the requests for injunctive relief be dismissed as separate claims." (Doc. 58 at 12). Accordingly, the Court should dismiss Counts Thirteen and Fourteen.

## II. Conclusion.

For the reasons outlined above, the Court should dismiss the Amended Complaint in its entirety with prejudice.

Respectfully submitted this 7th day of July 2025.

**GASS TUREK LLC**

*Counsel for Defendants Paragon Component Systems, LLC and John Holland*

<u>s/ Tamar B. Kelber</u>
Tamar B. Kelber, SBN 1101802
kelber@gassturek.com
Joshua S. Greenberg, SBN 1107959
greenberg@gassturek.com
241 North Broadway, Suite 300
Milwaukee, WI 53202
T: 414-223-3300
F: 414-224-6116