IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

INSPIRED PURSUITS, LLC,
QUALTIM, INC., CENTER FOR
BUILDING INNOVATION, LLC,
DRJ ENGINEERING, LLC, KIRK
GRUNDAHL, and SUZANNE GRUNDAHL,

      Plaintiffs,                                  Case No. 3:25-cv-00075-wmc

V.

PARAGON COMPONENT SYSTEMS, LLC,
JOHN HOLLAND, JAMES HOLLAND,
CLEARSPAN COMPONENTS, LLC, and
THE ESTATE OF DANIEL HOLLAND EX
REL. SPECIAL EXECUTOR MARVIN B.
SPEED,

      Defendants.

---

**RESPONSE OF PARAGON COMPONENT SYSTEM, LLC AND JOHN HOLLAND TO PLAINTIFFS' MOTION FOR ENTRY OF AMENDED PROTECTIVE ORDER**

---

**GASS TUREK LLC**

*Counsel for Defendants Paragon Component Systems, LLC and John Holland*

Tamar B. Kelber, SBN 1101802
kelber@gassturek.com
Joshua S. Greenberg, SBN 1107959
greenberg@gassturek.com
241 North Broadway, Suite 300
Milwaukee, WI 53202
T: 414-223-3300

Plaintiffs' Motion for Entry of Amended Protective Order is flawed. It is premised on inaccurate and incomplete "factual" assertions and ignores that the parties' dispute regarding the Amended Protective Order has already been presented to the Court for consideration in the parallel Qualtim case. (*See* Docket. No. 3:25-cv-170 at Doc. 140). Plaintiffs know that resolution of this issue in the Qualtim case will apply equally in this case, yet they decided to file a separate motion nonetheless to ask this Court to resolve the same Protective Order dispute twice.

Plaintiffs filed the instant motion claiming Paragon has "refused" to engage in discussions regarding the Amended Protective Order. This is incorrect. Plaintiffs and Paragon have exchanged numerous communications regarding the Amended Protective Order. Paragon has emphasized that identical protective orders have governed the present case and the parallel Qualtim case from their inception, and thus the *same* amended protective orders should be entered in both cases since the parties have agreed that discovery can be used across both cases. Paragon has further clearly stated and reiterated that it cannot agree to allow Qualtim's in-house counsel and paralegal to access documents stamped "Attorneys Eyes Only" and communicated supporting legal authority to Plaintiffs for this position.

Both parties agree that an amended protective order is needed but disagree about the substantive changes. Plaintiffs simply don't like the legally-supported position that Paragon has taken regarding restricting in-house counsel and paralegal access to highly-sensitive information; thus, Plaintiffs filed the instant motion in a misguided attempt to paint themselves as the "good guys" and Paragon as the wrongdoer. However, the complete pertinent context and legal authority

1

demonstrate that Paragon has taken a well-founded legal position, and the Parties have reached an impasse for the Court to resolve, which is also pending in the Qualtim case.

Accordingly, for the reasons below, Paragon respectfully requests that the Court deny Plaintiffs' present request to enter the proposed Amended Protective Order (Doc. 75-1) submitted with the Motion and, instead, enter the proposed Amended Protective Order attached hereto as ExhibitA, which is identical to the Amended Protective Order attached as an exhibit to the Joint Status Report in the related Qualtim case (Docket. No. 3:25-cv-170 at Doc. 140-1), with the exception of striking Paragraphs 13 and 14 that Plaintiffs have attempted to add in this case to allow Qualtim's in-house counsel and paralegal to access Attorney Eyes Only materials.

**I.     Argument**

    A.     Relevant Factual Background

For purposes of full transparency, Paragon provides the following supplementation and/or corrections to the alleged factual background in Plaintiffs' Motion:

On October 23, 2025, *pro se* Plaintiff Kirk Grundahl propounded his first Requests for Production, comprising 57 document requests, on Paragon. (Kabakoff Declaration at ¶ 2). This was the first written discovery served in this case. (*Id*.). On November 24, 2025, Paragon timely responded to each of *pro se* Plaintiff Grundahl's fifty-seven document requests, stating specific objections to each request and in some instances stating "[t]o the extent any responsive, non-privileged documents exist for

2

this request, Paragon will not produce such documents until the Protective Order has been appropriately modified to account for Plaintiff's *pro se* status in this case." (*Id.* at ¶ 3). **Paragon never refused to produce non-privileged, responsive documents to the extent they exist.**

Instead, Paragon simply premised its future document production on modification of the Agreed Protective Order (Doc. 42-1), which was entered when all parties were represented by counsel. Paragon maintained that the existing Agreed Protective Order (Doc. 42-1) required amendment to account for Plaintiff Kirk Grundahl changing his status to a *pro se* litigant because (i) the original Protective Order was agreed to and entered long before Mr. Grundahl elected to proceed *pro se*; and (ii) it did not adequately account for Mr. Grundahl's status as a *pro se* litigant and, thus, would result in a loophole that allowed Mr. Grundahl to access highly sensitive materials that he would not otherwise have been entitled to access as a party represented by counsel. (Kabakoff Dec. at ¶ 4).

After Paragon responded to *pro se* Plaintiff Grundahl's discovery, Attorney Scott Salemi (who only represents the corporate Plaintiffs and Suzi Grundahl, not *pro se* Plaintiff Grundahl) sent a letter to Paragon's counsel to "meet and confer regarding [Paragon's] November 24, 2025, responses to Plaintiff Kirk Grundhal's First Requests for Production…" (Kabakoff Dec., Exhibit 1 , Salemi December 31, 2025, letter). Paragon quickly responded to Attorney Salemi's letter noting, among other things, that (i) Mr. Salemi lacked standing to challenge discovery requests sent by a *pro se* party he does not represent; and (ii) the parties were actively engaged in efforts to revise the Agreed Protective Order by agreement. (Kabakoff Dec., Exhibit

3

2, Kabakoff January 6, 2026, letter). To date, *pro se* Plaintiff Grundahl has not separately followed up with Paragon's counsel regarding any perceived discovery response deficiencies. (Kabakoff Dec. at ¶ 7).

Given Mr. Grundahl's change in status from a represented party to a *pro se* party, the Parties began conferring about amending the Agreed Protective Order (Doc. 42-1) on December 22, 2025 (three days before Christmas).[1] Katie Kelly, an associate at Mr. Salemi's law firm, circulated a "Proposed Revised Protective Order" for the present case – stating in her email that "[Plaintiffs] **intend to modify in the same way the protective order in Case. No. 25-cv-170**…" – i.e., the Qualtim case. (Doc. 75-2)  Thus, from the inception, the parties have contemplated entering *identical* amended protective orders in both cases.

The next day, on December 23rd, Ms. Kelley circulated a second proposed amended protective order reflecting red-line changes. (Doc. 75-3). The red-line protective order added a provision that would allow Qualtim's in-house counsel and their support staff to review "Attorney Eyes Only" documents. (*Id*. at 10). That same day, Ms. Kelly sent an email only to counsel of record in the Qualtim case regarding the proposed amended protective order, noting "the proposed revised protective order sent to you in case 25-cv-75 (which, if acceptable to you, would serve as a template for a revised protective order in 25-cv-170 as well)". (Kabakoff Dec., Exhibit 3,

---

[1] Simultaneously, during the two weeks of Christmas and New Years, the parties were engaged in a court-ordered meet & confer process regarding discovery issues in the Qualtim matter (*See* Docket No. 3:25-cv-170 at Doc. 138), and Plaintiffs were sending Paragon's counsel daily letters (sometimes multiple letters each day) related to the ongoing discovery dispute. (Kabakoff Dec., at ¶ 8).  Paragon's counsel was also working to prepare for the noticed January 15, 2026, corporate deposition of Defendant Inspired Pursuits, LLC in the Qualtim matter. (*Id*.)

4

December 23, 2025 email from Katie Kelly). Thus, in light of Ms. Kelley's two representations that identical amended protective orders would be entered in both cases, Paragon considered all discussions regarding the modified protective order to be applicable to both cases.

Paragon's counsel considered Plaintiffs' proposal regarding in-house counsel and conducted legal research needed to inform their response. (Kabakoff Dec. at ¶ 10). On December 24, 2025 (Christmas Eve), Paragon's counsel notified Attorney Salemi that Paragon had and would circulate additional changes to the proposed amended protective order to address loopholes related to Mr. Grundahl's *pro se* status and his in-house employees' access to Paragon's highly-confidential business information. (Kabakoff Dec. at ¶ 11). Attorney Salemi responded by letter on December 30, 2025, demanding that Paragon "confirm today whether Paragon [*sic*] any proposed changes to the revised Protective Order…" (Kabakoff Dec. at ¶ 12). Paragon responded that same day, providing a letter outlining its position and redlines to the proposed agreed protective order. (*Id.*). The next day, Attorney Salemi responded with further proposed revisions. (*Id.*)

On January 2, 2026, the parties participated in a lengthy meet-and-confer call. (Kabakoff Dec. at ¶ 13). During that call, the parties discussed the proposed amended protective order and agreed that the only outstanding issue related to the in-house counsel having access to AEO materials. (*Id.*). Ultimately, on January 5, 2026, Paragon's counsel emailed Attorney Salemi detailing Paragon's final position concerning in-house counsel access and citing supporting legal authority. (Kabakoff Dec., Exhibit 4, January 5, 2026, email from Stephen Kabakoff). This is the same

5

position that Paragon outlined in the Joint Status Report filed with this Court in the co-pending Qualtim case on January 7, 2026. (*See* Docket. No. 3:25-cv-000170 at Doc. 140 at 11-14).

Despite Paragon's position on the amended protective order being well-established and briefed for the Court in the Qualtim matter, and despite Plaintiffs' prior representations that identical protective orders should be entered in both cases, Attorney Salemi continued to push on the protective order issue in this case. On January 12, 2026, Attorney Salemi emailed all counsel of record in this case (including Paragon's counsel) contending that "[n]o Defendant [including Paragon] responded to [Plaintiffs] request" to meet and confer about the proposed amended protective order. (Kabakoff Dec., Exhibit 5, January 12, 2026 email from Scott Salemi). Paragon's counsel responded, explaining that its "position on the Amended Protective Order is set forth in the joint submission" filed in the Qualtim case, and "[w]e assert that the same disputes exist here." (*Id*. at Ex. 5, January 12, 2026 email from Stephen Kabakoff). Attorney Salemi responded that Plaintiffs "did not agree to any deferral or coordination" on the protective order modifications (wholly contradicting their prior statements) and concluded with "[h]aving received no response Plaintiffs will proceed accordingly and will accurately present this record to the Court." (*Id*. at Ex. 5, January 13, 2026, email from Scott Salemi).

While Paragon does not desire to burden the Court with convoluted procedural history, it's important for the Court to understand that Plaintiffs' motion is pure gamesmanship. Paragon *has not* refused to produce documents, nor has it refused to communicate with Plaintiffs about amending the protective order. Instead, Paragon

6

(i) relied on Plaintiffs' two prior representations that identical Amended Protective Orders should be entered in both cases; (ii) exchanged red-line drafts with Plaintiffs' counsel attempting to modify the protective order until an impasse was reached on the in-house counsel issue; (iii) provided legal authority supporting its position on that issue; and (iv) briefed the Court of the impasse in a *joint* status report. Paragon has done nothing wrong; it has legitimate concerns about the protection of its highly confidential business materials and seeks adequate safeguards with input from the Court. Plaintiffs' litigation gamesmanship and efforts to distort the background leading to the filing of this motion should be admonished.

B.  Amended Protective Order

Nevertheless, both parties agree that the Agreed Protective Order (Doc. 42-1) needs to be amended. And, to the extent that Plaintiffs have now changed their position regarding whether identical Amended Protective Orders are needed in both cases, they are. As demonstrated in the Joint Status Report filed in the Qualtim case (Doc. 140 in Case No. 3:25-cv-170), the parties agreed to add a provision to the protective order which allows discovery to be used across both cases. Therefore, the same protections are needed to ensure the documents are treated consistently.

As outlined in the Joint Status Report in the Qualtim matter, Paragon's position is that the risk of inadvertent disclosure of highly confidential AEO materials by an in-house attorney and paralegal who report directly to *pro se* Plaintiff Kirk Grundahl is substantial. Contrary to Plaintiffs' assertions, Paragon and Plaintiffs both serve the same truss market, albeit in different ways. They attend and participate in the same trade shows. They work with many of the same customers.

7

And, significantly, Mr. Grundahl has already taken actions outside this litigation to create competitive harm to Paragon. For example, he improperly reported Paragon to a Wisconsin licensing board, claiming that Paragon had acted as professional engineers without a license, a claim that was quickly and summarily dismissed. He sent disparaging emails to Paragon's customers to interfere with their business relations with Paragon, communications which form the basis of Paragon's pending motion to supplement the complaint in the Qualtim case.

Paragon has substantial concerns about allowing Mr. Grundahl's in-house legal team access to Paragon's highly-sensitive business information including, for example, its highly confidential financial and pricing information and related customer information.

As evidenced by information publicly available online, Plaintiffs are relatively small companies without the formal, separate departments of larger companies for distinct areas such as marketing, accounting, R&D, and legal.[2] Because of their limited size, Mr. Kirk Grundahl dominates the day-to-day business of his companies as "boss" of all aspects of Plaintiffs' operations including (apparently) micro-managing its litigation against Paragon. Indeed, Kirk and Suzi Grundahl (who are both parties to this litigation) are the President and Vice President of the corporate entities that are co-Plaintiffs.

Plaintiffs' in-house counsel and paralegal therefore work for a relatively small company dominated by a single figure, who is intimately involved as a party (and now a *pro se* litigant) in this litigation. This is not a case involving a large company's in-

---

[2] https://www.qualtim.com/about/staff (last visited January 29, 2026).

house counsel, who works within a sizable in-house practice group and is largely insulated from the company's management side; to the contrary, Mr. Grundahl's in-house counsel is taking direct instructions in this case straight from the top of the company. To evidence this intimate relationship between Mr. Grundahl and his in-house counsel, Mr. Grundahl (or one of his employees), in his *pro se* capacity, previously filed a document *using his former in-house counsel's PACER credentials* when the Qualtim case was pending in Tennessee. *See* Docket No. 1:24-cv-00246-CEA-CHS (E.D. Tenn.) (Doc. 96) (explaining that a motion filed by *pro se* party Kirk Grundahl "was inadvertently filed by Mr. Grundahl's staff member under the incorrect NextGen ECF account that belonged to undersigned counsel" May La Rosa.)

In an organization with distinct, intentional separation, this direct access by Mr. Grundahl of his in-house counsel's personal PACER login would likely be impossible. Mr. Grundahl and his direct reporting employees clearly have access to, and at least some control over, his in-house counsel's accounts, demonstrating a real risk of harm should his in-house counsel have access to highly sensitive Attorneys' Eyes Only documents produced in this litigation.

These are precisely the circumstances in which courts have denied allowing Attorneys' Eyes Only information to be shared with in-house counsel. *See, e.g., Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*, 237 F.R.D. 405, 407 (N.D. Ill. 2006) (the court accepted that in-house counsel who reported directly to the CEO intended to abide by the protective order in good faith, but nonetheless the court denied them access to certain documents because: "In light of [the CEO's] pervasive

9

participation in the case, it cannot be doubted that there will be discussions about the redacted documents. But [in-house counsel] will have in mind—if they are allowed access to the unredacted versions—those portions that have been redacted as well as those that have not. Compartmentalization would be exceedingly difficult, if not impossible, and thus the risk of inadvertent disclosure would be heighted to an unacceptable degree").

Such circumstances are equally present here. Given the close interaction between Mr. Grundahl and his in-house counsel, Mr. Grundahl's personal and direct involvement in this litigation, and other historical instances in this litigation, Paragon's concerns about the significant risk of disclosure are not mitigated by Plaintiffs' purported safeguards. It should suffice for Plaintiffs' outside counsel – Scott Salemi – and his staff, who have some degree of separation from Mr. Grundahl, to review any Attorneys' Eyes Only materials produced in this litigation. There is no need for such materials to be transferred or stored anywhere on a server or other in-house location that Mr. Grundahl (the President of the company) can access.

Accordingly, Paragon respectfully requests that the Court deny Plaintiffs' request to enter the Amended Protective Order attached as an exhibit to their motion and, instead, enter the Amended Protective Order attached as <u>Exhibit A</u>, which is identical to the proposed order filed in the Qualtim case (*See* Docket. No. 3:25-cv-000170 at Doc. 140-1), except for removal of the disputed in-house provision in Paragraph 13.

## II.   Conclusion.

For the reasons outlined above, Plaintiffs' motion should be denied, and their proposed Amended Protective Order (Doc. 75-1) should not be entered. Instead, the Court should enter the proposed Amended Protective Order attached as <u>Exhibit</u> A hereto in both the present case and the co-pending Qualtim action (Case No. 3:25-cv-170) to ensure Paragon's highly-sensitive business documents are adequately protected in both cases.

Respectfully submitted this 29th day of January 2026.

**GASS TUREK LLC**

*Counsel for Defendants Paragon Component Systems, LLC and John Holland*

<u>s/ Tamar B. Kelber</u>
Tamar B. Kelber, SBN 1101802
kelber@gassturek.com
Joshua S. Greenberg, SBN 1107959
greenberg@gassturek.com
241 North Broadway, Suite 300
Milwaukee, WI 53202
T: 414-223-3300
F: 414-224-6116

11