UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WISCONSIN

---

INSPIRED PURSUITS, LLC, QUALTIM, INC.,
CENTER FOR BUILDING INNOVATION, LLC,
DRJ ENGINEERING, LLC, KIRK GRUNDAHL,
and SUZANNE GRUNDAHL,

                Plaintiffs,

v.   Case No. 3:25-cv-00075-wmc

PARAGON COMPONENT SYSTEMS, LLC,
JOHN HOLLAND, JAMES HOLLAND,
CLEARSPAN COMPONENTS, INC.,
ROB EASON, and THE ESTATE OF DANIEL
HOLLAND EX REL. SPECIAL EXECUTOR
MARVIN B. SPEED,

                Defendants.

---

**PLAINTIFFS' MOTION TO COMPEL SOURCE CODE REPOSITORY**

---

**INTRODUCTION**

      This motion concerns the central evidence in this case: the Paragon Truss Software source code repository. In the '75 action, Plaintiffs assert claims for misappropriation, unjust enrichment, and injunctive relief arising from incorporation and continued use of Plaintiffs' engineering contributions within the software. In the related '170 action, Paragon seeks a declaration it owns all intellectual property embodied in that software and that Defendants contributed nothing. Having placed the contents of the Paragon Truss Software at the center of their claims and defenses, the parties cannot resolve those issues without examination of the software itself.

      Plaintiffs therefore requested inspection of the source code repository under Rule 34 and the Agreed Protective Orders, which provide a secure protocol for source code review. Paragon has refused to permit inspection, instead insisting that the source code repository is irrelevant in this action. Rule 37 authorizes an order compelling that inspection.

## FACTUAL BACKGROUND

**I.  THE '75 ACTION.**

The '75 action arises from the parties' former joint venture enterprise, which was structured to integrate multiple aspects of their operations within the truss industry. The enterprise encompassed engineering development, testing programs, professionally engineered and sealed design drawings, software tools, validation systems, engineered product manufacturing, and commercialization activities within a coordinated operational framework.

The Paragon Truss Software functioned as one tool within that broader enterprise. The Amended Complaint alleges that Plaintiffs contributed engineering know-how, methodologies, and related technical systems during the course of that enterprise.

The Amended Complaint further alleges that certain of those engineering contributions were implemented within the Paragon Truss Software, retained following termination of the enterprise, and continue to operate within the software. Based on those allegations, Plaintiffs assert claims including unjust enrichment, misappropriation, and injunctive relief.

**II.  THE '170 ACTION.**

The '170 action is a declaratory judgment action in which Paragon seeks a ruling that it is the exclusive owner of all intellectual property embodied in the Paragon Truss Software. Paragon alleges that it owns all copyright, patent, trademark, and trade secret rights in the software.

Paragon further alleges that no Defendant wrote, modified, or contributed to the source code; that no Defendant designed any portion of the software's architecture or implementation; and that Paragon's employees alone conceived of and reduced to practice any inventions embodied in the software. The Complaint alleges that the source code and its structure constitute proprietary trade secrets maintained in a secured repository.

## III. REQUESTS, NOTICE OF INSPECTION, CONFERRAL, AND IMPASSE.

### A. The '75 Action.

In the '75 action, Plaintiffs served Requests 1, 10-12 seeking production of repository artifacts, including exports of branches or paths implementing core computational models and input value tables, commit logs, and documents reflecting evaluation or integration of engineering contributions. (Salemi Decl. ¶¶ 4, 7-8; Exs. 1, 3-4.) Following written deficiency letters and a conferral, Paragon served supplemental responses, confirming that it "will not produce any portion of the code of the Paragon Truss Software." (Salemi Decl. ¶¶ 9-10; Ex. 5 at Request 11.)

### B. The '170 Action.

In the related '170 action, Defendants served Requests 77 and 78 seeking source code versions sufficient to show engineering inputs incorporated into the Paragon Truss Software during development and post-termination periods. (Salemi Decl. ¶¶ 11–12; Ex. 6.) Paragon objected, asserting it could not respond unless Defendants first identified specific "Engineering Inputs" they believe were incorporated into the software. (*Id.; see also* ¶¶ 13–14; Exs. 7–8.) Paragon took the same practical position in both cases: refusing to permit inspection of the source code repository itself. A similar motion to compel has already been filed in the '170 action.

### C. Notice of Inspection and Conferral.

The Agreed Protective Orders in both actions include a source code inspection protocol set forth in ¶ 14. Under that provision, Plaintiffs served written notice requesting inspection of the Paragon Truss Software source code repository. (Salemi Decl. ¶ 16; Ex. 9.) Paragon did not provide inspection dates and maintained its objections, including its position that the source code repository was irrelevant in this action. The parties conducted meet-and-confer discussions but were unable to resolve the dispute.

IV.    **SLACK PRODUCTION.**

Paragon produced selected Slack communications in response to discovery requests. Slack is a messaging platform used by the parties during the joint venture to exchange written communications, files, and recordings concerning engineering analysis, proposed changes, and operational matters. This was the primary form of communication between the parties, yet Paragon has refused to provide full access to those communications. (Salemi Decl. ¶ 24.)

From the limited materials produced, Defendants have thus far identified at least sixty intellectual-property contributions to the Paragon Truss Software. Defendants contend the contributions were developed through proprietary engineering work, empirical testing programs, and professional judgment and were provided to Paragon as part of the joint venture. (*Id.* ¶ 25.) These contributions collectively consist of:

- Structural engineering methodologies
- Testing and calibration frameworks
- Structural analysis algorithms and modeling techniques
- Design decision rules and safety validation protocols
- Quality control and manufacturing tolerance systems
- Load-calculation procedures and building-code implementations
- Software architecture and engineering decision frameworks
- Data processing and output standards used in structural component design

The contributions were developed through the work of engineers and technical staff associated with Qualtim, DrJ Engineering, and the Center for Building Innovation and were communicated to Paragon to develop the Paragon Truss Software. (*Id.* ¶¶ 25-27.) Defendants contend that Paragon does not own Defendants' contributions and that Paragon is using them without authorization. (*Id.* ¶ 27.)

In correspondence, Paragon has asserted that the Slack production addresses issues of contribution and ownership. Paragon has not produced source code, repository exports, commit logs, or version-control artifacts reflecting the contents or history of the Paragon Truss Software.

# ARGUMENT

## I. THE PARAGON TRUSS SOFTWARE IS RELEVANT TO THIS ACTION.

### A. Relevancy Standard.

Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Because the purpose of discovery is to help "define and clarify the issues," relevance is construed broadly at the discovery stage. *Banks v. Baraboo Sch. Dist.*, No. 20-cv-36-wmc, 2020 U.S. Dist. LEXIS 176620, at *8–9 (W.D. Wis. Sept. 25, 2020) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Consistent with that purpose, the scope of discovery "should be broad in order to aid in the search for truth." *Id.* (citation omitted). This means that "a broad range of potentially useful information should be allowed" when it pertains to issues raised by the parties' claims or defenses. *Id.* at *9 (citations omitted).

The discovery sought here falls squarely within that standard.

### B. The Claims and Requested Relief Turn on the Contents and Operation of the Paragon Truss Software.

The Paragon Truss Software is key evidence in this dispute. The Amended Complaint places the Paragon Truss Software at the center of the claims and requested relief in this action. Plaintiffs allege that Paragon used Plaintiffs' engineering work and proprietary methodologies within the software used in the parties' enterprise and then restricted Plaintiffs' access to that system. (ECF #39 ¶¶ 39, 104-06.) Plaintiffs further allege Defendants used Plaintiffs' "work product and resources that are embedded in the software" to compete with Plaintiffs. (*Id.* ¶ 127.) Those allegations form the basis for their claims for misappropriation of trade secrets, unfair competition, and unjust enrichment.

Specifically, Plaintiffs assert that Paragon has improperly used Plaintiffs' proprietary engineering knowledge and methodologies without authorization and has been unjustly enriched

5

through its continued use of Plaintiffs' work and intellectual property. (*Id.* ¶¶ 61-67, 70-81.) The requested relief likewise targets the software itself. Plaintiffs seek injunctive relief requiring Paragon to remove configurations in the software that incorporate Plaintiffs' confidential and proprietary engineering input. (*Id.* ¶ 143(c).)

These claims and requested remedies necessarily require determining whether Plaintiffs' alleged engineering contributions were implemented in the software, how those contributions operate within the system, and whether Defendants continue to derive benefit from their use. Those issues cannot be resolved without examination of the software itself.

C.   **Paragon's Own Actions Demonstrate that the Software Is Relevant Here.**

Paragon's discovery requests confirm that the software systems referenced in the pleadings are relevant here. Paragon seeks documents concerning the development, ownership, and implementation of the software system as they relate to unjust enrichment and trade secret misappropriation. (Salemi Decl. Ex. 11 at Requests 11, 13-14.) Paragon's Interrogatories likewise require Plaintiffs to address the role of the software in the alleged enterprise, asking Plaintiffs to "describe in detail how Paragon and the Paragon Truss Software are allegedly a part of the 'Developed TS/IP' Business Model referenced in the Amended Complaint" and to identify the trade secrets and facts supporting misappropriation. (*Id.* Ex. 12 at Interrogs. 7, 10-12.) Paragon cannot simultaneously seek discovery concerning the Paragon Truss Software—which it defines to include source code—while maintaining that the software itself is irrelevant. (*Id.* Ex. 11 at 3.)

Paragon has also made representations to this Court confirming relevancy. In opposing Plaintiffs' motion to remand, Paragon asked the Court to consider Plaintiffs' verified interrogatory responses served in the related '170 declaratory judgment action. (ECF #78-1 at 2-3.) Paragon attached those interrogatory responses and argued that they demonstrate that Plaintiffs' claims here involve alleged intellectual property embodied in the Paragon software. Those interrogatory

responses explain how Plaintiffs developed proprietary engineering methodologies, testing programs, calibration frameworks, decision rules, and related engineering intellectual property that are embodied in or used in the Paragon Truss Software. (ECF #78-2.) By submitting those interrogatories to the Court and relying on them in opposing remand, Paragon itself represented that the dispute involves intellectual property embodied in the Paragon Truss Software.

### D. The Source Code Repository Is The Most Direct Evidence of Implementation.

Plaintiffs' claims require determining whether their alleged contributions are embodied in the current and post-termination versions of the software, whether they were modified or integrated into the codebase, and whether Paragon continues to derive benefit from their operation. Those questions turn on the contents and version history of the source code repository. Communications or business records may reflect discussion of concepts, but they do not establish whether, how, or where those concepts were implemented in executable form, or whether they remain present in the software today. Where the software itself is alleged to embody the misappropriated engineering contributions, examination of the source code repository is not merely relevant—it is the only reliable means of determining whether those contributions were implemented and remain in the system. Stated differently, the source code itself is the best evidence of what the software does.

Courts routinely compel production of source code where it bears on disputed ownership or unjust enrichment claims. In *Metavante Corp. v. Emigrant Savings Bank*, the court compelled production of proprietary source code because it could illuminate central disputed issues concerning system derivation and breach. 2008 U.S. Dist. LEXIS 106539, at *3–4 (E.D. Wis. May 5, 2008). Similarly, in *John C. DiStefano & goDesk, LLC v. Nordic Consulting Partners, Inc.*, this Court compelled production of source code where unjust enrichment and related intellectual property claims required examination of the software itself. 2024 U.S. Dist. LEXIS 89603, at *4–5 (W.D. Wis. May 17, 2024).

Paragon has suggested that Slack communications address contribution and ownership issues. Slack messages reflect discussions. They do not reflect the contents of the repository, the structure of the codebase, the location of implemented functionality, or the version-control history documenting authorship and modification. Whether an idea discussed in Slack was incorporated into executable software, how it was implemented, and whether it remains present in current versions are questions answered by the repository—not by communications about it.

Rule 26 does not permit a producing party to limit discovery to communications or business records where the claims place the contents of a software system itself at issue. A party is entitled to discover relevant evidence even if other forms of proof may exist. *Metavante*, 2008 U.S. Dist. LEXIS 106539, at *6. Having placed authorship, ownership, and rights in the Paragon Truss Software squarely at issue, Paragon cannot shield the repository from inspection.

## II.     THE REPOSITORY IS PROPORTIONAL TO THE NEEDS OF THE CASE.

Rule 26(b)(1) requires that discovery be proportional to the needs of the case, considering the importance of the issues, the parties' relative access to information, and whether the burden outweighs the benefit. Courts apply these same proportionality principles to source code. *DiStefano*, 2024 U.S. Dist. LEXIS 89603, at *3-4.

The issues here concern the ownership and continued use of intellectual property embodied in software. The repository is uniquely within Paragon's possession and control. Plaintiffs have no alternative access to the executable implementation or its version history. Nor has Paragon articulated a specific burden associated with secure inspection of the repository. Generalized assertions that source code is proprietary or confidential are insufficient. *Metavante* rejected similar objections because confidentiality concerns were adequately addressed by a protective order. 2008 U.S. Dist. LEXIS 106539, at *4-6. As such, concerns regarding competitive harm do not outweigh demonstrated need. *Id.* at *5-6.

**III.    THE PROTECTIVE ORDER FULLY PROTECTS PARAGON AND CONTEMPLATES COMPLETE, SEARCHABLE INSPECTION.**

Paragon's confidentiality concerns do not justify withholding the source code repository. The Court has already entered an Agreed Protective Order upon a finding of good cause, expressly recognizing that this dispute involves "valuable proprietary and confidential intellectual property, including software source code." ('75 ECF #45-1, '170 ECF #110-1 at 1-2.) The Order defines "Source Code" broadly and creates a heightened designation—"Highly Confidential – Source Code"—for proprietary source code material. (*Id.* ¶ 13.)

Paragraph 14 establishes a detailed inspection protocol. Source code must be produced for review on a secured computer in a secured room, without Internet or network access. Electronic copying is prohibited. Only limited paper excerpts may be requested, and access is restricted to outside counsel and disclosed testifying experts. (*Id.* ¶ 14.) These protections are more than sufficient to safeguard proprietary interests. Courts routinely compel source code production under comparable protocols. *Metavante*, 2008 U.S. Dist. LEXIS 106539, at *4-6.

Nothing in the Protective Order requires a receiving party to identify specific files or portions of code before inspection. Paragraph 14 provides that source code shall be made available in a format it can be "reasonably reviewed and searched." ('75 ECF #45-1, '170 ECF #110-1 ¶ 14.) The Order therefore contemplates inspection first; it does not impose a pre-identification requirement as a condition precedent to review.

In this action, Paragon has refused inspection on the ground that the source code repository is irrelevant. Yet the claims in this case concern whether Plaintiffs' engineering contributions were implemented in, retained within, and continue to operate as part of the Paragon Truss Software. Determining whether those contributions are embodied in the software necessarily requires examination of the repository itself, including its structure and version history.

Paragon's position is therefore circular. The repository is the only evidence capable of showing whether, how, and where engineering contributions were implemented. Without access to the repository, Plaintiffs cannot identify specific file paths, modules, or implementation details in advance of inspection. The asymmetry of access underscores the need for inspection. Paragon alone controls the source code repository, including its architecture, file structure, and version history. Plaintiffs cannot reasonably identify specific files, modules, or implementation paths without access to that repository. Courts routinely reject attempts to require technical precision before inspection where the producing party exclusively controls the underlying software system. Inspection precedes narrowing—not the reverse.

Paragon has taken a similar position in the related '170 action, asserting that it cannot respond to discovery seeking source code unless Defendants first identify specific engineering inputs within the repository. (Salemi Decl. ¶¶ 11-12; Ex. 6.) Yet Paragon alone possesses the repository, its architecture, version history, and commit metadata. If Paragon cannot identify where such engineering inputs reside within its own codebase, Plaintiffs cannot reasonably be expected to identify file paths or modules without inspection. Rule 26 does not condition discovery on prior technical certainty. Inspection precedes narrowing—not the reverse.

Nor has Paragon produced repository structure, architectural documentation, or version-control metadata sufficient to enable meaningful narrowing in advance. Production under ¶ 14 does not require copying, exporting, or transferring the repository outside Paragon's control. It requires only that the existing repository be made available on a secured computer for inspection. The burden of review falls on Plaintiffs and their retained expert—not on Paragon. Paragon necessarily maintains and accesses the same repository in the ordinary course of its own software

development. Making that repository available for inspection under the Court's Protective Order therefore imposes no new technical burden.

Paragon's claims and defenses rely on knowledge of the contents of its own source code repository. Defendants cannot meaningfully respond to technical assertions about authorship, implementation, or functionality while being denied access to that repository. Rule 26 does not permit one party to rely on technical knowledge of a software system while preventing the opposing party from examining that system under an existing protective order.

Although Defendants have identified certain engineering contributions based on Slack communications, those contributions do not correspond to isolated files or discrete modules whose locations are known in advance. Modern software systems are architectural and interdependent. Implementation of engineering logic may span multiple modules, configuration files, and revision histories. Such materials are necessary to understand how software functionality is implemented, how particular features evolved over time, and whether specific contributions appear in or were incorporated into the software. (Salemi Decl. ¶¶ 20-22.)

The requests and inspection notice were designed to permit meaningful technical review of the Paragon Truss Software and its development history. Without access, it is not possible to evaluate authorship, development chronology, or whether particular engineering contributions were implemented within the software. (*Id.* ¶ 23.)

Finally, ¶ 14 requires that the code be produced in a format allowing it to be reasonably reviewed and searched. ('75 ECF #45-1, '170 ECF #110-1 ¶ 14.) Plaintiffs do not seek to circumvent the security restrictions of the Order; they seek inspection consistent with it.

**IV.  RULE 37 RELIEF IS WARRANTED.**

Rule 37(a)(3)(B)(iv) authorizes a motion to compel where a party fails to permit inspection requested under Rule 34. Defendants served Requests Nos. 1 and 10-12 seeking access to the source code repository, including relevant versions, subject to the Agreed Protective Order and thereafter noticed inspection under ¶ 14 of that Order. Paragon has refused to permit inspection, claiming that the Paragon Truss Software is irrelevant to this action. Its own reliance belies the notion that the software is irrelevant. An order compelling inspection is therefore appropriate.

## CONCLUSION

Plaintiffs respectfully request that the Court order Paragon, by a date certain:

1. To make available, on a secured computer consistent with ¶14, the complete source code repository, including repository tree and version-control history (branches, tags, and commit logs);

2. To provide the repository in a format that permits it to be reasonably reviewed and searched, including standard search and code-navigation functionality consistent with ¶ 14; and

3. To provide inspection dates within 5 business days of the Court's order.

Dated this 5th day of March, 2026.

        **MURPHY DESMOND S.C.**
        Attorneys for Qualtim, Inc., Center for Building Innovation, LLC, DrJ Engineering, LLC, Inspired Pursuits, LLC, and Suzanne Grundahl.

        Electronically Signed By: */s/ Scott G. Salemi*
            Scott G. Salemi
            State Bar Number: 1118960
            33 East Main Street, Suite 500
            Madison, WI 53701-2038
            Phone: (608) 257-7181
            Fax: (608) 257-2508
            ssalemi@murphydesmond.com

        **KIRK GRUNDAHL**
        Pro Se Plaintiff

        Electronically Signed By: */s/ Kirk Grundahl*
            Kirk Grundahl
            1130 Fairway Court
            Lake Mills, WI 53551
            Phone: 608-217-3713
            kgrundahl@qualtim.com