**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

---

INSPIRED PURSUITS, LLC, QUALTIM, INC.,
CENTER FOR BUILDING INNOVATION, LLC,
DRJ ENGINEERING, LLC, KIRK GRUNDAHL,
and SUZANNE GRUNDAHL,

        Plaintiffs,

  V.

PARAGON COMPONENT SYSTEMS, LLC,
JOHN HOLLAND, JAMES HOLLAND,
CLEARSPAN COMPONENTS, LLC, and THE
ESTATE OF DANIEL HOLLAND EX REL.
SPECIAL EXECUTOR MARVIN B. SPEED,

        Defendants.

Case No. 3:25-cv-00075-wmc

---

**PARAGON COMPONENT SYSTEM, LLC AND JOHN HOLLAND'S BRIEF IN
OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL SOURCE CODE**

---

Plaintiffs' Motion to Compel against Defendants Paragon Components, LLC and John Holland is both factually and procedurally ill-conceived. Because the discovery sought is not relevant to their claims, Plaintiffs mischaracterize their own complaint, even contradicting their counsel's representations regarding their claims. They chose not to meet and confer before filing this motion, failing entirely to act in good faith to resolve their dispute. And the relief they seek—production of Paragon's entire source code repository—shows no regard for proportionality or relevancy. The motion must be denied.

1

## I.    INTRODUCTION

Plaintiffs' motion to compel source code is misleading and ignores the differences between the parties' two different cases before this Court. Because the source code is not relevant to this action, Plaintiffs try to blur the distinctions between the two cases, straining to paint a picture of overlap and relatedness, and acting as if the two cases have been consolidated. They have not and for good reason.[1] This case (3:25-cv-00075-wmc, "the '75 Action") asserts contractual breaches and involves significantly more parties than Paragon's declaratory-judgment action (3:25-cv-00170-wmc, "the '170 Action"). The '170 Action involves only Paragon and the Plaintiffs and one narrow legal issue: ownership of the Paragon Truss Software. At best, there is only slight overlap between the legal issues in these cases, as Plaintiffs claim that their contract allegations based on a "business model" in this '75 Action give rise to Plaintiffs' ownership claims in the '170 Action.

Plaintiffs seek to turn this case—a partnership dispute alleging breach of an alleged confidential business model—into a discovery free-for-all concerning the technical contents of Paragon's software source code. Plaintiffs know that Paragon is a software company and its source code is its most important asset. This is why Plaintiffs' source-code inspection request in this case amounts to harassment, forcing Paragon to disclose highly-valuable, trade-secret information that is not necessary to prove any asserted claim in this Action.

Plaintiffs' free-for-all attempts extend to their written discovery—they have already collectively served Paragon with *61* interrogatories and *186* document requests, again consistent with strategic harassment rather than need. Most of those requests focus on Plaintiffs' alleged engineering contributions to Paragon's software, which are matters exclusively at issue in the '170 Action, where ownership of Paragon's software is actually at issue.

---

[1] Paragon will elaborate on this further in response to Plaintiffs' pending Motion to Consolidate.

As Plaintiffs' Amended Complaint plainly states, this lawsuit concerns an alleged breach of a partnership agreement premised upon a purported "business model." (*See* Doc. 39 at p. 1) ("***The core of this case is a business model…that was not fully executed due to a number of civil violations that will be enumerated below***.")[2] Despite this, and despite making extensive representations in their Amended Complaint and other Rule 11 pleadings that this case *is not about, and may be adjudicated independently of, the authorship or ownership of Paragon's software*, Plaintiffs have used written discovery in this case to launch a full-scale inquisition into every facet of the software's development, design, specifications, testing, validation, and modifications.

After Paragon objected to Plaintiffs' source code and detailed software discovery requests, Plaintiffs purported to invite Paragon to meet and confer. In a February 11, 2026 letter, Plaintiffs' counsel represented that "Plaintiffs do not seek production of Paragon's entire source code base" and said that Plaintiffs were willing to meet and confer with Paragon regarding a "targeted source code review protocol." (*See* Doc. 93-4 at 4-5). In response, Paragon offered multiple times to discuss Plaintiffs' position about why they believe source code should be relevant in this litigation. (*See* Doc. 93-3 at 4-6; Doc. 93-10 at 3, 5). But Plaintiffs ignored all of Paragon's attempts to meet and confer and, instead, prematurely filed this motion to compel without meeting with Paragon at all. Plaintiffs made no effort to explain the source code's relevance and instead filed this motion.[3]

---

[2] **To be clear, the business model is *not* Paragon's software**. Rather, it is alleged to be a "proprietary approach in manufacturing trusses outside the traditional business structure in the SBC [structural building components] industry," which involves "business plans and strategies, pricing information, testing expertise, engineering knowledge, professional engineering expertise, proprietary copyrighted professionally engineered signed and sealed structural component design drawings, and structural building component manufacturing knowledge and digital quality control/quality assurance." (Doc. 39 at ¶ 75; *see also* Doc. 39 at Ex. B). Plaintiffs allege, albeit incorrectly, that Paragon's software "is a tool used in the partnership." (Doc. 39 at 1)

[3] Despite Plaintiffs unwillingness to discuss the source code issue before filing its motion to compel, in the co-pending '170 Action, where the Paragon Truss Software is directly at issue,

3

Plaintiffs' motion now unreasonably asks the Court to compel Paragon's *entire* source code repository, without any effort to tailor this overly-broad request, claiming it is "the central evidence" in this business-model case. To support this argument, Plaintiffs reference only discovery from the '170 Action: a "Slack Production" and their own discovery responses in the '170 Action claiming "sixty intellectual-property contributions to the Paragon Truss Software." (Doc. 92 at 4). Those discovery productions and responses do not demonstrate that Paragon's source code is relevant in *this* Action.

The source-code repository for Paragon's software has no relevance whatsoever on the claims at issue in this business-model case. Even if some source code were somehow relevant (which it is not), production of Paragon's *entire* source code repository for its software would be overbroad, unduly burdensome, and disproportional to the needs of this case, and in any event, should not exceed the scope of source-code discovery in the '170 Action where ownership of the source code is actually at issue. The Court should deny Plaintiffs' motion.

## II.    LAW AND ARGUMENT

### A.    The Paragon Truss Software Source Code Is Not Relevant to This Action

While the scope of discovery under Rule 26 is broad, it is "not without limits, and relevancy is perhaps the most important of those constraints." *BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.,* No. 15-C-10340, 2018 WL 946396, at *4 (N.D. Ill. Feb. 20, 2018). Indeed, "relevant" is "perhaps the single most important word" in Rule 26(b) because "it is only relevant matter that may be the subject of discovery." 8 Fed. Prac. & Proc. Civ. § 2008 (3d ed. 2021). "'Relevance' for purposes of discovery is determined by reference to the subject matter in

---

Paragon has offered to make available for inspection its source code files that are compiled into its currently-deployed version of the executable Paragon software application.

issue and not particular pleadings." *All. to End Repression v. Rochford*, 75 F.R.D. 441, 444 (N.D. Ill. 1977) (internal citations omitted). "[G]iven the potential for and the all too obvious reality of litigation abuse, the Supreme Court has cautioned judges to exercise appropriate control over the discovery process." *BankDirect,* 2018 WL 946396, at *4 (internal citations omitted). Germane here, discovery is "not to be used as a fishing expedition," to explore speculative theories or claims. *See Central States, Southeast and SouthwestAreas Pension Fund v. Waste Mgmt. of Mich., Inc.,* 674 F.3d 630, 637 (7th Cir. 2012).

The party requesting discovery bears the initial burden of establishing its relevancy and proportionality. *Sols. Team v. Oak St. Health, Mso, LLC,* No. 17-cv-1879, 2021 WL 3022324, at *3 (N.D. Ill. Jul. 16, 2021). The burden then shifts to the opposing party to show that the discovery should be limited or disallowed. *Id.* The resolution of discovery disputes is committed to the court's broad discretion. *Fields v. City of Chicago,* 981 F.3d 534, 550-51 (7th Cir. 2020). The court "may grant or deny the motion in whole or in part, and . . . may fashion a ruling appropriate for the circumstances of the case." *Gile v. United Airlines, Inc.,* 95 F.3d 492, 496 (7th Cir. 1996).

1.    *According to Plaintiffs, this case is about a partnership dispute over a business model, not the development, authorship, or ownership of the Paragon Truss software.*

To support their motion, Plaintiffs provide a "summary" of the nature of the '75 Action and '170 Action, without any citations to the operative pleadings. Importantly, Plaintiffs make no effort to demonstrate (with record citations) how Paragon's source code is relevant to any claims they assert against Paragon or John Holland in this business-model case. That's because they cannot make such a showing. The Amended Complaint does not assert any claims related to the development of Paragon's software, much less claims that implicate the underlying source code.

5

The Amended Complaint expressly states "[t]he core of this case is a business model ("Developed TS/IP") that was not fully executed due to a number of civil violations that will be enumerated below." (Doc. 39 at 1). Conversely, in their motion to compel, Plaintiffs claim "[t]he Amended Complaint places the Paragon Truss Software at the center of the claims and requested relief in this action." (Doc. 92 at 5). But Plaintiffs cannot change the allegations of their Complaint in a discovery motion. Indeed, by failing to connect their discovery (into the inner workings of Paragon's source code) to the claims they actually assert (alleged breaches of a confidential business model), they demonstrate that their motion should be rejected.

Plaintiffs' Amended Complaint seeks redress for the breach of an alleged partnership agreement and to "enforce[e] the joint venture between the parties." (Doc. 39 at 1). As Plaintiffs describe it, "[t]he core of this case is a business model ("Developed TS/IP") that was not fully deployed because one of the individual partners [Daniel Holland] unexpectedly passed away several weeks prior to market launch." *Id.* Plaintiffs further declare that "[t]his case can be adjudicated independently from [Paragon's] declaratory judgment case," *id.*, in which Paragon seeks a declaration that (1) it is the sole author and owner of its software, and (2) that neither the Grundahls nor the various companies they own have any interest in the Paragon Software including, but not limited to any trade secret or other intellectual property right. *See* Declaratory Judgment Complaint, Doc. 1 at 27, in the '170 Action.

Plaintiffs' Amended Complaint simply does not seek redress for any alleged authorship, ownership, engineering contributions, or other right, title, or interest of Plaintiffs with respect to the Paragon Truss Software. In fact, to escape federal jurisdiction in this case, Plaintiffs have gone to great lengths to distance their claims in this '75 Action from Paragon's claims regarding the authorship of the Paragon Truss Software in the '170 Action. *See* Doc. 38 at 1 (asserting that this

6

action "is about an agreed business model ("model") … [and it] is crucial to note the distinction between the Model and the Paragon Truss Software."); *id*. at 1-2 (arguing this action "arise[s] out of the Defendants' behavior that violates state laws [and the] allegations apply not only to Defendants Paragon, Paragon Employees, and John Holland, but also to Defendants Clearspan, Rob Eason, James Holland, and the Estate of Daniel Holland."); *id*. at 3 ("this case ['75 Action] is strictly about the confidentiality of the Model," not authorship of the software under copyright laws); *id*. at 4 ("regardless of who owns the software, the damage here extends from the breached confidentiality of the Model"); *id*. at 4-5 ("the ['75 Action] Complaint at its face is about the Model …. [C]opyright issues simply do not arise in this case.").

Indeed, Plaintiffs have even gone so far as to argue that resolution of issues pertaining to the Paragon Truss Software do not matter for purposes of resolving the "Business Model" issues they advance in this case. *See id* at 5. ("Even if Plaintiffs replace the [Paragon] Software with another software, the Model has now been made public[4], and Defendants continue to discuss and misappropriate Plaintiff's trade secrets."); *id*. at 4 ("regardless of who owns the Software, the damage here stems from the breached confidentiality of the Model.").

The parties' Rule 26(f) Report reinforces this reading and also contradicts Plaintiffs' Motion to Compel. In the joint Rule 26(f) Report, Plaintiffs summarized their claims against Paragon and other defendants in this '75 Action as follows: "Plaintiffs allege defendants violated trade secret, tort and contract laws ***concerning a business model owned by Inspired Pursuits, LLC***, and a business relationship between plaintiffs and defendants." (Doc. 44) (emphasis added).

---

[4] The trade-secret misappropriation claims in this Action are based on alleged unauthorized disclosure of the Business Model.

Importantly, the parties also identified the anticipated topics for discovery in this case, in the joint

Rule 26(f) Report as follows:

1. The parties' course of dealing and **whether it relates to plaintiff's alleged business model** as illustrated in Exh. B to the Complaint;
2. Innovation and creation **of the alleged business model**;
3. Confidentiality and economic value **of the alleged business model**;
4. Relevance of the Paragon Truss software **as related to the alleged business model**;
5. Business operations of each party;
6. Plaintiffs' and Defendant's engineering licenses in all states where they conduct business and related services performed;
7. The business relationship in course of dealing between Daniel Holland and all plaintiffs and defendants **as related to the alleged business model** illustrated in Exh. B of the Complaint;
8. Patten, trade secret, trademark, copyright, and other intellectual property rights asserted by plaintiff **resulting from the alleged business model**;[5] and
9. Contracts between plaintiff and any defendant.

(*See* Doc. 44) (emphasis added).

Noticeably absent from either the Amended Complaint or the above list of discovery topics

in the parties' joint Rule 26(f) Report—which, again, was the product of Plaintiffs' direct input

about the anticipated scope of discovery—is any allegation or discovery topic that would support

Plaintiffs' overbroad inquiries into every facet of the Paragon Truss Software, including Paragon's

entire source code repository, evidence of how the code was developed, or the intellectual property

involved in creating the software. *Plaintiffs* bear the burden of demonstrating Paragon's source

---

[5] In contrast, the discovery topics identified in the Rule 26(f) report submitted the '170 action expressly pertain to development, authorship, and ownership of the Paragon software. *See* '170 Action at (Doc. 103) (listing discovery topics which include "***Development of the Paragon Truss software***, including from the time Defendants were engaged by Paragon to the present"; "Patent, trade secret, trademark, copyright and other intellectual property rights *as related to the Paragon Truss software*"; "Course of dealing and course of performance between Paragon and Clearspan Inc. *relating to the Paragon Truss Software* at issue") (emphasis added).

code repository is somehow relevant to the claims in this '75 Action. They've never done this, despite Paragon's invitations to discuss this issue, and their current motion falls woefully short.

        2.        *Plaintiffs misrepresent Paragon's discovery requests regarding the Paragon Truss Software's alleged connection to the Business Model.*

Unable to connect the Paragon source code to their own claims, Plaintiffs turn to Paragon's discovery requests regarding the Paragon Truss Software as it relates to the "Developed TS/IP Business Model" to manufacture proof of relevancy of the software's source code. (Doc. 92 at 6). But discovery requests are not discovery responses. Paragon's discovery requests merely explore Plaintiffs' broad allegations in the Amended Complaint that "the [Paragon] software is a tool used in the partnership" and that the Paragon Software was to be "used in accordance with the Developed TS/IP." (Doc. 39 at 1, 19). Paragon's discovery requests seek information on how Plaintiffs allege the Paragon Truss Software is used, part of, and/or subject to the "Developed TS/IP Business Model" as Plaintiffs have contended in their Amended Complaint. Paragon has always, and continues to, maintain that its source code, consisting of more than 12,000 different compilable versions where most comprise more than 500,000 lines of code (Holland Declaration, filed contemporaneously with this opposition, at ¶ 8), is irrelevant to the present business model/partnership dispute, and Paragon has propounded no discovery requests pertaining to the software's source code in the instant action.

        3.        *The source code repository is not the most direct evidence of implementation of the business model.*

Plaintiffs contend that Paragon's source code is the "most direct" evidence of an implementation of the business model by arguing that allegedly misappropriated "engineering contributions" have been implemented in the Paragon source code. (Doc. 92 at 7). However, as stated above, Plaintiffs' Amended Complaint does not seek redress for Plaintiffs' alleged

9

authorship, ownership, *engineering contributions*, or other interest with respect to the Paragon Truss Software or its source code. That is because, as Plaintiffs have previously represented in court pleadings, those software issues are exclusively at issue in the '170 Action. (*See* Doc. 39 at 1-2; *see also* Doc. 38 at 1-5).

Furthermore, while Plaintiffs contend courts have "routinely" compelled source code production in unjust-enrichment disputes, their cited cases are inapposite. (Doc. 92 at 7). Unlike here, in both *Metavante Corp. v. Emigrant Savings Bank*, and *Distefano v. Nordic Consulting Partners, Inc*., the source code pertained to the central issues in those cases.

First, in *Metavante*, the dispute arose from termination of a technology outsourcing agreement for an online banking platform between the parties. *Metavante Corp. v. Emigrant Sav. Bank*, 2008 WL 1969596, at *1-3 (E.D. Wis. May 5, 2008). Metavante sought the source code for Emigrant's online banking platform because they alleged that Emigrant had either directly copied or derived its new platform from Metavante's system. *Id*. The court determined that the source code was the "best evidence to determine whether Emigrant's new system is a derivate of Metavante's system, or whether Emigrant developed its own computer solution or used software or computer platforms created by someone else…" *Id*. at *3. There are no such similar claims in the '75 Action based on alleged direct copying by Paragon or any other defendants.

Second, in *Distefano*, the dispute arose from an agreement between the parties to jointly develop certain healthcare software. *Distefano v. Nordic Consulting Partners, Inc.*, 2024 WL 2252407 at *1 (W.D. Wis. May 17, 2024). The plaintiff, John Distefano, and the defendant, Nordic, entered into an agreement where Distefano would conceptualize ideas for a healthcare software and own the intellectual property rights to the design and function of the software, and Nordic would provide the programmers to write the software. *Id*. Nordic allegedly breached the agreement

and stole Distefano's ideas to develop the software itself. *Id*. The court granted a motion to compel production of the software's source code because the plaintiff's unjust-enrichment claims arose from the monetization of the source code and, thus, the source code appeared to bear on the issues of valuation and damages. *Id* at *2. There are no such similar allegations of software stealing by Paragon in the present action; Plaintiffs are not software developers and do not contend to be.

Unlike *Metavante* and *Distefano*, where source code was directly at issue, Plaintiffs' unjust enrichment and trade-secret misappropriation claims arise from the so-called Business Model, not the Paragon Truss Software source code. Indeed, to support their unjust-enrichment claim, Plaintiffs allege, albeit vaguely, they "conferred a benefit upon ALL Defendants" (not just Paragon or John Holland), "provided Defendants with at least $23.8 million in unpaid services and invaluable Developed TS/IP" (i.e., which the Amended Complaint defines as the business model), and "Defendants realized a benefit and continue to realize a benefit as a result of Plaintiffs' investment and Developed TS/IP." (Doc. 39 at 10-11). In other words, the unjust-enrichment claim here is premised upon the alleged Business Model, not Paragon's source code. Similarly, to support their misappropriation claim, Plaintiffs state that the "Developed TS/IP is a business model…", "Defendants . . . improperly used [the] Developed TS/IP to compete with Plaintiffs," and "Defendants . . . have been unjustly enriched and damaged Plaintiffs' business through the misappropriation of Plaintiffs' Developed TS/IP." (*Id*. at 12-13).

In summary, unlike the cases they cite, Plaintiffs' claims against *all* defendants in this action are expressly premised upon a failed implementation of an alleged Business Model–"Developed TS/IP"–not Paragon's Truss Software. Accordingly, the source code for Paragon's Truss Software is not central to any issues in this business-model dispute, and there is no basis for the Court to compel source-code production in this '75 Action.

11

**B.    The Entire Source-Code Repository Is Not Proportional to the Needs of the Case.**

As explained above, Paragon's source-code repository is not relevant to the claims in this '75 Action and, thus, Paragon should not be compelled to produce it to Plaintiffs and the other defendants who had no involvement in the software development process. Nevertheless, Paragon responds below to Plaintiffs' incorrect (and new) contention that production of the *entire* source-code repository is allegedly proportional to the needs of the case.

Plaintiffs first attempt to prove proportionality by arguing the issues here "concern the ownership and continued use of the intellectual property embodied in [Paragon's] software." (Doc. 92 at 8). As noted above, this position is completely contrary to Plaintiffs' prior representations to the Court and their counsel statements in Rule 11 pleadings. Plaintiffs have consistently stated that this '75 Action is separate from Paragon's declaratory-judgment action which concerns ownership and authorship of the Paragon Truss Software, and that this '75 Action may be adjudicated independently from that case. (Doc. 39 at 1). Plaintiffs now take the opposite position for the sole purpose of supporting their fishing expedition into source code.

That's not the only position Plaintiffs have changed. Before filing this motion, Plaintiffs affirmed they did not need access to Paragon's full source-code repository. In a letter sent by Plaintiff's counsel on February 11, 2026, Attorney Salemi expressly states "***Plaintiffs do not seek production of Paragon's entire source code base.*** Plaintiffs seek only materials sufficient to identify whether and how defined Engineering Inputs were incorporated, retained, modified, or removed." (Doc. 93-4 at 4-5). Attorney Salemi further states "***Plaintiffs' first priority is production of non-code engineering materials . . .***" *Id.* at 4.

12

In a separate letter, *pro se* Plaintiff Kirk Grundahl reiterated the same point: "Plaintiffs seek materials sufficient to identify whether and how Engineering Inputs were incorporated, retained, modified, or removed. Many of these issues can be addressed through non-source-code materials, including design documentation, version histories, change logs, and validation records." *See* Kabakoff Declaration, Exhibit 1 March 9, 2026 Letter from K. Grundahl at 4.

It is apparent from Plaintiffs' own statements that access to the entire Paragon source-code repository is not only irrelevant to the subject matter of the present case, but also disproportional to the needs of this case. And Plaintiffs have made no showing otherwise.

Further, Paragon utilizes a software-development system that involves frequent updates and modifications to the Paragon Truss Software. *See e.g.*, Declaration of John Holland. Paragon's team of software developers consistently writes new source code that is merged into a production version of the source code. (*Id*. at ¶ 6). Each time source code changes are merged, the production source code is recompiled to create a new executable version. (*Id*. at ¶ 7). Over nearly a decade of development of the Paragon Truss Software, Paragon has had over 12,000 different compliable versions of its production source code, and most of those versions contain more than 500,000 lines of code. (*Id*. at ¶ 8). Additionally, there are thousands of other non-production code changes that were never merged into the production source code or compiled into the executable version of the Paragon Software made accessible to users. (*Id*.)

There are currently 362 release numbers of the Paragon Software that are publicly documented on Paragon's website. (*Id*. at ¶ 9). These release numbers are for purposes of informing users when Paragon has made more significant updates to the executable Paragon Software. (*Id*.) In addition, Paragon is continuously merging updates into its production source

code and recompiling the Paragon Software without constantly incrementing the software's public release number; otherwise, there would easily be more than 1,000 numbered release versions. (*Id*.)

Accordingly, given the expanse and breadth of Paragon's software repository, and the operational technicalities, it is simply not reasonable or even possible to inspect the files in every version of the Paragon source code on a laptop computer pursuant to the requirements of the Protective Order (*Id*. at ¶¶ 10-11). Paragon's production of source code, if any, should be limited consistent with its source-code proposal in the '170 Action.

### C.    The Mere Existence of a Protective Order Does Not Justify Source Code Production.

While Plaintiffs are correct that a Protective Order is in place covering source code inspection—primarily because the same Protective Order was used in both the '170 Action and '75 Action—that order concerns confidentiality, not the scope of discovery. The Protective Order does not alleviate the relevance and proportionality issues. The source code is irrelevant and production would be disproportionate in this case, and Plaintiffs' motion to compel should be denied regardless of the existence of a protective order.

### D.    Plaintiffs Failed to Meet and Confer About Source-Code Production Despite Multiple Offers to Do So.

When it comes to the subject of proprietary source-code production for discovery, it is important for parties to "approach these tasks cooperatively from a place of reasoned practicality." *Distefano*, 2024 WL 2252407, at *1. In Plaintiffs' February 11, 2026 letter, Attorney Salemi represented that Plaintiffs were willing to meet and confer with Paragon regarding a "targeted source code review protocol." (Doc. 93-4 at 4-5). Paragon's counsel responded, stating "[w]e are willing to meet and confer, as you proposed, regarding how any of Paragon's source code, and which portions, is relevant to any of the Plaintiffs' causes of action in the '075 Action." (Doc. 93-

10 at 4-5). Mr. Salemi responded to this email without addressing the offer by Paragon's counsel to meet and confer. (Doc. 93-10 at 3-4).

Paragon's counsel sent another email, reiterating that it "agreed to meet-and-confer to discuss a reasonable, proportional, and workable approach to identifying and producing the relevant portions of source code…" (Doc. 93-10 at 2-3). Mr. Salemi again ignored this offer to meet and confer and instead claimed that the parties were "at an impasse." (Doc. 93-10 at 2).

On March 5, 2026, after refusing to acknowledge Paragon's multiple attempts to meet and confer on this issue, and without any effort at all to explain to Paragon why Plaintiffs contend the source code is relevant to any claims in this action, Plaintiffs filed the present motion to compel. Plaintiffs' motion is premature and violates the Court's Preliminary Pretrial Conference Order, which provides "[a] party may not file a motion regarding discovery until that party has made a good faith attempt to resolve the dispute" and "the court requires all parties to a discovery dispute to attempt to resolve it quickly and in good faith." (Doc. 47 at 4).

Plaintiffs' race to the courthouse, without any effort to meet and confer regarding source code relevance, should be admonished. Paragon respectfully asks the Court to consider cost shifting and other appropriate sanctions under Rule 37, as cautioned in this Court's Preliminary Pretrial Conference Order. (*Id.*)

### III.    CONCLUSION

For the reasons above, Paragon respectfully submits Plaintiffs' Motion to Compel should be denied in its entirety and asks the Court to consider sanctions under Rule 37, including an award of Paragon's attorneys' fees incurred in responding to this premature motion.

Respectfully submitted this 18th day of March, 2026.

**GASS TUREK LLC**

*Counsel for Defendants Paragon Component Systems, LLC and John Holland*

*/s Tamar B. Kelber*
Tamar B. Kelber, SBN 1101802
kelber@gassturek.com
Joshua S. Greenberg, SBN 1107959
greenberg@gassturek.com
241 North Broadway, Suite 300
Milwaukee, WI 53202
T: 414-223-3300

Stephen E. Kabakoff, GA Bar No. 143164,
*appearing pro hac vice*
MILLER & MARTIN PLLC
1180 W. Peachtree Street, NW
Suite 2100
Atlanta, Georgia 30309
Telephone: (404) 962-6100
Stephen.Kabakoff@millermartin.com

James T. Williams, TN BPR 16341
Erin E. Steelman, TN BPR 38463
MILLER & MARTIN PLLC
832 Georgia Avenue, Suite 1200
Chattanooga, TN 37402-2289
Telephone: (423) 756-6600
James.Williams@millermartin.com
Erin.Steelman@millermartin.com