33 East Main Street Suite 500
Madison, WI 53703-3095

**Mailing Address:**
P.O. Box 2038
Madison, WI 53701-2038

**Phone:**
608.257.7181

**Fax:**
608.257.2508

www.murphydesmond.com

Scott G. Salemi
Direct Line 608.268.5646
Facsimile 608.257.2508
ssalemi@murphydesmond.com



March 24, 2026

**VIA EMAIL ONLY:**

Miller & Martin PLLC
Stephen E. Kabakoff
James T. Willliams
Erin E. Steelman
1180 W. Peachtree Street, NW
Suite 2100
Atlanta, GA 30309-7706
stephen.kabakoff@millermartin.com
james.willliams@millermartin.com
erin.steelman@millermartin.com

Gass Turek LLC
Joshua S. Greenberg
Tamar B. Kelber
241 North Broadway Suite 300
Milwaukee, WI 53202
greenberg@gassturek.com
kelber@gassturek.com

Wright, Cortesi & Gilbreath
Stephan Wright
2030 Hamilton Place Blvd. Suite 240
Chattanooga, TN 37421
swright@wcglegal.com

Grant Konvalinka & Harrison, PC
April E. Hart Sawhill
J. Scott McDearman
633 Chestnut Street Suite 900
Chattanooga, TN 37450-0900
asawhill@gkhpc.com
smcdearman@gkhpc.com

Hinshaw & Culbertson LLP
Corey J. Swinick
Brian Zeeck
151 N. Franklin Street, Suite 2500
Chicago, IL 60606
cswinick@hinshawlaw.com
bzeeck@hinshawlaw.com

Re:   *Paragon Component Systems, LLC v. Qualtim, Inc.,*
      Civil Action No. 3:25-cv-00170-wmc;

      *Inspired* Pursuits*, LLC v. Paragon Component Systems, LLC*
      Civil Action No. 3:25-cv-00075-wmc

Dear Counsel:

We write following the parties' conferral on March 23, 2026 regarding Paragon's source code production and inspection in the above-captioned matters. This letter memorializes the conferral outcome, identifies specific deficiencies in Paragon's discovery responses, and sets forth the categories of documents Defendants require to be produced.

Page 2

Paragon, as a computer software developer, filed the '170 case claiming ownership of software it asserts was built entirely through its own efforts. As plaintiff, Paragon controls the source code, controls the version history, and controls the Slack workspace where the parties' joint engineering work was documented. Paragon has structured its productions to offer exactly enough to claim compliance while withholding the records that would show Defendants' contributions. The pattern is identical across source code and Slack: one version of the deployed software with no history; 43.6% of the Slack record with the software release channel withheld entirely.

As set forth below, produced documents establish that the records Defendants require exist, are comprehensive, and are automatically maintained. Paragon's counsel did not mention GitHub, AppVeyor, or the GitHub-Slack integration at any point during the March 23 conferral, or in any written communication, despite their direct relevance to every question discussed. That omission is not consistent with a good faith effort to resolve this dispute.

## I. THE MARCH 23, 2026 CONFERRAL

The March 23, 2026 conferral was attended by counsel for all parties in both the '170 and the '75 cases, including Defendants' counsel Salemi, pro se Grundahl, Paragon's counsel Kabakoff and Williams, Clearspan's counsel Zeeck and the Estate's counsel Sawhill.

During the conferral, counsel discussed the scope of source code production and the availability of technical documentation. The following was established:

1. Paragon's counsel described the software development process as involving continuous merges into production source code, frequent recompilation, and "thousands, tens of thousands" of versions. Counsel stated there is not "separate documentation generated for every version of the executable source code."

   Paragon's counsel's description of "merging and recompiling" as the basis for version identity is a distinction without a difference. The numbered releases visible on Paragon's own public website,288 through 362,are dispositive evidence that discrete versions exist regardless of what internal terminology Paragon uses. These numbers represent what the software industry universally recognizes as release candidates, gold masters, production releases, or general availability builds. Whatever Paragon calls them internally, they exist, they are numbered, and they have documentation

2. Paragon's counsel committed to produce older technical specifications from approximately 2016–2017 "in the next day or two."

3. Paragon's counsel agreed to consult with the client regarding: (a) what additional technical documentation exists; (b) how "version" and "release" should be defined as used internally; and (c) what materials can be produced in digital form and on what timeline.

4. Defendants' counsel and pro se Grundahl reiterated the need for technical documentation as a prerequisite to identifying specific version dates for source code inspection, consistent with our March 6 and March 17 correspondence.

Page 3

During the March 23 conferral, convened specifically to address source code and technical documentation disputes that have been pending for months, Paragon's counsel stated he needed to consult with or go back to the client no fewer than six times in response to basic questions about Paragon's own software development practices. These were not unexpected questions. They were not new questions. They were the precise questions that have been at the center of this discovery dispute. After months of active litigation over exactly these issues, Paragon's counsel could not answer:

- Whether technical documentation exists

- What documents Paragon had already searched for and located

- Whether Clearspan Components, Inc. ("Clearspan")specific version of the software exists

- What version numbering system Paragon uses internally

- Whether a complete list of versions exists

- What technical documentation would be produced and on what timeline

These are foundational questions about a software company's own product, the product that is the subject of this entire litigation. The inability to answer them after months of active discovery dispute is not a preparation oversight. It is a pattern.

## II.  PARAGON'S OWN DOCUMENTS ESTABLISH THAT THE REQUESTED RECORDS EXIST

Paragon's position that technical documentation and version control records are unavailable or impractical to produce is contradicted by Paragon's own produced documents and court filings.

### A. GitHub Repository (ParagonTruss/ParagonCore)

Paragon maintains a GitHub repository at github.com/ParagonTruss/ParagonCore. This is confirmed by documents produced by the Holland Estate:

- DHE00000189:  John  Holland's  recruiting  materials,  which  reference github.com/ParagonTruss/GeometryClassLibrary and describe it as "real code we use daily."

- DHE00012871: John Holland's 2018 year-end employee letter, which includes a direct hyperlink to github.com/ParagonTruss/ParagonCore/pulls and documents that as of 2018, the repository contained 1,579 pull requests, 17,379 AppVeyor CI builds, and 118,182 lines of C# code.

- DHE00014150: An internal Paragon document discussing GitHub usage, documentation standards, and whether the repository should be public.

Page 4

GitHub repositories automatically and permanently maintain complete records of every commit, pull request, merge, branch, and code change from the repository's inception. These records include the author, timestamp, and description of every change. They are generated automatically and exist independently of any human-written documentation.

Paragon's counsel has never mentioned GitHub in any of our oral or written communications.

### B. AppVeyor Continuous Integration Build Logs

The production by the Holland Estate further confirms relevant information. DHE00012871 documents that Paragon used AppVeyor as its continuous integration build system, with 17,379 builds recorded as of 2018 alone. AppVeyor build logs record the commit that triggered each build, the build outcome, and the timestamp. These logs exist as a comprehensive, automated record of every compilation of the Paragon Truss Software.

Paragon's counsel has never mentioned AppVeyor or its build logs in any correspondence or conferral, despite their direct relevance to the questions counsel raised on the March 23 conferral regarding version identification and compilation history.

### C. GitHub Integration with Paragon's Slack Workspace

Paragon's Slack user directory (PARAGON-004850) documents two GitHub bot integrations in the paragontruss.slack.com workspace: a legacy GitHub integration (user ID U9N1CGWM6, since deleted) and an active GitHub integration (user ID U01V4G83P0Q). These integrations appear to have automatically posted notifications of code changes, pull requests, and build results into Slack channels in real time.

This means Paragon's Slack workspace contains an embedded record of software development activity, the very "technical documentation" that Defendants have repeatedly requested and that Paragon's counsel characterized as unavailable or unclear during the March 23 conferral.

The problem is that Paragon has refused to produce the full Slack channels, further precluding Defendants from relevant information. Defendants have cross-referenced produced Slack messages against preserved notification records, which establishes that Paragon has produced only about 43.6% of the documented Slack record. The "#drj-paragon" software channel, directly relevant to the source code version history at issue, has not been fully produced.

### J. Holland Declaration Admissions (Dkt. 155)

Mr. Holland's own declaration confirms that Paragon's source code repository contains more than 12,000 different compilable versions, most with more than 500,000 lines of code (¶ 8); that 362 public release numbers are documented on Paragon's website (¶ 9); and that the development workflow involves developers writing code, merging changes into production, and compiling executables (¶ 6), which is the standard Git/CI workflow confirmed by the GitHub and AppVeyor references above.

Page 5

Mr. Holland's declaration thus simultaneously confirms the existence of 12,000 compilable versions and a complete Git/CI workflow while Paragon offers a single deployed version for inspection. These positions cannot be reconciled.

Additionally, Paragon's website does not display all 362 release numbers referenced in the Holland Declaration. The earliest visible release is number 288, with multiple gaps thereafter. Release numbers below 288,covering the foundational period of Defendants' engineering contributions to the software, are entirely absent from the public record Paragon has offered.

Produced records establish that discrete software release notifications exist for at least versions 210 through 228. They are reflected in the limited #drj-paragon production, which references prior software releases and confirms the existence of associated technical documentation that has not been produced.

This means Paragon has offered nothing, not a single record, for versions 1 through 287. That is not a minor gap. That is the complete foundational development history of the software. It covers every version release from inception through the period most directly relevant to Defendants' engineering contributions. It covers the period when Kirk Grundahl was actively involved in directing the software's engineering development. It covers the versions in which the foundational calculation methodologies, the ones at the heart of this litigation, were first used in the software.

Paragon is asking this Court to evaluate a software ownership dispute while withholding the entire development history of the software.

We have previously requested a list of the release numbers by date and topic and did so again on the March 23 call. Again, Paragon would not provide that information, just that we had already been given "sufficient information."

Despite these admissions, Paragon has offered only a single version (i.e., deployed executable version) for inspection and has produced no version control records, commit histories, or build logs.

**E. Paragon's Commitment to Produce 2016-2017 Technical Specifications Confirms That Technical Documentation Exists and That Paragon Understands What the Term Means**

During the March 23 conferral, Paragon's counsel committed to produce technical specifications from approximately 2016-2017 within the next day or two. This commitment is significant for two independent reasons.

First, it confirms that technical documentation exists. If documentation exists from 2016-2017, there is no credible basis to claim it does not exist for every version from that point forward. The same documentation practices that produced 2016-2017 specifications necessarily continued through subsequent versions, or Paragon made a deliberate decision to stop documenting its engineering work, which itself requires explanation.

Page 6

Second, it confirms that Paragon understands precisely what Defendants mean by "technical documentation." Paragon did not ask for clarification of the term. Paragon did not express confusion about its scope. Paragon identified responsive documents and committed to produce them. The suggestion elsewhere in the conferral that the scope of "technical documentation" was unclear is contradicted by Paragon's own conduct during the same call.

Finally, during the conferral Paragon's counsel stated that "there is not separate documentation that's generated for every version of the executable source code." That statement actually concedes the point. Defendants are not requesting documentation for every internal compilation event. Defendants are requesting the technical documentation that exists, which Paragon's counsel acknowledges does exist, for the discrete versioned releases visible on Paragon's public website and identifiable through the GitHub repository, that is, 1-363 releases. Paragon's counsel confirmed documentation exists but attempted to characterize it as not tied to every recompile. That the documentation exists is precisely the documentation Defendants are requesting.

### F. The #drj-paragon Slack Channel Documents Software Release Notifications for Versions 210 Through 228

The Slack production establishes that the "#drj-paragon" Slack channel contains software release notifications documenting versions 210 through 228 of the Paragon Truss Software. This channel has not been fully produced.

The existence of this channel is independently significant to the source code dispute for several reasons:

First, it confirms that specific, discrete version numbers were identified and communicated in real time as releases occurred, directly contradicting any suggestion that versions lack discrete identity or that documentation of specific releases does not exist.

Second, versions 210 through 228 predate version 288, the earliest version currently appearing on Paragon's public-facing website. This confirms that the public version list is materially incomplete and that a significant portion of the software's development history, the period most relevant to Defendants' engineering contributions, is not reflected in the materials Paragon has offered for inspection.

Third, versions 210 and 224 are specifically referenced in Slack communications already produced in this litigation, further confirming their discrete identity and the existence of associated records.

The limited #drj-paragon production referencing prior releases confirms that technical documentation exists and has not been produced.

Page 7

### G. Paragon's Counsel Did Not Disclose the GitHub Repository, AppVeyor Integration, or GitHub-Slack Bot During the Conferral

Despite spending considerable time on the March 23 conferral discussing whether version documentation exists, how versions are defined, and what technical materials are available, Paragon's counsel at no point disclosed:

- That Paragon maintains a GitHub repository at github.com/ParagonTruss/ParagonCore

- That this repository automatically maintains complete commit history from inception

- That AppVeyor build logs record every compilation event

- That GitHub bot integrations in Paragon's Slack workspace automatically posted repository activity into Slack channels in real time

All of these facts are established by documents already produced in this litigation. The failure to disclose them during a conferral specifically about version identification and technical documentation availability is not consistent with the good faith conferral obligations under Fed. R. Civ. P. 37.

Furthermore, at the December 10, 2025 discovery hearing, Magistrate Judge Boor expressly directed Paragon's counsel to approach discovery conferrals with a "problem-solving mentality" and "do more than they already have done." (Boor Tr. at 44-45.) Non-disclosure of the GitHub repository, AppVeyor build logs, and GitHub-Slack integration, during a conferral convened specifically to address exactly those technical questions, appears to be inconsistent with that directive.'

### H. Industry Standard Definitions Confirm What Defendants Are Requesting

Paragon's counsel suggested during the March 23 conferral that the scope of "technical documentation" and the meaning of "version" were unclear. They are not. These are standard software industry terms with well-understood meanings.

"Version" in standard software development practice represents the state of a codebase that defines the achievement of a major external or internal milestone.

The software industry universally employs version identification systems including Release Candidate (RC), Release to Manufacturing (RTM), Gold Master (GM/Gold Build), Final Candidate (FC), Production Candidate, General Availability (GA), Stable Release, Production Release, and Public Release/Launch Version/Shipping Version.

Standard software version numbering follows the format: {major version}.{minor version}.{internal build version, patch/maintenance version}, for example, v3.13.12. The numbered releases visible on Paragon's public website are either major or minor versions under this standard system. Paragon can readily identify which.

Page 8

The suggestion that version identity is unclear or that versions cannot be defined with sufficient precision to produce associated documentation is not consistent with how standard software version numbering works or with the numbered releases Paragon itself publishes on its own website.

"Technical documentation" means documents and materials that describe, reflect, specify, or relate to the architecture, development, functionality, testing, or security of any software system or component. A working definition sufficient for these purposes is: documents and materials that describe and define how a software system works in a manner sufficient for a software developer to understand the code.

These definitions are not novel or disputed in the software industry. The fact that Paragon's counsel raised definitional uncertainty during the conferral while simultaneously committing to produce 2016-2017 technical specifications, without asking for clarification of what that term meant, confirms that the terminology is well understood by all parties.

### I. Clearspan-Specific Version

During the March 23 conferral, Defendants raised the question of whether a Clearspan-specific version of the Paragon Truss Software exists, separate from the publicly available version, given that Clearspan funded Paragon's development at approximately one million dollars per year. Paragon's counsel stated he was "not aware" of such a version but did not confirm its nonexistence.

Paragon must confirm in writing whether a Clearspan-specific version or branch of the software exists, and if so, produce all version control records, technical documentation, and build logs for that version on the same basis as the public version.

### III. FUNDAMENTAL QUESTION TO BE ANSWERED

If Paragon cannot produce documentation showing what engineering changes were made to its metal plate connected wood truss/structural calculation software, when those changes were made, by whom, and on what basis, then Paragon cannot demonstrate that the engineering embedded in its software at any given point in time was correct or properly validated. This software performs metal plate connected wood truss/structural calculations used in the design of real buildings.

This is not hypothetical. During the March 23 conferral, Defendants identified version 362, which documents an "improved shear tension check for splice plates" referencing TPI 8.6. That is a specific engineering methodology change to a metal plate connected wood truss/wood truss/structural calculation. Without documentation showing who made that change, what engineering basis supported it, and how it was validated, there is no way to know whether that change is correct or whether it was a change from the foundational engineering established during the parties' symbiotic enterprise/joint venture. Paragon's counsel could not speak to it. That is precisely the problem.

Page 9

The practical test is straightforward: if Paragon were to hire a new computer software developer oday, what would it show that computer programmer to bring them up to speed on the codebase? No professional software organization says "go look at the code and figure it out." They provide technical documentation describing the software's architecture, requirements, and functionality so the computer programmer can understand what they are looking at. That documentation exists. It is what Defendants have requested. The suggestion that it does not exist or cannot be identified is not consistent with how any professional computer software development organization operates.

We therefore ask directly: **How does Paragon know that the engineering embedded in its software at any given point in time is correct, if it cannot identify what engineering decisions were made, when, by whom, and on what basis? <u>This question requires a substantive written response.</u>**

## IV. DOCUMENTS REQUIRED

Based on the foregoing, and so that it is clear the types of documents routinely available and produced as part of a source code review, Defendants seek production of the following:

### A. Version Control Records

1. Complete git log output for the ParagonTruss/ParagonCore repository, from inception to present, including commit hash, author, date, and commit message for each entry.

2. Complete list of pull requests with title, description, author, reviewer, creation date, and merge date.

3. Complete list of branches with creation date, merge status, and associated pull requests.

4. Repository contributor list with commit counts per contributor.

### B. Build and Release Records

5. AppVeyor build logs from inception to present, including build number, date, status (pass/fail), and triggering commit reference.

6. Release documentation for each of the 362 public releases documented on Paragon's website, including any internal release notes, change logs, or engineering notes associated with each release.

7. Build configurations (e.g., .yml or equivalent files) showing compilation parameters, test configurations, and deployment settings.

### C. Technical Documentation

8. The older technical specifications from approximately 2016–2017 that Paragon's counsel committed to produce during the March 23, 2026 conferral.

Page 10

9. System/Software/Solution Architecture Document describing overall system architecture.

10. High-level and low-level design documents describing major and minor component implementation.

11. README files, wiki pages, and inline documentation from the ParagonTruss/ParagonCore repository.

12. Software Requirements Specification describing system requirements.

13. Functional Requirements Document describing system behavior.

14. Technical Requirements Document describing system implementation details.

15. Code documentation and inline comments embedded within the repository.

16. API definitions defining function inputs, outputs, and interfaces.

17. User manuals and end-user documentation.

**D. Definitions and Inventory**

18. A written definition of "version" and "release" as used internally by Paragon, consistent with counsel's commitment during the March 23 conferral.

19. A written inventory of what technical documentation exists for each public release, and what materials are available for production in digital form.

## V. RESERVATION OF RIGHT TO SEEK RULE 30(b)(6) DEPOSITION

The March 23 conferral raised serious concerns about Paragon's disclosure obligations. Paragon's counsel was unable to answer basic questions about Paragon's software development infrastructure, version control practices, and technical documentation, repeatedly stating he needed to consult with the client. Combined with the complete failure to disclose the existence of the GitHub repository, AppVeyor build logs, and GitHub-Slack integration during a conferral specifically about those subjects, Defendants are left without the information necessary to meaningfully advance the source code inspection process.

In light of these concerns, Defendants reserve the right to seek Court permission at the upcoming hearing for a two-hour Rule 30(b)(6) deposition of Paragon Component Systems, LLC, limited to identifying what technical documentation exists and Paragon's use of GitHub or other version control systems in the development of the Paragon Truss Software.

Defendants will raise this request with the Court at the upcoming hearing.

Page 11

## VI. NO AGREEMENT ON EXPERT DISCLOSURE DEADLINE

To avoid any ambiguity, the parties did not reach any agreement during the March 23 conferral regarding an extension of the expert disclosure deadline for the source code review. No such agreement exists. Any extension will need to be addressed formally. The timeline for any extension is directly driven by when Paragon produces sufficient technical documentation to allow Defendants' expert to identify relevant versions for inspection. That delay is attributable solely to Paragon's failure to produce records that its own documents confirm exist.

Given the upcoming hearing and the material omissions about GitHub and other information identified in this letter, Defendants request written responses to the questions posed in this letter and confirmation of a production timeline by the close of business on March 24, 2026.

If Paragon fails to provide written responses and a production timeline by that date, Defendants will bring Paragon's failure to disclose the GitHub repository, AppVeyor logs, and GitHub-Slack integration, and the pattern of incomplete production across both source code and Slack—to the Court's attention at the upcoming hearing and will seek appropriate relief including sanctions under Fed. R. Civ. P. 37.

Paragon's counsel raised scheduling concerns during the conferral while simultaneously refusing to produce the technical documentation that would allow Defendants' expert to identify inspection dates. The two positions are irreconcilable: Paragon cannot both withhold the documentation necessary for date selection and complain that dates have not yet been selected. Any resulting delay in expert disclosure is a direct and foreseeable consequence of Paragon's own withholding.

Sincerely,

Scott G. Salemi

cc: See corresponding email.