IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

INSPIRED PURSUITS, LLC,
QUALTIM, INC., CENTER FOR
BUILDING INNOVATION, LLC,
DRJ ENGINEERING, LLC, KIRK
GRUNDAHL, and SUZANNE
GRUNDAHL,

        Plaintiffs,

v.

PARAGON COMPONENT SYSTEMS, LLC,
JOHN HOLLAND, JAMES HOLLAND,
CLEARSPAN COMPONENTS, INC., ROB
EASON, and the ESTATE OF DANIEL
HOLLAND ex rel. SPECIAL INDEPENDENT
EXECUTOR MARVIN B. SPEED,

        Defendants.

Case No.:  3:25-CV-00075

## DEFENDANT CLEARSPAN COMPONENTS, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

NOW COME Defendant, Clearspan Components, Inc.[1] ("Clearspan"), by its counsel, and for its Memorandum in Support of its Motion for Summary Judgment, made pursuant to Fed. R. Civ. P. Rule 56, respectfully states as follows:

### INTRODUCTION

Clearspan's Motion for Summary Judgment should be granted in its entirety because Plaintiffs cannot establish questions of material fact sufficient to save their predatory and harassing claims. While Plaintiffs and Defendants had a symbiotic and mutually-beneficial relationship for years, that all changed in January 2024 when Daniel Holland ("Daniel") unexpectedly and tragically passed away. Following Daniel's death, Plaintiffs jumped at the opportunity to rewrite

---

[1] Clearspan is incorrectly identified as an LLC in the Second Amended Complaint.

the narrative of the Parties' relationship and attempt to hijack Defendants' work. Plaintiffs traveled to Clearspan's headquarters to meet with Rob Eason ("Eason"), Clearspan's President, and James Holland ("James"), former Clearspan employee and Daniel's son, proclaiming to be Clearspan's savior in the wake of tragedy. Recognizing Plaintiffs' attempt for what it was, Defendants Clearspan and Paragon Component Systems, LLC ("Paragon") rightfully terminated their working relationship with Plaintiffs. In a thinly veiled attempt to further their nefarious goals, Plaintiffs filed the instant action.

On April 25, 2025, Inspired Pursuits, LLC ("IP-LLC"); Qualtim, Inc. ("Qualtim"); Center for Building Innovation, LLC ("CBI"); DrJ Engineering, LLC ("DrJ"); Kirk Grundahl ("Kirk"); and Suzanne Grudahl ("Suzi") (collectively, "Plaintiffs") filed their First Amended Complaint against Clearspan relating primarily to an alleged breach of contract and alleged breach of a partnership. (Dkt. 39.) Perhaps recognizing the fatal flaws in the Amended Complaint, Plaintiffs, at the eleventh hour, filed the now-controlling Second Amended Complaint ("SAC"). (Dkt. 130.) While Plaintiffs have narrowed claims and provided slightly more specificity as to whom their claims target, the remaining claims aimed at Clearspan still fail and this Court should grant Clearspan's Motion for Summary Judgment in its entirety.

Plaintiffs assert the following claims against Clearspan:

1. Count I – Misappropriation of Trade Secrets;
2. Count III – Breach Of Joint Venture Agreement;
3. Count IV –Unjust Enrichment;
4. Count V – Tortious Interference with Contract and Prospective Economic Advantage; and
5. Count VI – Unfair Competition and Misappropriation of Confidential Business Information.

(Dkt. 130.)

1098558\331252424.v1

Plaintiffs' Misappropriation of Trade Secrets claim against Clearspan fails because Plaintiffs cannot sufficiently identify a protectable trade secret Clearspan allegedly misappropriated. Even if Plaintiffs can establish a protectable trade secret, they cannot establish questions of material fact that Clearspan misappropriated the trade secret through acquisition, disclosure, or use.

Plaintiffs' Breach of Joint Venture Agreement fails because Plaintiffs cannot establish questions of material fact that an enforceable joint venture agreement between them and Clearspan ever existed.

Plaintiffs' Unjust Enrichment claim fails because Plaintiffs cannot establish questions of material fact that they conferred any benefit upon Clearspan that would be inequitable for Clearspan to retain.

Plaintiffs' Tortious Interference with Contract and Prospective Economic Advantage claim fails because Plaintiffs cannot establish questions of material fact as to the specific identity of the third parties with which Plaintiffs allegedly had actual or prospective contracts/relationships with, that those prospective contracts/relationships were sufficiently concrete, or that Clearspan intentionally induced those unknown third parties to not perform their obligations to Plaintiffs.

Finally, Plaintiffs' Unfair Competition and Misappropriation of Confidential Business Information fails for the simple fact that no such claim exists under Wisconsin law. With respect to Plaintiffs' claims against Clearspan, it is clear that there is no question of material fact such that Plaintiffs can maintain *any* of their actions against Clearspan, and Clearspan is, therefore, entitled to judgment as a matter of law.

3

**STANDARD OF REVIEW**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if it is one upon which a reasonable jury could return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material" facts are "outcome determinative under the governing law." *Whetstine v. Gates Rubber Co.*, 895 F.2d 388, 392 (7th Cir. 1990).

To overcome summary judgment, the nonmoving party may not simply rest upon allegations in the pleadings. Fed. R. Civ. P. 56(e); *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Instead, it must produce enough specific material facts in support of its claim to sustain its burden at trial. *Celotex Corp.*, 477 U.S. at 324; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). To that end, the non-moving party must present evidence, not speculation and unsupported conclusions of fact to support its claim. *Rand v. CF Industries, Inc.*, 42 F.3d 1139, 1146–47 (7th Cir. 1994.) A mere scintilla of evidence does not create a triable issue of material fact. *See, e.g.*, *Murphy v. ITT Technical Services, Inc.*, 176 F.3d 934, 936 (7th Cir. 1999). Moreover, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Richter v. Hook-SuperX*, 142 F.3d 1024, 1027 (7th Cir. 1998) (citing *Anderson*, 477 U.S. at 247–48). The factual dispute must be material. *Id.* Defendants do not have to disprove the plaintiff's claim to show that they are entitled to summary judgment; they need only point to the absence of evidence supporting the claim. *Bank of Illinois v. Allied Signal Safety Restraint Systems*, 75 F.3d 1162, 1168 (7th Cir. 1996)

4

1098558\331252424.v1

(holding defendants are "under no obligation to negate the plaintiffs' claim" to prevail on summary judgment). Summary judgment requires the party with the burden of proof to "put up or shut up," pointing to evidence from which a reasonable jury could find in its favor of each element of its claim. *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020).

## ARGUMENT

Plaintiffs cannot establish questions of material fact sufficient to save *any* of their claims against Clearspan. Co-Defendants Eason, James, Paragon Component Systems, LLC ("Paragon"), John Holland ("John"), and the Estate of Daniel Holland (the "Estate") are filing their own motions for summary judgment contemporaneously with the filing of this Motion. Many of the claims, issues, and arguments overlap. Rather than repeating and duplicating arguments, and for purposes of judicial economy, Defendant Clearspan joins in the respective Motions for Summary Judgment filed by Eason, James, Paragon, John, and the Estate insofar as the arguments made therein apply equally to the claims asserted against Clearspan.

## I. PLAINTIFFS' TRADE SECRET MISAPPROPRIATION CLAIM AGAINST CLEARSPAN FAILS.

Plaintiffs' Trade Secret Misappropriation claim against Clearspan fails because Plaintiffs cannot identify with requisite specificity the trade secret(s) allegedly misappropriated by Clearspan or establish questions of material fact that Clearspan misappropriated those alleged trade secrets by acquisition, disclosure, or use. Accordingly, the Court should grant Clearspan's Motion for Summary Judgment as to Plaintiffs' Trade Secret Misappropriation claim against it.

### A. Plaintiffs' Trade Secret Misappropriation Claim Against Clearspan Fails Because Plaintiffs Fail to Identify Protectable Trade Secrets.

The elements of a claim for misappropriation of trade secrets are essentially the same under the Federal Defend Trade Secrets Act ("DTSA") and Wisconsin's Uniform Trade Secrets Act ("WUTSA"). *Cmty. Hosp. Partners, LLC v. Marshfield Clinic Health Sys.*, No. 22-cv-234-jdp,

2023 U.S. Dist. LEXIS 40726, at *4, 2023 WL 2424788 (W.D. Wis. Mar. 9, 2023). The first question that must be answered in assessing any trade secret claim is whether Plaintiffs have identified any trade secrets at all. Many plaintiffs allege trade secret misappropriation, but few prove it. *Kuryakyn Holdings v. Ciro*, 242 F. Supp. 3d 789, 800 (W.D. Wis. 2017). "[I]t is hard to prove that particular information qualifies as a trade secret." *Id.* (quoting *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 584 (7th Cir. 2002)).

To survive summary judgment, Plaintiffs must identify specific documents or information that constitute trade secrets, not simply list categories or general topics of information. *Id.* (citing *Marine Travelift, Inc. v. Marine Lift Sys., Inc.*, No. 10-cv-1046, 2013 U.S. Dist. LEXIS 170825, 2013 WL 6255689, at *6 (E.D. Wis. Dec. 4, 2013)). A plaintiff must do more than simply identify categories of information and then "invite the court to hunt through the details in search of items meeting the statutory definition." *IDX Sys. Corp.*, 285 F.3d at 584 (citing *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1266 (7th Cir. 1992)). Plaintiffs must identify the purported trade secret with "a high level of specificity." *REXA, Inc. v. Chester*, 42 F.4th 652, 663 (7th Cir. 2022). Plaintiffs cannot escape their burden of proof with a conclusory statement that "everything" is a trade secret. *DF Inst., LLC v. Dalton Educ., LLC*, No. 19-cv-452-jdp, 2020 U.S. Dist. LEXIS 143594, 2020 WL 4597122, at *13 (W.D. Wis. Aug. 11, 2020).

It is not enough for a plaintiff to assert, as Plaintiffs do here, that among the information a defendant had access to are various trade secrets and then leave it to the jury to decide which items of information were disclosed and whether they fit the statutory definition of a trade secret. *Marine Travelift, Inc. v. Marine Lift Sys., Inc.*, No. 10-cv-1046, 2013 U.S. Dist. LEXIS 170825, 2013 WL 6255689, at *16 (E.D. Wis. Dec. 4, 2013). The court in *Travelift, Inc.* stated:

> It is unreasonable and unfair to force a defendant to trial without even knowing specifically what information the plaintiff claims constitutes the trade secrets the

1098558\331252424.v1

> defendant is alleged to have misappropriated. *Id.* It is unreasonable because if a
> plaintiff cannot identify the information the defendant disclosed and demonstrate
> that it can offer evidence from which a jury could conclude the information
> constitutes a trade secret, there is no need for a trial. It is unfair because a defendant
> should not have to guess what information the plaintiff claims was disclosed and
> see for the first time at trial the evidence the plaintiff has to prove it fits the
> definition of a trade secret.

*Id.* at *16–17. "It is entirely unfair for a plaintiff to identify general categories of what may

constitute a trade secret and essentially force the defendant to guess what may be at issue until a

jury trial." *Staffworks Group-Wisconsin Inc. v. Serv. First Staffing*, *30 (E.D. Wis. June 29, 2020).

In *IDX Systems*, the district court granted the defendants' motion for summary judgment

on the plaintiff's trade secret misappropriation claim after concluding that the plaintiff "had failed

to identify with specificity the trade secrets that it accuses the defendants of misappropriating."

285 F.3d at 583. There, the plaintiff produced a 43-page description of the methods and processes

underlying and the inter-relationships among various features making up its software package and

argued that was specific enough to survive summary judgment. *Id.* The Seventh Circuit Court of

Appeals agreed with the district court that the plaintiff failed to identify its alleged trade secrets

with specificity. *Id.* The court noted that the plaintiff "has been both too vague and too inclusive,

effectively asserting that all information in or about its software is a trade secret." *Id.*

In *Marine Travelift, Inc. v. Marine Lift Sys.*, the Eastern District of Wisconsin granted

summary judgment where the plaintiff provided even less specificity as to its purported trade

secrets than the plaintiff in *IDX Systems*. 2013 U.S. Dist. LEXIS 170825, at *18–19. There, the

plaintiff alleged that its trade secrets fell under two categories, engineering and manufacturing,

and listed several subcategories of information under the general categories. *Id.* at *18. For

example, under "engineering," the plaintiff listed: "structure information/design criteria,"

"engineering calculations," "steering information and specifications/design criteria," "duty cycle

criteria and information," "performance testing data," and "safety factors in machine and

components." That court held that other than these "general topics," the plaintiff "failed to identify any specific document or item of information constituting a trade secret that it claims [the defendant] disclosed" and granted the defendant's motion for summary judgment as to the misappropriation of trade secrets claim. *Id.* at \*19.

These courts are not alone in granting summary judgment where a plaintiff fails to identify their purported trade secrets with the requisite specificity. *See, e.g., ABC Acquisition Co., LLC v. AIP Prods. Corp.*, 18 CV 8420, 2020 U.S. Dist. LEXIS 143298, at \*35 (N.D. Ill. Aug. 11, 2020) (rejecting plaintiff's identification of "confidential pricing information, processes, customer buying history and needs, and drawings" as "too vague to allow a trier of fact to analyze whether any of the other elements of [the plaintiff]'s claim have been met"); *Weather Shield Mfg. Inc. v. Drost*, 17-cv-294-jdp, 2018 U.S. Dist. LEXIS 135456, 2018 WL 3824150, at \*2 (W.D. Wis. 2018) (denying plaintiff's motion for summary judgment on its trade secret misappropriation claim where plaintiff argued that "all strategic plans, customer data, and pricing information constitute trade secrets as a matter of law," concluding that the plaintiff failed to "identify the specific information that it alleges contains trade secrets," and "[i]t is [the plaintiff]'s responsibility, not the court's to pin down the specific information that [plaintiff] considers a trade secret").

Here, Plaintiffs come to the summary judgment stage with significantly less specificity as to their purported trade secret(s) that Clearspan allegedly misappropriated than the plaintiffs in *IDX Systems* and *Marine Travelift*. Plaintiffs only offer vague, generalized descriptions of their purported trade secrets without demonstrating that any specific piece of information meets the statutory definition of a trade secret.

Plaintiffs' SAC alleges that the "Enterprise's confidential business model" is a trade secret of Plaintiffs. (Dkt. 130, ¶ 43.) Plaintiffs identify this purported trade secret "categorically"

8

claiming:

> [T]he business-model trade secret comprises: (i) the proprietary architecture of the collaborative relationship among the Enterprise participants—Clearspan as the manufacturing function, CBI as the testing function, DrJ as the professional-engineering functions, and Paragon as the data-processing function—together with the related market-entry and expansion strategy by which the Enterprise was designed to operate independently of the dominant plate-manufacturer-controlled software ecosystem; (ii) confidential implementation procedures and pricing, including the processes for converting customer requests into sealed engineered design drawings, pricing structures, customer-acquisition workflows, and revenue-sharing arrangements; (iii) the confidential organization and personnel structure of the Enterprise and the specialized roles contributed by each participant; (iv) the formation, purpose, and strategic rationale of IP-LLC and its function as the Enterprise's intellectual-property holding entity; and (v) the existence, interrelationship, and competitive significance of the Enterprise's underlying proprietary engineering and testing assets.

(Dkt. 130, ¶ 43.) Plaintiffs' identification of numerous broad categories of information is insufficient to survive summary judgment. Even taking one of these categories alone as the trade secret is insufficient to survive summary judgment, as it fails to identify with any degree of specificity as to what is the trade secret. Plaintiffs point only to an "including, but not limited to" laundry list of its purported trade secrets that leaves Clearspan wondering what, exactly, the supposed trade secrets are that they are alleged to have misappropriated. Because Plaintiffs fail to specifically identify a single trade secret that Clearspan alleged to have misappropriated, it is entitled to summary judgment on Plaintiffs' WUTSA trade secret misappropriation claim.

**B.      Plaintiffs Cannot Establish a Question of Material Fact That Clearspan Misappropriated Their Protectable Trade Secret.**

Under the DTSA and WUTSA, Plaintiffs must prove misappropriation by showing either "unauthorized acquisition, disclosure, or use of a trade secret." *J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 576 (7th Cir. 2020); Wis. Stat. § 134.90(2)(a)-(b). Plaintiffs appear to only unartfully plead misappropriation by use and disclosure against Clearspan.

9

1.     **Plaintiffs cannot establish misappropriation by acquisition against Clearspan.**

Plaintiffs do not appear to claim that Clearspan misappropriated its purported trade secrets by acquisition. Indeed, Plaintiffs either developed the purported trade secrets with Clearspan or disclosed them to Clearspan as part of the "Enterprise." Plaintiffs disclosed the "Enterprise information" to Eason and James in the "confidential February 27-28, 2024 briefing at Clearspan's offices." (Dkt. 130, ¶¶ 50, 70.) The "Enterprise information" presented was "the full Enterprise framework, including the role and proprietary nature of the Qualtim Companies' Engineering Inputs that the Paragon Truss Software uses, the mutual dependencies among the participants, and the confidentiality framework governing the Enterprise's confidential information." (*Id.* at ¶ 70.) To the extent that Clearspan did not acquire Plaintiffs' purported trade secrets through the joint development of the "Enterprise," Plaintiffs voluntarily disclosed the purported trade secrets to Clearspan without taking the requisite steps to maintain its confidentiality.

It is undisputed that ███████████████████████████████

███████████ (Defendants Clearspan Component, Inc.'s, Rob Eason's, and James Holland's Statement of Material Facts in Support of Their Motions for Summary Judgment ("SMF") ¶¶ 99–100.) Clearspan could not have wrongfully acquired Plaintiffs' trade secret by breaching an NDA that did not exist between them and Plaintiffs. Further, there are no facts to support—or even allegations of—Clearspan engaging in corporate espionage or other nefarious means to obtain Plaintiffs' purported trade secrets. Accordingly, any misappropriation-by-acquisition claim by Plaintiffs against Clearspan fails.

2.     **Plaintiffs cannot establish misappropriation by disclosure against Clearspan.**

Plaintiffs' misappropriation-by-disclosure claim against Clearspan fails because they can point to no evidence that Clearspan ever disclosed its purported trade secrets to anyone. Indeed,

10

Plaintiffs do not specifically allege any disclosure by Clearspan. Instead, Plaintiffs take the scattershot approach and indeterminately claim "Defendants misappropriated the Engineering Inputs and confidential information by using and disclosing them after the termination of Plaintiffs' participation in the Enterprise, . . ." (Dkt. 130, ¶ 93.) Such a lack of evidence dooms a plaintiff's trade secret misappropriation claim. *LiiON, LLC v. Vertiv Group Corp.*, Case No. 18-cv-6133, 2021 U.S. Dist. LEXIS 205455, 2021 WL 4963610, at *23–25 (N.D. Ill. Oct. 26, 2021).

In *LiiON, LLC*, the plaintiff contended that the defendant misappropriated its trade secrets, in part, by disclosing them. *Id.* In opposition to the defendant's motion for summary judgment, the plaintiff supported its misappropriation-by-disclosure claim by asserting that their alleged trade secret began showing up in a competitor's products, and that the only link for the competitor to receive such trade secrets was through the defendant. *Id.* at *23. The Northern District of Illinois granted summary judgment to the defendant as to the plaintiff's trade secret misappropriation claim because the record contained no testimony from the employees of the defendant or the competitor indicating that the defendant gave the plaintiff's alleged trade secrets to the competitor, and the plaintiff's own witnesses testified that they had no knowledge of any information or documents indicating that the defendant shared any of the plaintiff's proprietary information with the competitor. *Id.* at *23–25. That court held that no reasonable jury could find misappropriation on that record. *Id.* at *25. Such is the case here.

The undisputed evidence shows that Clearspan never disclosed any aspect of "Engineering Inputs" or the "Enterprise's confidential business model" at the 2024 Virginia Tech Conference, at the 2024 BCMC, at the 2024 NCSEA Summit, at any other conference or trade show, or anywhere or to anyone outside of Clearspan. (SMF ¶ 102.) Additionally, Clearspan ever promoted that other engineering firms could seal engineered designs that use and benefit from IP-Math and

did not promote any aspect of "Engineering Inputs" or the "Enterprise's confidential business model," as those terms are defined in Plaintiffs' Second Amended Complaint. (SMF ¶ 103.) Further, as stated above, Clearspan never entered an NDA with Plaintiffs that would have prohibited their disclosure of any aspect of the Engineering Inputs or the "Enterprise's confidential business model" even if they did. (SMF ¶ 100.)

Given the utter lack of any facts conflicting with this unrebutted testimony, summary judgment on Plaintiffs' WUTSA trade secret misappropriation claim is necessary. *N. Highland Inc. v. Jefferson Mach. & Tool Inc.*, 2017 WI 75, ¶¶ 42–43, 377 Wis. 2d 496, 898 N.W.2d 741 (dismissing trade secret misappropriation claim where plaintiff requested an inference of disclosure of trade secret, but the record was bare as to any actual disclosure). Plaintiffs lacks sufficient evidence to raise a triable issue of fact on its trade secret misappropriation-by-disclosure claims under the WUTSA.

### 3. Plaintiffs cannot establish misappropriation by use against Clearspan.

On the theory of improper use, courts in the Seventh Circuit interpret "use" broadly as: "any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant," including "marketing goods that embody the trade secret, employing the trade secret in manufacturing or productions, relying upon the trade secret to assist or accelerate research or development, or soliciting customers through use of information that constitutes a trade secret." *Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.*, 108 F.4th 458, 484 (7th Cir. 2024); *see also LiiON, LLC*, 2021 U.S. Dist. LEXIS 205455, at *19 (citing *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 436 F. Supp. 3d 1150, 1165 (N.D. Ill. 2020)). As such, the mere passive use of a commercially purchased or acquired end-product by a downstream user—without any active exploitation, derivation, or manufacturing utilizing the underlying trade secret information—does not meet the definition of "use" required for a trade secret misappropriation claim. *See id.*

12

Plaintiffs' misappropriation-by-use claim against Clearspan hinges on their allegation of "Clearspan's and its principals' continued use of the Engineering Inputs in design and manufacturing without authorization." (Dkt. 130, ¶ 93.) Plaintiffs make no other allegations as to Clearspan supportive of a misappropriation-by-use claim.

Plaintiffs' allegation that Clearspan continued to use the Engineering Inputs in design and manufacturing boils down to a claim that Clearspan continued to use the Paragon Truss Software. Plaintiffs, however, can point to no exploitation of their purported trade secret(s) in Clearspan's downstream use of the Paragon Truss Software. The unrebutted testimony from Clearspan is that they never improperly used the Engineering Inputs to compete with Plaintiffs, to advantage themselves over Plaintiffs, or in any capacity. (SMF ¶¶ 104–06.) Clearspan ███████████████ ████████████████████████████████, and Clearspan has never done in-house engineering and has always used third-party engineers. (SMF ¶ 104.) Clearspan never drafted, added to, contributed to, modified, manipulated, edited, or otherwise changed the coding, engineering, or creation of the Paragon Truss Software. (SMF ¶ 105.) Clearspan was simply a downstream user of the Paragon Truss Software end-product that was commercially available from Paragon. (SMF ¶ 106.)

This lack of evidence dooms Plaintiffs' misappropriation claims based on a "use" theory. *See, e.g., LiiON, LLC*, 2021 U.S. Dist. LEXIS 205455, at *20; *Saniteq, LLC v. GE Infrastructure Sensing, Inc.*, No. CV17771SJFARL, 2018 U.S. Dist. LEXIS 156629, 2018 WL 4522107, at *9 (E.D.N.Y. July 12, 2018) (granting summary judgment based upon a "use" theory in part because the plaintiff's fact witness admitted he had no knowledge that the defendant used the plaintiff's trade secrets), *report and recommendation adopted*, No. 17-CV-771 (SJF)(ARL), 2018 U.S. Dist. LEXIS 156465, 2018 WL 4357475 (E.D.N.Y. Sept. 13, 2018).

1098558\331252424.v1

Accordingly, Plaintiffs' trade secret misappropriation claim against Clearspan fails as to all forms of misappropriation, and the Court should grant Clearspan's Motion for Summary Judgment in that regard.

## II.    PLAINTIFFS' BREACH OF JOINT VENTURE AGREEMENT CLAIM FAILS.

Plaintiffs' Breach of Joint Venture Agreement claim against Clearspan fails for the simple reason that no enforceable joint venture agreement ever existed between Plaintiffs and Clearspan. Plaintiffs rely on what, at best, amounts to illusory promises and half-baked business relationship ideas. Despite Plaintiffs' best packaging efforts, these statements and actions do not amount to an enforceable joint venture agreement with Clearspan.  Plaintiffs allege that:

> Clearspan breached the joint-venture agreement by terminating Plaintiffs' participation, excluding Plaintiffs from the Enterprise and its systems, seizing and commercializing the Enterprise's assets, refusing to share the venture's profits and benefits with Plaintiffs, and preventing Plaintiffs from performing the professional engineering, sealing, and other services that were Plaintiffs' role in the Enterprise. That termination and exclusion were not authorized by the joint-venture agreement.

(Dkt. 130, ¶ 102.) This claim puts the cart before the horse and assumes the existence of the joint venture agreement.

To maintain a breach of contract claim, there must be a contract, a breach, and damages. *See, e.g., Brew City Redevelopment Grp., v. Ferchill Grp.*, 2006 WI App 39, ¶ 11, 289 Wis. 2d 795, 714 N.W.2d 582. "As in tort law, so in contract law, causation is an essential element of liability. If the damage of which the promisee complains would not have been avoided by the promisor's not breaking his promise, the breach cannot give rise to damages." *Wis. Knife Works v. Nat'l Metal Crafters*, 781 F.2d 1280, 1289 (7th Cir. 1986) (internal citations omitted); Joint Proposed Jury Instructions "Consequential Damages for Breach of Contract."

14

**A.    Plaintiffs Cannot Establish Breach of Joint Venture Agreement Because No Written Agreements Exist.**

Plaintiffs can point to no written contract allegedly breached by Clearspan. ███████

████████████████████████████████████████████████████

(SMF ¶¶ 22–24, 28.) Tellingly, Plaintiffs do not identify any specific written agreements between them and Clearspan and can only claim that written agreements existed that comprised the joint venture. No such written agreements regarding a purported joint venture between Clearspan and Plaintiffs exist.

**B.    Plaintiffs Cannot Establish Breach of Joint Venture Agreement Because No Oral or Implied Contracts Exist.**

In light of Plaintiffs' admission that there is no formal, written contract or agreement that controls the purported joint venture alleged here, Plaintiffs resort to asserting that alleged oral and/or "implied-in-fact" contract(s) existed. To determine whether an oral contract exists, the parties must have a meeting of the minds with respect to the essential terms of the agreement and an intent to be bound to the oral agreement. *Superview Network, Inc. v. SuperAmerica, a Div. of Ashland Oil, Inc*., 827 F. Supp. 1392, 1396 (E.D. Wis. 1993). To be binding and enforceable, the terms of the oral contract must be definite and certain. *Id*.; *Larimer v. Dayton Hudson Corp.*, 137 F.3d 497, 502 (7th Cir. 1998); *Lindquist Ford, Inc. v. Middleton Motors, Inc.*, 557 F.3d 469, 481 (7th Cir. 2009) (holding that a contract implied in fact "requires, the same as an express contract, the element of mutual meeting of minds and of intention to contract") (quoting *Theuerkauf v. Sutton*, 102 Wis. 2d 176, 183, 306 N.W.2d 651, 657 (1981)); *Sands v. Menard*, 372 Wis. 2d 126, 156 (2016) ("A contract must be definite and certain as to its basic terms and requirements to be enforceable."). "Indefiniteness means that an essential term of the agreement is so vague or indefinite that that agreement is not 'definite as to the parties' basic commitments and obligations,' thus preventing the formation of a contract." *Ehlinger v. Hauser*, 2008 WI App 123, ¶ 28, 313

15

Wis. 2d 718, 758 N.W.2d 476 (quoting *Mgmt, Com. Servs. Inc. v. Hawkins, Ash, Baptie & Co.*, 206 Wis. 2d 158, 178, 557 N.W.2d 67 (1996)); *Bissessur v. Indiana Univ. Bd. of Trustees*, 581 F.3d 599, 603 (7th Cir. 2009) ("A plaintiff may not escape dismissal on a contract claim, for example, by stating that he had a contract with the defendant, gave the defendant consideration, and the defendant breached the contract. What was the contract? The promises made? The consideration? The nature of the breach?"). Where a plaintiff alleges an oral contract, but that oral contract is only comprised of a single term or fails to provide for essential terms such as salary, payment for expenses, or rights over intellectual property, there has been no meeting of the minds. *Superview Network*, 827 F. Supp. at 1396 (holding that the parties did not have a meeting of the minds sufficient to establish an oral contract where the parties discussed entering a contract and allegedly agreed to a range for the allocation of profits, but failed to agree on other essential terms).

An implied contract, like an express contract, requires a mutual meeting of minds and an intention to contract. *Emirat AG v. High Point Printing LLC*, 248 F. Supp. 3d 911, 930 (E.D. Wis. 2017), *aff'd sub nom. Emirat AG v. WS Packaging Grp., Inc.*, 900 F.3d 969 (7th Cir. 2018). A plaintiff may use circumstantial evidence to prove the existence of an implied contract, provided that the circumstances show a mutual intention to contract. *Id.* However, where a party's express contractual actions undermine the intent to implicitly contract, no such implied contract exists. *See id.* (finding that the party's "actual contracting actions…establish the opposite of a mutual intention to contract"). Further, under Wisconsin law, partial performance is not a substitute for proof of the alleged contract. *Superview Network, Inc.*, 827 F. Supp. at 1397 (citing *Toulon v. Nagle*, 67 Wis. 2d 233, 248 (1975)).

Plaintiffs have not established that an oral or implied contract was ever reached. Even if they did, Plaintiffs' oral contract claim must be dismissed because the undisputed facts show that

the parties never intended to be bound by mere oral discussions. Under Wisconsin law, "agreements to agree" do not create binding obligations. *Clark Tech. LLC v. Corncob Inc.*, Case No. 18-CV-1559-JPS, 2019 U.S. Dist. LEXIS 153668, 2019 WL 4279462, at *23 (E.D. Wis. Sept. 10, 2019) (citing *Witt v. Realist, Inc.*, 18 Wis. 2d 282, 298 (1962)). Where parties do not intend to be bound until all negotiations are complete, no contract is formed. *Id.* (citing *Gruen Indus., Inc. v. Biller*, 608 F.2d 274, 280 (7th Cir. 1979) ("It is well settled that no contract is formed 'where two parties consider the details of a proposed agreement, perhaps settling them one by one, with the understanding during this process that the agreement is to be embodied in a formal written document and that neither party is to be bound until he executes the document.'")); *Lambert Corp. v. Evans*, 575 F.2d 132, 135 (7th Cir. 1978) ("Even if parties agree, point by point, on all the terms of a contract, if they understand that the execution of a formal document shall be a prerequisite to their being bound there is no contract until the document is executed. On the other hand, if it is agreed that a formal document will be prepared to memorialize a bargain the parties have already made, the bargain is enforceable even though the document has not been executed.").

Plaintiffs' SAC discusses Clearspan and Dan working as alleged partners, *e.g.*, "This case arises from the wrongful termination of a fifteen-year joint venture . . . . For more than a decade, Plaintiffs and Daniel Holland and his companies, [Paragon] and [Clearspan], worked as partners in a joint venture . . . ." (Dkt. 130, ¶ 1.) During his deposition, Kirk Grundahl stated ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (SMF ¶ 31.) According to Kirk,

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17

████████████████████████████████████████████████

████████████████████████████████ (SMF ¶ 27.) Plaintiffs stated this despite DrJ not being a company until 2011 and Paragon not existing until 2016.

In the SAC, Plaintiffs allege that "[Kirk and Dan] formed the Enterprise to develop and commercialize an independent, plate-agnostic platform . . . . The Enterprise was structured as a shared-risk venture in which professional engineering services, manufacturing operations, and software-enabled design processing were undertaken in advance of full commercialization." (Dkt. 130, ¶¶ 27–28.) "In 2017, the Enterprise's principals—Daniel Holland, Kirk Grundahl, and Suzanne Grundahl—formed IP-LLC as the Enterprise's jointly controlled intellectual property holding entity. . . . The members' understanding was first memorialized in writing in 2017 and again disseminated as part of a December 31, 2019 agenda . . . ." (Dkt. 130, ¶ 29.) Yet in his deposition when asked ████ ████████████████████████████████

████████████████████████████████ Kirk responded, ████████████████████████ (SMF ¶ 41) (emphasis added). Indeed, Krik called the "contractual" terms ████████████████

████████████ (SMF ¶ 32.)

As aptly put in another similar case "[t]his evidence shows that the purported oral agreement was, if anything, closer to a 'promise to form a partnership,' with the details of that partnership to be worked out later, and such a promise cannot support a claim for breach of an oral agreement." *John C. Distefano & goDesk, LLC v. Nordic Consulting Partners, Inc.*, 23-cv-657-wmc, 2025 U.S. Dist. LEXIS 228170, 2025 WL 3228989, at \*44–45 (citing *Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 524–25 (7th Cir. 2022) (holding that the parties did not create a legally binding agreement when they "agreed to form a partnership or joint venture," but the exact legal structure was yet to be determined); *Ceme-Tube*, 742 F. Supp. 3d at

18

874 (granting summary judgment on the plaintiff's oral contract claim because the plaintiff provided no evidence that the parties ever discussed, much less settled on, essential terms of a binding contract); *Toll Processing Services, LLC v. Kastalon, Inc.*, 880 F.3d 820, 829–30 (7th Cir. 2018) (affirming summary judgment on oral contract claim because the evidence established the parties did not have a mutual understanding regarding how long the defendant was required to store "pickle line rolls" that were the subject of the alleged agreement).

Aside from Plaintiffs' bald assertions that they believed they had a "Joint Venture Agreement," there is no evidence from which to infer the parties had done anything more than discuss a mutually beneficial business relationship. There are no definite terms, just Plaintiffs' belief that the "Enterprise" existed. This is not enough to survive a motion for summary judgment. Summary judgment is the "put up or shut up" moment for plaintiffs seeking to take their claims to trial. *Johnson v. Cambridge Indus. Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (citation omitted).

### C.  Statute of Frauds Prevents the Enforcement of Any Purported Oral Joint Venture Agreement Alleged by Plaintiffs.

As relevant here, the statute of frauds provides that "[e]very agreement that by its terms is not to be performed within one year from the making thereof" "shall be void unless such agreement or some note or memorandum thereof, expressing the consideration, be in writing and subscribed by the party charged therewith." Wis. Stat. § 241.02(1)(a). Kirk testified that ███████████

████████████████████████████████████████████

██████████████████████████████ (SMF ¶ 29.) ██████████

██████████████████████████████ (SMF ¶¶ 22–24, 28.) And Kirk's testimony that ████████████████████ on its face illustrates the agreement cannot be completed in one year, and Defendants could not possibly discharge their alleged contractual obligations within one year.

19

Similarly in *Lost Lake Cranberry, Inc. v. Iron Cnty.*, the plaintiff alleged an oral contract which required the defendant to continually indemnify the plaintiff from damages. 2024 Wisc. App. LEXIS 583, *9. The court noted that this created a never-ending obligation, "which would not be possible for the [defendant] to fully discharge its contractual obligation within one year after the contract was made." *Id*. at 9-10. The court held that the "agreement is void due to its failure to comply with the statute of frauds." *Id*. at 11.

When the statute of frauds has been raised as an affirmative defense, the burden is on the party seeking to enforce the contract to show facts which take the case out of the statute of frauds. *Superview Network, Inc.*, 827 F. Supp. at 1397 (citing *Spensley Foods, Inc. v. Livingston Food & Lumber, Inc.*, 128 Wis. 2d 279, 286 (Ct. App. 1985)). The "facts alleged to remove the bar of the statute of frauds must be clearly and satisfactorily proved." *Id.* (quoting *In re Estate of Lade*, 82 Wis. 2d 80, 86 (1978)).

This Court should hold the same here, where Plaintiffs' own testimony provides that the oral agreement would go in perpetuity and cannot be completed within one year.

**D.      The Mere Fact That Clearspan Did Not Use Anyone Else for a Given Time Period is Insufficient to Obligate Clearspan to Exclusivity.**

For an agreement between two parties to be exclusive, it must actually be "exclusive"—no other party may be used. This sounds simplistic, and it is. Assuming, *arguendo*, that a relationship evolves into a *de facto* exclusive partnership, all that reflects is the parties' choice to continue their relationship and the "lack of performance by others with whom [a given party] contracted as agents," and nothing more. *Krause Brokerage Servs., LLC v. Am. Century Life Ins. Co.*, Case No. 23-CV-1574, 2025 U.S. Dist. LEXIS 76102, 2025 WL 1168929, at *6–7 (E.D. Wis. Apr. 22, 2025). Conversely, a truly exclusive relationship is one that eliminates all choice of alternate options. *Id. See also N. Shore Bank FSB v. Progressive Cas. Ins. Co.*, Case No. 10-C-71, 2011

20

U.S. Dist. LEXIS 41402, 2011 WL 1457130 at *20 (E.D. Wis. Apr. 15, 2011) (noting that such terms are not "in the vein of horseshoes and hand grenades; close is not good enough."). Here, Plaintiffs believe that an exclusive agreement was in place between them and Clearspan. But the undisputed facts bely their contention.

Plaintiffs allege that "the agreements and arrangements through which the Enterprise was formed and operated included: . . . (b) an oral exclusivity agreement under which the Qualtim Companies served as the exclusive engineering and professional-sealing providers for Clearspan's structural-component manufacturing operations . . . ." (Dkt. 130, ¶ 32.) However, John Holland made it clear in his deposition that the use of Paragon software "was not exclusive to Clearspan." (SMF ¶ 94.) And, James Holland likewise attested that "Clearspan doesn't have any exclusive agreements with anybody," including with any "vendor." (SMF ¶ 95.) These statements are further supported by Clearspan's testimony concerning its work with multiple other vendors (*e.g.,* MiTek, Dansco). (SMF ¶ 96). To be sure, Clearspan consistently shopped for the best prices to suit its business. (SMF ¶ 97.)

This lack of any exclusive arrangement was also well-known to Plaintiffs, as DrJ (while performing work related to Clearspan's needs) also served Clearspan's direct competitors, and even Kirk stated: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (SMF ¶ 98.) The mere fact that Grundahl stated that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ does not mean that they had a deal to *only* work with Clearspan, as the testimony makes plain. Nor do Kirk's bald statements that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. The weight of the objective statements and evidence to the contrary undermines such assertions. *Lerner v. Ravenswood Hosp. Med. Ctr.*, No. 98 C 5369, 1999 U.S. Dist. LEXIS 19804, 1999 WL

1098558\331252424.v1

1267710, at *21 (N.D. Ill. Nov. 4, 1999) (noting that contrary weight of evidence trumped self-serving affidavit).

From the record evidence there is no genuine dispute of material fact that Clearspan did work with Plaintiffs, nor is there any genuine dispute that the agreement to perform such work was nonexclusive, despite Plaintiffs' bald assertions. The fact a period of time existed that Clearspan and Plaintiffs were in an arrangement where Clearspan only sealed designs with Plaintiffs does not transmute that arrangement into an exclusivity agreement enforceable by this Court.

### E.    Kirk Admits No Profit-Sharing Agreement Existed Between Plaintiffs and Clearspan.

Plaintiffs claim Clearspan participated in "revenue-sharing, profit-allocation, deferred-compensation, and shared-risk arrangements." (Dkt. 130, ¶ 32.) But, no revenue-sharing, profit-allocation, or deferred-compensation ever occurred, and no partnership existed.

In Wisconsin, profit-sharing does not in-and-of-itself equal a partnership. Wis. Stat. § 178.0202(3)(b) ("The sharing of gross returns does not by itself establish a partnership, even if the persons sharing them have a joint or common right or interest in property from which the returns are derived."); Wis. Stat. § 178.0202(3)(c) (profits are not profits if they are payment for a debt). But even if it did, the testimony makes clear that profit sharing did not occur. At best, some payments were made after profits had been earned—*i.e.*, payments triggered because profits existed—not a *sharing* in the profits.

When asked about profit sharing, both Eason and James testified that no profit sharing existed. (SMF ¶¶ 76–77, 79.) This was confirmed by Kirk, who stated ███████████ ██████████████ (SMF ¶ 62.) Rather, at best, what transpired was the creation of an agreement to agree, which is not binding on anyone.

For profit sharing to exist, it is not enough that each party share in the good times of the company. *See* Wis. Stat. § 178.0401(1). Partners must share in the good and the bad, the profits and the losses, for true profit sharing to occur. *Id.* And, as noted, there is no evidence that Clearspan shared profits, or losses, with any of the Plaintiffs. At best, payments for services rendered were made—thus undermining Plaintiffs' profit-sharing claims, and their Breach of Joint Venture Agreement claim, in its entirety.

The evidence that Plaintiffs point to demonstrate profit-sharing is a



(SMF ¶¶ 64–65, 73.)  Suzanne Grundahl testified that

(SMF ¶ 66.) Suzanne Grundahl testified that

(SMF ¶ 67.) Kirk admitted that

(SMF ¶ 69.) The testimony and evidence throughout discovery make clear that there has never been a profit sharing agreement nor any payments made to the Plaintiffs for profit sharing.

### F. The "Enterprise" was Terminable At-Will and Without Conditions or Restrictions.

Plaintiffs Breach of Joint Venture Agreement fails in its entirety as to Clearspan because Plaintiffs can point to no enforceable agreements with Clearspan that obligated Clearspan to take any specific actions or inactions. While Plaintiffs and Clearspan may have had an operating relationship as a result of their years of work together, there were no enforceable agreements

creating a joint venture between Plaintiffs and Clearspan. However, even if the Court were to find that the discussions and agreements-to-agree between Dan and Kirk regarding the "Enterprise" constituted contracts, it is undisputed that ███████████████████████████████████ ███████████████ (SMF ¶¶ 33–35.) Kirk himself testified that ████████████████ ███████████████████████████████████ (SMF ¶¶ 33, 35.)

Therefore, Clearspan could not have breached any of those purported agreements. Plaintiffs cannot point to any evidence to the contrary. Accordingly, this Court should grant Clearspan's Motion for Summary Judgment as to Plaintiffs' Breach of Joint Venture Agreement claim against Clearspan.

### III.    PLAINTIFFS' UNJUST ENRICHMENT CLAIM AGAINST CLEARSPAN FAILS BECAUSE PLAINTIFFS CANNOT ESTABLISH THEY CONFERRED A BENEFIT UPON CLEARSPAN THAT WOULD BE INEQUITABLE FOR CLEARSPAN TO RETAIN.

Interpreting Wisconsin law, this Court has stated, "[t]o prevail on a claim of unjust enrichment in Wisconsin, a plaintiff must prove three elements: (1) a benefit conferred on the defendant by the plaintiff, (2) appreciation or knowledge by the defendant of the benefit, and (3) acceptance or retention of the benefit by the defendant under circumstances making it inequitable for the defendant to retain the benefit." *Mech. Sys. v. ND Paper, Inc.*, 20-cv-510-wmc, 2021 U.S. Dist. LEXIS 141571, 2021 WL 3207166, at *4 (W.D. Wis. July 29, 2021) (citing *Watts v. Watts*, 137 Wis. 2d 506, 531, 405 N.W.2d 303, 313 (1987)) (quotation omitted); *see also Brahm v. Hosp. Sisters Health Sys.*, 23-cv-444-wmc, 2026 U.S. Dist. LEXIS 96866, 2026 WL 1194751, at *25–27 (W.D. Wis. May 1, 2026) (citing *Admiral Ins. Co. v. Paper Converting Mach. Co.*, 2012 WI 30, ¶ 46 n.16 (citing Wis JI-Civ 3028)). Further, "[t]he measure of damages under unjust enrichment is limited to the value of the benefit conferred on the defendant." *Lindquist Ford, Inc. v. Middleton Motors, Inc.*, 557 F.3d 469, 477 (7th Cir. 2009) (citing *Mgmt. Computer Servs., Inc. v. Hawkins*, 2006 Wis. 2d 158, 188 (1996)). Finally, "it is not enough to establish that a benefit

24

was conferred and retained; the retention must be inequitable." *John C. Distefano & goDesk, LLC*, 2025 U.S. Dist. LEXIS 228170, at *61 (citations omitted).

In Count IV of the SAC, the Plaintiffs plead a claim for unjust enrichment on the grounds that they:

> [C]onferred substantial benefits on Defendants, including the Engineering Inputs, professional engineering services, structural testing, software interface testing and analysis that gave the Paragon Truss Software its functional user interface, approximately 8,000 hours of work devoted to Paragon alone, and confidential business information, all provided to and for the benefit of the Enterprise on reduced-fee, deferred, uncompensated, and non-contemporaneously billed terms in anticipation of the imminent commercial launch.

(Dkt. 130, ¶ 105.) As to the appreciation, acceptance, and retention of these benefits, Plaintiffs allege "Defendants appreciated and knowingly accepted and retained those benefits, and continue to use and profit from the Engineering Inputs and confidential information through the operation, marketing, and licensing of the Paragon Truss Software, under circumstances that make it inequitable for Defendants to retain the benefits without payment of their value." (*Id.* at ¶ 106.) As noted in the Motion to Dismiss, the SAC conflates all of the Defendants with one another without any attempt to articulate which Defendant did what and to whom. (Dkt. 54.) Using the context of Plaintiffs' allegations, however, it is clear Plaintiffs' target of their unjust enrichment claim is not Clearspan. The only allegation Plaintiffs make as to the conferred benefits knowingly accepted and retained relate to the Paragon Truss Software. (Dkt. 130, ¶ 106.) Clearspan played no role in the development, operation, marketing, or licensing of the Paragon Truss Software. (SMF ¶ 105.)

Discovery did not elicit any clarity, other than confirmation that judgment as a matter of law in favor of Clearspan is warranted. However, in discovery it was established that ███████

████████████████████████████████████████████████████████████████

███████████████████████████ (SMF ¶ 83.) Thus, to the extent that the invoices establish any written agreement by and between Plaintiffs and Clearspan, the terms of the invoices control and

Plaintiffs cannot avoid such contractual terms now through an unjust enrichment claim. *See Northern Group, Inc. v. Tech 4 Kids*, 352 F. Supp. 3d 882, 888 (E.D. Wis. 2018) ("Unjust enrichment is not a means for improving the terms of a valid contract."). "This is because the parties have already bargained for the terms each is willing to accept, and no third person's sense of justice should upset the agreement into which they have freely entered." *Id.* at 887–88.

Here, the Court should grant summary judgment in Clearspan's favor on the unjust enrichment claim because the ███████████████████████████████████████ ████████████████████████████████ (SMF ¶ 83.) Plaintiffs cannot avoid these agreed contractual terms now through an unjust enrichment claim. *See Northern Group, Inc.* , 352 F. Supp. 3d at 888.

Even if this Court determines the invoices do not cover the same claims as pled in the unjust enrichment claim, Plaintiffs still cannot recover, because Clearspan ████████████ ████████████████████████████████████████████████████. (SMF ¶¶ 66–67, 73.) In other words, the only inequity would be if Clearspan was forced to double pay for such services.

Unjust enrichment requires, as its third element, that the defendant "accept or retain the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value." *S & M Rotogravure Serv., Inc. v. Baer*, 77 Wis. 2d 454, 460 (1977). Where payment has been made—as in this case—this third element is simply absent. As the Wisconsin Supreme Court recognized in *S & M Rotogravure*, "the critical factor" in the cases denying unjust enrichment recovery "was that it appeared, upon the face of the complaint or upon the evidence after trial, that the defendant had paid another for the benefits conferred, and thus it was not inequitable to permit the defendant to retain the benefits without paying the plaintiff"—

26

rendering "the third element of unjust enrichment . . . nonexistent." 77 Wis. 2d at 465. This principle is reinforced by *Mohns Inc. v. BMO Harris Bank National Ass'n*, 2021 WI 8, ¶ 48, 954 N.W.2d 339, in which the Wisconsin Supreme Court reaffirmed that unjust enrichment "is an equitable claim that cannot coexist with a breach of contract claim" and that "[t]he availability of damages for unjust enrichment presupposes that a contract does not exist, necessitating an equitable remedy."

Here, the parties operated under a relationship whereby Qualtim, DrJ, or CBI provided services to Clearspan, invoiced Clearspan for those services, and Clearspan paid those invoices. It is a classic vendor-vendee relationship, nothing more. Clearspan paid every invoice submitted pursuant to that agreement, and there is nothing inequitable about Clearspan retaining the benefit of services for which it paid. Accordingly, judgment in favor of Clearspan is appropriate and this Court should grant Clearspan's Motion for Summary Judgment at to Plaintiffs' Unjust Enrichment claim.

## IV.    PLAINTIFFS' TORTIOUS INTERFERENCE CLAIM AGAINST CLEARSPAN FAILS.

Plaintiffs Count V alleges a claim of Tortious Interference with Contract and Prospective Economic Advantage against Clearspan. Under Wisconsin law a claim for tortious interference with a contract has five elements:

> (1) the plaintiff had a contract or a prospective contractual relationship with a third party; (2) the defendant interfered with the relationship; (3) the interference was intentional; (4) a causal connection exists between the interference and the damages; and (5) the defendant was not justified or privileged to interfere.

*Burbank Grease Servs., LLC v. Sokolowski*, 2006 WI 103, ¶ 44, 294 Wis. 2d 274, 717 N.W.2d 781. Interference is only actionable only if it is intentional and improper. *See Foseid v. State Bank*, 197 Wis. 2d 772, 788, 541 N.W.2d 203 (Ct. App. 1995).

To have the requisite intent, a defendant must act with a purpose to interfere with the

27

contract. *Dorr v. Sacred Heart Hosp.*, 228 Wis. 2d 425, 456, 597 N.W.2d 462 (Ct. App. 1999). Liability will only be found when the actor "knew that the interference was 'certain, or substantially certain, to occur." *Id.* (quoting *Augustine v. Anti-Defamation League of B'nai B'rith*, 75 Wis. 2d 207, 220-21, 249 N.W.2d 547, 554 (1977)).

A plaintiff seeking to maintain a claim for tortious interference with contract must show some specific right that has been interfered with. *Sampson Invs. v. Jondex Corp.*, 176 Wis. 2d 55, 73, 499 N.W.2d 177 (1993). "To hold otherwise would allow [a plaintiff] to circumvent the limitations of the [] agreement and expand their rights through a tort claim." *Id.* at 72. Tort liability may only be imposed upon a defendant who intentionally and improperly interferes with the plaintiff's rights under the contract with another person if the interference causes the plaintiff to lose a right under the contract or makes the contract rights more costly or less valuable. *Id.* at 72–73.

"One . . . intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing or otherwise causing the third person not to perform the contract[.]" *Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 105, 279 N.W.2d 493 (Ct. App. 1979). "The word 'induces' refers to the situations in which A causes B to choose one course of conduct rather than another." *Augustine v. Anti-Defamation League of B'Nai B'Rith*, 75 Wis. 2d 207, 220, 249 N.W.2d 547 (1977) (quoting Restat. 2d of Torts, § 766, cmt. h). "[I]nducement operates on the mind of the person induced." *Id.* In some circumstances, a "simple request or persuasion which exerts only moral pressure *may* convey the alleged tortfeasor's desire to influence the third person not to deal with the other." *Id.* at 221 (discussing Restat. 2d of Torts, § 766, cmt. k). For example, in *3M v. Pribyl*, the Seventh Circuit favorably quoted the district court's conclusion that the plaintiff's tortious interference with a contract claim

28

failed because "[t]he undisputed facts establish[ed] that Skrtic *initiated his own actions* and was not induced to do anything[.]" 259 F.3d 587, 601 (7th Cir. 2001).

Plaintiffs' Tortious Interference claim alleges Plaintiffs "had existing and prospective business relationships with structural component manufacturers and other industry participants, including the continuous professional engineering and sealing relationship between DrJ and Clearspan and relationships with truss-plant locations through the Enterprise" and that Clearspan

> knew of these relationships and intentionally and improperly interfered with them, including by directing Clearspan to cease submitting truss design drawings to DrJ, by restricting Plaintiffs' access to the shared systems through which Plaintiffs served their customers, and by communicating to Plaintiffs' existing and prospective customers that Plaintiffs no longer had rights to the Engineering Inputs.

(Dkt. 130, ¶ 110.) Plaintiffs' Tortious Interference claim against Clearspan fails because Plaintiffs cannot sufficiently identify any established or prospective contract or relationship with a third party that Clearspan purportedly interfered with or that Clearspan induced any third party to not perform or terminate the contract or prospective relationship.

Plaintiffs fail to identify *any* third party that they had a real or prospective relationship with (beside Clearspan itself) that Clearspan allegedly interfered with. Instead, Plaintiffs allege only that they had "existing and prospective business relationships with structural component manufacturers and other industry participants." (Dkt. 130, ¶ 109.) This does not identify any "sufficiently certain, concrete, and prospective relationship" with a third party. While Plaintiffs may bring a claim for tortious interference with prospective contractual relations, "this does not mean . . . that any prospective business relationship warrants protection. *Shank v. William R. Hague, Inc.*, 192 F.3d 675, 690 (7th Cir. 1999) *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013). "In fact, it only makes sense that to subject a party to liability for allegedly interfering with a prospective relationship, that relationship between the plaintiff and the third party ought to be sufficiently concrete and definite." *Id.*

29

Plaintiffs' claim in this regard does not identify with any degree of specificity the business relations Clearspan allegedly interfered with. Plaintiffs state only that they "had existing and prospective business relationships with structural component manufacturers and other industry participants." (Dkt. 130, ¶ 109.)  The only business relationship of Plaintiffs that was allegedly interfered with that is identified with any degree of specificity is Clearspan itself. (*Id.*) Plaintiffs fail to identify what third party(ies) they allegedly had business relations with or that the relationship with sufficiently concrete and definite. Allowing Plaintiffs' claim in this regard to proceed would turn every loss of prospective business into an actionable tortious interference claim. Accordingly, Plaintiffs' claim for Tortious Interference with Contract and Prospective Economic Advantage against Clearspan fails and this Court should grant Clearspan's Motion for Summary Judgment in that regard.

## V.    PLAINTIFFS' COUNT VI FAILS BECAUSE NO MISAPPROPRIATION OF CONFIDENTIAL BUSINESS INFORMATION CLAIM EXISTS UNDER WISCONSIN LAW.

Plaintiffs' Sixth Cause of Action asserts a claim for Unfair Competition and Misappropriation of Confidential Business Information. The Court should summarily dismiss this claim, as Wisconsin law does not provide for such a claim. Seemingly acknowledging the likelihood that the "Enterprise's confidential business model" is found not to qualify for trade secret protection, Plaintiffs assert: "to the extent any of the Enterprise's confidential business information does not qualify as a statutory trade secret, it nonetheless constitutes Plaintiffs' proprietary and confidential business information, including the confidential Enterprise structure, the plate-agnostic commercialization strategy, the structure and purpose of IP-LLC, and the Enterprise's pricing, market-development, and customer-acquisition strategies." (Dkt. 130, ¶ 115.) Plaintiffs continue by alleging that Clearspan "wrongfully appropriated and used that confidential business information after the termination of Plaintiffs' participation in the Enterprise, without

30

Plaintiffs' consent." (*Id.* at ¶ 116.) Such a claim, however, does not exist under Wisconsin law. *Rustic Retreats Log Homes Inc. v. Pioneer Log Homes of B.C., Inc.*, Case No. 19-CV-1614, 2021 U.S. Dist. LEXIS 113411, 2021 WL2474112, at *57–59 (E.D. Wis. June 17, 2021) ("there is no authority for proceeding on a common law claim for misappropriation of information that does not meet the statutory definition of a trade secret.").

Indeed, WUTSA "displaces conflicting tort law, restitutionary law and any other laws of this state providing for a civil remedy for misappropriation of a trade secret." Wis. Stat. § 134.90(6)(a). The plain language of Section 134.90(6)(a) makes Section 134.90 the exclusive remedy for civil claims based on the misappropriation of a statutorily defined trade secret. *See Burbank Grease Servs., LLC v. Sokolowski*, 2006 WI 103, ¶ 20, 294 Wis. 2d 274, 717 N.W.2d 781; *Corporate Express Office Prods. v. Brown*, 00-C-608-C, 00-C-666-C, 2001 U.S. Dist. LEXIS 260039, at *31–33 (W.D. Wis. July 18, 2001) (dismissing tortious interference with business relations and conspiracy claims as preempted by Wis. Stat. § 134.90(6)(a) to the extent they were based on trade secret misappropriation). To the extent that Plaintiffs' Unfair Competition and Misappropriation of Confidential Business Information claims are based on or involve misappropriation of their alleged trade secrets, those claims should be dismissed as preempted by Wis. Stat. § 134.90(6)(a). Accordingly, this Court should grant Clearspan's Motion for Summary Judgment as to Plaintiffs' Unfair Competition and Misappropriation of Confidential Business Information claim.

## VI.    PLAINTIFFS' CLAIMS AGAINST CLEARSPAN FAIL BECAUSE PLAINTIFFS CANNOT ESTABLISH DAMAGES.

The overarching problem with Plaintiffs' trade secret misappropriation, breach of contract, unjust enrichment, and tortious interference claims are their fundamental lack of evidence that Clearspan caused any damage to Plaintiffs. Causation is a necessary element of each of these

31

claims to sustain the claim, or at the very least, to recover damages. Plaintiffs fail to establish any causation between its allegations against Clearspan and its claimed damages.

**A.    To Recover Damages for Trade Secret Misappropriation Plaintiffs Must Establish Causation.**

While proving damages is not an element of a trade secret misappropriation claim, Plaintiffs must still prove that the damages it seeks were caused by Clearspan' alleged misappropriation of its purported trade secrets. Even though the Court may not dismiss Plaintiffs' misappropriation of trade secrets claim because of its failure to establish causation of damages, the Court may consider whether Clearspan are entitled to summary judgment on specific issues, including damages. *See* Fed. R. Civ. P. Rule 56(g).

Wisconsin Statute Section 134.90(4)(a) explains that a court may award damages to the complainant "for a violation of sub. (2)." Damages may include both the actual loss "caused by the violation" and unjust enrichment "caused by the violation" that is not taken into account in computing actual loss. Wis. Stat. § 134.90(4)(a). Section 134.90(2) defines misappropriation and describes misappropriation of a trade secret. Wis. Stat. Ann. § 134.90(2)(a)-(b). Therefore, based on the plain text of the statute, damages can only be established by actual loss "caused by the misappropriation" or unjust enrichment "caused by the misappropriation." The Wisconsin Supreme Court in *World Wide Prosthetic Supply v. Mikulsky*, further supports causation and held "In order to recover for actual loss under the statute, a plaintiff must prove that its loss was *caused by* the defendant's violation." 2002 WI 26, ¶ 27, 251 Wis. 2d 45, 640 N.W.2d 764. Therefore, under WUTSA, Plaintiffs must show the damages were "caused by the misappropriation." Plaintiffs cannot succeed in this regard.

32

**B.      Causation is an Essential Element of Liability in Plaintiffs' Breach of Contract Claim.**

To maintain a breach of contract claim, there must be a contract, a breach, *and damages*. *See, e.g. Brew City Redevelopment Grp., v. Ferchill Grp.*, 2006 WI App 39, ¶ 11, 289 Wis. 2d 795, 714 N.W.2d 582. "As in tort law, so in contract law, causation is an essential element of liability. If the damage of which the promisee complains would not have been avoided by the promisor's not breaking his promise, the breach cannot give rise to damages." *Wis. Knife Works v. Nat'l Metal Crafters*, 781 F.2d 1280, 1289 (7th Cir. 1986) (internal citations omitted).

"Neither a court nor a jury as the trier of the facts can determine damages by speculation or guess work." *De Sombre v. Bickel*, 18 Wis. 2d 390, 398, 118 N.W.2d 868, 873 (1963). When "there is no credible evidence upon which the trier of fact can base a reasoned choice between the two possible inferences, any finding of causation would be in the realm of speculation and conjecture." *Merco Distrib. Corp. v. Commercial Police Alarm Co.*, 84 Wis. 2d 455, 460, 267 N.W.2d 652, 655 (1978). "Because it is impermissible to base a judgment on 'conjecture, unproved assumptions, or mere possibilities,'" Plaintiffs' conjecture that Clearspan Defendants caused them damages does not create a genuine issue as to any material fact. *Id.* (quoting *Schwalbach v. Antigo Electric & Gas., Inc.*, 27 Wis. 2d 651, 655, 135 N.W.2d 263 (1965)); *see also Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014) ("Inferences that rely upon speculation or conjecture are insufficient to survive summary judgment.").

**C.      Causation of Damages is an Indispensable Element of Plaintiffs' Tortious Interference.**

Plaintiffs' tortious interference claim fails for the same reason. As with a breach of contract claim, causation and damages are indispensable elements of a tortious interference claim. *See Burbank Grease Servs., LLC v. Sokolowski*, 2006 WI 103, ¶ 44, 294 Wis. 2d 274, 717 N.W.2d 781 (explaining that an element of a tortious interference claim is "a causal connection exists between

33

the interference and the damages").

**D.     The "New Business Rule" Precludes Recovery of Lost Profits.**

Plaintiffs claim lost profits from the joint venture. Generally, to establish lost profits, the plaintiff must produce evidence of the business's revenues as well as its expenses. *Mrozek v. Intra Fin. Corp.*, 2005 WI 73, ¶ 38 (citing *Lindevig v. Dairy Equip. Co.*, 150 Wis. 2d 731, 740 (Wis. Ct. App. 1989)). Absent supported figures showing profits and losses such assertion has no evidentiary value. *Id*. The plaintiff must provide sufficient evidence that supports a reasonable inference as to a damage amount. *Id*. However, when a new business has no previous profit history, the party seeking lost profits must "present credible comparable evidence or business history and business experience sufficient to allow a fact finder to reasonably ascertain future lost profits." *Mrozek*, 2005 WI 73, ¶ 38 (citing *T & HW Enters. v. Kenosha Assocs.*, 206 Wis. 2d 591, 605 n.6 (Wis. Ct. App. 1996)). "Where a new business or enterprise is floated and damages by way of profit are claimed for its interruption or prevention, they will be denied for the reason that such business is an adventure, as distinguished from an established business, and its profits are speculative and remote, existing only in anticipation." *M. Schulz Co. v. Gether*, 183 Wis. 491, 500 (1924).

Evidence of profit projections alone lacks sufficient reliability. *T & HW Enters.*, 206 Wis. 2d 591, 605 (Wis. Ct. App. 1996). For example, in *T & HW Enterprises*, T & HW Enterprises signed a lease to occupy a space owned by Kenosha Associates. *Id*. at 596. Kenosha Associates ended the agreement after the signing of the lease, but before the premises were occupied. *Id*. T & HW Enterprises alleged that Kenosha Associates breached their agreement and supported its claims for lost profits by using profit projections for a twenty-year period. *Id*. at 605.

The court rejected T & HW Enterprise's claims and held that claims for lost profits must be supported by evidence that is based on operational data rather than conjecture. *Id*. The court reasoned that when a business is new and untried, projections of profits are often deemed too

1098558\331252424.v1

speculative to support a claim for lost profits. *Id*.; *see also Mrozek*, 2005 WI 73, ¶ 39 (holding a franchise license agreement offering assistance in operating a motel representing that the franchise would be profitable, a forecasted state of operations and pre-tax cash flow, an appraisal of the property, and five years of tax returns from the entity that purchased the property is insufficient for a factfinder to reasonably ascertain lost profits).

Here, the "joint venture" Plaintiffs claim never materialized. Kirk Grundahl testified ██ ███████████████████████████████████████████████ This joint venture is even more attenuated than a "new" operating business, as the joint venture never got off the ground and began operating in the first instance. Thus, any claimed lost profits are purely speculative and anticipatory. Accordingly, this Court should grant Clearspan's Motion for Summary Judgment as to Plaintiffs' claimed lost profits from the alleged joint venture.

## CONCLUSION

For the above-stated reasons, this Court should grant Clearspan's Motion Summary Judgment and dismiss with prejudice Plaintiffs' claims against it.

Dated this 30th day of July, 2026.

/s/ Corey J. Swinick

Brian R. Zeeck (ARDC: 6298798)
Liam McGing (ARDC: 6342393)
Attorneys for Defendants, James Holland,
Clearspan Components, Inc., and Rob Eason
HINSHAW & CULBERTSON LLP
151 N. Franklin Street, Suite 2500
Chicago, IL 60606
Phone: 312-704-3028
bzeeck@hinshawlaw.com
lmcging@hinshawlaw.com

Corey J. Swinick
State Bar No.: 1097530

1098558\331252424.v1

Attorneys for Defendants, James Holland,
Clearspan Components, Inc., and Rob Eason
HINSHAW & CULBERTSON LLP
790 N. Water Street, Suite 1950
Milwaukee, WI 53202
Phone:  414-276-6464
cswinick@hinshawlaw.com

Stephan R. Wright, TN BPR 031494
*Counsel for James Holland, Rob Eason, and*
*Clearspan Components, Inc.*
WRIGHT, CORTESI & GILBREATH
2030 Hamilton Place Blvd., Suite 240
Chattanooga, TN 37421
Telephone:  (423) 826-6919
Facsimile:  (423) 826-6929
swright@wcglegal.com

36