IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

INSPIRED PURSUITS, LLC, QUALTIM, INC., CENTER FOR BUILDING INNOVATION, LLC, DRJ ENGINEERING, LLC, KIRK GRUNDAHL, and SUZANNE GRUNDAHL,

Plaintiffs,

v.

PARAGON COMPONENT SYSTEMS, LLC, JOHN HOLLAND, JAMES HOLLAND, CLEARSPAN COMPONENTS, INC., ROB EASON, and the ESTATE OF DANIEL HOLLAND ex rel. SPECIAL INDEPENDENT EXECUTOR MARVIN B. SPEED,

Defendants.

Case No.: 3:25-CV-00075

**DEFENDANT CLEARSPAN COMPONENTS, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

NOW COME Defendant, Clearspan Components, Inc. ("Clearspan"), by its counsel, and for its Reply Memorandum in Support of its Motion for Summary Judgment, respectfully states as follows:

**INTRODUCTION**

Despite proffering a 93-page Omnibus Opposition to Defendants' Motions for Summary Judgment, 486 Additional Proposed Findings of Fact, and a 124-page Declaration with 306 paragraphs from Kirk Grundahl ("Kirk"), Plaintiffs fail to establish a dispute of material fact so as to defeat Clearspan's Motion for Summary Judgment as to all claims against it. Plaintiffs' breach of joint venture agreement claim against Clearspan fails because Plaintiffs cannot establish any actual or agreed-upon profit sharing. Instead, Plaintiffs attempt to recast payments for services as profit distributions. Plaintiffs' trade secret misappropriation claim against Clearspan fails because

Plaintiffs fail to establish Clearspan ever had access to or possession of their alleged trade secret such that Clearspan could misappropriate it. Instead, Plaintiffs claim that simply by utilizing the Paragon Truss Software as a downstream user, Clearspan had a duty to maintain the secrecy and limit use of Plaintiffs' alleged trade secrets underlying the software. Plaintiffs' unjust enrichment claim against Clearspan fails because Plaintiffs did not confer an uncompensated benefit upon Clearspan. Instead, Plaintiffs assert that Clearspan should be held responsible for alleged uncompensated benefits it conferred upon Paragon. Finally, Plaintiffs' unfair competition claim against Clearspan fails because Clearspan did not misappropriate Plaintiffs' product nor did Clearspan compete with Plaintiffs. Accordingly, it is clear that there is no dispute of material fact such that Plaintiffs can maintain *any* of their claims against Clearspan, and Clearspan is, therefore, entitled to judgment as a matter of law. For the reasons set forth below and previously, this Court should grant Clearspan's Motion for Summary Judgment as to all claims against it by Plaintiffs.

## ARGUMENT

### I. PLAINTIFFS' BREACH OF JOINT VENTURE AGREEMENT CLAIM AGAINST CLEARSPAN FAILS BECAUSE NO PROFIT SHARING OCCURRED OR WAS AGREED TO AND NO CONTRACT REGARDING THE "ENTERPRISE" EXISTED.

While Daniel Holland ("Daniel") and Kirk may have worked in collaboration with one another for a number of years, the nature of their relationship fails to establish a joint venture between Clearspan and Plaintiffs. Plaintiffs attempt to recast their Count III from the breach of a series of written, oral, and implied agreements that allegedly comprised the "Enterprise" to a common law joint venture claim. Indeed, Plaintiffs title Count III "Breach of Joint Venture *Agreement*" and they allege that:

> Clearspan breached the *joint-venture agreement* by terminating Plaintiffs' participation, excluding Plaintiffs from the Enterprise and its systems, seizing and commercializing the Enterprise's assets, refusing to share the venture's profits and benefits with Plaintiffs, and preventing Plaintiffs from performing the professional

> engineering, sealing, and other services that were Plaintiffs' role in the Enterprise. *That termination and exclusion were not authorized by the joint-venture agreement.*

(Dkt. 130, ¶ 102) (emphasis added). Even entertaining Plaintiffs' reframing of the claim, their joint venture claim still fails. To establish a common law joint venture, Plaintiffs must establish: (1) contributions, (2) joint proprietorship and mutual control, (3) agreement to share profits, and (4) an express or implied contract. *Reiman v. Delaney*, 2025 WI App 1, ¶ 10. Each element must be established in order for a joint venture to exist, and Plaintiffs' inability to establish a dispute of material fact as to any single element defeats the claimed "Enterprise." *Servicios Especiales Al Comercio Exterior v. Johnson Controls, Inc.*, 791 F. Supp. 2d 626, 635 (E.D. Wis. 2011). Plaintiffs can present no legitimate dispute of material fact that no agreement to share profits existed or that an express or implied contract existed between them and Clearspan.

**A. No Profit Sharing Occurred Or Was Agreed Upon Between Clearspan and Plaintiffs.**

There is no legitimate dispute that no profit sharing ever occurred or was agreed upon. Plaintiffs can only point to self-serving, inadmissible testimony in support of the lynchpin of their joint venture "Enterprise." First, Plaintiffs claim that Clearspan's payment of $262,847 to Qualtim was profit sharing. This assertion is unsupported by any evidence in the record. The Qualtim-issued invoice dated December 15, 2021 for $262,847 was titled [redacted] (Dkt. 153, ¶¶ 64–65, 73.) Indeed, Kirk admitted that [redacted] (Dkt. 153, ¶ 69.) Plaintiffs may assert that Daniel directed the title and description of the invoice, but Plaintiffs' own treatment of the payment confirms it was not profit sharing. Suzanne Grundahl testified that [redacted] (Dkt. 153, ¶¶ 66–67.)



1061909\332115546.v1

In further support of their allegation that the $262,847 payment was profit sharing, Plaintiffs claim [redacted] (Dkt. 198, pp. 7–8.) However, Plaintiffs' own facts cited in support do not support this payment as a "distribution." Rather, Clearspan's $500,000 payment to Paragon was recorded in its general ledger as payment for "Professional Services." (Dkt. 217, ¶¶ 150, 196.) Plaintiffs can point to nothing else to challenge the $500,000 payment as anything other than what it was—a payment between Clearspan and Paragon for professional services.

Turning next to the testimony of those involved in the business relationship between Clearspan and Plaintiffs. Both Rob Eason ("Eason") and James Holland ("James") testified that no profit sharing existed. (Dkt. 153, ¶¶ 76–77, 79.) Kirk also confirmed this, stating: [redacted] (Dkt. 153, ¶ 62.) In light of this testimony, Plaintiffs fall back to relying on self-serving statements allegedly made by Daniel—who can no longer testify and provide context for his statements or refute them altogether. These statements fall into two categories, both of which are inadmissible.

First, Plaintiffs rely on statements Kirk attributes to Daniel and Plaintiffs assert are supportive of their claim of profit sharing. (Dkt. 198, p. 8.) Notably, Plaintiffs claim [redacted] (*Id.*) Kirk's alleged conversations with Daniel are inadmissible hearsay.

Under both Federal and Wisconsin's Rules of Evidence, hearsay is an out-of-court statement that a party offers in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c); Wis. Stat. § 908.01(3). Both Rules of Evidence similarly provide hearsay is inadmissible



1061909\332115546.v1

unless an exception applies. Fed. R. Evid. 802; Wis. Stat. § 908.02. Accordingly, using a decedent's out-of-court statement to prove the truth of the matter asserted is inadmissible unless a hearsay exception applies. *Henke v. Estate of Klawitter*, 2023 WI App 60, ¶¶ 39–41. Plaintiffs are using this out-of-court statement by Daniel, who can no longer testify for himself, to prove the truth of the matter asserted, *i.e.*, that profit sharing existed between Clearspan and Plaintiffs. This is textbook hearsay, and, much like the case as a whole, is simply Plaintiffs attempting to take advantage of the deceased proprietor of Clearspan and Paragon. Accordingly, these statements attributed to Daniel by Plaintiffs are inadmissible and do not support profit sharing.

Next, Plaintiffs cite to excerpts of transcripts of alleged recordings to support their assertion of profit sharing. (Dkt. 198, pp. 8–9.) Plaintiffs, however, only submit transcripts of the alleged recordings, and only excerpts of such transcripts at that, and not the recordings themselves as evidence. Unfortunately for Plaintiffs, transcripts of recordings are not admissible evidence and should be disregarded on summary judgment. The Seventh Circuit Court of Appeals has repeatedly held that the actual recording of a conversation—and not the transcript of that recording—constitutes the real evidence of what was said. *Everroad v. Scott Truck Sys.*, 604 F.3d 471, 476–77 (7th Cir. 2010); *Stringel v. Methodist Hosp.*, 89 F.3d 415, 420 (7th Cir. 1996). In assessing a motion for summary judgment, this Court is not required to consider transcripts in lieu of the underlying recordings themselves. *Everroad*, 604 F.3d at 476–77. Because summary judgment is the "put up or shut up" moment in litigation, it is not the district court's responsibility to search for relevant evidence that a party possesses but fails to submit. *Id.* at 476. Wisconsin's Rules of Evidence hold similarly. Wisconsin Statute Section 910.02 provides that "To prove the content of a writing, recording or photograph, the original writing, recording or photograph is required . . . ."

Evidentiary facts set forth by affidavit for summary judgment must meet the conditions of admissibility. *Nelson v. Zeimetz*, 150 Wis. 2d 785, 797, 442 N.W.2d 530 (Ct. App. 1989).

In all, Plaintiffs point to only one instance of alleged profit sharing over the claimed 15-year existence of the alleged "Enterprise." However, it is undisputed that this payment was not categorized or treated as profit sharing by Plaintiffs or Clearspan. Left with no other option, Plaintiffs resort to inadmissible hearsay and recording transcripts to present a dispute. Neither carry the day. Accordingly, Plaintiffs cannot present a dispute of material fact to Clearspan's assertion that no profit sharing occurred or was agreed upon between Plaintiffs and Clearspan, and Plaintiffs' claim for a joint venture fails.

**B. No Express or Implied Contract Exists to Establish the "Enterprise."**

Plaintiffs do not dispute that they can point to no single written agreement that formed the "Enterprise," no series of written agreements that comprise the "Enterprise," or even an oral contract(s) to form the "Enterprise." Instead, they rely on an implied contract from the parties' conduct. Plaintiffs point to no evidence that would conclusively establish that a joint venture was formed between Clearspan, Paragon, and Plaintiffs. Plaintiffs point to course of performance, but it only establishes that Clearspan was involved with Plaintiffs as vendors in a longstanding, broader commercial relationship. Accepting Plaintiffs' argument would allow virtually all vendors to rope their vendees into a joint venture where they engaged in a longstanding, broader commercial relationship.

To bolster their argument for an implied contract, Plaintiffs again rely on inadmissible recording transcripts. (Dkt. 198, p. 12.) Even accepting these attributed statements, Plaintiffs' evidence is only that of collaboration, payments, and long-term business dealings. Plaintiffs' evidence still lacks definite joint venture terms binding Clearspan as a co-owner rather than as a

manufacturer or customer. Clearspan's longstanding cooperation with Plaintiffs does not prove the existence of a legally enforceable joint venture unless essential terms and mutual assent are sufficiently definite.

Plaintiffs argument that the "Enterprise" was not terminable at will assumes that there is an enforceable implied contract and that the rest of the joint enterprise elements are met. Not so. The evidence, including Kirk's testimony, that the "Enterprise" was terminable "at will" demonstrates that there was no implied contract to create a joint venture. Kirk's testimony that there was [redacted] and describing the "Enterprise" as [redacted] evidences the Parties'—including Plaintiffs'—intent not to be bound as a joint venture. (Dkt. 153, ¶¶ 33, 35.) The lack of exclusivity between Plaintiffs and Clearspan also weighs against an implied contract for a joint venture. Plaintiffs were [redacted] (Dkt. 153, ¶ 98.) The lack of exclusivity supports Clearspan's assertion that no implied contract for a joint venture existed between Clearspan and Plaintiffs. Accordingly, Plaintiffs' joint venture argument fails as to this element as well, and Clearspan's Motion for Summary Judgment as to Plaintiffs' breach of joint venture agreement should be granted.

## II. PLAINTIFFS' TRADE SECRET MISAPPROPRIATION CLAIM AGAINST CLEARSPAN FAILS BECAUSE NO DUTY TO MAINTAIN SECRECY OR LIMIT USE EXISTED.

Plaintiffs now narrow the scope of their alleged trade secrets and identify their 60 Engineering Inputs that Plaintiffs' allegedly provided to Paragon as the trade secrets Clearspan allegedly misappropriated. Plaintiffs concede that Clearspan did not misappropriate their claimed trade secrets by acquisition or disclosure. (Dkt. 198, p. 54.) Plaintiffs instead argue that Clearspan misappropriated their trade secrets through use. Plaintiffs do not argue—nor could they—that Clearspan somehow implemented the 60 Engineering Inputs in their own software or otherwise

directly made use of them. Instead, Plaintiffs argue that Clearspan misappropriated their alleged trade secrets through use of the Paragon software, which contains the 60 Engineering Inputs. Other than Clearspan's commercial use of the Paragon software as an end-user, Plaintiffs identify no other "use" of their trade secrets.

Under Wisconsin Statute Section 134.90(2)(b), trade secret misappropriation by use requires proof that the defendant:

> 2. At the time of . . . use, knew or had reason to know that he or she obtained knowledge of the trade secret through any of the following means:
>
> a. Deriving it from or through a person who utilized improper means to acquire it.
>
> b. Acquiring it under circumstances giving rise to a duty to maintain its secrecy or limit its use.
>
> c. Deriving it from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use.
>
> d. Acquiring it by accident or mistake.

Plaintiffs pursue their misappropriation-by-use claim under Section 134.90(2)(b)2.b. Plaintiffs do not argue that a NDA or other signed writing give rise to the duty to maintain secrecy or limit use—nor could they. Instead, Plaintiffs rely on the February 27–28, 2024 briefing at Clearspan's offices. Plaintiffs assert that at this briefing, "the Enterprise's structure and the proprietary nature of the Qualtim Companies' Engineering Inputs used in the Paragon software were presented." (Dkt. 198, p. 54.) These are the circumstances Plaintiffs claim give rise to Clearspan's duty to maintain its secrecy or limit its use. Plaintiffs' half-baked attempt to create a duty of secrecy or limited use cannot save their trade secret misappropriation claim against Clearspan.

### A. Clearspan Never Possessed or Had Access to Plaintiffs' Alleged Trade Secrets.

Implied in the duty of secrecy or limited use requirement of the misappropriation-by-use claim Plaintiffs bring is possession of or access to the alleged trade secret. That is, the defendant

had access to or possessed the alleged trade secret and knew or should have known it had a duty to maintain the secrecy of the trade secret or that it was limited in its use of the trade secret. While Clearspan utilized the Paragon Truss Software, none of Plaintiffs' cited facts establish Clearspan ever had possession of or access to the 60 Engineering Inputs. To accept that Clearspan had access to or possessed the 60 Engineering Inputs would be parallel to accepting that a user of Microsoft Word has access to or possesses Microsoft's trade secrets. That proposition simply cannot stand. Accordingly, Plaintiffs' trade secret misappropriation claim fails before even reaching the question of whether Clearspan knew or should have known of a duty to maintain the secrecy or limit use of Plaintiffs' alleged trade secrets.

### B. Clearspan Had No Duty to Maintain the Secrecy or Limit Use of the Paragon Truss Software.

To the extent the Court accepts that Clearspan had access to or possession of Plaintiffs' alleged trade secrets through its use of the Paragon Truss Software, Plaintiffs present no evidence that Clearspan knew or should have known of the alleged confidential nature of any component of the Paragon software or that Clearspan's use of the Paragon software was in any way limited by Plaintiffs. The information at issue was voluntarily provided by Plaintiffs to Clearspan without any confidentiality restrictions. It is undisputed that Clearspan never had a NDA with any Plaintiff as to the alleged trade secrets or otherwise. (Dkt. 210, ¶ 100.) Information shared in a business relationship without confidentiality protections is not rendered secret merely because the recipient later takes actions the disclosing party dislikes.

Plaintiffs concede Clearspan never drafted, added to, modified, or otherwise changed the Paragon software. (Dkt. 210, ¶ 105[1].) Plaintiffs do not contend that any use of the Paragon

---

[1] Plaintiffs do not dispute that "Clearspan did not itself write or edit the software's code."

software, whether with or without knowledge of any alleged engineering inputs embedded within, was somehow without authorization. Plaintiffs point to no evidence that Clearspan knew or should have known that Plaintiffs' inputs into Paragon's software were not purchased contributions to the software by Paragon or that Clearspan could only use the software under limited, defined circumstances. Plaintiffs present no evidence from which a jury could decide that Clearspan was anything other than what it was: a downstream user of the Paragon software. (Dkt. 210, ¶ 106[2].) Use of software is qualitatively different from "employing" the trade secret—Clearspan merely used outputs generated by the Paragon Truss Software, not the underlying engineering values Plaintiffs claim are trade secrets themselves. Mere use of a third-party's software product as an end user is not "misappropriation" under any recognized legal theory. Accordingly, Plaintiffs' trade secret misappropriation-by-use claim against Clearspan fails, and the Court should grant Clearspan's Motion for Summary Judgment in that regard.

## III. PLAINTIFFS' UNJUST ENRICHMENT CLAIM AGAINST CLEARSPAN FAILS BECAUSE PLAINTIFFS DID NOT CONFER AN UNCOMPENSATED BENEFIT ON CLEARSPAN.

Plaintiffs do not dispute that Clearspan paid its invoices to Plaintiffs for particular manufacturing-related services and that no uncompensated benefits conferred in that regard exist. Instead, Plaintiffs reframe their unjust enrichment claim from the Paragon Truss Software being the benefit conferred on Clearspan to Clearspan "retain[ing] and continu[ing] exploiting the underlying engineering, supplied on reduced-fee and deferred terms, after Defendants excluded Plaintiffs from the Enterprise." (Dkt. 198, p. 66.) Despite claiming their unjust enrichment claim

---

[2] Plaintiffs do not dispute that Clearspan was merely an end-user of the software, only that the software was not "commercially available" the entire time that Clearspan used it – a distinction without a difference. In any event, Plaintiffs admit in their Additional Proposed Findings of Fact that as early at 2019 the software was made commercially available to third parties, including one of Qualtim's own customers, G2. (Dkt. 217, ¶¶ 145–46).

is a quasi-contractual claim plead in the alternative, Plaintiffs' now-narrowed unjust enrichment claim against Clearspan still depends on the existence of a contract. That is, Plaintiffs' theory of unjust enrichment depends upon the existence of the alleged "Enterprise," which only exists if a joint venture contract exists. Where no contract exists, then no joint venture "Enterprise" exists, and the engineering underlying the Paragon Truss Software was provided and paid for between third parties (*i.e.*, Paragon and the Qualtim Companies). Whether Plaintiffs supplied the underlying engineering on "reduced-fee and deferred terms" to Paragon has nothing to do with Clearspan. And whether Clearspan continued using the Paragon Truss Software has nothing to do with Plaintiffs.

Clearspan and Plaintiffs maintained a business relationship for a number of years, and any reduced or deferred terms provided directly to Clearspan were good will between long-established, but not contractually bound vendors (Qualtim Companies) and their vendee (Clearspan). But Plaintiffs' nexus of benefit conferral is one step removed—Plaintiffs conferred a benefit upon Paragon from which Clearspan benefits. Such an indirect benefit is insufficient to maintain a claim for unjust enrichment. *Sulzer v. Diedrich*, 2002 WI App 278 (holding a defendant could not be held liable for unjust enrichment for receipt of an indirect benefit) ("While Diedrich may have received a benefit . . . the benefit was not conferred upon her by Sulzer. Nothing Sulzer said or did provided Diedrich with this benefit. The first element of unjust enrichment has not been met here and thus a money judgment on this basis was erroneous."). While Plaintiffs cite *BMO Harris Bank, N.A. v. Berkovitz*, Case No. 20-C-546, 2020 U.S. Dist. LEXIS 183707, 2020 WL 6743192 (E.D. Wis. Oct. 2, 2020) for the proposition that an indirect benefit through a third party can support unjust enrichment as to Eason and James, the differentiation as to them as individuals applies to Clearspan as well. *Berkovitz* involved readily identifiable stolen funds which passed

through an intermediary institution and the defendant ended up with a traceable portion of the stolen funds. This is readily distinguishable from the facts here where Plaintiffs cannot identify any specific funds which Clearspan received indirectly from Plaintiffs' conferral of benefits upon Paragon. That holding in *Berkovitz* is inapplicable here.

Plaintiffs cannot now claim that Clearspan should pay full price for products or services Plaintiffs provided to Paragon. Accordingly, Plaintiffs' unjust enrichment claim fails and this Court should grant Clearspan's Motion for Summary Judgment as to Plaintiffs' Unjust Enrichment claim.

## IV. PLAINTIFFS CONCEDE THEIR TORTIOUS INTERFERENCE CLAIM IS NOT BROUGHT AGAINST CLEARSPAN.

Plaintiffs now concede that Count V – Tortious Interference with Contract and Prospective Economic Advantage is not alleged against Clearspan. (Dkt. 198, p. 71.) Accordingly, Clearspan will not further address that claim in this Reply.

## V. PLAINTIFFS' UNFAIR COMPETITION CLAIM AGAINST CLEARSPAN FAILS BECAUSE CLEARSPAN DID NOT MISAPPROPRIATE PLAINTIFFS' PRODUCT OR COMPETE WITH THEM.

If Plaintiffs' Count VI is truly limited to information that "does not qualify as a statutory trade secret," then Plaintiffs must identify with specificity *what* confidential information falls outside trade secret protection but within unfair competition protection. They fail to do so. Plaintiffs cannot simply lump all information together and argue it is either a trade secret (Count I) or, if not, then unfair competition material (Count VI). That approach invites the court and defendants to "hunt through the details in search of items meeting the statutory definition," which is precisely what the Seventh Circuit has prohibited. *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 584 (7th Cir. 2002).

Even if Plaintiffs sufficiently plead a common law claim for unfair competition,

Clearspan's Motion as to this claim should be granted because Plaintiffs cannot establish that Clearspan misappropriated their product or that Clearspan competed with them. Plaintiffs identify their "product" under their unfair competition claim as "its truss plate design spreadsheets, and the testing and calibration data and engineering methods DrJ and CBI developed and used to make the software calculate correctly and remain compliant." (Dkt. 198, p. 82.) Even if Plaintiffs' product qualifies for a claim of unfair competition and is not simply a repackaging of their trade secret misappropriation claim, they cannot establish a dispute of material fact that Clearspan misappropriated it or that Clearspan competed with them. Indeed, Plaintiffs' explanation of their unfair competition claim focuses almost exclusively on Paragon. (*See* Dkt. 198, pp. 82–83.)

There is no dispute that Clearspan did not develop, in whole or in part, the Paragon Truss Software. There is no dispute that Clearspan did not write or edit the source code underlying the Paragon Truss Software. Plaintiffs do not allege that Clearspan had access to or was ever provided Plaintiffs' spreadsheets, testing data, specifications, and engineering determinations identified as its "product" in this claim. Plaintiffs do not allege that Clearspan used Plaintiffs' spreadsheets, testing data, specifications, and engineering determinations identified as its "product" in this claim to create a software or other product to compete with DrJ or any other Qualtim Companies.

Almost as a throwaway, Plaintiffs conclusively claim "Clearspan likewise participated in that competing use: it continued manufacturing and selling components generated from the Enterprise platform while replacing DrJ's sealing services with DrJ's competitors." (Dkt. 198, p. 83.) Plaintiffs' own allegation of competition demonstrates there is no competition between DrJ and Clearspan, rather between DrJ and the companies Clearspan used to seal after DrJ. Indeed, there is no dispute as to what business each of the Qualtim Companies and Clearspan engage in: DrJ and Qualtim provided professional engineering materials, analysis, and industry expertise and

CBI generated proprietary testing records (Dkt. 217, ¶¶ 17–18; Dkt. 211, ¶¶ 36–37); and Clearspan manufactures structural building components (Dkt. 143, ¶ 13). Clearspan [redacted] (Dkt. 210, ¶ 104[3].) Clearspan could not have competed with the Qualtim Companies because they are not in the same businesses.

To the extent Plaintiffs argue that Clearspan misappropriated their "product" simply by utilizing the Paragon Truss Software or competed with them by utilizing DrJ's competitors, this argument must fail. This is neither misappropriation nor competition as contemplated by Wisconsin's common law unfair competition claim. As in Plaintiffs' trade secret misappropriation claim, mere use of a third-party's software product as an end user is not "misappropriation." Further, there is no dispute that Clearspan [redacted] (Dkt. 153, ¶ 98.) Clearspan was free to seal truss designs with anyone it desired who could seal the designs. Accordingly, this Court should grant Clearspan's Motion for Summary Judgment as to Plaintiffs' Unfair Competition and Misappropriation of Confidential Business Information claim.

## CONCLUSION

For the above-stated reasons, this Court should grant Clearspan's Motion Summary Judgment and dismiss with prejudice Plaintiffs' claims against it.

Dated this 21st day of September, 2026.

*/s/ Corey J. Swinick*

Brian R. Zeeck (ARDC: 6298798)
Liam McGing (ARDC: 6342393)
Attorneys for Defendants, James Holland, Clearspan Components, Inc., and Rob Eason

[3] Plaintiffs state that they do not concede the factual statement that Clearspan "does not compete with Plaintiffs," mischaracterizing that statement as a legal conclusion. This is a clear and express statement of fact, one which Plaintiffs do not and cannot dispute.

HINSHAW & CULBERTSON LLP
151 N. Franklin Street, Suite 2500
Chicago, IL 60606
Phone: 312-704-3028
bzeeck@hinshawlaw.com
lmcging@hinshawlaw.com

Corey J. Swinick
State Bar No.: 1097530
Attorneys for Defendants, James Holland,
Clearspan Components, Inc., and Rob Eason
HINSHAW & CULBERTSON LLP
790 N. Water Street, Suite 1950
Milwaukee, WI 53202
Phone: 414-276-6464
cswinick@hinshawlaw.com

Stephan R. Wright, TN BPR 031494
*Counsel for James Holland, Rob Eason, and Clearspan Components, Inc.*
WRIGHT, CORTESI & GILBREATH
2030 Hamilton Place Blvd., Suite 240
Chattanooga, TN 37421
Telephone: (423) 826-6919
Facsimile: (423) 826-6929
swright@wcglegal.com