**UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF WISCONSIN**

---

INSPIRED PURSUITS, LLC, QUALTIM, INC.,
CENTER FOR BUILDING INNOVATION, LLC,
DRJ ENGINEERING, LLC, KIRK GRUNDAHL,
and SUZANNE GRUNDAHL,

Plaintiffs,

v. Case No. 3:25-cv-00075-wmc

PARAGON COMPONENT SYSTEMS, LLC,
JOHN HOLLAND, JAMES HOLLAND,
CLEARSPAN COMPONENTS, INC.,
ROB EASON, and THE ESTATE OF DANIEL
HOLLAND EX REL. SPECIAL EXECUTOR
MARVIN B. SPEED,

Defendants.

---

**DEFENDANTS JAMES HOLLAND'S AND ROB EASON'S**
**REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

---

NOW COME Defendants JAMES HOLLAND ("James") and ROB EASON ("Eason"), through their undersigned counsel, respectfully submit this Reply in Support of Their Motion for Summary Judgment.

## INTRODUCTION

Plaintiffs' Omnibus Response does nothing to rehabilitate their claims against Eason and James. Instead, it confirms that Plaintiffs have no viable theory of individual liability against either Defendant. Plaintiffs' strategy is transparent: unable to identify any contractual obligation, any direct benefit, or any specific wrongful act attributable to Eason or James individually, Plaintiffs recast routine corporate conduct as tortious behavior and attempt to hold minority shareholders personally liable for the operations of their corporation. The law does not permit this. As set forth

in Eason and James' opening brief and reinforced below, Plaintiffs' own admissions—that they [redacted] (SMF ¶¶ 10–18)—are fatal to each of the claims at issue.

Plaintiffs raise six arguments directed at Eason and James' Motion. Each is addressed in turn below, and none creates a genuine issue of material fact. Summary judgment should be granted on all counts asserted against Eason and James.

**ARGUMENT**

## I. Eason and James Are Not Proper Defendants on Any Claim, Including Plaintiffs' Tort Claims.

### A. The Absence of Any Business Relationship Undercuts Every Claim Asserted Against Eason and James.

In their Motion, Eason and James demonstrated that Plaintiffs concede the absence of any relationship—contractual, transactional, or otherwise—between any Plaintiff and either Eason or James individually. Plaintiffs admitted that [redacted] (*See* Dkt. #148, Defendants' Statement of Material Facts ¶¶ 12, 13)(See Dkt. 212, Plaintiffs' Response to SMF, ¶ 12)[1]; that [redacted] (SMF ¶¶ 14, 15; Resp. ¶¶ 14, 15); that [redacted] (SMF ¶ 10; Resp. ¶ 10[2]); that [redacted] (SMF ¶ 11; Resp. ¶ 11); that [redacted] (SMF ¶ 16; Resp. ¶ 16); that [redacted] (SMF ¶ 17; Resp. ¶ 16); and that [redacted]

[1] Dkt. 153, Defendant Clearspan's, Rob Eason's and James Holland's Statement of Material Facts is cited to herein as "SMF ¶ __"; Dkt. 210, Plaintiffs' Response to Defendants' SMF, is cited to herein as "Resp. ¶__."
[2] Plaintiffs only dispute this statement to the extent that it contains a legal conclusion.

[redacted] (SMF ¶ 18; Resp. ¶ 18[3]). These undisputed facts establish the complete absence of any relationship that could give rise to personal liability.

Plaintiffs now attempt to recharacterize this defense as applying only to contract claims. That misses the point. Eason and James' defense was never limited to contract claims. The complete absence of any direct relationship, obligation, or agreement between any Plaintiff and either Eason or James undercuts *every* claim—including torts—because it demonstrates that neither Eason nor James owed any duty to Plaintiffs in any capacity.

### B. The *Oxmans'* Doctrine Requires Proof of Personal Participation in a Tort—Not Mere Corporate Status.

Plaintiffs invoke *Oxmans' Erwin Meat Co. v. Blacketer*, 86 Wis. 2d 683, 692–93 (1979), for the proposition that a corporate officer who personally participates in a tort may be individually liable. That proposition is correct as far as it goes—but it requires *actual personal participation in tortious conduct*, not merely holding a corporate office or performing routine corporate duties. Plaintiffs conflate the two. Further, under Wisconsin statutes, an officer is generally not liable to the corporation, shareholders, members, creditors, or other persons for monetary liabilities arising from a breach of, or failure to perform, any duty resulting solely from his or her status as an officer Wis. Stat. § 181.0855. While exceptions to this rule exist, they are limited and have not been established here (i.e. a willful failure to deal fairly in a matter involving a material conflict of interest, a criminal violation, a transaction yielding an improper personal profit, or willful misconduct). Wis. Stat. § 181.0855.

With respect to Eason, Plaintiffs' evidence of "personal participation" amounts to his decision, as President of Clearspan, to end a vendor relationship. (SMF ¶¶ 86–87; Resp. ¶ 86-87). But making a legitimate business decision within one's authority as a corporate officer is not a

[3] At the very least, Suzi Grundahl was [redacted]

tort, particularly where there was no personal gain on Eason's part. Eason's decision to cease using the services of the Qualtim Companies is a classic exercise of business judgment by a corporate president. It violates no contractual duty and is itself not a tort. That Plaintiffs were unhappy with the decision does not transform it into a tortious act.

With respect to James, Plaintiffs' allegations of personal participation are even thinner. Plaintiffs point to: (1) a February 7, 2024 email in which James acknowledged truss engineering work "being jointly developed"; (2) his alleged disclosure of Inspired Pursuits' documents to Paragon; (3) his promotion of Paragon software at the 2024 BCMC trade show; and (4) his sworn interrogatory response that he "informed Clearspan employees" about a change in sealing services. None of this constitutes participation in a tort. Acknowledging the existence of ongoing engineering work in an email is not a tort. Attending a trade show booth as a Clearspan employee is not a tort. And informing coworkers about a business decision—even if James did so—is routine corporate communication, not tortious conduct.

James was a communications manager and 10% shareholder of Clearspan. (SMF ¶ 5; Resp. ¶ 5.) He played no role in the termination decision. (SMF ¶¶ 88-89; Resp. ¶¶ 88-89.) His alleged "personal participation" consists of performing the ordinary duties of his role at Clearspan. Simply put, Plaintiffs merely point to miscellaneous actions by Rob and James that do not lend themselves to any tortious activity. Under *Oxmans'*, something more is required.

## II. Plaintiffs Cannot Establish a Duty of Secrecy Owed by Eason or James.

### A. The Absence of Any Confidentiality Agreement Is Dispositive.

Eason and James demonstrated that Plaintiffs cannot [redacted] (SMF ¶¶ 10–15, 100; Resp. ¶¶ 10-15, 100.) No Plaintiff entered into any agreement of any nature with Eason or James. This is despite

the fact that Plaintiffs signed NDAs with other defendants. (Dkt. 2-2.) And Clearspan itself—including all its employees—never entered into any confidentiality agreements or signed non-disclosure agreements with any of the Plaintiffs. (SMF ¶ 100; Resp. ¶ 100.)

Plaintiffs further failed and continue to fail to identify with specificity any documents or information allegedly misappropriated by either Eason or James. At best, Plaintiffs rely on general topics of information, which Wisconsin courts have repeatedly held insufficient to survive summary judgment. *Kuryakyn Holdings v. Ciro*, 242 F. Supp. 3d 789, 800 (W.D. Wis. 2017) (citing *Marine Travelift, Inc. v. Marine Lift Sys., Inc.*, No. 10-cv-1046, 2013 U.S. Dist. LEXIS 170825 at *6 (E.D. Wis. Dec. 4, 2013)).

### B. Section 134.90(2)(b)2.b Does Not Create a Duty of Secrecy Under These Circumstances.

Plaintiffs argue that Wis. Stat. § 134.90(2)(b)2.b grounds the duty of secrecy in the "circumstances giving rise to a duty to maintain its secrecy," rather than a signed writing. Even accepting this framing, Plaintiffs must still demonstrate that actual "circumstances giving rise to a duty to maintain secrecy" exist as to Eason and James individually. They cannot.

Plaintiffs rely principally on a February 27–28, 2024 briefing at Clearspan's offices. But this briefing occurred *after* Daniel Holland's death on January 17, 2024—hardly evidence of a longstanding confidential relationship. More fundamentally, attendance at a single internal business presentation does not create a duty of secrecy for corporate employees who otherwise had no prior confidentiality obligations. Eason and James attended this briefing in their capacities as Clearspan's president and communications manager, respectively, not as parties to any confidential relationship with Plaintiffs. And, Plaintiffs do not and cannot demonstrate the prior existence of any such confidential relationship.

The information at issue was voluntarily provided by Plaintiffs to Clearspan—not to Eason or James individually—without any confidentiality restrictions. Clearspan had no NDA with any Plaintiff. (SMF ¶ 100; Resp. ¶ 100.) Information shared in a business relationship without confidentiality protections is not rendered secret merely because the recipient later takes actions the disclosing party dislikes.

### C. Plaintiffs Fail to Identify Any Specific Misappropriation by Eason or James.

Even if a duty of secrecy existed (it does not), Plaintiffs still fail to identify *what* specific trade secret either Eason or James individually misappropriated. Plaintiffs point to Schedule A, which identifies sixty "Engineering Inputs," but these "Engineering Inputs" were allegedly [redacted] (Dkt. 200, ¶ 474), and certainly not to Eason or James. Plaintiffs fail to connect any specific input to any specific act of misappropriation by either Eason or James.

Plaintiffs' evidence of alleged misappropriation reduces to: (1) Eason oversaw Clearspan's continued use of commercially available Paragon software; and (2) James used the same software "in his role as an estimator" and promoted it at a trade show. (Dkt. 198, p. 57.) But Clearspan was only a downstream user of commercially available software. (SMF ¶ 106; Resp. ¶ 106[4].) Clearspan never drafted, added to, modified, or otherwise changed the Paragon software. (SMF ¶ 105; Resp. ¶ 105[5].) Mere use of a third-party's software product as an end user is not "misappropriation" under any recognized legal theory. James' use of the software to create truss designs in his capacity as a Clearspan estimator is routine use of a commercial product, nothing more.

---

[4] Plaintiffs do not dispute that Clearspan was merely an end-user of the software, only that the software wasn't "commercially available" the entire time that Clearspan used it – a distinction without a difference. In any event, Plaintiffs admit in their Additional Proposed Findings of Fact that [redacted] (Dkt. 217, ¶¶ 145–46).

[5] Plaintiffs do not dispute that "Clearspan did not itself write or edit the software's code."

None of this purported evidence demonstrates any actual misappropriation, whether by improper acquisition, using improper means to acquire a trade secret or that they even had knowledge of any alleged trade secret allegedly provided to Paragon, and not Clearspan. Wis. Stat. § 134.90; *N. Highland Inc. v. Jefferson Mach. & Tool Inc.*, 2017 WI 75, ¶¶ 39–40. And Plaintiffs do not contend that any use of the software, whether with or without knowledge of any alleged engineering inputs embedded within, was somehow without authorization.

## III. Plaintiffs Cannot Maintain a Claim for Unjust Enrichment Where No Benefit Was Conferred Upon Eason or James.

### A. Plaintiffs' Own Testimony Establishes That No Benefit Was Conferred.

Eason and James demonstrated that Plaintiffs expressly acknowledged that [redacted] (SMF ¶ 16; Resp. ¶ 16[6].) Under Wisconsin law, the foundational element of an unjust enrichment claim is a benefit conferred upon the defendant by the plaintiff. *Puttkammer v. Minth*, 83 Wis. 2d 686, 689–90 (1978); *Murray v. City of Milwaukee*, 2002 WI App 62, ¶ 16. Without that element, the claim fails as a matter of law.

Plaintiffs now attempt to recharacterize their own witnesses' testimony, arguing that the "no benefit" answers were given in response to questions "expressly limited" to Eason and James "as private individuals unconnected to Clearspan." This is revisionism. Plaintiffs' witnesses were asked straightforward questions and gave straightforward answers. Kirk Grundahl testified that [redacted] (SMF ¶ 16; Resp. ¶ 16.) Suzanne Grundahl likewise confirmed that [redacted] (SMF ¶ 16; Resp. ¶ 16.) Plaintiffs

---

[6] While Plaintiff's response indicates that this statement is disputed, the Response also acknowledges that both Kirk Grundahl and Suzi Grundahl admitted that Plaintiffs have never conferred any benefit upon Eason or James, <u>individually</u>.

cannot manufacture an ambiguity in their own unequivocal admissions at the summary judgment stage.

### B. Plaintiffs' Indirect-Benefit Theory Fails as a Matter of Law.

Unable to point to any direct benefit, Plaintiffs pivot to a novel indirect-benefit theory, arguing that Eason and James "personally retained benefits through their Clearspan ownership." Specifically, Plaintiffs note that each holds a 10% ownership interest in Clearspan and that Clearspan paid each of them $580,000 in owner distributions across 2024 and 2025. Plaintiffs cite *BMO Harris Bank, N.A. v. Berkovitz*, Case No. 20-C-546, 2020 U.S. Dist. LEXIS 183707, 2020 WL 6743192 (E.D. Wis. Oct. 2, 2020), for the proposition that an indirect benefit through a third party can support unjust enrichment. Citing a lack of "authority to the contrary," the *Berkovitz* court concluded that the fact that a benefit was conferred indirectly "does not preclude a claim of unjust enrichment." However, the *Berkovitz* case involved readily identifiable stolen funds which passed through an intermediary institution and the defendant ended up with some traceable portion of the stolen funds. This is readily distinguishable from the facts here where Plaintiffs' cannot identify any specific funds which either Eason or James received indirectly from Plaintiffs. Rather, they merely identify that they received funds from Clearspan, with no other connection. That holding in *Berkovitz* is inapplicable here.

This theory is a radical expansion of unjust enrichment law that, if accepted, would eviscerate the doctrine of corporate separateness. Wisconsin Courts have, in fact, rejected Plaintiffs' novel theory here. In *Sulzer v. Diedrich*, the Court of Appeals found that a defendant could not be liable under a theory of unjust enrichment for receipt of an indirect benefit. Sulzer v. Diedrich, 2002 WI app 278, *P11 (2002) ("While Diedrich may have received a benefit . . . the benefit was not conferred upon her by Sulzer. Nothing Sulzer said or did provided Diedrich with this benefit. The first element of unjust enrichment has not been met here and thus a money

judgment on this basis was erroneous.”). Simply put, Owner distributions from a corporation are not “benefits conferred by Plaintiffs.” There is no causal connection between Plaintiffs’ services to Clearspan and the owner distributions Eason and James received. Rather, Plaintiffs attempt to create a question of fact by simply pointing to their existence, and that is not enough. Clearspan’s distributions came from its general operations—not from any specific benefit traceable to Plaintiffs. Plaintiffs do not even attempt to demonstrate such a connection.

If merely owning shares in a corporation that received services from a plaintiff sufficed for unjust enrichment, every shareholder of every corporation would be personally liable for services rendered to the corporation. That is not the law. The corporate form exists precisely to shield shareholders from such individual liability.

Moreover, Plaintiffs’ own testimony underscores the absence of any benefit. Kirk Grundahl testified that [redacted] (SMF ¶ 80; Resp. ¶ 80.) [redacted] (SMF ¶ 82; Resp. ¶ 82.) Plaintiffs cannot claim that Eason and James were enriched by an enterprise that, by Plaintiffs’ own admission, never made a profit.

## IV. The *Asplund* Doctrine Bars Plaintiffs’ Tortious Interference Claim Against Eason and James.

### A. Eason and James Acted Solely in Their Capacity as Clearspan Officers and Employees.

Under *Wausau Medical Center, S.C. v. Asplund*, 182 Wis. 2d 274, 297 (1994), a party to a contract—including its principals or agents—cannot be liable for tortious interference with that same contract. Eason, as President of Clearspan, unilaterally made the decision to cease working with the Qualtim Companies. (SMF ¶¶ 86–87.) James’ uncontroverted testimony demonstrates he

had no involvement in that decision. (SMF ¶¶ 88–89; Resp. ¶¶ 88–89.) Eason and James acted solely in their capacities as Clearspan employees and officers, and a corporate officer acting within the scope of his authority on behalf of the corporation cannot tortiously interfere with the corporation's own contracts.

**B. Plaintiffs' Attempts to Distinguish *Asplund* Are Unavailing.**

Plaintiffs attempt to distinguish *Asplund* by noting that it involved an interferer "in effect the same person" as the contracting party, whereas Eason and James each own only 10% of Clearspan. Plaintiffs cite *Medline Industries, Inc. v. Diversey, Inc.*, 563 F. Supp. 3d 894, 909–13 (E.D. Wis. 2021), for the proposition that officers who are not "identical" to the corporate entity may interfere with the entity's contracts.

But *Medline* is distinguishable on its facts. There, the court found liability only where the officer had a separate personal interest *adverse* to the corporation. *Medline Industries, Inc.* at 919–20. Here, by contrast, Eason's and James' interests were entirely aligned with Clearspan's. The decision to change vendors was a corporate decision made in Clearspan's interest. There is no allegation or evidence that either Eason or James had a personal interest adverse to Clearspan in making that decision.

**C. Plaintiffs' Privilege and Improper-Motive Arguments Fail.**

Plaintiffs argue that Eason and James "pleaded no privilege" in their Answer (Dkt. 143) and therefore "cannot obtain summary judgment on the fifth element." This argument is meritless. Privilege in the tortious interference context is not an affirmative defense that must be pleaded in an answer. Rather, the absence of justification or privilege is the *fifth element of Plaintiffs' claim*—an element that *Plaintiffs* bear the burden of proving. *Burbank Grease Servs., LLC v. Sokolowski*, 2006 WI 103, ¶ 44, 294 Wis. 2d 274 (listing element five as "the defendant was not justified or privileged to interfere"); See also *Berman v. N. Custom Roofing, Inc.*, 973 N.W. 2d 21, 28

(2022)("To prevail on a tortious interference with contract claim, a plaintiff must prove five elements: . . . (5) the defendant was not justified or privileged to interfere.") Because it is Plaintiffs' burden to prove improper interference, Eason and James need not affirmatively plead privilege.

Nonetheless, even under the *Sprecher v. Weston's Bar, Inc.* framework, a conditional privilege protects corporate officers acting in good faith for the benefit of the corporation. *Sprecher v. Weston's Bar, Inc.*, 78 Wis. 2d 26, 40–41 (1977). Plaintiffs argue that the privilege was "destroyed by a wrongful motive," pointing to Eason's and James' 10% ownership stakes and $580,000 in distributions as evidence of "personal pecuniary interest." This theory proves too much. Every corporate officer who holds equity receives distributions or compensation tied to corporate performance. If that alone constituted "improper motive" sufficient to destroy the conditional privilege, the privilege would be meaningless—no corporate officer would ever be protected. That is not the law.

Eason's decision to end Clearspan's vendor relationship with the Qualtim Companies was a legitimate business decision well within his authority as President. Deciding which vendors to use—and when to terminate underperforming or unnecessary vendor relationships—is a core corporate function. Plaintiffs point to no evidence that Eason or James acted out of personal animus, self-dealing, or any interest adverse to Clearspan's welfare.

**D. James Holland Had No Involvement in the Termination Decision.**

James testified unequivocally that terminating Clearspan's relationship with the Qualtim Companies was "outside the authority of my role as the communications manager to make such a decision or have knowledge of it." (SMF ¶ 88; Resp. ¶ 88.) He was never consulted regarding the decision. (SMF ¶ 89; Resp. ¶ 89.) Plaintiffs point to James' interrogatory response stating that he "informed Clearspan employees that Clearspan was going to use a different sealing service" and argue this creates a factual dispute about his involvement.

It does not. Informing coworkers about a business decision *after it has been made* is not the same as participating in the decision. James may have relayed information to colleagues in the ordinary course of his duties as communications manager, but that is consistent with—not contradictory to—his testimony that he played no role in making the decision. At most, any tension between James' interrogatory response and his deposition testimony presents a credibility issue as to *James' knowledge of the timing*, not evidence that he participated in "tortious interference."

## V. Plaintiffs' Unfair Competition Claim (Count VI) Fails Against Eason and James.

### A. Plaintiffs Have Not Identified What Information Falls Outside Trade Secret Protection but Within Unfair Competition Protection.

Plaintiffs' trade secrets and unfair competition claims fail for multiple independent reasons: (1) Plaintiffs fail to identify specific trade secrets; (2) no agreement required Eason or James to maintain secrecy; (3) no evidence of misappropriation by either individual; and (4) no competition or resulting harm.

Plaintiffs respond by arguing that Wis. Stat. § 134.90(6)(a) does not displace Count VI, citing *Burbank Grease Services, LLC v. Sokolowski*, 2006 WI 103, and this Court's ruling in *ProClip USA, LLC v. Ebert*, No. 21-cv-163-wmc, 2022 U.S. Dist. LEXIS 33251, 2022 WL 579265 (W.D. Wis. Feb. 25, 2022). Plaintiffs assert that Count VI is pled "to the extent" the material "does not qualify as a statutory trade secret," preserving it under the *Burbank* framework.

Even accepting this framework *arguendo*, Plaintiffs' claim fails. If Count VI is truly limited to information that "does not qualify as a statutory trade secret," then Plaintiffs must identify with specificity *what* confidential information falls outside trade secret protection but within unfair competition protection. They have not done so. Plaintiffs cannot simply lump all information together and argue it is either a trade secret (Count I) or, if not, then unfair competition material (Count VI). That approach "invite[s] the court to hunt through the details in search of items

meeting the statutory definition," which is precisely what the Seventh Circuit has prohibited. *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 584 (7th Cir. 2002).

Moreover, the court in *Marine Travelift, Inc. v. Marine Lift Systems, Inc.*, No. 10-C-1046, 2013 U.S. Dist. LEXIS 170825, 2013 WL 6255689 (E.D. Wis. Dec. 4, 2013), citing *Minuteman, Inc. v. Alexander*, 147 Wis. 2d 842, 853, 434 N.W.2d 773 (1989), held that a free-standing misappropriation of confidential business information claim is nothing more than an expanded trade-secret claim that is displaced by the statute. Plaintiffs' attempt to preserve Count VI as an alternative to their trade secret claim—without specifying what distinct information supports it—is exactly the type of claim *Marine Travelift* rejected.

**B. Plaintiffs Cannot Satisfy the Mercury Elements as to Eason and James.**

Even if Count VI survives displacement, Plaintiffs cannot establish the three elements of an unfair competition claim under *Mercury Record Products, Inc. v. Economic Consultants, Inc.*, 64 Wis. 2d 163, 174 (1974), as to Eason and James individually.

First, **Plaintiffs have not shown competition.** [redacted] (SMF ¶ 104; Resp. ¶ 104[7].) Clearspan has never done in-house engineering and has always used third-party engineers. Clearspan is a truss manufacturer; Plaintiffs are engineering service providers. They operate in different markets. Using commercially available software as a downstream user is not "competition" within the meaning of the unfair competition tort.

Second, **Plaintiffs have not shown that Eason or James individually did anything constituting unfair competition.** Plaintiffs recycle the same allegations addressed above: [redacted]

---

[7] Plaintiffs state that they do not concede the factual statement that Clearspan "does not compete with Plaintiffs," mischaracterizing that statement as a legal conclusion. This is a clear and express statement of fact, one which Plaintiffs do not and cannot dispute.

[redacted] (Dkt. #198, p. 57.) These are routine corporate activities. James attending a trade show booth as a Clearspan employee is not "unfair competition"—it is the performance of his job duties.

## VI. Eason's and James' Testimony Is Based on Personal Knowledge and Creates No Genuine Factual Dispute.

Finally, Plaintiffs argue that Eason and James rely on "interested and conclusory testimony" that does not eliminate the factual disputes in this case. Plaintiffs invoke *Payne v. Pauley*, 337 F.3d 767, 771–73 (7th Cir. 2003), for the proposition that an affidavit is disqualified not because it is "self-serving" but because it lacks personal knowledge or states mere conclusions.

*Payne* supports Eason and James, not Plaintiffs. Eason's and James' testimony is based on their personal knowledge of events they participated in and witnessed. Eason testified from personal knowledge about his decision-making as Clearspan's president—decisions he personally made. James testified from personal knowledge about his role as a communications manager—a role he personally held.

Plaintiffs suggest that Eason's acknowledgment that Clearspan's ledger is "all I have to go off of" regarding a December 2021 distribution undermines his testimony. That characterization is misleading. Eason was candidly acknowledging the limits of his knowledge about a specific financial transaction that occurred *before he became president*. Such candor is not a basis for disqualifying his testimony about events during his tenure. To the contrary, it demonstrates that Eason's testimony is carefully limited to matters within his personal knowledge—exactly what *Payne* requires.

As for James' alleged "conflicting accounts"—his interrogatory response about "informing employees" and his deposition testimony about learning of the sealing-service change after the

fact—these statements are not contradictory, as addressed in Section IV.D above. James may have informed employees about the change in his capacity as communications manager *after* learning of it himself. The interrogatory response does not state that James participated in *making* the decision. At worst, any tension between these statements presents a minor credibility issue on a collateral point—not a genuine issue of material fact precluding summary judgment.

It bears noting that Plaintiffs' own evidence suffers from the very deficiencies they attribute to Defendants. Plaintiffs' case rests heavily on the declarations and testimony of Kirk and Suzanne Grundahl—the founders and owners of the Qualtim Companies who are the most interested witnesses in this litigation. If "interested" testimony is unreliable, Plaintiffs' evidence should be scrutinized under the same standard.

Importantly, the contemporaneous record supports Defendants' version of events—not Plaintiffs'. [redacted] (SMF ¶¶ 8, 9, 14, 15, 22–28; Resp. ¶¶ 8, 9, 14, 15, 22–28[8].) [redacted] (SMF ¶ 61; Resp. ¶ 61.) [redacted] (SMF ¶¶ 62, 72, 76–79; Resp. ¶ 62, 72, 76–79[9].) [redacted] (SMF ¶¶ 93–98; Resp. ¶¶ 93–98.) [redacted] (SMF ¶ 82; Resp. ¶ 82.) Kirk Grundahl himself described [redacted] (SMF ¶ 32; Resp. ¶ 32.) This is not a case where "interested testimony" disguises genuine factual disputes. It is a case where Plaintiffs' own admissions defeat their claims.

[8] While Plaintiffs indicate that Paragraph 25 is disputed, they do not contest that Kirk Grundahl testified as to [redacted] and Plaintiffs do not and cannot identify any other written contract signed by the parties to the alleged joint venture other than the referenced Mutual Nondisclosure Agreement.

[9] While Plaintiffs indicate that Paragraph 72 is disputed, Plaintiffs nonetheless fail to identify any profit-sharing agreement with Clearspan. The remainder of Plaintiffs disputes rely on creative interpretation of statements that otherwise do not contradict the cited testimony or declarations.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in their opening brief, Defendants James Holland and Rob Eason respectfully request that this Court grant their Motion for Summary Judgment and enter judgment in their favor on all counts asserted against them.

Dated: September 21, 2026

Respectfully submitted,

*/s/ Corey J. Swinick*

Brian R. Zeeck (ARDC: 6298798)
Liam McGing (ARDC: 6342393)
Attorneys for Defendants, James Holland, Clearspan Components, Inc., and Rob Eason
HINSHAW & CULBERTSON LLP
151 N. Franklin Street, Suite 2500
Chicago, IL 60606
Phone: 312-704-3028
bzeeck@hinshawlaw.com
lmcging@hinshawlaw.com

Corey J. Swinick
State Bar No.: 1097530
Attorneys for Defendants, James Holland, Clearspan Components, Inc., and Rob Eason
HINSHAW & CULBERTSON LLP
790 N. Water Street, Suite 1950
Milwaukee, WI 53202
Phone: 414-276-6464
cswinick@hinshawlaw.com

Stephan R. Wright, TN BPR 031494
*Counsel for James Holland, Rob Eason, and Clearspan Components, Inc.*
WRIGHT, CORTESI & GILBREATH
2030 Hamilton Place Blvd., Suite 240
Chattanooga, TN 37421
Telephone: (423) 826-6919
Facsimile: (423) 826-6929
swright@wcglegal.com